UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re : | Chapter 11 Bankruptcy Case |
| : | |
| DANA CORPORATION, ET. AL., : | Case No. 06-10354 (BRL) |
| : | |
| Debtors. : | (Jointly Administered) |
| : | |
| : | |
| ─────────────────────────── : | |
| : | |
| THE TIMKEN COMPANY, TIMKEN U.S. : | |
| CORP., TOYOTETSU AMERICA, INC. and : | |
| TOYOTETSU MID AMERICA, LLC, : | |
| : | |
| Appellants, : | Appeal No. 07-CV-5659 (PAC) |
| : | |
| v. : | |
| : | |
| DANA CORPORATION, ET AL., : | |
| : | |
| Appellees. : | |
| : | |
| ─────────────────────────── : | |

---

### OPENING BRIEF OF APPELLANTS THE TIMKEN COMPANY, TIMKEN U.S. CORP., TOYOTETSU AMERICA, INC. AND TOYOTETSU MID AMERICA, LLC

---

James M. Sullivan (JS-2189)
Gary O. Ravert (GR-3091)
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173-1922
Telephone: 212.547.5400
Facsimile: 212.547.5444

*Counsel for The Timken Company, Timken U.S. Corp., Toyotetsu America, Inc. and Toyotetsu Mid America, LLC*

W. Timothy Miller *(pro hac vice)*
Paige Leigh Ellerman *(pro hac vice)*
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202
Telephone: 513.357.9359
Facsimile: 513.381.0205

*Co-Counsel for Toyotetsu America, Inc. and Toyotetsu Mid America, LLC*

# TABLE OF CONTENTS

Page

I.      JURISDICTION ............................................................................................. 1

II.     STATEMENT OF ISSUES PRESENTED................................................... 1

III.    APPLICABLE STANDARD OF APPELLATE REVIEW ........................... 1

IV.     STATEMENT OF THE CASE..................................................................... 2

V.      FACTUAL BACKGROUND ....................................................................... 4

VI.     SUMMARY OF ARGUMENT .................................................................... 7

VII.    LEGAL ARGUMENT.................................................................................. 8

     A.   The Bankruptcy Court Erred in Holding that BAPCPA Did Not Create a New Federal Right of Reclamation........................................................................ 8

     B.   The Bankruptcy Court Erred in Interpreting New 546(c)'s "Subject To" Defense to Mean "Extinguished By" In Evaluating Dana's Prior Lien Defense ................................................................................................ 12

     C.   The Bankruptcy Court Erred in Holding the Reclamation Claims Have No Value Because Dana's Admissions Precluded Such Holding ............................ 13

          1.   First Fatal Admission:  The Prepetition Liens Were Not Repaid from the Reclaimed Goods ...................................................................... 14

          2.   Second Fatal Admission:  The Prepetition Liens Were Not Assigned to the DIP Lender.................................................................... 14

          3.   Third Fatal Admission:  The Value of the Collateral Securing the Prepetition Liens Exceeded the Sum of the Prepetition Indebtedness and the Reclamation Claims ............................................. 15

     D.   The Bankruptcy Court Erred as a Matter of Law When it Relied on Dairy Mart and Determined That the Granting of Liens in the Reclaimed Goods Constituted a Disposition of Prepetition Collateral ............................................ 16

          1.   Dairy Mart Has No Application in the Context of New 546(c).............. 17

          2.   Dairy Mart Is Factually Distinguishable................................................. 17

          3.   Even if Dairy Mart Were Applicable and Factually Analogous, It Was Incorrectly Decided And Not In Line with Prevailing Authority .................................................................................. 19

     E.   The Bankruptcy Court Erred When it Improperly Granted Dana Standing to Oppose the Equitable Allocation of its Assets so as to Extinguish Reclamation Claims Rather Than Preserve Them ............................................... 22

NYK 1107508-10.064980.0013

**TABLE OF CONTENTS**
**(continued)**

Page

F.   The Bankruptcy Court Erred When, Notwithstanding the Agreement of the Parties, It Concluded that the Prior Lien Defense Renders All Reclamation Claims Valueless Without Providing the Reclamation Claimants an Opportunity to Conduct Discovery and a Hearing Relating to the Prepetition Lenders' Good Faith .................................................................... 25

G.   The Bankruptcy Court Erred in its Determination that Dana Should Not Be Equitably Estopped from Asserting the Prior Lien Defense .......................... 27

VIII.   CONCLUSION ............................................................................................................ 30

NYK 1107508-10.064980.0013

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995) ......................2

*Allegiance Healthcare Corp. v. Primary Health System, Inc.*,
    258 B.R. 111 (Bankr. D. Del. 2001) .........................................................................13, 26

*In re Arlco, Inc.*, 239 B.R. 261 (Bankr. S.D.N.Y. 1999) ........................................15, 17, 19, 20, 23

*Chase Manhattan Bank v. Rockefeller Ctr. Properties*
    *(In re Rockefeller Ctr. Properties)*, 2002 U.S. Dist. LEXIS 212
    (S.D.N.Y. 2002) ................................................................................................................27

*In re Child World*, 145 B.R. 5 (Bankr. S.D.N.Y. 1992) ..........................................................28

