espoused in *Dairy Mart*, there is no reason to find that the Prepetition Lenders were "effectively" repaid with the $60 million of Reclaimed Goods for which the remaining Reclamation Claimants are seeking reclamation as opposed to the almost $2.2 billion of other available Prepetition Collateral. *See Georgetown Steel*, 318 B.R. at 348 (holding that a court should not presume that a senior secured creditor would always assert its rights in a reclaiming creditor's goods). Instead, because the Prepetition Lenders have already been repaid and have not objected to the relief requested by the Reclamation Claimants, the Court should presume that the Prepetition Lenders chose not to satisfy the Prepetition Indebtedness from the Reclaimed Goods. *Id.* (presuming that secured creditors chose not to satisfy liens from reclaimed goods that were part of collateral pool used to satisfy its debt where excess funds remained for distribution and secured creditors did not object to relief sought by reclamation claimants).

**D.   The Bankruptcy Court Erred as a Matter of Law When it Relied on *Dairy Mart* and Determined That the Granting of Liens in the Reclaimed Goods Constituted a Disposition of Prepetition Collateral**

The Decision wrongly relied on *Dairy Mart* and, as a consequence, failed to take a "wait and see" approach to determine if the Reclamation Claims have value. The Decision cites *Dairy Mart* for the proposition that "if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless."[11] (A0017.) Any reliance by the Bankruptcy Court on *Dairy Mart* is misplaced under the facts of this case. First, *Dairy Mart* is a vestige of Old 546(c) and has no application to New 546(c). Second, *Dairy Mart* is factually distinguishable from this case. Finally, *Dairy Mart* was incorrectly decided because it failed to adopt a wait and see approach, as required by prevailing authority.

---

Otherwise, a debtor, as opposed to a secured creditor, could extinguish millions of dollars of "actual" reclamation claims through an "effective" satisfaction even where such claims would not likely have been extinguished had the secured debt been satisfied with the proceeds of "actual" assets.

[10] *See* Section VII.D.2.b, *infra*, for a description of *Dairy Mart*'s Effective Satisfaction Theory.

[11] The Bankruptcy Court cites to several Pre-BAPCPA decisions for this proposition. However, even if this is a correct recitation of the law, this proposition only goes so far because once the superior liens have been satisfied once valueless reclamation claims become valuable. That is what the "wait and see" approach is all about.

1.  ***Dairy Mart* Has No Application in the Context of New 546(c)**

*Dairy Mart*, a case interpreting Old 546(c), has no application to New 546(c). Old 546(c) was based upon the premise that suppliers of goods should get no greater rights in a bankruptcy proceeding than they would get outside of bankruptcy. *See, e.g., Dairy Mart*, 302 B.R. at 132-133 (Bankr. S.D.N.Y. 2003); *In re Arlco, Inc.*, 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999); *Victory Mkts.*, 212 B.R. at 741; *Pittsburgh-Canfield Corp.*, 309 B.R. at 283. Since the passage of BAPCPA in April 2005, that premise no longer holds true. Accordingly, *Dairy Mart* should not determine the validity of the purported Prior Lien Defense.

2.  ***Dairy Mart* Is Factually Distinguishable**

In *Dairy Mart*, the bankruptcy court's decision was based upon two alternative factual bases. *Dairy Mart*, 302 B.R. at 136. First, the court found that, to the extent the prepetition loan was paid down from the proceeds of the sale of the reclaimed goods by cash sweeps directly to the prepetition lender prior to satisfaction of its debt, it was clear that the proceeds were used to pay the prepetition secured claim ("Actual Satisfaction Theory"). *Id.* Next, the court found that to the extent the prepetition lender was not paid from the proceeds of the sale of reclaimed goods by cash sweeps to the prepetition lender prior to satisfaction of its debt, then the reclaimed "goods or their proceeds have *effectively* been 'paid' to the secured creditor" ("Effective Satisfaction Theory"). *Id.* (emphasis added). Neither the Actual nor the Effective Satisfaction Theory is applicable here.

   a.  Actual Satisfaction Theory

The Bankruptcy Court's recognition of the Prior Lien Defense may not rest upon the Actual Satisfaction Theory because of the Payment Admission, by which Dana stipulated that the Prepetition Lenders were not paid from the proceeds of the Reclaimed Goods, but rather from the proceeds of the DIP Loan. (A0831.) *See Pittsburgh-Canfield Corp.*, 309 B.R. at 693 (a vendor's right to reclaim goods "is dependant on the actual disposition of the specific property" that is the

subject of the reclamation demand). Accordingly, the Bankruptcy Court's Decision should be reversed to the extent it relies on the Actual Satisfaction Theory.

