## EXHIBIT A

## *INTERIM ORDER*

NYI-2248844v1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                              :

In re                :     Chapter 11 Case Nos.
                              :

DANA CORPORATION, *et al.*,    :     06- _____ (   )
                              :

        Debtors.[1]      :     (Jointly Administered)
                              :
---------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND FED. BANKR. P. 2002, 4001 AND 9014 AND (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364 AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b), 4001(c) AND 4001(d)

Upon the motion, dated March 3, 2006 (the "**Motion**"), of Dana Corporation (the "**Borrower**" or "**Dana**"), and all of its affiliated debtors that have commenced chapter 11 cases and are debtors in these jointly administered chapter 11 cases (such affiliates, together with any entities that subsequently commence jointly administered chapter 11 cases (the "**Cases**") and become guarantors under the DIP Loan Agreement (as defined below), the "**Guarantors**"), as debtors and debtors in possession (collectively, the "**Debtors**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rules 2002, 4001

---

[1]   In addition to Dana Corporation, the following entities are debtors in these jointly administered cases: Dakota New York Corp., Brake Systems, Inc., BWDAC, Inc., Coupled Products, Inc., Dana Atlantic LLC, Dana Automotive Aftermarket, Inc., Dana Brazil Holdings I LLC, Dana Brazil Holdings LLC, Dana Information Technology LLC, Dana International Finance Inc., Dana International Holdings, Inc., Dana Risk Management Services, Inc., Dana Technology Inc., Dana World Trade Corporation, Dandor L.L.C., Dorr Leasing Corporation, DTF Trucking, Inc., Echlin-Ponce, Inc., EFMG LLC, EPE, Inc., ERS LLC, Flight Operations, Inc., Friction Inc., Friction Materials, Inc., Glacier Vandervell Inc., Hose & Tubing Products, Inc., Lipe Corporation, Long Automotive LLC, Long Cooling LLC, Long USA LLC, Midland Brake, Inc., Prattville Mfg., Inc., Reinz Wisconsin Gasket LLC, Spicer Heavy Axle & Brake, Inc., Spicer Heavy Axle Holdings, Inc., Spicer Outdoor Power Equipment Components LLC, Torque-Traction Integration Technologies, LLC, Torque-Traction Manufacturing Technologies, LLC, Torque-Traction Technologies, LLC, United Brake Systems Inc.

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, pursuant to this interim order (this "**Order**"):

        (a) authority to execute and enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement dated as of March 3, 2006 (the "**DIP Loan Agreement**") among the Borrower, the Guarantors, Citicorp North America, Inc., as Administrative Agent (the "**Administrative Agent**"), Bank of America, N.A. and JPMorgan Chase Bank, N.A., as Co-Syndication Agents (together with the Administrative Agent, the "**Agents**"), acting as Agents for themselves, Citicorp North America, Inc., as Initial Swing Line Lender (the "**Initial Swing Line Lender**"), and Bank of America, N.A., Citicorp North America, Inc. and JPMorgan Chase Bank, N.A., as Initial Issuing Banks (the "**Initial Issuing Banks**"), and a syndicate of financial institutions (together with the Agents, the Initial Swing Line Lender and the Initial Issuing Banks, the "**Lenders**"), to be arranged by Citigroup Capital Markets Inc., J.P. Morgan Securities Inc. and Banc of America Securities LLC, as Joint Lead Arrangers and Joint Bookrunners, substantially in the form annexed to the Motion as Exhibit A, and all other documents, agreements or instruments in connection therewith or related thereto (together with the DIP Loan Agreement, as any of the foregoing may be amended or modified from time to time in accordance with the terms of this Order, collectively, the "**DIP Loan Documents**"), which, if approved on a final basis, would provide the Debtors with postpetition secured credit of up to $1,450,000,000 (the "**DIP Facility**") and to perform such other and further acts as may be contemplated by, or required in connection with, the DIP Loan Documents;

A00191

A0191

(b) authority to immediately obtain revolving loans, swing line loans and letters of credit under the DIP Facility up to an aggregate principal or face amount of $800,000,000 to (i) allow certain of the Debtors to repurchase the Receivables Portfolio (as defined below) under the Existing Receivables Facility (as defined below) and satisfy the Existing Corporate Credit Card Obligations (as defined below) in accordance with the terms of the Corporate Credit Card Program (as defined below), both of which would constitute an "Extraordinary Provision" (an **"Extraordinary Provision"**) as such term is used and defined in the General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the **"Court's Guidelines"**), (ii) pay costs and expenses in connection with such repurchase and satisfaction set forth in subparagraph (i), the DIP Loan Documents and the Cases, including but not limited to any and all fees to be paid upon the Effective Date (as defined in the DIP Loan Agreement) under the DIP Loan Documents and (iii) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations of borrowings under the DIP Loan Documents), subject, however, to the right of any statutory committee appointed in the Cases (the **"Creditors' Committee"**), if any, to challenge such repurchase or satisfaction pursuant to the provisions of paragraphs 25 and 26 of the this Order;

(c) authority, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, to grant senior first-priority Liens (as defined in the DIP Loan Agreement) to the Administrative Agent (for the ratable benefit of the Lenders and the other holders (the **"Other DIP Obligees"**) of DIP Obligations (as defined below)) upon all property of the Debtors' estates (excluding certain Excluded Property (as defined

A00192

A0192

below)) including property that presently is collateral securing the Pre-Petition Secured Indebtedness (as defined below), subject to the Carve-Out (as defined below), which would constitute an Extraordinary Provision under the Court's Guidelines;

(d) authority, pursuant to section 364(c)(1) of the Bankruptcy Code, to grant a Superpriority Claim (as defined below) to the Administrative Agent (for the ratable benefit of the Lenders and the Other DIP Obligees (collectively, the **"Secured DIP Creditors"**)) with priority over any and all administrative expenses, other than the Carve-Out;

(e) authority to use Cash Collateral (as defined below);

(f) authority, pursuant to sections 361, 363(e), 364(c)(1), 364(c)(3), and 507(b) of the Bankruptcy Code, to grant second priority liens and incur an unliquidated administrative expense in order to adequately protect the Pre-Petition Secured Creditors (as defined below), for, inter alia, the priming of their Liens, the continued use of their Cash Collateral, the repurchase of the Receivables Portfolio and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(g) permission to allow the Lenders to accelerate the maturity of all Borrowings (as defined in the DIP Loan Agreement) and terminate their Commitments (as defined in the DIP Loan Agreement) upon (a) a Change of Control (as such term is defined in the DIP Loan Agreement) or (b) the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any of the Debtors that have a value in excess of