*In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128
    (Bankr. S.D.N.Y. 2003) ............................................................................................. passim

*Davis v. Par Wholesale Automobile, Inc., (In re Tucker)*,
    329 B.R. 291 (Bankr. D. Ariz. 2005) ...................................................................................9

*In re Dow Corning Corp.*, 456 F.3d 668 (6th Cir. 2006) ..............................................................2

*Fundex Capital Corp. v. Balaber-Strauss (In re Tampa Chain Co.)*,
    53 B.R. 772 (Bankr. S.D.N.Y. 1985) ..................................................................................23

*In re Georgetown Steel Co, LLC*, 318 B.R. 340 (Bankr. D. S.C. 2004) ............................... passim

*In re Gibson Group, Inc.*, 151 B.R. 133 (Bankr. S.D. Ohio 1993) ..............................................24

*Graniteville Co. v. Bleckley Lumber Co.*, 687 F. Supp. 589 (M.D. Ga. 1988) ............................26

*In re Griffith*, 206 F.3d 1389 (11th Cir. 2000) ..........................................................................10

*Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'Ship*,
    2007 U.S. Dist. LEXIS 30426 (S.D.N.Y. 2007) ....................................................................1

*In re Incredible Automobile Sales LLC*, 2007 WL. 927615
    (Bankr. D. Mont. 2007)........................................................................................................9

*In re Ionosphere Clubs, Inc.*, 85 F.3d 992 (2d Cir. 1996) ..........................................................27

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) ..........................................................1

*Isaly Klondike Co. v. Sunstate Dairy & Food Prod., Co.*
  *(In re Sunstate Dairy & Food Products Co.),*
    145 B.R. 341 (Bankr. M.D. Fla. 1992) ...................................................26

*King Pharm., Inc. v. Teva Pharm. USA,* 409 F. Supp. 2d 609 (D. N.J. 2006)...........10, 12

*Lamie v. U.S. Trustee,* 540 U.S. 526 (2004) ...................................................12

*LoPresti v. Terwilliger,* 126 F.3d 34 (2d Cir. 1997) ...................................................2

*In re Maddox,* 84 B.R. 251 (Bankr. N.D. Ga. 1987)...................................................23, 24

*Meyer v. United States,* 375 U.S. 233 (1963) ...................................................22, 23

*Murphy v. Town of Harrison (In re Murphy),*
    331 B.R. 107 (Bankr. S.D.N.Y. 2005) ...................................................22

*New Haven Projects LLC v. City of New Haven*
    *(In re New Haven Projects LLC),* 225 F.3d 283 (2d Cir. 2000) ...........................1

*Pepper v. Litton,* 308 U.S. 295 (1939)...................................................23

*In re Pester Refining Co.,* 964 F.2d 842 (8th Cir. 1992) ...................................................13, 19, 20

*In re Phar-Mor, Inc.,* 301 B.R. 482 (Bankr. N.D. Ohio 2003) ...........................13, 14, 19, 20, 26

*In re Pittsburgh-Canfield Corp.,* 309 B.R. 277 (B.A.P. 6th Cir. 2004)...........................14, 17, 29

*Public Loan Co., Inc. v. FDIC,* 803 F.2d 82 (3d Cir.1986) ...................................................2, 26

*Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295 (2d Cir. 1996) ...................................................27

*Second National Bank v. Phillips,* 189 F.2d 115 (5th Cir. 1951) ...................................................23

*Sunbeam Products, Inc. v. Wing Shing Products (BVI) Ltd.,*
    311 B.R. 378 (S.D.N.Y. 2004)...................................................2

*United States v. Steiger,* 318 F.3d 1039 (11th Cir. 2003) ...................................................10

*United States v. Westside Bank,* 732 F.2d 1258 (5th Cir. 1984)...................................................11, 21

*In re Victory Markets Inc.,* 212 B.R. 738 (Bankr. N.D.N.Y. 1997)...................................................13, 17

*Walther v. Bank of New York,* 772 F. Supp. 754 (S.D.N.Y. 1991)...................................................22

**STATUTES**

11 U.S.C. § 101(50) .................................................................................12

11 U.S.C. § 503(b)(9) ...............................................................................15

11 U.S.C. § 546(c) ............................................................................ passim

11 U.S.C. § 547 ..........................................................................................5

28 U.S.C. § 158(a) .....................................................................................1

U.C.C. § 1-201(29)-(30) (2001) ..............................................................24

**MISCELLANEOUS**

40-JUN Md. B.J. 26 ..................................................................................12

Am. Jur. 2d, Marshaling Assets, Section 1 (1970 & Supp. 1987) ...............25

James M. Sullivan & Gary O. Ravert, *A Vendor's Guide to Bankruptcy*,
    1 Bloomberg Corp. L.J. 494, 505 (2006) ...........................................10

L. King, 5 COLLIER ON BANKRUPTCY ("COLLIER") § 546.04 [1], n.1 (15th Ed. 2007) .........................9,

## I.     JURISDICTION

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

## II.     STATEMENT OF ISSUES PRESENTED

1.     Did the Bankruptcy Court err in finding as a matter of law that the amendments to Section 546(c) of the Bankruptcy Code contained in BAPCPA[1] ("New 546(c)") did not create a new federal right of reclamation?