    b.  Effective Satisfaction Theory

The Bankruptcy Court's recognition of the Prior Lien Defense may not rest upon the Effective Satisfaction Theory because the facts of this case are distinguishable from *Dairy Mart* and do not support a defense based upon such theory. *Dairy Mart*'s Effective Satisfaction Theory is premised on the court's finding that "the post-petition lender's lien was directly connected with the previous lender's lien because the post-petition lender only lent with the understanding that it was taking over that position." *Dairy Mart*, 302 B.R. at 136. As discussed below, the DIP Liens were not directly connected with the Prepetition Liens.

First, in *Dairy Mart*, the DIP lender's liens were subject to the prepetition lender's liens. Thus, the DIP lender benefited to the extent that the debtor used the proceeds of the DIP loan to repay the prepetition secured debt, as opposed to using such funds for other purposes. Here, however, the DIP Lender's liens primed the Prepetition Liens. (A0510.) Therefore, the DIP Lender was indifferent to whether Dana used the proceeds of the DIP Loan to either pay down the Prepetition Indebtedness or for some other purpose. In fact, Dana was authorized, but not required, to pay down the Prepetition Indebtedness.

Second, the *Dairy Mart* court found it significant that the DIP lender in that case took over the position of the prepetition lender. *Id.* Unlike *Dairy Mart*, where the DIP lender and the prepetition lender shared the same collateral, the collateral package given to the DIP Lender in this case is not identical to the Prepetition Collateral held by the Prepetition Lenders. Accordingly, it cannot be said that the DIP Loan was part of an integrated transaction with the repayment of the Prepetition Indebtedness. (A0029-31, A0313-17.) This is especially evident when one considers that the Prepetition Collateral secured approximately $400 million in debt (A0004) and the Postpetition Lender's collateral secured a $1.45 billion debt. (A0230.)

-18-

Third, unlike the DIP financing order in *Dairy Mart*, which did not expressly provide for the payment of prepetition obligations such as reclamation claims (other than the prepetition secured debt), the Final DIP Order expressly authorizes Dana to make payments of prepetition debt as provided by the first day orders, which included the Reclamation Order. (A0514, A0394-6.)

The Bankruptcy Court failed to address any of these factual distinctions in its Decision. These distinctions materially distinguish this case from *Dairy Mart* and make reliance on *Dairy Mart's* Effective Satisfaction Theory inappropriate.

      **3.    Even if *Dairy Mart* Were Applicable and Factually Analogous, It Was Incorrectly Decided And Not In Line with Prevailing Authority**

In fabricating the Effective Satisfaction Theory, *Dairy Mart* departed from the fundamental premise that a secured creditor's decision with respect to its security interest in the goods will determine the value of the seller's right to reclaim. Whether in the bankruptcy or non-bankruptcy context, courts have historically held that it is the actions of the secured creditor, not the debtor, that should determine the rights of a reclaiming seller. *See, e.g., Pester*, 964 F.2d at 847 ("[I]n the non-bankruptcy context, the secured creditor's decision with respect to its security interest in the goods will determine the value of the seller's right to reclaim."); In re *Arlco*, 239 B.R. at 273 (quoting *Pester*); *Phar-Mor*, 301 B.R. at 497 (same in bankruptcy context); *Georgetown Steel*, 318 B.R. at 348 (same). Thus, "if an undersecured creditor forecloses on the goods to be reclaimed and uses the entire proceeds to pay down its secured debt, the seller's reclamation right is extinguished." *Pester*, 964 F.2d at 847; *accord Phar-Mor*, 301 B.R. at 496; *Arlco*, 239 B.R. at 273.