A00193

A0193

$10,000,000 in the aggregate, each of which would constitute Extraordinary Provisions under the Court's Guidelines;

(h) approval of certain stipulations by the Debtors with respect to the Pre-Petition Documents and the liens and security interests arising therefrom, which would constitute Extraordinary Provisions under the Court's Guidelines;

(i) the scheduling of a hearing (the "**Final Hearing**") to be held within 45 days of the entry of this Order to consider the entry of a final order (the "**Final Order**") granting all of the relief requested in the Motion on a final basis, including (i) the relief granted in this Order, (ii) permitting the Debtors to waive any right to surcharge Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code, the waiver of which would constitute an Extraordinary Provision under the Court's Guidelines, and (iii) authority to borrow under the DIP Facility up to an aggregate principal amount of $1,450,000,000 to (A) refinance all prepetition secured claims of the Pre-Petition Secured Creditors, which would constitute an Extraordinary Provision under the Court's Guidelines, (B) pay fees, costs and expenses in connection with the DIP Loan Documents and the Cases and (C) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations in the DIP Loan Documents and to the rights afforded a Creditors' Committee in the Final Order), which would constitute an Extraordinary Provision under the Court's Guidelines;

and it appearing that the relief requested therein is necessary to provide the Debtors with sufficient capital to continue operations and to preserve the going concern value of their businesses; and it further appearing that notice and the hearing (the "**Interim Hearing**") and the

A00194

A0194

relief requested in the Motion, having been served on (i) the United States Trustee for the

Southern District of New York (the **"U.S. Trustee"**); (ii) Shearman & Sterling LLP, counsel to

the Administrative Agent, 599 Lexington Avenue, New York, New York 10022, Attn: Douglas

P. Bartner, Esq. and Marc B. Hankin, Esq.; (iii) Shearman & Sterling LLP, counsel to the Pre-

Petition Agent (as defined below), 599 Lexington Avenue, New York, New York 10022, Attn:

Maura E. O'Sullivan, Esq.; (iii) the Debtors' fifty (50) largest unsecured creditors (to the extent

practicable); and (iv) known holders of prepetition liens against the Debtors' property

(collectively, the **"Initial Notice Parties"**), is good and sufficient notice of the Interim Hearing

under the circumstances in accordance with Bankruptcy Rules 4001(b), 4001(c) and 4001(d) and

section 102(1) of the Bankruptcy Code, as required by sections 363(c), 363(e), 364(c) and 364(d)

of the Bankruptcy Code in light of the emergency nature of the relief requested in the Motion;

and for good cause shown;

Upon the record made by the Debtors at the Interim Hearing and after due

deliberation and consideration and sufficient cause appearing therefore;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334,

over the Cases, and over the persons and property affected hereby.  Consideration of the Motion

constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for

the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and

Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014.  Venue of the Cases in this Court is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

A00195

A0195

2.    Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b), (c) and (d).

3.    *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon and the reservation of the Debtors' rights continued in paragraph 25 below) the Debtors, for themselves and not for their estates, admit, stipulate, and agree that:

(a)    (i) As of March 3, 2006 (the **"Petition Date"**), the Borrower and the Guarantors (other than Dakota New York Corp. and Dana Information Technology LLC) were indebted and liable to the Pre-Petition Secured Creditors, without defense, counterclaim or offset of any kind, for all obligations arising under the Pre-Petition Documents (as defined in the DIP Loan Agreement), pursuant to and in accordance with the terms of, the Pre-Petition Documents, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Pre-Petition Documents), charges and other obligations incurred in connection therewith as provided in the Security Agreement, dated as of November 18, 2005 (the **"Pre-Petition Security Agreement"**), from Dana Corporation and the other grantors referred to therein to Citicorp USA, Inc., as Administrative Agent (the **"Pre-Petition Agent"**), under the Pre-Petition Documents, and the applicable Pre-Petition Document (all such indebtedness set forth in (i), the **"Pre-Petition Secured Indebtedness,"** and the persons from time to time holding such indebtedness, the **"Pre-Petition Secured Creditors"**), (ii) the Pre-Petition Secured Indebtedness constitutes the legal, valid and binding obligation of such Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (iii)

A00196
A0196

no portion of the Pre-Petition Secured Indebtedness is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-Petition Secured Creditors, the Pre-Petition Agent under the Pre-Petition Documents, and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys, in each case in connection with the Pre-Petition Secured Indebtedness.

(b)　　The liens and security interests granted to the Pre-Petition Agent pursuant to and in connection with the Pre-Petition Security Agreement, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, control agreements and other security documents executed by any of the Debtors in favor of the Pre-Petition Agent, for its benefit and for the benefit of the Pre-Petition Secured Creditors) in connection with the Pre-Petition Documents, are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the tangible and intangible property constituting the Pre-Petition Collateral, including, as more fully described in the Pre-Petition Security Agreement, the Debtors' machinery and equipment, inventory, receivables (subject to the Intercreditor Agreement described below) and equity interests in Dana Asset Funding LLC ("**DAF**"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the Liens of the Secured DIP Creditors, (B) the Carve-Out and (C) valid, perfected and unavoidable liens permitted under the Pre-Petition Security Agreement to the extent such permitted liens are senior to or pari passu with the liens of the Pre-Petition Agent on the Pre-Petition Collateral.

A00197

A0197

(c)     The aggregate value of the Pre-Petition Collateral exceeds the aggregate amount of the Pre-Petition Secured Indebtedness;

(d)     The Debtors sold, assigned and transferred to DAF all of their right, title and interest in and to certain accounts receivable and other related rights (the "**Receivables Portfolio**") pursuant to that certain Amended and Restated Purchase and Contribution Agreement, dated as of April 15, 2005 (as amended, the "**Receivables Sale Agreement**"). DAF, in turn, sold, assigned and transferred its interest in the Receivables Portfolio pursuant to the Amended and Restated Purchase and Contribution Agreement, dated as of April 15, 2005 (as amended, the "**Receivables Funding Agreement**" and together with the Receivables Sale Agreement, the "**Existing Receivables Facility**"), among DAF, Dana as collection agent, Falcon Asset Securitization Corporation and Blue Ridge Asset Funding Corp., as conduit purchasers, Wachovia Bank, National Association, as a committed purchaser and Blue Ridge Agent (the "**Blue Ridge Agent**") and JP Morgan Chase Bank, N.A. as a committed purchaser, as Falcon Agent and as Program Agent (the "**Program Agent**" and together with the Blue Ridge Agent, the "**Existing Receivables Facility Agents**"). As of the Petition Date, approximately $210,000,000 was outstanding under the Existing Receivables Facility, plus all interest, fees, expenses, charges and other obligations incurred in connection therewith as provided in the Existing Receivables Facility.