2.     Did the Bankruptcy Court err in interpreting New 546(c)'s "subject to" to mean "extinguished by" when evaluating Dana's alleged Prior Lien Defense?

3.     Did the Bankruptcy Court err in valuing all Reclamation Claims at zero even though the above-referenced debtors ("Dana") admitted that (a) the claims of Dana's prepetition lenders ("Prepetition Lenders") were not repaid with the proceeds of the goods sought to be reclaimed ("Reclaimed Goods"); (b) the Prepetition Lenders' liens were not assigned to the Postpetition Lender; and (c) the Prepetition Lenders were vastly oversecured?

4.     Did the Bankruptcy Court err in relying on *Dairy Mart* in concluding that, as a matter of law, the granting of liens in the Reclaimed Goods to Dana's postpetition lender ("Postpetition Lender") constituted a disposition of the Reclaimed Goods?

5.     Did the Bankruptcy Court err by improperly granting Dana standing to oppose the equitable allocation of its assets so as to extinguish all the reclamation claims against Dana ("Reclamation Claims") rather than preserve them?

6.     Did the Bankruptcy Court abuse its discretion in valuing all Reclamation Claims at zero without providing holders of such claims ("Reclamation Claimants") an opportunity to take discovery and have a hearing on the good faith of Dana's Prepetition Lenders, where the right to such discovery was expressly preserved by the Bankruptcy Court's order entered on January 19, 2007?

7.     Did the Bankruptcy Court abuse its discretion in refusing to equitably estop Dana from asserting the Prior Lien Defense where Dana misled Reclamation Claimants into believing Reclamation Claims would have value?

## III.     APPLICABLE STANDARD OF APPELLATE REVIEW

In reviewing a decision of the bankruptcy court, this Court must accept all factual findings, unless clearly erroneous, but reviews all conclusions of law *de novo*. *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC)*, 225 F.3d 283, 286 (2d Cir. 2000) (citing *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988-989 (2d Cir. 1990)); *Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'Ship*, 2007 U.S. Dist. LEXIS 30426, *6 (S.D.N.Y. 2007). This Court

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

reviews de novo the Bankruptcy Court's interpretation of the Bankruptcy Code. *In re Dow Corning Corp.*, 456 F.3d 668, 675 (6th Cir. 2006). Mixed questions of law and fact are reviewed de novo. *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997). Accordingly, the District Court reviews de novo the Bankruptcy Court's decision as to issues 1-5 above.

The District Court reviews the Bankruptcy Court's decision as to issues 6 and 7 above for an abuse of discretion. *See Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 395 (S.D.N.Y. 2004) (rulings on the application of equitable doctrines are committed to the sound discretion of the trial judge and are reviewed under the abuse of discretion standard.) (citing *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995)). "A finding that discretion has been abused usually requires either the violation of a '"substantial right,'"...or '...fundamental unfairness in the trial of the case.'" *Id.* (citing *Pub. Loan Co., Inc. v. FDIC*, 803 F.2d 82, 86 (3d Cir.1986)).

## IV.    STATEMENT OF THE CASE

This appeal arises from the Memorandum Decision Regarding Reclamation Claims Under Section 546(c) of the BAPCPA entered April 19, 2007 by the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York ("Decision") and Order related thereto entered April 25, 2007 ("Order"), which valued approximately $300 million in Reclamation Claims asserted against Dana at $0. As set forth below, this controversy arose when Dana initially sought and obtained a first day order establishing procedures for reconciling the Reclamation Claims but later sought to extinguish all Reclamation Claims on the basis of its so-called prior lien defense ("Prior Lien Defense"). Specifically, Dana argued that the $2.2 billion in liens that it allegedly granted approximately 100 days before the bankruptcy filing ("Prepetition Liens") to its Prepetition Lenders in connection with a prior $400 million loan ("Prepetition Indebtedness") rendered all Reclamation Claims valueless.

NYK 1107508-10.064980.0013

In support of the Prior Lien Defense, Dana relied mainly on the decision in *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D.N.Y. 2003). The *Dairy Mart* court found that the reclamation claims asserted against Dairy Mart were subject to the postpetition liens and therefore valueless, because, in one integrated transaction, the postpetition lenders were granted liens and the prepetition loans were satisfied either through (i) the *actual* sale of the reclaimed goods and sweeps of the cash proceeds to the prepetition lender (an actual satisfaction theory) or (ii) the payment of the prepetition lenders from the proceeds of the postpetition loans, which constituted an *effective* sale of the goods (an effective satisfaction theory).

The stipulations made by Dana in this case, the meaning of which are undisputed, distinguish this case from *Dairy Mart*. Dana stipulated that (i) the Prepetition Liens <u>were not</u> satisfied out of the liquidation of the Reclaimed Goods, but instead were satisfied solely from the proceeds of postpetition financing obtained by Dana (therefore, no actual sale of the goods occurred); (ii) the Prepetition Liens <u>were not</u> assigned to the Postpetition Lender (therefore, the Prepetition Liens were not extinguished upon repayment of the Prepetition Indebtedness); and (iii) the value of the collateral securing the Prepetition Liens ("Prepetition Collateral") exceeded the sum of the Prepetition Indebtedness and the Reclamation Claims (therefore, no liquidation of the Reclaimed Goods was even necessary to satisfy the Prepetition Liens) (stipulations are hereinafter referred to as the "Admissions").