On the other hand, if the secured creditor releases its security interest in the goods to be reclaimed, the seller should be permitted to enforce its rights to reclaim. *See Pester*, 964 F.2d at 847; *Phar-Mor*, 301 B.R. at 497; *Arlco*, 239 B.R. at 273 (stating that the seller's right to reclaim depends on the value of the excess goods remaining once the secured creditor's claim is paid or released). In fact, Dana specifically acknowledged as much in the Reclamation Motion filed on the first day of its

NYK 1107508-10.064980.0013

bankruptcy cases. (A0145 ("[A]fter the secured creditors' superior rights have been satisfied or released, the reclaiming seller retains a property interest in any remaining goods, and in any surplus proceeds *from the secured creditors' foreclosure sale* . . .") (emphasis added) (citing *Arlco,* 239 B.R. at 270-71; *Pester,* 964 F.2d at 844-45).) For example, in *Phar-Mor*, a case arising under Old 546(c), the reclamation rights in reclaimed goods were preserved despite the existence of superior liens because, as here, the prepetition secured lenders were paid in full through a post-petition debtor-in-possession facility, and not from the sale of the reclaimed goods. 301 B.R. at 497. Similarly, in *Pester*, reclaiming creditors' claims had value despite the existence of superior liens because the secured creditors released their claims in the goods subject to reclamation through the debtor's plan of reorganization. 964 F.2d at 848. Further, in *Georgetown Steel*, reclamation claims had value despite the existence of prior liens because the sale of the debtor's assets, which included the reclaimed goods, was sufficient to repay the secured creditors in full and thus did not involve competing interests of the reclaiming seller and secured creditor. 318 B.R. 340, 348.

Accordingly, a wait and see approach is the more appropriate method of determining the value of the Reclamation Claims. Failure to follow this approach would permit a debtor to choose to extinguish all reclamation claims by refinancing its prepetition secured debt when a partial liquidation of the collateral to satisfy the debt would not result in such a draconian result. Such a result should not be condoned. *See, e.g., Phar-Mor*, 301 B.R. at 497 (holding that no action on the part of a debtor should be permitted to defeat a seller's right to reclamation).

The absurdity of the Effective Satisfaction Theory can best be understood by using a simple example. Assume a debtor has $5,000,000 of debt secured by a floating lien on $500,000,000 of inventory, upon which $200,000,000 of reclamation claims have been asserted, but where no single reclamation claim exceeds $5,000,000. According to the Bankruptcy Court, such a debtor could extinguish all $200,000,000 of reclamation claims by refinancing its secured debt in accordance with *Dairy Mart*'s Effective Satisfaction Theory. It does not make sense that all $500,000,000 of the

inventory would be *effectively* sold to repay a $5,000,000 debt. Such a transaction would be akin to a fraudulent transfer. Absent an *actual* satisfaction of the reclaimed goods, it would be unfair to presume that the secured creditor would have chosen to satisfy its $5,000,000 debt with any of the reclaimed inventory, much less all of the inventory with a value 100 times the amount of the debt. Under Article 9-610 of the Uniform Commercial Code, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." How can an *effective* disposition, as opposed to an actual one, possibly comply with such a requirement? The simple answer is that it cannot.

The result of the Decision in this case is not very different from the example provided above. Dana sought to extinguish approximately $300,000,000 of reclamation claims by refinancing debt of approximately $377,000,000 secured by a floating lien on more than $2,200,000,000 of personal property. Even if the Effective Satisfaction Theory had some validity, the Bankruptcy Court should have required that an *effective disposition* of collateral under this theory be handled in a commercially reasonable way. The court in *Georgetown Steel* was correct when it stated that a court should not presume that a senior secured creditor will always assert its rights in reclaiming creditors' goods. *Georgetown Steel*, 318 B.R. at 348. Instead, where excess funds remain for distribution following satisfaction in full of a secured creditor's claim from collateral that includes reclaimed inventory, a court should presume that the secured creditor was not repaid from the proceeds of the reclaimed inventory. *Id.*; *see also Westside Bank*, 732 F.2d at 1259. Such an allocation is not unfair because the issue does not involve the competing interests of secured creditors and reclamation creditors. *See Georgetown Steel*, 318 B.R. at 348. Accordingly, a court would not be required to conduct a marshaling analysis but rather an equitable allocation of the Prepetition Collateral.

NYK 1107508-10.064980.0013

E.  **The Bankruptcy Court Erred When it Improperly Granted Dana Standing to Oppose the Equitable Allocation of its Assets so as to Extinguish Reclamation Claims Rather Than Preserve Them**

When the Bankruptcy Court reached the conclusion that the Prior Lien Defense was valid and that payment of the Prepetition Indebtedness constituted a disposition of the Prepetition Collateral, it should have equitably allocated Dana's collateral in a manner that was not detrimental to Reclamation Claimants. The Bankruptcy Court declined to apply or even address its authority to equitably allocate the Prepetition Collateral. Instead, the Bankruptcy Court granted Dana standing to object to such equitable allocation on the basis that only secured creditors may invoke the marshaling doctrine.