(e)     The Pre-Petition Agent, the Program Agent and the Blue Ridge Agent are parties to that certain Intercreditor Agreement, dated as of November 18, 2005 (the "**Intercreditor Agreement**"), under which, in exchange for the agreement of the Program Agent and the Blue Ridge Agent to permit the pledge of the stock of DAF in favor of the Pre-Petition Agent, the Pre-Petition Agent agreed that its Lien on receivables and related assets under the Existing

A00198

A0198

Receivables Facility would not attach unless and until the Existing Receivables Facility was terminated and all outstanding amounts repaid.

(f)    The Debtors and certain of the Debtors' direct and indirect subsidiaries, including certain non-Debtor subsidiaries, in the ordinary course of their businesses use credit cards issued pursuant to the (i) Citibank Business Card Purchasing Card Agreement, dated August 31, 1994, between Dana Corporation and Citibank (South Dakota), N.A. and Dana Corporation, (ii) Citibank Purchasing Card Agreement, dated January 18, 2005,  between Citibank International plc and Dana Corporation, and (iii) Citibank Corporate Card Agreement, dated January 24, 2005, between Citibank International plc and Dana Corporation, each as amended, restated, or otherwise modified from time to time (the "**Corporate Credit Card Program**").

(g)    The Borrower is the obligor under the Corporate Credit Card Program, and as of the Petition Date, is indebted and liable to the issuers of the credit cards thereunder (collectively, the "**Credit Card Issuers**"), without defense, counterclaim or offset of any kind, for obligations arising under the Corporate Credit Card Program in the aggregate principal amount of not less than $9,000,000 plus all interest, fees, expenses, charges and other obligations incurred in connection therewith as provided under the Corporate Credit Card Program (the "**Existing Corporate Credit Card Obligations**").  The Existing Corporate Card Obligations qualify as Pre-Petition Secured Indebtedness and are secured by the Pre-Petition Collateral pursuant to the Pre-Petition Security Agreement.

4.    *Findings Regarding the Financing.*

(a)    An immediate need exists for the Debtors to obtain funds and financial accommodations and use Cash Collateral with which to continue their operations, meet their payroll and other necessary, ordinary course business expenditures, acquire goods and services,

A00199

A0199

and administer and preserve the value of their estates. The ability of the Debtors to finance their operations and successfully reorganize requires the availability of additional working capital and use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates and their creditors.

(b)     The Debtors are unable to obtain unsecured credit allowable only as an administrative expense allowable under section 503(b)(1) of the Bankruptcy Code.

(c)     The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code except under the terms and conditions provided in this Order. The Debtors are unable to obtain credit for borrowed money under sections 364(c)(2) and 364(c)(3) without the Debtors' granting to the Administrative Agent (for the ratable benefit of the Secured DIP Parties) (i) Liens on various of the assets of the Debtors pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code and (ii) superpriority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code, in each case as provided by this Order and subject to the Carve-Out.

(d)     The ability of the Debtors to finance their operations and have available sufficient working capital through the incurrence of indebtedness for borrowed money and other financial accommodations and use Cash Collateral is vital to the Debtors' ability to preserve and maintain their going concern value.

(e)     The relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the preservation of their estates.

(f)     It is in the best interest of Debtors' estates to establish the DIP Credit Facility contemplated by the DIP Loan Agreement and the other DIP Loan Documents.

A00200

A0200

(g)     The terms and conditions of the DIP Credit Facility, as described in the Motion

and as set forth at the hearing on the Motion, including those which provide for the payment to

the Agents and the Lenders of interest and fees related to the DIP Credit Facility at the times and

in the manner provided under the DIP Credit Facility, and the use of Cash Collateral are fair,

reasonable and the best available under the circumstances, reflect the Debtors' exercise of

prudent business judgment consistent with their fiduciary duties and constitute reasonably

equivalent value and fair consideration.

(h)     The DIP Loan Agreement was negotiated in good faith and at arm's length

between the Debtors, on the one hand, and the Agents and the Lenders, on the other hand.  Credit

to be extended under the DIP Credit Facility, including without limitation (i) all loans made to,

and all letters of credit issued for the account of, the Debtors pursuant to the DIP Loan

Agreement, (ii) any Obligations and all other Secured Obligations (each as defined in the DIP

Loan Agreement), including any hedging obligations of the Debtors permitted under the DIP

Loan Agreement and any Debt (as defined in the DIP Loan Agreement) permitted by Section

5.02(b)(iv) thereof, in each case owing to the Administrative Agent, any Lender or any of their

respective banking affiliates and (iii) all post-petition obligations incurred by the Debtors under

the Corporate Credit Card Program (all of the foregoing in clauses (i), (ii) and (iii) collectively,

the **"DIP Obligations"**), shall be deemed to have been extended by the Administrative Agent,

the Secured DIP Creditors and their affiliates in good faith, as that term is used in section 364(e)

of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of

the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or

modified, on appeal or otherwise.

A00201

A00201

(i)     Good and sufficient cause has been shown for the entry of this Order.  The

Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and

4001(c)(2).  Among other things, the entry of this Order:  (i) will enable the Debtors to continue

the operation of their business and avoid immediate and irreparable harm to the Debtors' estates;

(ii) will permit the Debtors to meet payroll and other operating expenses; (iii) will enable the

Debtors to obtain needed supplies and to pay employees; and (iv) is in the best interests of the

Debtors, their creditors and their estates.  The financing arrangement authorized hereunder is

vital to avoid immediate and irreparable harm to the Debtors' estates.  Consummation of such

financing therefore is in the best interests of the Debtors' estates.

5.     *Authorization of the Financing and the DIP Loan Documents.*

(a)     The Debtors are authorized to:

(i)     establish the DIP Credit Facility;

(ii)    execute and deliver to the Lenders each of the DIP Loan Documents to

which any Debtor is a party; and

(iii)with respect to the     Borrower, borrow up to an aggregate principal or face

amount of $800,000,000 (plus interest, fees and other expenses provided for in the DIP

Loan Documents) under the DIP Credit Facility, and the Guarantors are authorized to

guarantee such borrowings, pending the Final Order, subject to the limitations of

borrowings under the DIP Loan Documents, and in accordance with the terms of this

Order and the DIP Loan Documents, which shall be used solely for purposes of

(A) repurchasing the Receivables Portfolio under the Existing Receivables Facility and

satisfying the Existing Corporate Credit Card Obligations in accordance with the terms of

the Corporate Credit Card Program (which are Extraordinary Provisions under the

Court's Guidelines), (B) paying costs and expenses in connection with such repurchase

A00202

A0202

and satisfaction and the Cases, including but not limited to the non-refundable payment of any and all fees to be paid under, and in accordance with the terms of, the DIP Loan Documents (including, but not limited to, the separate fee later dated March 2, 2006, among the Borrower, Citigroup Global Markets Inc., J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Banc of America Securities LLC and Bank of America, N.A. (the "**Fee Letter**")) and the reasonable costs and expenses as may be due from time under the DIP Loan Documents, and (C) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations of borrowings under the DIP Loan Documents).