The Reclamation Claimants argued below that (i) BAPCPA created a new stronger federal right of reclamation and, accordingly, Dana's reliance on *Dairy Mart* (and Old 546(c)) was misplaced; (ii) only the actions of the Prepetition Lenders, not Dana, could have rendered the Reclamation Claims valueless; (iii) the Admissions invalidated the Prior Lien Defense as a matter of law because (a) the Prepetition Liens were completely satisfied without actually liquidating any of the Reclaimed Goods, (b) the Prepetition Liens were not assigned to the Postpetition Lender, and (c) the Prepetition Lenders were grossly over-secured; (iv) *Dairy Mart* was wrongly decided and, in any

event, is factually distinguishable; (v) the Bankruptcy Court could not render a final decision on the value of the Reclamation Claims until the Reclamation Claimants were provided an opportunity to conduct discovery on the good faith of the Prepetition Lenders in taking the Prepetition Liens; and (vi) Dana should have been equitably estopped from asserting the Prior Lien Defense because it misled Reclamation Claimants into thinking that Reclamation Claims had value.

The Bankruptcy Court held that (i) New 546(c) did not create a new federal reclamation right; (ii) the Reclaimed Goods "effectively were disposed" of when the Postpetition Lender received liens ("DIP Liens") in substantially the same collateral that was pledged to the Prepetition Lenders and then provided funding to Dana that was used to satisfy the Prepetition Indebtedness; (iii) the Final DIP Order (defined below) contained express findings of the *Postpetition Lender's*[2] good faith; and (iv) the Reclamation Claimants were not lulled by Dana into believing that their claims would receive administrative priority.

The Decision and Order must be overturned because they are contrary to Dana' express Admissions and are not supported by prevailing authority.

## V.    FACTUAL BACKGROUND

On March 4, 2005, approximately one year before Dana's bankruptcy filing, Dana obtained a $400,000,000 loan (defined above as Prepetition Indebtedness) from Citicorp USA Inc., agent to certain lenders (defined above as Prepetition Lenders). (A0004, A0544-45, A0714.)

On November 18, 2005, approximately 100 days prior to its bankruptcy filing, Dana pledged substantially all of its personal property, including inventory, equipment, and accounts receivable

---

[2] Appellants never disputed the good faith of the Postpetition Lender below. However, the Bankruptcy Court entered a stipulation and order, which preserved the Reclamation Claimants' rights to take discovery on the *Prepetition Lenders'* good faith unless Dana's Prior Lien Defense motion was denied on other grounds or the Bankruptcy Court found that the Prepetition Lenders' good faith was irrelevant. (See Appendix (hereafter A___) at A0706.) Accordingly, Appellants should have been given discovery and a hearing on the Prepetition Lenders' good faith.

(defined above as Prepetition Collateral) to the Prepetition Lenders to secure repayment of the Prepetition Indebtedness.[3] (A0025.)

On March 3, 2006 ("Petition Date"), Dana commenced its chapter 11 proceedings. (A0001.) The book value of the Prepetition Collateral was more than $2.2 billion. (A0107-27.)

On the Petition Date, Dana filed a motion ("Reclamation Motion") to establish procedures for reconciling the Reclamation Claims. (A0140.) The Reclamation Motion does not reference Dana's intention to extinguish all Reclamation Claims on the basis of the Prior Lien Defense nor does it cite the *Dairy Mart* decision. (*Id.*) The Bankruptcy Court entered an order approving the Reclamation Motion (as amended on March 29, 2006, the "Reclamation Order"). (A0392.) Among other things, the Reclamation Order enjoins Reclamation Claimants from enforcing Reclamation Claims and authorizes settlements with respect to Reclamation Claims. (A0394-95.) Appellants served reclamation demands on Dana pursuant to the Reclamation Order. (A0397, A0481.)

On the Petition Date, Dana filed a motion ("DIP Motion") to obtain postpetition financing ("DIP Loan"). (A0157.) On March 29, 2006, the Bankruptcy Court entered a final order approving the DIP Motion ("Final DIP Order"), which

- authorized, but did not require, Dana to repay the Prepetition Indebtedness with borrowings from the DIP Loan (A0514);
- authorized Dana to make payments on any prepetition debts to the extent authorized by the first day orders (which included the Reclamation Order) (A0514); and
- subordinated the Prepetition Liens to the DIP Liens. (A0501.)

On March 30, 2006, Dana repaid the Prepetition Indebtedness of $377,879,482.36 with borrowings from the DIP Loan. (A0721, A0568.)

On June 30, 2006, Dana filed a notice reconciling the Reclamation Claims ("Reconciliation Notice"), which reflected its intention to extinguish all Reclamation Claims on the basis of the Prior Lien Defense. (A0571.) Appellants objected to the Reconciliation Notice. (A0600, A0630.)

---

[3] The granting of such liens may have been avoidable as a preference had Dana filed its bankruptcy petition 10 days earlier. 11 U.S.C. § 547.