> [Marshaling is] an equitable doctrine requiring a senior creditor, having two funds available to satisfy a single debt, to resort first to the fund that is not available to a junior creditor of the same debtor in order to avoid the inequity which would result from the senior creditor's election to proceed against the only fund available to the junior creditor, thereby preventing the junior creditor from obtaining any satisfaction of its debt.

*Walther v. Bank of New York*, 772 F. Supp. 754, 766-767 (S.D.N.Y. 1991) (internal cites omitted); *Murphy v. Town of Harrison (In re Murphy)*, 331 B.R. 107, 132 (Bankr. S.D.N.Y. 2005) (citing *Walther*). "[The doctrine's] central purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." *Walther* at 767 (citing *Meyer v. United States*, 375 U.S. 233, 237 (1963)).

Contrary to Dana's arguments below (A0859), the Reclamation Claimants did not seek to invoke the marshaling doctrine. The marshaling doctrine by its nature applies only when there is a dispute between competing creditors. *In re Murphy*, 331 B.R. at 133; *see Georgetown Steel*, 318 B.R. at 348 (marshaling not applicable where "the issue no longer involves the competing interests of the secured creditors and the Reclamation Creditors."). The party with standing to oppose marshaling in this case is the Prepetition Lenders. Yet, as discussed above, the Prepetition Lenders

-22-

have not objected to any of the positions being taken by Reclamation Claimants. Instead, there is only a dispute between Dana (the debtor) and its creditors (the Reclamation Claimants).

It would be inequitable for Dana to step into the shoes and assert the rights of the Prepetition Lenders and argue that, out of the approximately $2.2 billion in Prepetition Collateral, it was the $60 million in Reclaimed Goods at stake here that were used to pay off the Prepetition Indebtedness. As the *Georgetown Steel* court noted,

> [R]ather than presuming that a senior secured creditor would always assert its rights in a reclaiming creditor's goods as the valuation cases seem to do, in this case no senior secured creditor objected to the relief sought by the Reclamation Creditors and at the time of the sale of Debtor's assets, including inventory, excess funds remained for distribution. In effect, the secured creditors in the matter before the Court are not choosing to satisfy their liens from reclaimed goods.

*Georgetown Steel*, 318 B.R. at 348 (footnote omitted). Thus, the *Georgetown Steel* court concluded that it was appropriate to allocate sale proceeds in a way that would not extinguish reclamation rights where to do so would not adversely impact the secured creditors. *Id.* at 349. A similar allocation is appropriate here.

The Bankruptcy Court possessed the inherent power to order an allocation of the *"effective"* disposition in a way that would not extinguish the Reclamation Claims, but failed to do so. *Pepper v. Litton*, 308 U.S. 295, 304 (1939); *In re Maddox*, 84 B.R. 251, 257 (Bankr. N.D. Ga. 1987) ("Bankruptcy courts, as courts of equity, have the power to marshal a debtor's assets in appropriate situations to secure an equitable distribution of funds to creditors of the debtor"); *see also Meyer*, 375 U.S. 233; *Second Nat. Bank v. Phillips*, 189 F.2d 115 (5th Cir. 1951); *Fundex Capital Corp. v. Balaber-Strauss (In re Tampa Chain Co.)*, 53 B.R. 772 (Bankr. S.D.N.Y. 1985)).

There is no reasonable basis not to equitably allocate the Prepetition Collateral where the senior secured creditor is indifferent to its application, payment on its claim would not be delayed, and it would not be "inconvenienced." *See Arlco*, 239 B.R. at 274 (citing *Herkimer County Trust Co. v. Swimelar (In re Prichard)*, 170 B.R. 41, 45 (Bankr. N.D.N.Y. 1994)). Here, the Prepetition

NYK 1107508-10.064980.0013

Lender was paid from the proceeds of the DIP Loan, not the sale of the Reclaimed Goods. Accordingly, the Prepetition Lender will not be inconvenienced. *See Georgetown Steel*, 318 B.R. at 349 (holding that the court "may very well have allowed recovery on the goods" if such "goods were not necessary to the full payment of the secured creditor"). Therefore, the Bankruptcy Court should have equitably allocated the assets in a manner that would not extinguish the Reclamation Claims. Failure to do so was an abuse of discretion.