(b)     The Debtors are hereby authorized and empowered, without further approval of this Court, to do and perform all acts and to make, execute and deliver all instruments and documents and any exhibits attached thereto (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the Liens described in and provided for by the DIP Loan Documents.  In addition, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by any Lender or any of their respective affiliates, *provided, however*, that nothing herein shall require any Lender or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(c)     The Debtors are further authorized and empowered, without further approval of the Court, to execute and deliver one or more amendments to the DIP Loan Agreement for, among other things, the purpose of (i) adding additional financial institutions as Lenders, and

NYI-2248830v2                            14

A00203

A0203

(ii) reallocating the commitments for the DIP Credit Facility among the Lenders, in each case in such form as the Debtors, the Administrative Agent and the Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Loan Agreement that do not shorten the maturity of the extension of credit thereunder or increase either the commitments, the rate of interest payable, or letter of credit fees payable thereunder). Notwithstanding any other provision hereof, without further approval of the Court, amendments to the DIP Loan Document may be made at any time prior to the Final Hearing, (i) as contemplated by the Fee Letter (permitting certain modifications to the DIP Loan Agreement necessary or advisable to ensure a successful syndication), or (ii) as contemplated by the DIP Loan Agreement with respect to the Borrowing Base Amendment (as defined in the DIP Loan Agreement).

(d)     Upon execution and delivery of the DIP Loan Documents by the Debtors, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Loan Documents and this Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.     *DIP Liens.*  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the Administrative Agent for its own behalf and the benefit of the Secured DIP

NYI-2248830v2                               15

A00204

A0204

Creditors (all property identified in clauses (a), (b) and (c) below being collectively referred to as the **"Collateral"**), subject, only in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP Loan Agreement), to the payment of the Carve-Out (all such liens and security interests granted to the Administrative Agent, for its benefit and for the benefit of the Secured DIP Creditors, pursuant to this Order and the DIP Loan Documents, the **"DIP Liens"**):

(a)    First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre-petition and post-petition property of the Debtors that is not Excluded Property,[2] whether existing on the Petition Date or thereafter acquired, to the extent not subject to valid, perfected non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code (collectively, **"Unencumbered Property"**), including without limitation, all cash and cash collateral of the Debtors and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in

---

[2]    **"Excluded Property"** means (i) the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code, (ii) property constituting withholdings required under any law (including but not limited to federal, state and local income, payroll and trust fund taxes and insurance payments of any nature, whether imposed on the employer or employee or otherwise) from any amounts due to any employee of a Debtor or Guarantor, and any withholdings from an employee considered a "plan asset" under Title I of ERISA (as defined in the DIP Loan Agreement), (iii) 34% of the equity interests in certain Foreign Subsidiaries (as defined in the DIP Loan Agreement) in accordance with, and subject to the provisions of, Section 9.01(e)(iii) of the DIP Loan Agreement, and (iv) trademarks consisting of United States intent-to-use trademark applications to the extent that, and solely during the period in which, the grant of a security interest therein would impair the validity or enforceability of such intent-to-use trademark applications under applicable federal law.

A00205
A0205

leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual

property, capital stock of subsidiaries, and the proceeds of all the foregoing.

(b)    <u>Liens Priming Pre-Petition Secured Creditors' Liens</u>.  Pursuant to section

364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first

priority senior priming security interest in and lien upon all pre-petition and post-petition

property of the Debtors (not including Excluded Property, but including, without limitation, cash

collateral, inventory, machinery, accounts receivable, other rights to payment whether arising

before or after the Petition Date and the equity interests of DAF), whether now existing or

hereafter acquired, that is subject to the existing liens presently securing the Pre-Prepetition

Secured Indebtedness (including in respect of issued but undrawn letters of credit).  Such

security interests and liens shall be senior in all respects to the interests in such property of the

Pre-Petition Secured Creditors arising from current and future liens of the Pre-Petition Secured

Creditors (including, without limitation, adequate protection liens granted hereunder), and shall

be subject and subordinate to (i) the Carve-Out to the extent specifically provided for herein, and

(ii) any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on

such property existing immediately prior to the Petition Date, or to any valid, perfected and

unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition

Secured Creditors become subject subsequent to the Petition Date as permitted by section 546(b)

of the Bankruptcy Code.

(c)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the

Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in

and liens upon the all pre-petition and post-petition property of the Debtors (other than Excluded

Property and the property described in clauses (a) and (b) of this paragraph 6, as to which liens

A00206

A0206

and security interests in favor of the Administrative Agent will be as described in such clauses),

whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable

liens in existence immediately prior to the Petition Date, or to valid and unavoidable liens in

existence immediately prior to the Petition Date that are perfected subsequent to the Petition

Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in

favor of the Administrative Agent and the Secured DIP Creditors are immediately junior to such

valid, perfected and unavoidable liens.

(d)    <u>Liens Senior to Certain Other Liens.</u>  The DIP Liens and the Adequate Protection

Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that

is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation,

any liens or security interests granted in favor of any federal, state, municipal or other

governmental unit, commission, board or court for any liability of the Debtors, other than with

respect to any liens or security interests arising after the Petition Date and permitted under the

DIP Loan Agreement to be senior to the DIP Liens.

7.    *Superpriority Claim.*  In addition to the DIP Liens granted herein, all of

the DIP Obligations shall be an allowed administrative expense claim with priority, subject only

to the Carve-Out to the extent specifically provided for herein, under section 364(c)(1) of the

Bankruptcy Code and otherwise, over all administrative expense claims and unsecured claims

against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever,

including, without limitation, administrative expenses or other claims of the kinds specified in or

ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 726,

1113 and 1114 of the Bankruptcy Code (the "**Superpriority Claim**"), whether or not such

A00207

A0207

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof.

8.    All amounts applied to the payment of the DIP Obligations shall be applied thereto in the manner set forth in the DIP Loan Documents.