NYK 1107508-10.064980.0013

On September 20, 2006, Dana filed a motion to establish discovery and briefing procedures and bifurcate consideration of issues relating to the Reclamation Claims ("Bifurcation Motion") and requested that the Bankruptcy Court determine the validity of the Prior Lien Defense as a matter of law before determining fact-based defenses. (A0638.) Appellants objected to the Bifurcation Motion on the basis that, among other things, additional discovery was needed. (A0691-93, A0700.) On October 13, 2006, the Bankruptcy Court entered an order granting the Bifurcation Motion ("Bifurcation Order"), which provided that

> Any and all litigation (including discovery) related to the Fact-Intensive Defenses (as defined in the Reclamation Motion) shall be stayed and postponed until after the Court (a) has ruled on the applicability of the Debtors' Prior Lien Defense to the Remaining Reclamation Claims . . . (A0706.)

The Bifurcation Order also permitted limited discovery on certain issues relating to the Prior Lien Defense. (A0706-7) In its discovery responses ("Discovery Responses"), Dana admitted that "there was no assignment of the . . . Prepetition [Liens to the Postpetition] Lender" ("Assignment Admission"). (A0767-8.)

Appellants objected to the Discovery Responses, because they did not provide discovery on valuation and the good faith of the Prepetition Lenders. (A0777-8, A0804-5.) The discovery disputes were resolved on the record at a hearing on December 19, 2006. (A0819-28.) Dana agreed to respond to a valuation interrogatory (A0830) and the parties agreed to defer discovery and a hearing on the good faith issue until the non-factual Prior Lien Defense issues were resolved. (A0830-1.)

On January 16, 2007, Dana served a response to the valuation interrogatory ("Valuation Response") in which Dana admitted that

> based upon the [Debtors'] Schedules[4] . . . , the total face amount of the currently outstanding reclamation claims plus the amount of the Prepetition Indebtedness was less than the net book value of [Dana's] assets as of the Petition Date ("First Valuation Admission"). (A0130.)

---

[4] Dana's schedules of assets and liabilities ("Schedules") reflect that the book value for personal property assets, including the Reclaimed Goods exceeded $2.2 billion as of the Petition Date. (A0107-27.)

By email dated January 18, 2007, Dana's counsel further stipulated that:

- the book value of the assets securing the prepetition secured claims exceeds the prepetition secured debt and the face amount of the currently outstanding reclamation claims; and

- to the extent value is relevant, the parties will use book value as the measure for purposes of the hearing on the prior lien defense (with the First Valuation Admission, the "Valuation Admission"). (A0133.)

On January 19, 2007, the Bankruptcy Court entered an order embodying the agreements reached at the December 19th hearing ("Discovery Order"), in which Dana admitted that:

(i) none of the inventory sought to be reclaimed was liquidated for the purposes of paying the prepetition creditors and (ii) the prepetition creditors were not paid from the proceeds of the inventory sought to be reclaimed, but rather from the proceeds of [Dana's] Postpetition secured financing ("Payment Admission"). (A0831.)

The Discovery Order further provided that

The Debtors shall not be required to respond to discovery regarding the good faith of the pre or post petition lenders ("Lender Good Faith Issue") at this time. The parties shall brief the issue of whether the Lender Good Faith Issue is relevant to the allowance of the reclamation claims in the briefs to be submitted in accordance with the schedule set out [by the Court]. Unless mooted by the Court's decision on the Prior Lien Defense . . . , discovery with respect to the Lender Good Faith Issue shall be conducted pursuant to a separate scheduling order to be submitted to the Court on consent . . . (A0830.)

The Bankruptcy Court ruled on the Prior Lien Defense based on stipulated facts and briefs of the parties.

## VI.    SUMMARY OF ARGUMENT

Only 100 days prior to the commencement of these chapter 11 cases, Dana granted to its Prepetition Lenders liens valued at approximately $2.2 billion to secure antecedent debt of approximately $400 million. With the granting of such liens, the Prepetition Lenders enjoyed an equity cushion of approximately $1.8 billion ("Equity Cushion"). Notwithstanding this grossly over-secured position, Dana, *not the Prepetition Lenders*, sought and obtained from the Bankruptcy Court the Order "deeming" that a foreclosure sale of all $2.2 billion of the Prepetition Collateral occurred to repay the Prepetition Indebtedness. The Bankruptcy Court granted Dana' request for a deemed

foreclosure notwithstanding Dana's admission that the Prepetition Lenders were grossly over-secured and that no actual foreclosure or assignment of the Prepetition Liens occurred. This deemed foreclosure sale purports to strip *all* value from the Reclamation Claims. This result is contrary to controlling law and grossly inequitable.

The Appellants submit that the Order should be reversed for the following reasons: (1) the Bankruptcy Court improperly held that New 546(c) did not create a new federal right of reclamation; (2) the Prepetition Lenders, not Dana, had the sole right to foreclose on the Reclaimed Goods and chose not to do so; (3) it would be inequitable and inconsistent with New 546(c) and other persuasive authority to allow Dana to deem $2.2 billion in Prepetition Collateral "effectively disposed of" in satisfaction of $377 million in debt; (4) the Admissions preclude the legal conclusions reflected in the Decision and Order; (5) the Bankruptcy Court never addressed the good faith of the Prepetition Lenders, which issue was expressly preserved for a later hearing and for which discovery had not yet taken place; and (6) the Bankruptcy Court should have equitably estopped Dana from asserting the Prior Lien Defense.