Further, even if Dana had standing to step into the shoes and assert the Prepetition Lenders' right to oppose equitable allocation of the Prepetition Collateral, equitable allocation might still be appropriate because reclamation rights are in the nature of a lien and, under New 546(c), are superior to the rights of certain other lien holders and all general unsecured creditors. Under Old 546(c), a reclamation claim was subject to the rights of a good faith purchaser under state law, which was interpreted to include a person that takes by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property. U.C.C. § 1-201(29)-(30) (2001). However, under New 546(c), reclamation claims are only "subject to the prior rights of a holder of a security interest in such goods." The term "security interest" is defined in section 101(51) of the Bankruptcy Code as a "lien created by an agreement." Therefore, New 546(c) makes clear that only liens created by agreement are senior to the rights of a reclamation claim. Therefore, under New 546(c), prior judicial liens and statutory liens are junior to the rights of a reclamation claimant. Accordingly, under New 546(c), it is no longer proper to relegate reclamation claims to the same priority level as general unsecured claims.

Even under Old 546(c), the doctrine of marshaling had not been solely limited to protecting the rights of secured creditors. *See In re Gibson Group, Inc.*, 151 B.R. 133, 135 (Bankr. S.D. Ohio 1993) ("Apart from the debtor, only he who has secured a lien on a part of the assets, *or a right in the nature of a lien,* can exact the court's protection by marshaling.") (emphasis added); *see Maddox*, 84 B.R. at 257, n. 4 ("in other cases the doctrine is defined in terms of interests which are not limited to

-24-

secured creditors or even to creditors") (*citing* 53 Am. Jur. 2d, Marshaling Assets, Section 1 (1970 & Supp. 1987)) (internal quotes omitted). Further, a reclamation creditor's rights have also been recognized under the provisions of the Bankruptcy Code. For example, under section 363(e), a reclamation right is an "interest' entitled to adequate protection. Old 546(c) expressly provided that reclamation claimants could be granted liens in lieu of their reclamation rights. Accordingly, if this Court concludes that the Prior Lien Defense is valid, which it should not, the Reclamation Claimants should be deemed to have the status of a junior secured creditor for the purposes of any marshaling analysis.

F.  **The Bankruptcy Court Erred When, Notwithstanding the Agreement of the Parties, It Concluded that the Prior Lien Defense Renders All Reclamation Claims Valueless Without Providing the Reclamation Claimants an Opportunity to Conduct Discovery and a Hearing Relating to the Prepetition Lenders' Good Faith**

To expedite and minimize the cost associated with a determination on the Prior Lien Defense, the Appellants and Dana agreed to put off discovery on the good faith of the Pre and Postpetition Lenders until after the Bankruptcy Court rendered the Decision. The Discovery Order directed the parties to brief the relevance of the Pre and Postpetition Lenders' good faith to a determination of the Prior Lien Defense.[12] (A0830–1.) Notwithstanding the agreement contained in the Discovery Order, the Bankruptcy Court entered a final determination on the Prior Lien Defense without giving Reclamation Claimants an opportunity to have discovery and a hearing on the Prepetition Lenders' good faith. Although the Decision states that the Bankruptcy Court believes that the Postpetition Lender's good faith is not an issue that may be challenged in connection with the Prior Lien Defense motion, the Bankruptcy Court issued no ruling with respect to the Prepetition Lenders' good faith, which is the relevant inquiry in this dispute for the two reasons set forth below.

First, the Prior Lien Defense applies only if the Prepetition Lenders obtained their Liens in good faith. The Bankruptcy Court held that New 546(c) carries forward the Prior Lien Defense as

---

[12] This Court need not address this issue unless it finds that the Prior Lien Defense is valid.