9.    The Debtors (i) hereby are authorized and directed to pay all reasonable costs, fees and out of pocket expenses of the Agents, including reasonable costs, fees and expenses incurred in connection with the negotiation, documentation and administration of the DIP Credit Facility and the matters set forth in this Order and all other matters arising in or in connection with the Cases, and all attorneys' fees and expenses and financial advisors' fees and expenses incurred by the Agents in connection therewith, and (ii) shall promptly reimburse the Agents for such other costs and expenses provided for in section 10.04(a) of the DIP Loan Agreement.  None of such costs and expenses shall be subject to the approval of the Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

10.    Each officer of the Debtors as may be so authorized by the Board of Directors of each of the Debtors, acting singly, is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

11.    The DIP Loan Agreement and each of the DIP Loan Documents, respectively, shall constitute and evidence the valid and binding obligations of each of the Debtors, which obligations shall be enforceable against each of the Debtors in accordance with their terms and the terms of this Order.

A00208
A0208

12.    Interest on the DIP Obligations under the DIP Credit Facility shall accrue at the rates (including applicable default rates) and shall be paid at the times as provided in the DIP Loan Documents.  All DIP Obligations under the DIP Credit Facility shall become due and payable, without notice or demand, on the Termination Date (as defined in the DIP Loan Agreement) in accordance with the terms of the DIP Loan Agreement.

13.    Without limiting the foregoing, except for the Carve-Out and claims under section 506(c) of the Bankruptcy Code (until entry of the Final Order), no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 330 and 331 of the Bankruptcy Code that have been or may be incurred in these Cases, and no priority claims to the Collateral are, or will be, prior to or on a parity with the DIP Obligations or the Superpriority Claim.

14.    *Lien & Collateral Protections.*  The automatic stay imposed under section 362(a)(4) of the Bankruptcy Code is hereby lifted to permit (i) the Debtors to grant the DIP Liens and to perform the Debtors' liabilities and obligations to the Agents and the Lenders under the DIP Credit Facility, and (ii) the delivery by the Administrative Agent of an Enforcement Notice (as defined below) and the exercise of remedies by the Administrative Agent following an Event of Default in accordance with Paragraph 15 below.

(a)    Except as otherwise agreed in writing between the Debtors and the Administrative Agent, the Debtors shall use Advances (as defined in the DIP Loan Agreement), or proceeds of any Collateral only as provided in the DIP Loan Documents.  For purposes of this Order, "proceeds" of any collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as (i) any and all proceeds of any insurance, indemnity or warranty or guaranty payable to the Debtors from time to time with respect to any of such collateral, (ii) any

A00209

A0209

and all payments (in any form whatsoever) made or due and payable to the Debtors in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such collateral by any governmental body, authority, bureau or agency (or any person under color of governmental authority) and (iii) any other payments, dividends, interest or other distributions on or in respect of any of such collateral.

(b)    The Debtors shall be permitted to use Advances to (i) purchase any accounts receivable that were previously sold pursuant to the Existing Receivables Facility, and (ii) satisfy the Existing Corporate Credit Card Obligations in accordance with the terms of the Corporate Credit Card Program.

(c)    The Debtors shall not be permitted to make any payments on any pre-petition debt prior to the effective date of a plan of reorganization, except with respect to the pre-petition obligations as set forth in this Order or as otherwise provided in the First Day Orders (as defined in the DIP Loan Agreement), or as otherwise provided in the DIP Loan Agreement or to provide adequate protection or cure to any third party.

15.    *Protection of Lenders' Rights.*  (a)  So long as there are any borrowings or letters of credit or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters of credit are outstanding) outstanding, the Lenders have any Commitment (as defined in the DIP Loan Agreement) under the DIP Loan Agreement or any other DIP Obligations are outstanding, the Pre-Petition Agent and the Pre-Petition Secured Creditors shall (i) not take any action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Pre-Petition Security Agreement, other agreements, or operation of law or this Order, or otherwise exercise remedies against any Collateral, except to the extent authorized by an order of this

NYI-2248830v2

21

A00210

A0210

Court, (ii) be deemed to have consented to any release of Collateral authorized under the DIP Loan Documents, (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral unless, solely as to this clause (iii), the Administrative Agent files financing statements or other documents to perfect the liens granted pursuant to this Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (iv) not seek to terminate or modify the use of Cash Collateral, or obtain additional or different adequate protection than as set forth in this Order.  Nothing herein shall be read to permit the Pre-Petition Agent or the Pre-Petition Secured Creditors to take any action in violation of the Bankruptcy Code or other applicable law.

(b)     Upon the occurrence of an Event of Default and at any time thereafter during the continuance thereof, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Administrative Agent and the Lenders to exercise, (i) immediately upon such occurrence, all rights and remedies under the DIP Loan Documents other than those rights and remedies against the Collateral as provided in clause (ii) below and (ii) with five (5) business days' prior written notice (an "**Enforcement Notice**") of any such occurrence, in each case given to the Borrower, the Debtors' counsel, counsel to any Creditors' Committee and the U.S. Trustee, all rights and remedies against the Collateral provided for in the DIP Loan Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Administrative Agent or any Lender).  Such Enforcement Notice shall also be filed with the Court.  In any hearing after the giving of the Enforcement Notice, the only issues that may be raised by any party in opposition

NYI-2248830v2

22

to the giving of the Enforcement Notice shall be whether, in fact, (i) an Event of Default has

occurred and is continuing or (ii) such Event of Default is primarily due to, or primarily arises

from, the willful misconduct of the Agents or the Lenders; *provided, further,* that, subject to the

foregoing provisions of this subparagraph (b), the Debtors, the Pre-Petition Agent and the Pre-

Petition Secured Creditors hereby waive their rights to seek relief including, without limitation,

under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or

restrict the rights and remedies of the Administrative Agent set forth in this Order or the DIP

Loan Documents.  In no event shall the Administrative Agent, the Lenders, the Pre-Petition

Agent or the Pre-Petition Secured Creditors be subject to the equitable doctrine of "marshaling"

or any similar doctrine with respect to the Collateral.

16.    (a) The term **"Carve-Out"** means (i) all fees required to be paid to the

Clerk of the Bankruptcy Court and to the Office of the United States trustee under section

1930(a) of title 28 of the United States Code, (ii) all fees and expenses incurred by a trustee

under section 726(b) of the Bankruptcy Code and (iii) an amount not exceeding $20,000,000 in

the aggregate, which amount may be used after the occurrence and during the continuance of an

Event of Default, to pay fees or expenses incurred by the Borrower and any Creditors'

Committee in respect of (A) allowances of compensation for services rendered or reimbursement

or expenses awarded by the Bankruptcy Court to the Borrower's or any Creditors' Committee's

professionals, any chapter 11 trustee or examiners appointed in these cases, and (B) the

reimbursement of expenses incurred by Creditors' Committee members in the performance of

their duties that are allowed by the Bankruptcy Court; *provided, however,* that the Borrower and

each Guarantor shall be permitted to pay compensation and reimbursement of expenses allowed

and payable under sections 330 and 331 of the Bankruptcy Code and the Carve-Out shall not be

A00212

A0212

reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked or any fees, expenses, indemnities or other amounts paid to the Administrative Agent, the Lenders and their respective attorneys and agents under the DIP Loan Documents or otherwise; and *provided, further*, that (x) nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above and (y) following the Termination Date cash or other amounts on deposit in the L/C Cash Collateral Account (as defined in the DIP Loan Agreement), shall not be subject to the Carve-Out; and

(b)     So long as no Event of Default shall have occurred and be continuing under the DIP Loan Agreement, the Debtors shall be permitted to pay administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of business of the Debtors, subject to the maximum amounts for such type of expenditures contained in the provisions of the DIP Credit Documents in the aggregate, as the same may be due and payable.