## VII.   LEGAL ARGUMENT

### A.   The Bankruptcy Court Erred in Holding that BAPCPA Did Not Create a New Federal Right of Reclamation

Old 546(c) specifically made a trustee's avoidance rights subject to "any statutory or common law right of a seller" that sold goods to the debtor in the ordinary course of business while the debtor was insolvent. BAPCPA removed the reference to statutory or common law rights and expanded the rights available to suppliers of goods. Favorable changes include: (i) expanding reclamation rights from 10 days to 45 days; and (ii) granting an administrative expense claim to suppliers for goods shipped within 20 days prior to the bankruptcy filing.

-8-

New 546(c)[5] provides:

> (1) Except as provided in subsection (d) of this section and in section 507(c), and
> subject to the prior rights of a holder of a security interest in such goods or the
> proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547,
> and 549 are subject to the right of a seller of goods that has sold goods to the debtor,
> in the ordinary course of such seller's business, to reclaim such goods if the debtor
> has received such goods while insolvent, within 45 days before the date of the
> commencement of a case under this title, but such a seller may not reclaim such
> goods unless such seller demands in writing reclamation of such goods—
> (A) not later than 45 days after the date of receipt of such goods by the debtor; or (B)
> not later than 20 days after the date of commencement of the case, if the 45-day
> period expires after the commencement of the case.
> (2) If a seller of goods fails to provide notice in the manner described in paragraph
> (1), the seller may still assert the rights contained in section 503(b)(9).

By striking the reference to statutory or common law rights and expressly including a right to reclaim, Congress evidenced an intent to create a new federal reclamation right that preempts weaker state law reclamation rights of the sellers of goods to debtors in bankruptcy. *See* L. King, 5 COLLIER ON BANKRUPTCY ("COLLIER") § 546.04 [1], n.1 (15th Ed. 2007) ("the language of section 546(c) suggests that a seller's reclamation rights in bankruptcy may be derived exclusively from section 546(c) of the Bankruptcy Code and not from any nonbankruptcy statutory provision or common law.") (citing *Davis v. Par Wholesale Auto, Inc., (In re Tucker)*, 329 B.R. 291, 298 n.8 (Bankr. D. Ariz. 2005)). Accordingly, the Bankruptcy Court's reliance upon Old 546(c) and certain cases interpreting Old 546(c) is misplaced.

The Bankruptcy Court's conclusions that New 546(c) does not create a new federal right of reclamation does not withstand scrutiny because the plain wording of the statute suggests otherwise. *See* COLLIER § 546.04 [1], n.1; *In re Incredible Auto Sales LLC*, 2007 WL 927615, *6 (Bankr. D. Mont. 2007) ("perhaps the amended § 546(c) creates its own reclamation right, rather than merely validating the right that exists under the U.C.C. This impression is supported by the fact that the amendment also strikes the reference to 'any statutory or common law' right to reclaim"); *In re*

---

[5] For ease of reference, a blackline of the Old 546(c) versus New 546(c) is attached hereto as Ex. A.

*Tucker*, 329 B.R. 291, 298; James M. Sullivan & Gary O. Ravert, *A Vendor's Guide to Bankruptcy*, 1

Bloomberg Corp. L.J. 494, 505 (2006).

"Congress is generally presumed to "act [ ] intentionally and purposely when it includes

particular language in one section of a statute but omits it in another[, which] presumption is made

even stronger when, as here, Congress has amended a statute to include certain language in some, but

not all, provisions of the statute." *King Pharm., Inc. v. Teva Pharm. USA*, 409 F. Supp. 2d 609, 614

(D. N.J. 2006) (citing *United States v. Steiger*, 318 F.3d 1039, 1050-51 (11th Cir. 2003)). Moreover,

"where Congress knows how to say something but chooses not to, its silence is controlling." *In re*

*Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000). Accordingly, the best evidence that Congress

intended to create a new federal reclamation right in New 546(c) is the fact that it struck the

reference to "any state and common law right" and replaced it with "the right." This makes clear that

Congress intended to replace rights under various state laws with a single, federal right of

reclamation under New 546(c). The deletion of the statutory or common law rights was

unambiguous and should not be read back into the Bankruptcy Code as suggested by the Bankruptcy

Court.

Notwithstanding the unambiguous language of Congress, the Bankruptcy Court makes

several observations, which it claims supports its view. First, the Bankruptcy Court points to the use

of the article "the" to replace "any statutory or common law" as an indication that "the right" already

exists. The Appellants submit that the only reasonable place to find that right is in New 546(c). The

"right" referred to is the right found in the remaining language of New 546(c), which is italicized

below:

> subject to the prior rights of a holder of a security interest in such goods or the
> proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547,
> and 549 are subject to *the right of a seller of goods that has sold goods to the debtor,*
> *in the ordinary course of such seller's business, to reclaim such goods if the debtor*
> *has received such goods while insolvent, within 45 days before the date of the*
> *commencement of a case under this title…* (emphasis added).