-25-

applied under Old 546(c). As demonstrated in pre-BAPCPA cases, courts must examine all the facts to determine whether a secured creditor is a "good faith purchaser." *See e.g., Phar-Mor*, 301 B.R. 482, 497 (DIP lender not good faith purchaser because it took liens on inventory with notice of reclamation demands); *see also Graniteville Co. v. Bleckley Lumber Co.*, 687 F. Supp. 589, 593 (M.D. Ga. 1988) ("good faith of a secured party is obviously a material fact") (internal quotes and citations omitted); *Allegiance Healthcare*, 258 B.R. at 114 (same); *Isaly Klondike Co. v. Sunstate Dairy & Food Prod., Co. (In re Sunstate Dairy & Food Prods Co.)*, 145 B.R. 341, 344 (Bankr. M.D. Fla. 1992) (same). It appears that the Bankruptcy Court forgot all about the issue because it denied the Appellants discovery on the Prepetition Lenders' good faith and a hearing on the matter without any discussion or explanation in the Decision or Order. The Discovery Order had barred parties from discovery on the issue of the Prepetition Lenders' good faith until after a determination of the purely legal issues. The Bankruptcy Court's denial of discovery and a hearing resulted in a violation of substantial rights of the Appellants, was fundamentally unfair and should be reversed. *Pub. Loan Co., Inc. v. FDIC*, 803 F.2d at 86.

    The Prepetition Lenders' good faith is also relevant to the equitable allocation and marshaling analysis. Because marshaling and equitable allocation are equitable remedies, whether the Prepetition Lenders exercised good faith is a relevant consideration for the Bankruptcy Court in determining (i) how to equitably allocate any Prepetition Collateral allegedly used to effectively satisfy the Prepetition Indebtedness or (ii) whether to impose marshaling. The Bankruptcy Court, however, failed to even consider the imposition of such a remedy or whether the Prepetition Lenders' good faith would be relevant to such a determination. Therefore, the Reclamation Claimants should be permitted to take discovery pertaining to the Prepetition Lenders' good faith in connection with their request for an equitable allocation or marshaling of the Prepetition Collateral.

NYK 1107508-10.064980.0013

G.   **The Bankruptcy Court Erred in its Determination that Dana Should Not Be Equitably Estopped from Asserting the Prior Lien Defense**

The Bankruptcy Court abused its discretion in refusing to equitably estop Dana from asserting the Prior Lien Defense. Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result. *See, e.g., In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (citing *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996)). The doctrine is

> imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.
> *Readco*, 81 F.3d at 301.

The essential elements of equitable estoppel as to the party to be estopped are: (1) conduct which amounts to a false representation or concealment of material facts, (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons, and (3) actual or constructive knowledge of the real facts. *See Chase Manhattan Bank v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.)*, 2002 U.S. Dist. LEXIS 212, *26-27 (S.D.N.Y. 2002) (internal cite omitted). The essential elements as to the party to which representations have been made are: (1) the lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) good faith reliance upon the conduct or statements of the party to be estopped, and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming estoppel to his detriment. *Id.* at *27 (internal cite omitted).

Equitable estoppel is appropriate here because Dana misled the Reclamation Claimants by only revealing its intention to assert a complete defense to such claims when it filed the Reconciliation Notice <u>four months</u> after the entry of the Reclamation Order, which enjoined enforcement of reclamation rights. A review of the Reclamation Motion reveals that Dana did not even cite to the *Dairy Mart* decision, its purportedly dispositive case. (A0140-56.) Had Dana cited to

-27-

*Dairy Mart*, the Reclamation Claimants may have been put on notice that Dana intended to assert the Prior Lien Defense. In fact, neither the Reclamation Motion, the Reclamation Order, the DIP Motion, nor the Final DIP Order alluded to the possibility that Dana would claim, as it later did, that the Reclamation Claims were valueless based on the Prior Lien Defense, a fact that Dana knew or should have known when it filed the Reclamation Motion. As set forth below, these filings lulled the Reclamation Claimants into believing that (i) the Prepetition Indebtedness would likely be repaid from the proceeds of the DIP Loan rather than from proceeds of the Prepetition Collateral, and (ii) absent an actual foreclosure by the Prepetition Lenders on the Reclaimed Goods, Reclamation Claims would be allowed once their validity was verified and their amount reconciled.

For example, in the Reclamation Motion, Dana cited language from *Arlco* and *Pester* that led the Reclamation Claimants to believe that the liens of the Prepetition Lenders would be paid and the Reclamation Claims would have value:

> [A]fter the secured creditors' superior rights *have been satisfied or released*, the reclaiming seller retains a property interest in any remaining goods, and *in any surplus proceeds* from the secured creditors' foreclosure sale . . .") (emphasis added). (A0145.) (quoting *In re Child World*, 145 B.R. 5, 7 (Bankr. S.D.N.Y. 1992).