17.     Subject to and effective only upon entry of a final order granting such relief, except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Administrative Agent or the Pre-Petition Agent, as applicable.

18.     Without limiting the provisions and protections of paragraph 17 above, if at any time prior to (i) the indefeasible repayment in full in cash of all DIP Obligations, and (ii) the termination of the Commitments, any Debtor or any trustee subsequently appointed shall

A00213

A0213

obtain credit or incur debt pursuant to section 364(b), 364(c) or 364(d) of the Bankruptcy Code, then, except as permitted or contemplated by the DIP Loan Agreement, all of the consideration for such credit or debt shall immediately be applied to the indefeasible payment in full in cash of the DIP Obligations (including cash collateralization of outstanding letters of credit issued under the DIP Loan Agreement) in accordance with the DIP Loan Documents.

19.    *Cash Collateral.*  To the extent any funds of any Debtor who is a party to the Pre-Petition Documents were on deposit with the Pre-Petition Agent or the Pre-Petition Secured Creditors as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor who is a party to the Pre-Petition Documents with any Pre-Petition Secured Creditor immediately prior to the filing of the Debtors' bankruptcy petitions (the **"Petition Time"**) (regardless of whether, as of the Petition Time, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the **"Deposited Funds"**) are subject to rights of set-off.  By virtue of such set-off rights, the Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Creditors pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The cash of the Debtors party to the Pre-Petition Documents, including, without limitation, the Deposited Funds or any other funds on deposit at the Pre-Petition Secured Creditors as of the Petition Date, and any proceeds generated by the collection of accounts receivable, sale of inventory or other disposition of the Pre-Petition Collateral (including the Deposited Funds or any other funds on deposit with the Pre-Petition Secured Creditors as of the Petition Date) are cash collateral of the Pre-Petition Secured Creditors within the meaning of section 363(a) of the Bankruptcy Code.  The Deposited Funds and all such proceeds of Pre-Petition Collateral are referred to herein as **"Cash Collateral."**  The Pre-Petition

NYI-2248830v2                                25

A00214

A0214

Secured Creditors have objected to the use by the Debtors of the Pre-Petition Collateral,
including the Cash Collateral, except on the terms of this Order.

20. *Use of Cash Collateral.* The Debtors are hereby authorized to use all Cash
Collateral of the Pre-Petition Creditors, and the Pre-Petition Creditors are directed promptly to
turn over to the Debtors all Cash Collateral received or held by them, *provided* that the Pre-
Petition Creditors are granted adequate protection as hereinafter set forth. The Debtors' right to
use Cash Collateral shall terminate automatically on the Termination Date.

21. *Adequate Protection.* The Debtors acknowledge and stipulate that the Pre-
Petition Secured Creditors are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the
Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including
the Cash Collateral, for and equal in amount to the aggregate diminution in value of the Pre-
Petition Collateral, including, without limitation, any such diminution resulting from the sale,
lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-
Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-
Petition Collateral by the Administrative Agent and the Secured DIP Creditors granted pursuant
to the DIP Loan Documents and this Order, the repurchase of the Receivables Portfolio
(including but not limited to the loss of value of the Pre-Petition Agent's Lien on the equity
interests of DAF resulting from such repurchase) and the imposition of the automatic stay
pursuant to section 362 of the Bankruptcy Code (such aggregate diminution, the **"Adequate
Protection Obligations"**). As adequate protection, the Pre-Petition Agent and the Pre-Petition
Secured Creditors are hereby granted the following adequate protection:

(a)    Adequate Protection Liens. As security for the payment of the Adequate
Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of the Pre-Petition

A00215

A0215

Secured Creditors), is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (x) the security interests and liens granted to the Administrative Agent for the benefit of the Secured DIP Creditors in this Order and pursuant to the DIP Loan Documents and any liens on the Collateral to which such liens so granted to the Administrative Agent are junior and (y) the Carve-Out (the **"Adequate Protection Liens"**);

(b)    Section 507(b) Claim.  To the extent the Adequate Protection Liens are not adequate to protect against the diminution in value of the Pre-Petition Collateral, that part of the Adequate Protection Obligations that are not satisfied in full from the proceeds of property subject to the Adequate Protection Liens shall be an allowed administrative expense claim with priority under sections 503(b) and 507(b) of the Bankruptcy Code over all administrative expenses of the kind specified in section 503(b) or 507(a) of the Bankruptcy Code, subordinate only to (x) the Carve-Out and (y) the DIP Obligations (without the requirement to file any motion or pleading or to make any demand); *provided, however,* that the Pre-Petition Agent and the Pre-Petition Secured Creditors shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under sections 503(b) and 507(b) of the Bankruptcy Code granted hereunder or under the Pre-Petition Security Agreement unless and until the DIP Obligations have indefeasibly been paid in cash in full;

(c)    Interest, Fees and Expenses.  The Pre-Petition Secured Creditors shall receive from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the Pre-Petition Secured Indebtedness and letter of credit fees at the applicable rates provided for in the

NYI-2248830v2

27

A00216

A0216

Pre-Petition Documents, and all other accrued and unpaid fees and disbursements payable to or

for the benefit of the Pre-Petition Secured Creditors under the Pre-Petition Documents and

incurred prior to the Petition Date including, but not limited to, fees owed and amounts to be

paid or reimbursed for counsel, financial and other consultants for the Pre-Petition Agent

pursuant to Section 8.04 of the Five-Year Credit Agreement Dated as of March 4, 2005, among

Dana Corporation as borrower, and the banks, financial institutions and other institutional

lenders as lenders, and issuers of letters of credit listed on the signature pages thereof as issuers,

and Citicorp USA, Inc. as administrative agent (the **"Pre-Petition Credit Agreement Agent"**),

and Deutsche Bank Securities Inc. and Bank of America, N.A. as syndication agents, and

JPMorgan Chase Bank, N.A. and SunTrust Bank as documentation agents, and Citigroup Global