New 546(c) clearly states that the trustee's avoidance powers are subject to the right of a seller of goods to reclaim such goods if the debtors received such goods while insolvent and within 45 days before the bankruptcy filing. Appellants are aware of no pre-existing state or common law that establishes a right of a seller of goods to reclaim such goods if the debtor has received such goods while insolvent and within 45 days of a bankruptcy filing. Therefore, it is far more reasonable to read New 546(c) to be the source of that right.

Next, the Bankruptcy Court observed that Congress did not set forth the purported new right of reclamation in a dedicated section of the Bankruptcy Code. (A0010-11.) The Appellants are aware of no requirement that new federal rights must be set forth in a dedicated section. The Bankruptcy Court also observed that if New 546(c) created a new federal reclamation right, it would not be necessary to immunize the rights created thereunder from avoidance. (A0011–12.) There is simply no basis for this conclusion given that New 546(c) provides rights to sellers whether they demand reclamation before or after the bankruptcy filing. Moreover, the language of the Bankruptcy Code harmonized two potentially inconsistent statutes by making clear that New 546(c) trumps a trustee's avoidance powers.

The Bankruptcy Court further observed that Congress could not have intended to give priority to reclamation claimants over buyers in the ordinary course of business, lien creditors or good faith purchasers, but not holders of a prior security interest. (A0013.) First, Congress was aware of the other defenses when it enacted BAPCPA, yet chose to specifically retain the Prior Lien Defense, but not other defenses. Second, even if reclamation rights are not subject to rights of good faith purchasers, the addition of the words "or the proceeds thereof" suggest that Congress likely intended that reclamation rights attach to proceeds of reclaimed goods in cases where such goods were sold to a good faith purchaser. 11 U.S.C. § 546(c); *see also United States v. Westside Bank*, 732 F.2d 1258, 1259 (5th Cir. 1984) (reclaiming creditor retains priority interest in proceeds remaining after foreclosure sale of assets that include reclaimed goods). Accordingly, the

-11-

Bankruptcy Court's concern for the rights of good faith purchasers and buyers in the ordinary course are unwarranted.

The Bankruptcy Court also suggests that because Congress did not use the words "a seller may reclaim goods when…" (A0012), Congress could not have intended to create a new federal right of reclamation. The Bankruptcy Court's conclusions regarding what New 546(c) might have said are overshadowed by the presumption that Congress knows how to draft a statute and is presumed to act intentionally and purposefully. *King Pharm.*, 409 F. Supp. 2d at 614.

Finally, the Bankruptcy Court states its reluctance to accept arguments that would interpret the Bankruptcy Code to "effect a major change in the pre-Code practice..." (A0012.) The BAPCPA revisions to the Bankruptcy Code, however, represented the single most significant change to the Bankruptcy Code in more than 25 years. *See e.g.*, 40-JUN Md. B.J. 26 (BAPCPA is the "most far-reaching change[] to the Code since it was enacted in 1978.") Accordingly, it is completely consistent with the modifications to the Bankruptcy Code that Congress intended a significant change in the treatment of reclamation rights and the Bankruptcy Court should have had no reluctance to accept that. Other enhancements to reclamation rights, such as the expanded 45-day claim period and the section 503(b)(9) administrative claim support this position.

**B.** **The Bankruptcy Court Erred in Interpreting New 546(c)'s "Subject To" Defense to Mean "Extinguished By" In Evaluating Dana's Prior Lien Defense**

The Bankruptcy Court erred when it failed to read New 546(c) according to its plain meaning and enforce it according to its terms. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."). Thus, when New 546(c) provides that reclamation rights are "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof," this means simply that reclamation rights are junior to liens created by an agreement prior to the bankruptcy filing. *See* 11 U.S.C. § 101(50)

(defining "security interest" is a "lien created by an agreement"). In fact, Dana did not dispute that under section 546(c)(1) of the Bankruptcy Code, reclamation claims are only subject to the prior rights of a holder of a "security interest." 11 U.S.C. § 546(c)(1). (A0725.) Here, the Bankruptcy Court accepted Dana's argument that, where the value of the secured debt is greater than the value of any individual reclamation claim, "subject to" means "extinguished by." That is not what the Bankruptcy Code provides. Therefore, any suggestion that the Reclamation Claims are extinguished, instead of simply subordinated to the *Prepetition Lenders' rights*, is an improper interpretation of New 546(c).

In fact, even the cases interpreting Old 546(c) support Appellants' position. *See In re Phar-Mor, Inc.*, 301 B.R. 482, 495 (Bankr. N.D. Ohio 2003) (concluding that it is well established that when a right to reclaim is "subject to" existing interest of secured creditor, such right is subordinate or inferior to security interest, and not automatically and totally extinguished); *accord In re Pester Ref. Co.*, 964 F.2d 842, 845-46 (8th Cir. 1992) (rejecting debtor's contention that mere presence of secured creditors with superior rights extinguished right of reclamation and finding that court's interpretation of "subject to" language has been followed in every reported bankruptcy decision that has considered the question); *Allegiance Healthcare Corp. v. Primary Health Sys., Inc.*, 258 B.R. 111, 116 n.5 (Bankr. D. Del. 2001) (same); *In re Victory Mkts. Inc.*, 212 B.R. 738, 742 (Bankr. N.D.N.Y. 1997) (same).