Further, the Reclamation Order provided that:

- Dana and Reclamation Claimants may seek to reach an agreement on "the validity, amount and/or treatment" of the Reclamation Claims (A0394);

- a Reclamation Claim may be "allowed and treated" in accordance with the terms of such agreement between Dana and the Reclamation Claimant (A0394-5);

- the reclamation procedures are "the sole and exclusive method for the resolution and payment of [such] claims asserted against the Debtors" (A0395);[13] and

- all pending or future proceedings relating to such claims are stayed and such claims must be resolved exclusively pursuant to the Reclamation Order. (A0395-6.)

In addition, the DIP Motion and Final DIP Order provided that Dana is permitted to use advances to refinance the Prepetition Indebtedness (A0514, A0165.);

---

[13] Any payment against the Prepetition Indebtedness would be expected to improve the position of the Reclamation Claimants.

-28-

Finally, the Final DIP Order provides that Dana is permitted to make payments on any prepetition debt pursuant to any First Day Orders, including the Reclamation Order. (A0514.)

*Georgetown Steel* is similar to the case at bar. *Georgetown Steel* held that when a debtor establishes reclamation procedures, which propose to treat reclamation claims in a certain way and the reclamation creditors rely upon such procedures to their detriment, such as by not pursuing other courses of conduct available to them to protect their rights, the debtor is estopped from contesting the validity of the reclamation claims. 318 B.R. 340; C*ompare Pittsburgh-Canfield*, 309 B.R. at 290 (rejecting equitable estoppel where debtor had "consistently asserted that the reclamation claims had no value . . . due to priority floating inventory lien").

The Bankruptcy Court notes that "[u]nlike the facts in the *Georgetown Steel* case, the Reclamation Motion and Order both reference the possibility that reclamation claims may be subject to prior liens." (A0020 (footnote omitted).) However, as discussed above, this is merely another example of how the Bankruptcy Court has equated the language "subject to" in New 546(c) with "extinguished by." To say that Reclamation Claims "may be subject to prior liens" does not equate to "all Reclamation Claims are valueless based on the existence of a prior lien" as suggested by Dana. Further, Dana did not disclose that it, rather than Prepetition Lenders, intended to assert that position. This is a very different situation from *Pittsburgh-Canfield,* which was cited in the Decision. (A0020.) In *Pittsburgh-Canfield*, "[t]he Reclamation Order specifically noted that the Debtor *would assert* the bank lenders liens' [sic] as defenses to the reclamation demands." *Pittsburgh-Canfield.*, 309 B.R. at 291 (emphasis added). Accordingly, the Reclamation Claimants were not put on notice of Dana's intention to object to Reclamation Claims on the basis of prior liens, as was done in *Pittsburgh-Canfield.*

Dana's assertion of the Prior Lien Defense is clearly inconsistent with its suggested intent in the Reclamation Motion, Reclamation Order, the DIP Motion, and Final DIP Order. Accordingly, the Reclamation Claimants had good reason for optimism because once prepetition debt was repaid,

NYK 1107508-10.064980.0013

the position of Reclamation Claims would improve. The holders of Reclamation Claims relied on Dana's representations and lost their ability to pursue other remedies to protect their rights, such as by seeking adequate protection under section 363(e) of the Bankruptcy Code or seeking to trace or segregate their goods. Accordingly, the Bankruptcy Court erred by failing to equitably estop Dana from asserting the Prior Lien Defense and benefiting from its egregious behavior.

## VIII.  CONCLUSION

For all the reasons set forth herein, the Appellants respectfully request that the Decision and Order be reversed and an order entered denying Dana's Prior Lien Defense Motion.

Dated: New York, New York.
      August 31, 2007

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

By: /s/ James M. Sullivan
    James M. Sullivan (JS-2189)
    Gary O. Ravert (GR-3091)
    340 Madison Avenue
    New York, New York 10173-1922
    Telephone: 212.547.5400
    Facsimile: 212.547.5444

    Counsel for Creditors The Timken Company, Timken U.S. Corp., Toyotetsu America, Inc. and Toyotetsu Mid America, LLC

    W. Timothy Miller (*pro hac vice*)
    Paige Leigh Ellerman (*pro hac vice*)
    Taft, Stettinius & Hollister LLP
    425 Walnut Street, Suite 1800
    Cincinnati, Ohio 45202
    Telephone: 513.357.9359
    Facsimile: 513.381.0205

    Co-Counsel for Toyotetsu America, Inc., and Toyotetsu Mid America, LLC