Markets Inc. as lead arranger and book manager (the **"Pre-Petition Credit Agreement"**);

(ii) the monthly payment of current interest and letter of credit fees at the applicable non-default

rates pursuant to the applicable Pre-Petition Document (including interest calculated at the Base

Rate (as defined in the Pre-Petition Credit Agreement) pursuant to Section 2.09(e) of the Pre-

Petition Credit Agreement), and all other accrued and unpaid fees and disbursements (including,

but not limited to, reasonable fees owed to the Pre-Petition Agent and the Pre-Petition Credit

Agreement Agent), *provided* that the Pre-Petition Secured Creditors reserve their rights to assert

claims for the payment of additional interest calculated at any other applicable rate of interest

(including, without limitation, default rates), and for the payment of any other amounts provided

for in the Pre-Petition Documents, and this Order is without prejudice to the rights of the Debtors

or any other party to contest any such assertion; and (iii) current cash payments of all reasonable

fees and disbursements of professionals (including, but not limited to, the reasonable fees and

A00217

A0217

disbursements of counsel and internal and third-party consultants, including financial consultants

and auditors) for the Pre-Petition Agent and the Pre-Petition Credit Agreement Agent;

(d)    Monitoring of Collateral.  The Pre-Petition Agent (for the benefit of the Pre-

Petition Secured Creditors) shall be permitted to retain expert consultants and financial advisors

at the expense of the Debtors, which consultants and advisors shall be given reasonable access

for purposes of monitoring the business of the Debtors and the value of the Collateral; and

(e)    Information.  The Debtors shall provide the Pre-Petition Agent with any written

financial information or periodic reporting that is provided to, or required to be provided to, the

Administrative Agent or the Lenders.

22.    *Reservation of Rights of Pre-Petition Secured Creditors.*  Under the

circumstances and given that the above described Adequate Protection Obligations are consistent

with the Bankruptcy Code, including section 506(b) thereof, this Court finds that the Adequate

Protection Obligations provided herein are reasonable and sufficient to protect the interests of the

Pre-Petition Secured Creditors.  Except as expressly provided herein, nothing contained in this

Order (including, without limitation, the authorization of the use of any Cash Collateral) shall

impair or modify any rights, claims or defenses available in law or equity to the Pre-Petition

Agent, any Pre-Petition Secured Creditor, the Administrative Agent or any Lender, including,

without limitation rights of a party to a swap agreement, securities contract, commodity contract,

forward contract or repurchase agreement with a Debtor to assert rights of set-off or other rights

with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).

23.    *Perfection of DIP Liens and Adequate Protection Liens.*  (a)  This Order

shall be sufficient and conclusive evidence of the validity, perfection, and priority of (i) the

Administrative Agent's Liens (for the ratable benefit of the Secured DIP Creditors) upon the

A00218
A0218

Collateral to secure all DIP Obligations and (ii) the Pre-Petition Agent's Adequate Protection Liens (for the ratable benefit of the Pre-Petition Secured Creditors), without the necessity of filing or recording any financing statement, mortgage or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens of the Administrative Agent or the Adequate Protection Liens of the Pre-Petition Agent, or to entitle the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent or the Pre-Petition Secured Creditors to the priority granted herein (including, in respect of cash, any requirement that the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent or the Pre-Petition Secured Creditors have possession of or dominion and control over, any such cash in order to perfect an interest therein); *provided* that, upon the request of the Administrative Agent or the Pre-Petition Agent in accordance with the terms of this Order, the Debtors may execute and the Administrative Agent and the Pre-Petition Agent may file or record financing statements or other instruments to evidence and to perfect the Liens authorized hereby; and *provided further* that no such filing or recordation shall be necessary or required in order to create or perfect any such Lien.

(b)     In the discretion of the Administrative Agent, a certified copy of this Order may be filed with or recorded in, in addition to or in lieu of a mortgage, financing statement or similar perfection document, any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property.

(c)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell,

A00219

A0219

assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the Secured DIP Creditors in accordance with the terms of the DIP Loan Agreement or this Order.

24.    *Preservation of Rights Granted Under the Order.* (a) Except for the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Administrative Agent, the Secured DIP Creditors or to the Pre-Petition Agent and the Pre-Petition Secured Creditors, respectively, shall be granted or allowed while any portion of the DIP Credit Facility (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations shall have been paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Loan Agreement, cash collateralized in accordance with the provisions of the DIP Loan Agreement) and the Adequate Protection Obligations shall have been paid in full, the Debtors agree not to seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral under this Order, if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the Administrative Agent, or with respect to the rights and benefits

A00220

A0220

granted to the Pre-Petition Secured Creditors, the Pre-Petition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Administrative Agent or the Pre-Petition Agent, or (ii) an order dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, the DIP Liens (including the priming liens), security interests and replacement security interests granted to the Administrative Agent and, as applicable, the Pre-Petition Agent pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, DIP Liens (including priming liens) and replacement security interests shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(c)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent or the Pre-Petition Agent, as applicable, on the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Agreement with respect to any DIP Obligations or Adequate Protection Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the Administrative Agent, the

A00221

A0221

Secured DIP Creditors, the Pre-Petition Agent or the Pre-Petition Secured Creditors prior to the actual receipt of written notice by the Administrative Agent and Pre-Petition Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent and the Pre-Petition Secured Creditors shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)    Except as expressly provided in this Order or in the DIP Loan Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Administrative Agent and the Secured DIP Creditors granted by the provisions of this Order and the DIP Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Loan Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the Administrative Agent and the Secured DIP Creditors granted by the provisions of this Order and the DIP Loan Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

NYI-2248830v2                                            33

A00222

A0222

25.  *Effect of Stipulations on Third Parties.*  Subject to the reservation of rights set forth in this paragraph 25, the stipulations and admissions contained in this Order, including, without limitation, in paragraphs 3 and 21 of this Order, shall be binding upon the Debtors in all circumstances.  The stipulations and admissions contained in this Order, including, without limitation, in paragraphs 3 and 21 of this Order, shall be binding upon all other parties in interest, including, without limitation, any Creditors' Committee, unless (a) a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 26) by no later than the date that is the later of 75 days after the Petition Date or 60 days after the initial selection of counsel by the Creditors' Committee in the Cases (or such later date (x) as has been agreed to, in writing, by the Pre-Petition Agent, the Existing Receivables Facility Agents or the Credit Card Issuers, as applicable, in its sole discretion or (y) as has been ordered by the Court) (i) challenging the validity, enforceability, priority or extent of the Pre-Petition Secured Indebtedness, the Existing Corporate Credit Card Obligations or the Pre-Petition Agent's or the Pre-Petition Creditors' liens on the Pre-Petition Collateral or the Existing Receivables Facility or (ii) otherwise asserting or prosecuting any avoidance actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, **"Claims and Defenses"**) against the Pre-Petition Agent, any of the Pre-Petition Secured Creditors, the Existing Receivables Facility Agents, any other party to the Existing Receivables Facility or their respective affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with matters related to the Pre-Petition Documents, the Pre-Petition Security Agreement, the Pre-Petition Secured Indebtedness, the Pre-Petition Collateral, the Existing Receivables Facility or the Corporate Credit Card Program, as applicable, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or