## C.     The Bankruptcy Court Erred in Holding the Reclamation Claims Have No Value Because Dana's Admissions Precluded Such Holding

The Bankruptcy Court erred in holding that Reclamation Claims have no value because Dana's admissions preclude a finding that the Reclaimed Goods were effectively disposed of in satisfaction of the Prepetition Indebtedness.

-13-

1.    **First Fatal Admission:  The Prepetition Liens Were Not Repaid from the Reclaimed Goods**

The Bankruptcy Court wrongly concluded that the Reclamation Claims have no value in light of Dana's admission that "the [P]repetition [Lenders] <u>were not paid from the proceeds of the inventory sought to be reclaimed,</u> but rather from the proceeds of [the DIP Loan.]." (A.0721, A0831) (emphasis added.)  Thus, as in *Phar-Mor*, *Pester*, and *In re Georgetown Steel Co, LLC*, 318 B.R. 340 (Bankr. D. S.C. 2004), the Prepetition Lenders' claims were satisfied from sources other than the Reclaimed Goods.  Accordingly, the Appellants' Reclamation Claims were no longer subject to the Prepetition Liens and should have been allowed in full.

2.    **Second Fatal Admission:  The Prepetition Liens Were Not Assigned to the DIP Lender**

The Bankruptcy Court wrongly concluded that the Reclamation Claims have no value in light of Dana's admission "that there was no assignment of the liens under the Prepetition Credit Facility to the DIP Facility lenders." (A0767–8.)  In fact, the Bankruptcy Court did not even reference the Assignment Admission in the Decision or address the arguments advanced by Appellants regarding whether or not the assignment of the Prepetition Liens was relevant to the analysis.  Moreover, even if an assignment was not a necessary element to the purported Prior Lien Defense, the refinancing of the Prepetition Indebtedness cannot be considered a single integrated transaction like the type involved in *Dairy Mart*.

As noted, the Prepetition Lenders' liens were not assigned to the Postpetition Lender.  The assignment of the liens was the determinative fact in other cases.  *Compare Phar-Mor*, 301 B.R. 497 & n.7 (holding that failure to assign prepetition liens to DIP lender resulted in release of prepetition liens for benefit of reclamation claimants) with *In re Pittsburgh-Canfield Corp.*, 309 B.R. 277 (B.A.P. 6th Cir. 2004) (holding that prepetition liens were preserved for the benefit of the DIP lender when such liens were assigned to the DIP lender).  The Bankruptcy Court did not address the assignment issue.  Accordingly, the Decision must be reversed.

NYK 1107508-10.064980.0013

Further, as sophisticated parties, Dana was aware, or should have been aware, of the cases that turned on the presence or absence of an assignment. If Dana and the Postpetition Lender intended to rely upon the Prepetition Liens, they should have provided for an assignment of the Prepetition Liens. If they wanted a single, integrated, transaction, they should have structured the "refinancing" to provide for one. The Bankruptcy Court erred by effectively rewriting the Final DIP Order to provide certain relief (i.e., the benefit of an assignment) when Dana itself failed to so provide, particularly when such relief prejudices the rights of the Reclamation Claimants.

### 3. Third Fatal Admission: The Value of the Collateral Securing the Prepetition Liens Exceeded the Sum of the Prepetition Indebtedness and the Reclamation Claims

Finally, the Bankruptcy Court wrongly concluded that the Reclamation Claims have no value because Dana admitted that (i) "the book value of the assets securing the prepetition secured claims[6] exceeds the sum of the prepetition secured debt[7] and the face amount of the currently outstanding Reclamation Claims[8] and (ii) to the extent value is relevant, the parties will use book value as the measure for purposes of the hearing on the prior lien defense." (A0133.) Further, based upon the book value of the assets securing the Prepetition Indebtedness as reflected on Dana's Schedules, it appears that the Prepetition Lenders were over-secured by more than $1.8 billion as of the Petition Date. (A0107–27.) This Equity Cushion grossly exceeds the face value of the remaining Reclamation Claims. Therefore, even if the Court were to find that the Prepetition Lenders were "effectively"[9] repaid with the Prepetition Collateral under the Effective Satisfaction Theory[10]

---

[6] $2.2 billion (A0107–27.)
[7] $381 million (A0716.)
[8] The face amount of the currently outstanding Reclamation Claims is approximately $110 million. (A0723) It is believed that the face amount of the remaining Reclamation Claims is approximately $60 million after deducting the face amount of the Reclamation Claims that are entitled to administrative priority under 11 U.S.C. § 503(b)(9). Based upon the value at which Dana's bonds have recently been trading, the amount in dispute in connection with the issue on appeal appears to be approximately $12 million.
[9] As set forth in section VII.D.3 below, the Court should not recognize an "effective" satisfaction of a $377 million debt with more than $2.2 billion of assets. Only the "actual" satisfaction of a debt with an "actual" asset can defeat the rights of a reclamation claim. *See, e.g., Arlco*, 239 B.R. at 273 (stating that the reclaiming seller's right to reclaim depends on the value of the excess goods remaining once the secured creditor's claim is paid or released).