NYI-2248830v2

A00223

A0223

claim in any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed, (w) all payments made pursuant to this Order, including the repurchase of the Receivables Portfolio and the satisfaction of the Existing Corporate Credit Card Obligations, shall not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance for all purposes in the Cases and any subsequent chapter 7 or 11 cases of the Debtors, (x) the Pre-Petition Secured Indebtedness and all related obligations of the Debtors shall constitute as of the Petition Date allowed claims, not subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 or 11 cases of the Debtors, (y) (i) the Pre-Petition Agent's and the Pre-Petition Secured Creditors' liens on the Pre-Petition Collateral and (ii) the sale of the Receivables Portfolio and related transactions in connection with the Existing Receivables Facility shall be deemed, as applicable, to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance, and (z) (i) the Pre-Petition Secured Indebtedness and all related obligations of the Debtors, the Pre-Petition Agent's and the Pre-Petition Secured Creditors' liens on the Pre-Petition Collateral and the Pre-Petition Agent and the Pre-Petition Secured Lenders and (ii) the sale of the Receivables Portfolio and related transactions in connection with the Existing Receivables Facility, shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of the Debtors' estates, including, without limitation, any estate representative or any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If

A00224

A0224

any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 3 and 21 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Pre-Petition Documents, the Pre-Petition Secured Indebtedness or the Existing Receivables Facility.

26.     *Limitation on Use of Financing Proceeds and Collateral.* Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the Carve-Out may be used to (a) object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Loan Documents, the Pre-Petition Security Agreement, the Pre-Petition Documents or the Existing Receivables Facility, or the liens or claims granted under this Order, the DIP Loan Documents, the Pre-Petition Documents or the Existing Receivables Facility, (b) challenge the repurchase of the Receivables Portfolio or the satisfaction of the Existing Corporate Credit Card Obligations, (c) assert any Claims and Defenses or other causes of action against the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Creditors, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility or their respective agents, affiliates, representatives, attorneys or advisors related to the Pre-Petition Documents, the Pre-Petition

A00225
A0225

Secured Indebtedness, the Existing Receivables Facility or the Corporate Credit Card Program, (d) prevent, hinder or otherwise delay, the Administrative Agent's or the Pre-Petition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Loan Documents, the Pre-Petition Documents or this Order, (e) seek to modify any of the rights granted to the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Creditors or the Existing Receivables Facility Agents, any party to the Existing Receivables Facility hereunder or under the DIP Loan Documents, the Pre-Petition Documents, the Pre-Petition Security Agreement, the Receivables Sale Agreement or the Receivables Funding Agreement in each of the foregoing cases without such parties' prior written consent, or (f) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the DIP Loan Agreement or otherwise approved by the Administrative Agent in its reasonable discretion; provided that, notwithstanding anything to the contrary herein, any statutory committee appointed by the U.S. Trustee shall be limited to $250,000, in the aggregate for all such committees, to perform the investigations contemplated hereby.

27.    If any provision of this Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacation, or stay shall not affect the validity of any liability incurred pursuant to this Order and prior to the later of (a) the effective date of such modification, vacation, or stay, or (b) the entry of the order pursuant to which such modification, vacation, or stay was established, nor the validity, priority, or enforceability of any Lien granted by the Debtors to the Administrative Agent or the Pre-Petition Agent.

A00226

A0226

28.    The DIP Loan Documents and the provisions of this Order, including all findings herein, shall be binding to the fullest extent permitted by applicable law upon all parties in interest in these cases including without limitation the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Creditors, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility, the Creditors' Committee and the Debtors and their respective successors and assigns and shall inure to the benefit of the Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility and the Debtors and their respective successors and assigns; *provided, however*, that the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent and the Pre-Petition Secured Creditors shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

29.    Any Agent's or any Lender's failure to seek relief or otherwise exercise its rights and remedies under the DIP Credit Facility or this Order shall not constitute a waiver of any of the Agents' or any Lender's rights hereunder, thereunder, or otherwise.

30.    In the event of any inconsistency between the terms and conditions of any DIP Loan Document and of this Order, the provisions of this Order shall govern and control.

31.    This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon execution hereof.

32.    The Final Hearing to consider the Motion and Final Order shall be held on [_____], 2006 at United States Bankruptcy Court, 1 Bowling Green, New York, New York, before the Honorable [_____], United States Bankruptcy Judge.  Following entry of this Order, the Debtors shall, on or before [_____], 2006, provide notice of the Motion, this

A00227

A0227

Order and the Final Hearing by telecopy, overnight delivery service, hand delivery or U.S. mail to each of the Initial Notice Parties and, without duplication, to (i) if practicable, the applicable state and local taxing authorities, (ii) parties who have filed a request for service prior to such date, and (iii) other secured parties as shown on any UCC searches conducted prepetition.  Such notice shall constitute good and sufficient notice of the Final Hearing.  The notice of approval of this Order shall state that any party in interest objecting to the DIP Credit Facility or the terms of the Final Order shall file written objections with the United States Bankruptcy Court Clerk for the Southern District of New York no later than [_____], 2006, which objections shall be served so that same are received by no later than 4:00 p.m. (prevailing Eastern time) on such date by: (a) Jones Day, counsel to the Debtors, 222 E. 41st St., New York, NY 10017, Attn:  Corinne Ball, Esq. and Richard H. Engman, Esq., and 901 Lakeside Ave., Cleveland, OH 44114, Attn: Heather Lennox, Esq., (b) Shearman & Sterling LLP, counsel to the Administrative Agent, 599 Lexington Avenue, New York, New York 10022, Attn:  Douglas P. Bartner, Esq. and Marc B. Hankin, Esq., (c) Shearman & Sterling LLP, counsel to the Pre-Petition Agent, 599 Lexington Avenue, New York, New York 10022, Attn: Maura E. O'Sullivan, Esq.; and (d) the Office of the United States trustee, and (e) attorneys for the Creditors' Committee once appointed.

SO ORDERED by the Court this _____ day of March, 2006.

_____
U.S. BANKRUPTCY JUDGE

A00228

A0228