UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re                                          :          **Chapter 11 Case Nos.**
                                               :
DANA CORPORATION, *et al.*,                    :          **06-10354 (BRL)**
                                               :
                  Debtors.[1]                  :          **(Jointly Administered)**
                                               :

---------------------------------------------------------x

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION
SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1),
364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507 AND FED. BANKR. P. 2002, 4001 AND
9014 AND (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES
PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364 AND (III) SCHEDULING A FINAL
HEARING PURSUANT TO BANKRUPTCY RULES 4001(b), 4001(c) AND 4001(d)**

Upon the motion, dated March 3, 2006 (the "**Motion**"), of Dana Corporation (the

"**Borrower**" or "**Dana**"), and all of its affiliated debtors that have commenced chapter 11 cases

and are debtors in these jointly administered chapter 11 cases (such affiliates, together with any

entities that subsequently commence jointly administered chapter 11 cases (the "**Cases**") and

become guarantors under the DIP Loan Agreement (as defined below), the "**Guarantors**"), as

debtors and debtors in possession (collectively, the "**Debtors**") under chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rules 2002, 4001

---

[1]    In addition to Dana Corporation, the following entities are debtors in these jointly administered cases:
Dakota New York Corp., Brake Systems, Inc., BWDAC, Inc., Coupled Products, Inc., Dana Atlantic LLC,
Dana Automotive Aftermarket, Inc., Dana Brazil Holdings I LLC, Dana Brazil Holdings LLC, Dana
Information Technology LLC, Dana International Finance Inc., Dana International Holdings, Inc., Dana
Risk Management Services, Inc., Dana Technology Inc., Dana World Trade Corporation, Dandor L.L.C.,
Dorr Leasing Corporation, DTF Trucking, Inc., Echlin-Ponce, Inc., EFMG LLC, EPE, Inc., ERS LLC,
Flight Operations, Inc., Friction Inc., Friction Materials, Inc., Glacier Vandervell Inc., Hose & Tubing
Products, Inc., Lipe Corporation, Long Automo tive LLC, Long Cooling LLC, Long USA LLC, Midland
Brake, Inc., Prattville Mfg., Inc., Reinz Wisconsin Gasket LLC, Spicer Heavy Axle & Brake, Inc., Spicer
Heavy Axle Holdings, Inc., Spicer Outdoor Power Equipment Components LLC, Torque-Traction
Integration Technologies, LLC, Torque-Traction Manufacturing Technologies, LLC, Torque-Traction
Technologies, LLC, United Brake Systems Inc.

A00353

A0353

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, pursuant to this interim order (this "**Order**"):

      (a)  authority to execute and enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement dated as of March 3, 2006 (the "**DIP Loan Agreement**") among the Borrower, the Guarantors, Citicorp North America, Inc., as Administrative Agent (the "**Administrative Agent**"), Bank of America, N.A. and JPMorgan Chase Bank, N.A., as Co-Syndication Agents (together with the Administrative Agent, the "**Agents**"), acting as Agents for themselves, Citicorp North America, Inc., as Initial Swing Line Lender (the "**Initial Swing Line Lender**"), and Bank of America, N.A., Citicorp North America, Inc. and JPMorgan Chase Bank, N.A., as Initial Issuing Banks (the "**Initial Issuing Banks**"), and a syndicate of financial institutions (together with the Agents, the Initial Swing Line Lender and the Initial Issuing Banks, the "**Lenders**"), to be arranged by Citigroup Capital Markets Inc., J.P. Morgan Securities Inc. and Banc of America Securities LLC, as Joint Lead Arrangers and Joint Bookrunners, substantially in the form annexed to the Motion as Exhibit A, and all other documents, agreements or instruments in connection therewith or related thereto (together with the DIP Loan Agreement, as any of the foregoing may be amended or modified from time to time in accordance with the terms of this Order, collectively, the "**DIP Loan Documents**"), which, if approved on a final basis, would provide the Debtors with postpetition secured credit of up to $1,450,000,000 (the "**DIP Facility**") and to perform such other and further acts as may be contemplated by, or required in connection with, the DIP Loan Documents;

A00354

A0354

(b)  authority to immediately obtain revolving loans, swing line loans and letters of credit under the DIP Facility up to an aggregate principal or face amount of $800,000,000 to (i) allow certain of the Debtors to repurchase the Receivables Portfolio (as defined below) under the Existing Receivables Facility (as defined below) and satisfy the Existing Corporate Credit Card Obligations (as defined below) in accordance with the terms of the Corporate Credit Card Program (as defined below), both of which would constitute an "Extraordinary Provision" (an **"Extraordinary Provision"**) as such term is used and defined in the General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the **"Court's Guidelines"**), (ii) pay costs and expenses in connection with such repurchase and satisfaction set forth in subparagraph (i), the DIP Loan Documents and the Cases, including but not limited to any and all fees to be paid upon the Effective Date (as defined in the DIP Loan Agreement) under the DIP Loan Documents and (iii) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations of borrowings under the DIP Loan Documents), subject, however, to the right of any statutory committee appointed in the Cases (the **"Creditors' Committee"**), if any, to challenge such repurchase or satisfaction pursuant to the provisions of paragraphs 25 and 26 of the this Order;

(c)  authority, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, to grant senior first-priority Liens (as defined in the DIP Loan Agreement) to the Administrative Agent (for the ratable benefit of the Lenders and the other holders (the **"Other DIP Obligees"**) of DIP Obligations (as defined below)) upon all property of the Debtors' estates (excluding certain Excluded Property (as defined

3

A00355

A0355

below)) including property that presently is collateral securing the Pre-Petition Secured Indebtedness (as defined below), subject to the Carve-Out (as defined below), which would constitute an Extraordinary Provision under the Court's Guidelines;

(d)  authority, pursuant to section 364(c)(1) of the Bankruptcy Code, to grant a Superpriority Claim (as defined below) to the Administrative Agent (for the ratable benefit of the Lenders and the Other DIP Obligees (collectively, the **"Secured DIP Creditors"**)) with priority over any and all administrative expenses, other than the Carve-Out;

(e)  authority to use Cash Collateral (as defined below);

(f)  authority, pursuant to sections 361, 363(e), 364(c)(1), 364(c)(3), and 507(b) of the Bankruptcy Code, to grant second priority liens and incur an unliquidated administrative expense in order to adequately protect the Pre-Petition Secured Creditors (as defined below), for, inter alia, the priming of their Liens, the continued use of their Cash Collateral, the repurchase of the Receivables Portfolio and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(g)  permission to allow the Lenders to accelerate the maturity of all Borrowings (as defined in the DIP Loan Agreement) and terminate their Commitments (as defined in the DIP Loan Agreement) upon (a) a Change of Control (as such term is defined in the DIP Loan Agreement) or (b) the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any of the Debtors that have a value in excess of

A00356

A0356

$10,000,000 in the aggregate, each of which would constitute Extraordinary Provisions under the Court's Guidelines;

(h) approval of certain stipulations by the Debtors with respect to the Pre-Petition Documents and the liens and security interests arising therefrom, which would constitute Extraordinary Provisions under the Court's Guidelines;

(i) the scheduling of a hearing (the "**Final Hearing**") to be held within 45 days of the entry of this Order to consider the entry of a final order (the "**Final Order**") granting all of the relief requested in the Motion on a final basis, including (i) the relief granted in this Order, (ii) permitting the Debtors to waive any right to surcharge Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code, the waiver of which would constitute an Extraordinary Provision under the Court's Guidelines, and (iii) authority to borrow under the DIP Facility up to an aggregate principal amount of $1,450,000,000 to (A) refinance all prepetition secured claims of the Pre-Petition Secured Creditors, which would constitute an Extraordinary Provision under the Court's Guidelines, (B) pay fees, costs and expenses in connection with the DIP Loan Documents and the Cases and (C) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations in the DIP Loan Documents and to the rights afforded a Creditors' Committee in the Final Order), which would constitute an Extraordinary Provision under the Court's Guidelines;

and it appearing that the relief requested therein is necessary to provide the Debtors with sufficient capital to continue operations and to preserve the going concern value of their businesses; and it further appearing that notice and the hearing (the "**Interim Hearing**") and the

A00357
A0357

relief requested in the Motion, having been served on (i) the United States Trustee for the

Southern District of New York (the **"U.S. Trustee"**); (ii) Shearman & Sterling LLP, counsel to

the Administrative Agent, 599 Lexington Avenue, New York, New York 10022, Attn: Douglas

P. Bartner, Esq. and Marc B. Hankin, Esq.; (iii) Shearman & Sterling LLP, counsel to the Pre-

Petition Agent (as defined below), 599 Lexington Avenue, New York, New York 10022, Attn:

Maura E. O'Sullivan, Esq.; (iii) the Debtors' fifty (50) largest unsecured creditors (to the extent

practicable); and (iv) known holders of prepetition liens against the Debtors' property

(collectively, the **"Initial Notice Parties"**), is good and sufficient notice of the Interim Hearing

under the circumstances in accordance with Bankruptcy Rules 4001(b), 4001(c) and 4001(d) and

section 102(1) of the Bankruptcy Code, as required by sections 363(c), 363(e), 364(c) and 364(d)

of the Bankruptcy Code in light of the emergency nature of the relief requested in the Motion;

and for good cause shown;

Upon the record made by the Debtors at the Interim Hearing and after due

deliberation and consideration and sufficient cause appearing therefore;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334,

over the Cases, and over the persons and property affected hereby.  Consideration of the Motion

constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for

the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and

Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014.  Venue of the Cases in this Court is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6

2.      Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b), (c) and (d).

3.      *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon and the reservation of the Debtors' rights continued in paragraph 25 below) the Debtors, for themselves and not for their estates, admit, stipulate, and agree that:

(a)      (i) As of March 3, 2006 (the **"Petition Date"**), the Borrower and the Guarantors (other than Dakota New York Corp. and Dana Information Technology LLC) were indebted and liable to the Pre-Petition Secured Creditors, without defense, counterclaim or offset of any kind, for all obligations arising under the Pre-Petition Documents (as defined in the DIP Loan Agreement), pursuant to and in accordance with the terms of, the Pre-Petition Documents, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Pre-Petition Documents), charges and other obligations incurred in connection therewith as provided in the Security Agreement, dated as of November 18, 2005 (the **"Pre-Petition Security Agreement"**), from Dana Corporation and the other grantors referred to therein to Citicorp USA, Inc., as Administrative Agent (the **"Pre-Petition Agent"**), under the Pre-Petition Documents, and the applicable Pre-Petition Document (all such indebtedness set forth in (i), the **"Pre-Petition Secured Indebtedness,"** and the persons from time to time holding such indebtedness, the **"Pre-Petition Secured Creditors"**), (ii) the Pre-Petition Secured Indebtedness constitutes the legal, valid and binding obligation of such Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code),

7

(iii) no portion of the Pre-Petition Secured Indebtedness is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-Petition Secured Creditors, the Pre-Petition Agent under the Pre-Petition Documents, and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys, in each case in connection with the Pre-Petition Secured Indebtedness.

(b)    The liens and security interests granted to the Pre-Petition Agent pursuant to and in connection with the Pre-Petition Security Agreement, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, control agreements and other security documents executed by any of the Debtors in favor of the Pre-Petition Agent, for its benefit and for the benefit of the Pre-Petition Secured Creditors) in connection with the Pre-Petition Documents, are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the tangible and intangible property constituting the Pre-Petition Collateral, including, as more fully described in the Pre-Petition Security Agreement, the Debtors' machinery and equipment, inventory, receivables (subject to the Intercreditor Agreement described below) and equity interests in Dana Asset Funding LLC ("**DAF**"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the Liens of the Secured DIP Creditors, (B) the Carve-Out and (C) valid, perfected and unavoidable liens permitted under the Pre-Petition Security Agreement to the extent such permitted liens are senior to or pari passu with the liens of the Pre-Petition Agent on the Pre-Petition Collateral.

8

A00360

A0360

(c)       The aggregate value of the Pre-Petition Collateral exceeds the aggregate amount of the Pre-Petition Secured Indebtedness;

(d)       The Debtors sold, assigned and transferred to DAF all of their right, title and interest in and to certain accounts receivable and other related rights (the "**Receivables Portfolio**") pursuant to that certain Amended and Restated Purchase and Contribution Agreement, dated as of April 15, 2005 (as amended, the "**Receivables Sale Agreement**"). DAF, in turn, sold, assigned and transferred its interest in the Receivables Portfolio pursuant to the Amended and Restated Receivables Purchase Agreement, dated as of April 15, 2005 (as amended, the "**Receivables Funding Agreement**" and together with the Receivables Sale Agreement, the "**Existing Receivables Facility**"), among DAF, Dana as collection agent, Falcon Asset Securitization Corporation and Variable Funding Capital Company LLC (as assignee of Blue Ridge Asset Funding Corporation), as conduit purchasers, Wachovia Bank, National Association, as a committed purchaser and VFCC Agent (the "**VFCC Agent**") and JP Morgan Chase Bank, N.A. as a committed purchaser, as Falcon Agent and as Program Agent (the "**Program Agent**" and together with the VFCC Agent, the "**Existing Receivables Facility Agents**"). As of the Petition Date, approximately $210,000,000 was outstanding under the Existing Receivables Facility, plus all interest, fees, expenses, charges and other obligations incurred in connection therewith as provided in the Existing Receivables Facility.

(e)       The Pre-Petition Agent, the Program Agent and the VFCC Agent are parties to that certain Intercreditor Agreement, dated as of November 18, 2005 (the "**Intercreditor Agreement**"), under which, in exchange for the agreement of the Program Agent and the VFCC Agent to permit the pledge of the stock of DAF in favor of the Pre-Petition Agent, the Pre-Petition Agent agreed that its Lien on receivables and related assets under the Existing

9

A00361

A0361

Receivables Facility would not attach unless and until the Existing Receivables Facility was terminated and all outstanding amounts repaid.

(f)      The Debtors and certain of the Debtors' direct and indirect subsidiaries, including certain non-Debtor subsidiaries, in the ordinary course of their businesses use credit cards issued pursuant to the (i) Citibank Business Card Purchasing Card Agreement, dated August 31, 1994, between Dana Corporation and Citibank (South Dakota), N.A. and Dana Corporation, (ii) Citibank Purchasing Card Agreement, dated January 18, 2005, between Citibank International plc and Dana Corporation, and (iii) Citibank Corporate Card Agreement, dated January 24, 2005, between Citibank International plc and Dana Corporation, each as amended, restated, or otherwise modified from time to time (the "**Corporate Credit Card Program**").

(g)      The Borrower is the obligor under the Corporate Credit Card Program, and as of the Petition Date, is indebted and liable to the issuers of the credit cards thereunder (collectively, the "**Credit Card Issuers**"), without defense, counterclaim or offset of any kind, for obligations arising under the Corporate Credit Card Program in the aggregate principal amount of not less than $9,000,000 plus all interest, fees, expenses, charges and other obligations incurred in connection therewith as provided under the Corporate Credit Card Program (the "**Existing Corporate Credit Card Obligations**"). The Existing Corporate Card Obligations qualify as Pre-Petition Secured Indebtedness and are secured by the Pre-Petition Collateral pursuant to the Pre-Petition Security Agreement.

4.     *Findings Regarding the Financing.*

(a)      An immediate need exists for the Debtors to obtain funds and financial accommodations and use Cash Collateral with which to continue their operations, meet their payroll and other necessary, ordinary course business expenditures, acquire goods and services,

A00362

A0362

and administer and preserve the value of their estates. The ability of the Debtors to finance their operations and successfully reorganize requires the availability of additional working capital and use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates and their creditors.

(b) The Debtors are unable to obtain unsecured credit allowable only as an administrative expense allowable under section 503(b)(1) of the Bankruptcy Code.

(c) The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code except under the terms and conditions provided in this Order. The Debtors are unable to obtain credit for borrowed money under sections 364(c)(2) and 364(c)(3) without the Debtors' granting to the Administrative Agent (for the ratable benefit of the Secured DIP Parties) (i) Liens on various of the assets of the Debtors pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code and (ii) superpriority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code, in each case as provided by this Order and subject to the Carve-Out.

(d) The ability of the Debtors to finance their operations and have available sufficient working capital through the incurrence of indebtedness for borrowed money and other financial accommodations and use Cash Collateral is vital to the Debtors' ability to preserve and maintain their going concern value.

(e) The relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the preservation of their estates.

(f) It is in the best interest of Debtors' estates to establish the DIP Credit Facility contemplated by the DIP Loan Agreement and the other DIP Loan Documents.

A00363

A0363

(g)      The terms and conditions of the DIP Credit Facility, as described in the Motion and as set forth at the hearing on the Motion, including those which provide for the payment to the Agents and the Lenders of interest and fees related to the DIP Credit Facility at the times and in the manner provided under the DIP Credit Facility, and the use of Cash Collateral are fair, reasonable and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(h)      The DIP Loan Agreement was negotiated in good faith and at arm's length between the Debtors, on the one hand, and the Agents and the Lenders, on the other hand.  Credit to be extended under the DIP Credit Facility, including without limitation (i) all loans made to, and all letters of credit issued for the account of, the Debtors pursuant to the DIP Loan Agreement, (ii) any Obligations and all other Secured Obligations (each as defined in the DIP Loan Agreement), including any hedging obligations of the Debtors permitted under the DIP Loan Agreement and any Debt (as defined in the DIP Loan Agreement) permitted by Section 5.02(b)(iv) thereof, in each case owing to the Administrative Agent, any Lender or any of their respective banking affiliates and (iii) all post-petition obligations incurred by the Debtors under the Corporate Credit Card Program (all of the foregoing in clauses (i), (ii) and (iii) collectively, the **"DIP Obligations"**), shall be deemed to have been extended by the Administrative Agent, the Secured DIP Creditors and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

12

A00364

A0364

(i)      Good and sufficient cause has been shown for the entry of this Order.  The

Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and

4001(c)(2).  Among other things, the entry of this Order:  (i) will enable the Debtors to continue

the operation of their business and avoid immediate and irreparable harm to the Debtors' estates;

(ii) will permit the Debtors to meet payroll and other operating expenses; (iii) will enable the

Debtors to obtain needed supplies and to pay employees; and (iv) is in the best interests of the

Debtors, their creditors and their estates.  The financing arrangement authorized hereunder is

vital to avoid immediate and irreparable harm to the Debtors' estates.  Consummation of such

financing therefore is in the best interests of the Debtors' estates.

5.      *Authorization of the Financing and the DIP Loan Documents.*

(a)      The Debtors are authorized to:

(i)      establish the DIP Credit Facility;

(ii)      execute and deliver to the Lenders each of the DIP Loan Documents to

which any Debtor is a party; and

(iii)      with respect to the Borrower, borrow up to an aggregate principal or face

amount of $800,000,000 (plus interest, fees and other expenses provided for in the DIP

Loan Documents) under the DIP Credit Facility, and the Guarantors are authorized to

guarantee such borrowings, pending the Final Order, subject to the limitations of

borrowings under the DIP Loan Documents, and in accordance with the terms of this

Order and the DIP Loan Documents, which shall be used solely for purposes of

(A) repurchasing the Receivables Portfolio under the Existing Receivables Facility and

satisfying the Existing Corporate Credit Card Obligations in accordance with the terms of

the Corporate Credit Card Program (which are Extraordinary Provisions under the

Court's Guidelines), (B) paying costs and expenses in connection with such repurchase

13

A00365

A0365

and satisfaction and the Cases, including but not limited to the non-refundable payment of any and all fees to be paid under, and in accordance with the terms of, the DIP Loan Documents (including, but not limited to, the separate fee later dated March 2, 2006, among the Borrower, Citigroup Global Markets Inc., J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Banc of America Securities LLC and Bank of America, N.A. (the "**Fee Letter**")) and the reasonable costs and expenses as may be due from time under the DIP Loan Documents, and (C) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations of borrowings under the DIP Loan Documents).

(b)     The Debtors are hereby authorized and empowered, without further approval of this Court, to do and perform all acts and to make, execute and deliver all instruments and documents and any exhibits attached thereto (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the Liens described in and provided for by the DIP Loan Documents.  In addition, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by any Lender or any of their respective affiliates, *provided, however*, that nothing herein shall require any Lender or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(c)     The Debtors are further authorized and empowered, without further approval of the Court, to execute and deliver one or more amendments to the DIP Loan Agreement for, among other things, the purpose of (i) adding additional financial institutions as Lenders, and

14

A00366

A0366

(ii) reallocating the commitments for the DIP Credit Facility among the Lenders, in each case in such form as the Debtors, the Administrative Agent and the Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Loan Agreement that do not shorten the maturity of the extension of credit thereunder or increase either the commitments, the rate of interest payable, or letter of credit fees payable thereunder). Notwithstanding any other provision hereof, without further approval of the Court, amendments to the DIP Loan Document may be made at any time prior to the Final Hearing, (i) as contemplated by the Fee Letter (permitting certain modifications to the DIP Loan Agreement necessary or advisable to ensure a successful syndication), or (ii) as contemplated by the DIP Loan Agreement with respect to the Borrowing Base Amendment (as defined in the DIP Loan Agreement).

      (d)    Upon execution and delivery of the DIP Loan Documents by the Debtors, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Loan Documents and this Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

      6.    *DIP Liens.*  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the Administrative Agent for its own behalf and the benefit of the Secured DIP

A00367
A0367

Creditors (all property identified in clauses (a), (b) and (c) below being collectively referred to as the **"Collateral"**), subject, only in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP Loan Agreement), to the payment of the Carve-Out (all such liens and security interests granted to the Administrative Agent, for its benefit and for the benefit of the Secured DIP Creditors, pursuant to this Order and the DIP Loan Documents, the **"DIP Liens"**):

      (a)    <u>First Lien on Cash Balances and Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre-petition and post-petition property of the Debtors that is not Excluded Property,[2] whether existing on the Petition Date or thereafter acquired, to the extent not subject to valid, perfected non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code (collectively, **"Unencumbered Property"**), including without limitation, all cash and cash collateral of the Debtors and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in

---

[2]    **"Excluded Property"** means (i) the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code, (ii) property constituting withholdings required under any law (including but not limited to federal, state and local income, payroll and trust fund taxes and insurance payments of any nature, whether imposed on the employer or employee or otherwise) from any amounts due to any employee of a Debtor or Guarantor, and any withholdings from an employee considered a "plan asset" under Title I of ERISA (as defined in the DIP Loan Agreement), (iii) 34% of the equity interests in certain Foreign Subsidiaries (as defined in the DIP Loan Agreement) in accordance with, and subject to the provisions of, Section 9.01(e)(iii) of the DIP Loan Agreement, and (iv) trademarks consisting of United States intent-to-use trademark applications to the extent that, and solely during the period in which, the grant of a security interest therein would impair the validity or enforceability of such intent-to-use trademark applications under applicable federal law.

16

A00368

A0368

leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing.

(b)     <u>Liens Priming Pre-Petition Secured Creditors' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre-petition and post-petition property of the Debtors (not including Excluded Property, but including, without limitation, cash collateral, inventory, machinery, accounts receivable, other rights to payment whether arising before or after the Petition Date and the equity interests of DAF), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Pre-Prepetition Secured Indebtedness (including in respect of issued but undrawn letters of credit).  Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Creditors arising from current and future liens of the Pre-Petition Secured Creditors (including, without limitation, adequate protection liens granted hereunder), and shall be subject and subordinate to (i) the Carve-Out to the extent specifically provided for herein, and (ii) any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Secured Creditors become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon the all pre-petition and post-petition property of the Debtors (other than Excluded Property and the property described in clauses (a) and (b) of this paragraph 6, as to which liens

A00369
A0369

and security interests in favor of the Administrative Agent will be as described in such clauses),
whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable
liens in existence immediately prior to the Petition Date, or to valid and unavoidable liens in
existence immediately prior to the Petition Date that are perfected subsequent to the Petition
Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in
favor of the Administrative Agent and the Secured DIP Creditors are immediately junior to such
valid, perfected and unavoidable liens.

    (d)    <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate Protection
Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that
is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the
Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation,
any liens or security interests granted in favor of any federal, state, municipal or other
governmental unit, commission, board or court for any liability of the Debtors, other than with
respect to any liens or security interests arising after the Petition Date and permitted under the
DIP Loan Agreement to be senior to the DIP Liens.

    7.    *Superpriority Claim*. In addition to the DIP Liens granted herein, all of
the DIP Obligations shall be an allowed administrative expense claim with priority, subject only
to the Carve-Out to the extent specifically provided for herein, under section 364(c)(1) of the
Bankruptcy Code and otherwise, over all administrative expense claims and unsecured claims
against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever,
including, without limitation, administrative expenses or other claims of the kinds specified in or
ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 726,
1113 and 1114 of the Bankruptcy Code (the "**Superpriority Claim**"), whether or not such

A00370
A0370

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof.

8.    All amounts applied to the payment of the DIP Obligations shall be applied thereto in the manner set forth in the DIP Loan Documents.

9.    The Debtors (i) hereby are authorized and directed to pay all reasonable costs, fees and out of pocket expenses of the Agents, including reasonable costs, fees and expenses incurred in connection with the negotiation, documentation and administration of the DIP Credit Facility and the matters set forth in this Order and all other matters arising in or in connection with the Cases, and all attorneys' fees and expenses and financial advisors' fees and expenses incurred by the Agents in connection therewith, and (ii) shall promptly reimburse the Agents for such other costs and expenses provided for in section 10.04(a) of the DIP Loan Agreement.  None of such costs and expenses shall be subject to the approval of the Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

10.    Each officer of the Debtors as may be so authorized by the Board of Directors of each of the Debtors, acting singly, is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

11.    The DIP Loan Agreement and each of the DIP Loan Documents, respectively, shall constitute and evidence the valid and binding obligations of each of the Debtors, which obligations shall be enforceable against each of the Debtors in accordance with their terms and the terms of this Order.

A00371

A0371

12.    Interest on the DIP Obligations under the DIP Credit Facility shall accrue at the rates (including applicable default rates) and shall be paid at the times as provided in the DIP Loan Documents. All DIP Obligations under the DIP Credit Facility shall become due and payable, without notice or demand, on the Termination Date (as defined in the DIP Loan Agreement) in accordance with the terms of the DIP Loan Agreement.

13.    Without limiting the foregoing, except for the Carve-Out and claims under section 506(c) of the Bankruptcy Code (until entry of the Final Order), no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 330 and 331 of the Bankruptcy Code that have been or may be incurred in these Cases, and no priority claims to the Collateral are, or will be, prior to or on a parity with the DIP Obligations or the Superpriority Claim.

14.    *Lien & Collateral Protections.* The automatic stay imposed under section 362(a)(4) of the Bankruptcy Code is hereby lifted to permit (i) the Debtors to grant the DIP Liens and to perform the Debtors' liabilities and obligations to the Agents and the Lenders under the DIP Credit Facility, and (ii) the delivery by the Administrative Agent of an Enforcement Notice (as defined below) and the exercise of remedies by the Administrative Agent following an Event of Default in accordance with Paragraph 15 below.

(a)    Except as otherwise agreed in writing between the Debtors and the Administrative Agent, the Debtors shall use Advances (as defined in the DIP Loan Agreement), or proceeds of any Collateral only as provided in the DIP Loan Documents. For purposes of this Order, "proceeds" of any collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as (i) any and all proceeds of any insurance, indemnity or warranty or guaranty payable to the Debtors from time to time with respect to any of such collateral, (ii) any

20

A00372

A0372

and all payments (in any form whatsoever) made or due and payable to the Debtors in connection

with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such

collateral by any governmental body, authority, bureau or agency (or any person under color of

governmental authority) and (iii) any other payments, dividends, interest or other distributions on

or in respect of any of such collateral.

      (b)    The Debtors shall be permitted to use Advances to (i) purchase any accounts

receivable that were previously sold pursuant to the Existing Receivables Facility, and (ii) satisfy

the Existing Corporate Credit Card Obligations in accordance with the terms of the Corporate

Credit Card Program.

      (c)    The Debtors shall not be permitted to make any payments on any pre-petition debt

prior to the effective date of a plan of reorganization, except with respect to the pre-petition

obligations as set forth in this Order or as otherwise provided in the First Day Orders (as defined

in the DIP Loan Agreement), or as otherwise provided in the DIP Loan Agreement or to provide

adequate protection or cure to any third party.

      15.    *Protection of Lenders' Rights.*  (a)  So long as there are any borrowings or

letters of credit or other amounts (other than contingent indemnity obligations as to which no

claim has been asserted when all other amounts have been paid and no letters of credit are

outstanding) outstanding, the Lenders have any Commitment (as defined in the DIP Loan

Agreement) under the DIP Loan Agreement or any other DIP Obligations are outstanding, the

Pre-Petition Agent and the Pre-Petition Secured Creditors shall (i) not take any action to

foreclose upon or recover in connection with the liens granted thereto pursuant to the Pre-

Petition Security Agreement, other agreements, or operation of law or this Order, or otherwise

exercise remedies against any Collateral, except to the extent authorized by an order of this

A00373

A0373

Court, (ii) be deemed to have consented to any release of Collateral authorized under the DIP

Loan Documents, (iii) not file any further financing statements, trademark filings, copyright

filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect

their security interests in the Collateral unless, solely as to this clause (iii), the Administrative

Agent files financing statements or other documents to perfect the liens granted pursuant to this

Order, or as may be required by applicable state law to continue the perfection of valid and

unavoidable liens or security interests as of the Petition Date and (iv) not seek to terminate or

modify the use of Cash Collateral, or obtain additional or different adequate protection than as

set forth in this Order.  Nothing herein shall be read to permit the Pre-Petition Agent or the Pre-

Petition Secured Creditors to take any action in violation of the Bankruptcy Code or other

applicable law.

        (b)      Upon the occurrence of an Event of Default and at any time thereafter

during the continuance thereof, the automatic stay provisions of section 362 of the Bankruptcy

Code are vacated and modified to the extent necessary to permit the Administrative Agent and

the Lenders to exercise, (i) immediately upon such occurrence, all rights and remedies under the

DIP Loan Documents other than those rights and remedies against the Collateral as provided in

clause (ii) below and (ii) with five (5) business days' prior written notice (an "**Enforcement**

**Notice**") of any such occurrence, in each case given to the Borrower, the Debtors' counsel,

counsel to any Creditors' Committee and the U.S. Trustee, all rights and remedies against the

Collateral provided for in the DIP Loan Documents (including, without limitation, the right to

setoff monies of the Debtors in accounts maintained with the Administrative Agent or any

Lender).  Such Enforcement Notice shall also be filed with the Court.  In any hearing after the

giving of the Enforcement Notice, the only issues that may be raised by any party in opposition

22

A00374

A0374

to the giving of the Enforcement Notice shall be whether, in fact, (i) an Event of Default has

occurred and is continuing or (ii) such Event of Default is primarily due to, or primarily arises

from, the willful misconduct of the Agents or the Lenders; *provided, further,* that, subject to the

foregoing provisions of this subparagraph (b), the Debtors, the Pre-Petition Agent and the Pre-

Petition Secured Creditors hereby waive their rights to seek relief including, without limitation,

under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or

restrict the rights and remedies of the Administrative Agent set forth in this Order or the DIP

Loan Documents.  In no event shall the Administrative Agent, the Lenders, the Pre-Petition

Agent or the Pre-Petition Secured Creditors be subject to the equitable doctrine of "marshaling"

or any similar doctrine with respect to the Collateral.

      16.    (a)  The term "**Carve-Out**" means (i) all fees required to be paid to the

Clerk of the Bankruptcy Court and to the Office of the United States trustee under section

1930(a) of title 28 of the United States Code, (ii) all fees and expenses incurred by a trustee

under section 726(b) of the Bankruptcy Code and (iii) an amount not exceeding $20,000,000 in

the aggregate, which amount may be used after the occurrence and during the continuance of an

Event of Default, to pay fees or expenses incurred by the Borrower and any Creditors'

Committee in respect of (A) allowances of compensation for services rendered or reimbursement

or expenses awarded by the Bankruptcy Court to the Borrower's or any Creditors' Committee's

professionals, any chapter 11 trustee or examiners appointed in these cases, and (B) the

reimbursement of expenses incurred by Creditors' Committee members in the performance of

their duties that are allowed by the Bankruptcy Court; *provided, however,* that the Borrower and

each Guarantor shall be permitted to pay compensation and reimbursement of expenses allowed

and payable under sections 330 and 331 of the Bankruptcy Code and the Carve-Out shall not be

A00375

A0375

reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked or any fees, expenses, indemnities or other amounts paid to the Administrative Agent, the Lenders and their respective attorneys and agents under the DIP Loan Documents or otherwise; and *provided, further*, that (x) nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above and (y) following the Termination Date cash or other amounts on deposit in the L/C Cash Collateral Account (as defined in the DIP Loan Agreement), shall not be subject to the Carve-Out; and

(b)     So long as no Event of Default shall have occurred and be continuing under the DIP Loan Agreement, the Debtors shall be permitted to pay administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of business of the Debtors, subject to the maximum amounts for such type of expenditures contained in the provisions of the DIP Credit Documents in the aggregate, as the same may be due and payable.

17.     Subject to and effective only upon entry of a final order granting such relief, except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Administrative Agent or the Pre-Petition Agent, as applicable.

18.     Without limiting the provisions and protections of paragraph 17 above, if at any time prior to (i) the indefeasible repayment in full in cash of all DIP Obligations, and (ii) the termination of the Commitments, any Debtor or any trustee subsequently appointed shall

A00376

A0376

obtain credit or incur debt pursuant to section 364(b), 364(c) or 364(d) of the Bankruptcy Code,

then, except as permitted or contemplated by the DIP Loan Agreement, all of the consideration

for such credit or debt shall immediately be applied to the indefeasible payment in full in cash of

the DIP Obligations (including cash collateralization of outstanding letters of credit issued under

the DIP Loan Agreement) in accordance with the DIP Loan Documents.

    19. *Cash Collateral.* To the extent any funds of any Debtor who is a party to

the Pre-Petition Documents were on deposit with the Pre-Petition Agent or the Pre-Petition

Secured Creditors as of the Petition Date, including, without limitation, all funds deposited in, or

credited to, an account of any Debtor who is a party to the Pre-Petition Documents with any Pre-

Petition Secured Creditor immediately prior to the filing of the Debtors' bankruptcy petitions

(the **"Petition Time"**) (regardless of whether, as of the Petition Time, such funds had been

collected or made available for withdrawal by any such Debtor), such funds (the **"Deposited**

**Funds"**) are subject to rights of set-off. By virtue of such set-off rights, the Deposited Funds are

subject to a lien in favor of such Pre-Petition Secured Creditors pursuant to sections 506(a) and

553 of the Bankruptcy Code. The cash of the Debtors party to the Pre-Petition Documents,

including, without limitation, the Deposited Funds or any other funds on deposit at the Pre-

Petition Secured Creditors as of the Petition Date, and any proceeds generated by the collection

of accounts receivable, sale of inventory or other disposition of the Pre-Petition Collateral

(including the Deposited Funds or any other funds on deposit with the Pre-Petition Secured

Creditors as of the Petition Date) are cash collateral of the Pre-Petition Secured Creditors within

the meaning of section 363(a) of the Bankruptcy Code. The Deposited Funds and all such

proceeds of Pre-Petition Collateral are referred to herein as **"Cash Collateral."** The Pre-Petition

A00377

A0377

Secured Creditors have objected to the use by the Debtors of the Pre-Petition Collateral, including the Cash Collateral, except on the terms of this Order.

20.     *Use of Cash Collateral.*  The Debtors are hereby authorized to use all Cash Collateral of the Pre-Petition Creditors, and the Pre-Petition Creditors are directed promptly to turn over to the Debtors all Cash Collateral received or held by them, *provided* that the Pre-Petition Creditors are granted adequate protection as hereinafter set forth.  The Debtors' right to use Cash Collateral shall terminate automatically on the Termination Date.

21.     *Adequate Protection.*  The Debtors acknowledge and stipulate that the Pre-Petition Secured Creditors are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in value of the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition Collateral by the Administrative Agent and the Secured DIP Creditors granted pursuant to the DIP Loan Documents and this Order, the repurchase of the Receivables Portfolio (including but not limited to the loss of value of the Pre-Petition Agent's Lien on the equity interests of DAF resulting from such repurchase) and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such aggregate diminution, the **"Adequate Protection Obligations"**).  As adequate protection, the Pre-Petition Agent and the Pre-Petition Secured Creditors are hereby granted the following adequate protection:

(a)     <u>Adequate Protection Liens</u>.  As security for the payment of the Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of the Pre-Petition

26

A00378

A0378

Secured Creditors), is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (x) the security interests and liens granted to the Administrative Agent for the benefit of the Secured DIP Creditors in this Order and pursuant to the DIP Loan Documents and any liens on the Collateral to which such liens so granted to the Administrative Agent are junior and (y) the Carve-Out (the **"Adequate Protection Liens"**);

(b) <u>Section 507(b) Claim</u>. To the extent the Adequate Protection Liens are not adequate to protect against the diminution in value of the Pre-Petition Collateral, that part of the Adequate Protection Obligations that are not satisfied in full from the proceeds of property subject to the Adequate Protection Liens shall be an allowed administrative expense claim with priority under sections 503(b) and 507(b) of the Bankruptcy Code over all administrative expenses of the kind specified in section 503(b) or 507(a) of the Bankruptcy Code, subordinate only to (x) the Carve-Out and (y) the DIP Obligations (without the requirement to file any motion or pleading or to make any demand); *provided, however*, that the Pre-Petition Agent and the Pre-Petition Secured Creditors shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under sections 503(b) and 507(b) of the Bankruptcy Code granted hereunder or under the Pre-Petition Security Agreement unless and until the DIP Obligations have indefeasibly been paid in cash in full;

(c) <u>Interest, Fees and Expenses</u>. The Pre-Petition Secured Creditors shall receive from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the Pre-Petition Secured Indebtedness and letter of credit fees at the applicable rates provided for in the

A00379

A0379

Pre-Petition Documents, and all other accrued and unpaid fees and disbursements payable to or for the benefit of the Pre-Petition Secured Creditors under the Pre-Petition Documents and incurred prior to the Petition Date including, but not limited to, fees owed and amounts to be paid or reimbursed for counsel, financial and other consultants for the Pre-Petition Agent pursuant to Section 8.04 of the Five-Year Credit Agreement Dated as of March 4, 2005, among Dana Corporation as borrower, and the banks, financial institutions and other institutional lenders as lenders, and issuers of letters of credit listed on the signature pages thereof as issuers, and Citicorp USA, Inc. as administrative agent (the **"Pre-Petition Credit Agreement Agent"**), and Deutsche Bank Securities Inc. and Bank of America, N.A. as syndication agents, and JPMorgan Chase Bank, N.A. and SunTrust Bank as documentation agents, and Citigroup Global Markets Inc. as lead arranger and book manager (the **"Pre-Petition Credit Agreement"**); (ii) the monthly payment of current interest and letter of credit fees at the applicable non-default rates pursuant to the applicable Pre-Petition Document (including interest calculated at the Base Rate (as defined in the Pre-Petition Credit Agreement) pursuant to Section 2.09(e) of the Pre-Petition Credit Agreement), and all other accrued and unpaid fees and disbursements (including, but not limited to, reasonable fees owed to the Pre-Petition Agent and the Pre-Petition Credit Agreement Agent), *provided* that the Pre-Petition Secured Creditors reserve their rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), and for the payment of any other amounts provided for in the Pre-Petition Documents, and this Order is without prejudice to the rights of the Debtors or any other party to contest any such assertion; and (iii) current cash payments of all reasonable fees and disbursements of professionals (including, but not limited to, the reasonable fees and

A00380

A0380

disbursements of counsel and internal and third-party consultants, including financial consultants

and auditors) for the Pre-Petition Agent and the Pre-Petition Credit Agreement Agent;

     (d)     <u>Monitoring of Collateral</u>. The Pre-Petition Agent (for the benefit of the Pre-

Petition Secured Creditors) shall be permitted to retain expert consultants and financial advisors

at the expense of the Debtors, which consultants and advisors shall be given reasonable access

for purposes of monitoring the business of the Debtors and the value of the Collateral; and

     (e)     <u>Information</u>. The Debtors shall provide the Pre-Petition Agent with any written

financial information or periodic reporting that is provided to, or required to be provided to, the

Administrative Agent or the Lenders.

     22.     *Reservation of Rights of Pre-Petition Secured Creditors*. Under the

circumstances and given that the above described Adequate Protection Obligations are consistent

with the Bankruptcy Code, including section 506(b) thereof, this Court finds that the Adequate

Protection Obligations provided herein are reasonable and sufficient to protect the interests of the

Pre-Petition Secured Creditors. Except as expressly provided herein, nothing contained in this

Order (including, without limitation, the authorization of the use of any Cash Collateral) shall

impair or modify any rights, claims or defenses available in law or equity to the Pre-Petition

Agent, any Pre-Petition Secured Creditor, the Administrative Agent or any Lender, including,

without limitation rights of a party to a swap agreement, securities contract, commodity contract,

forward contract or repurchase agreement with a Debtor to assert rights of set-off or other rights

with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).

     23.     *Perfection of DIP Liens and Adequate Protection Liens*. (a) This Order

shall be sufficient and conclusive evidence of the validity, perfection, and priority of (i) the

Administrative Agent's Liens (for the ratable benefit of the Secured DIP Creditors) upon the

A00381

A0381

Collateral to secure all DIP Obligations and (ii) the Pre-Petition Agent's Adequate Protection

Liens (for the ratable benefit of the Pre-Petition Secured Creditors), without the necessity of

filing or recording any financing statement, mortgage or other instrument or document that may

otherwise be required under the law of any jurisdiction or the taking of any other action to

validate or perfect the DIP Liens of the Administrative Agent or the Adequate Protection Liens

of the Pre-Petition Agent, or to entitle the Administrative Agent, the Secured DIP Creditors, the

Pre-Petition Agent or the Pre-Petition Secured Creditors to the priority granted herein (including,

in respect of cash, any requirement that the Administrative Agent, the Secured DIP Creditors, the

Pre-Petition Agent or the Pre-Petition Secured Creditors have possession of or dominion and

control over, any such cash in order to perfect an interest therein); *provided* that, upon the

request of the Administrative Agent or the Pre-Petition Agent in accordance with the terms of

this Order, the Debtors may execute and the Administrative Agent and the Pre-Petition Agent

may file or record financing statements or other instruments to evidence and to perfect the Liens

authorized hereby; and *provided further* that no such filing or recordation shall be necessary or

required in order to create or perfect any such Lien.

(b)     In the discretion of the Administrative Agent, a certified copy of this Order may

be filed with or recorded in, in addition to or in lieu of a mortgage, financing statement or similar

perfection document, any recording officer designated to file financing statements or with any

registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal

property.

(c)     Any provision of any lease or other license, contract or other agreement that

requires (i) the consent or approval of one more landlords or other parties or (ii) the payment of

any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell,

A00382

A0382

assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the Secured DIP Creditors in accordance with the terms of the DIP Loan Agreement or this Order.

24.    *Preservation of Rights Granted Under the Order.*  (a)  Except for the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Administrative Agent, the Secured DIP Creditors or to the Pre-Petition Agent and the Pre-Petition Secured Creditors, respectively, shall be granted or allowed while any portion of the DIP Credit Facility (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations shall have been paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Loan Agreement, cash collateralized in accordance with the provisions of the DIP Loan Agreement) and the Adequate Protection Obligations shall have been paid in full, the Debtors agree not to seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral under this Order, if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the Administrative Agent, or with respect to the rights and benefits

31

A00383

A0383

granted to the Pre-Petition Secured Creditors, the Pre-Petition Agent, and no such consent shall

be implied by any other action, inaction or acquiescence by the Administrative Agent or the Pre-

Petition Agent, or (ii) an order dismissing any of the Cases.  If an order dismissing any of the

Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order

shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the

Superpriority Claims, the DIP Liens (including the priming liens), security interests and

replacement security interests granted to the Administrative Agent and, as applicable, the Pre-

Petition Agent pursuant to this Order shall continue in full force and effect and shall maintain

their priorities as provided in this Order until all DIP Obligations and Adequate Protection

Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, DIP

Liens (including priming liens) and replacement security interests shall, notwithstanding such

dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security

interests referred to in (i) above.

       (c)     If any or all of the provisions of this Order are hereafter reversed, modified,

vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of

any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of

written notice by the Administrative Agent or the Pre-Petition Agent, as applicable, on the

effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability

of any lien or priority authorized or created hereby or pursuant to the DIP Loan Agreement with

respect to any DIP Obligations or Adequate Protection Obligations.  Notwithstanding any such

reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or

Adequate Protection Obligations incurred by the Debtors to the Administrative Agent, the

A00384
A0384

Secured DIP Creditors, the Pre-Petition Agent or the Pre-Petition Secured Creditors prior to the actual receipt of written notice by the Administrative Agent and Pre-Petition Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent and the Pre-Petition Secured Creditors shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Order or in the DIP Loan Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Administrative Agent and the Secured DIP Creditors granted by the provisions of this Order and the DIP Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Loan Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the Administrative Agent and the Secured DIP Creditors granted by the provisions of this Order and the DIP Loan Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

A00385

A0385

25.    *Effect of Stipulations on Third Parties.*  Subject to the reservation of rights

set forth in this paragraph 25, the stipulations and admissions contained in this Order, including,

without limitation, in paragraphs 3 and 21 of this Order, shall be binding upon the Debtors in all

circumstances.  The stipulations and admissions contained in this Order, including, without

limitation, in paragraphs 3 and 21 of this Order, shall be binding upon all other parties in interest,

including, without limitation, any Creditors' Committee, unless (a) a party in interest has timely

filed an adversary proceeding or contested matter (subject to the limitations contained herein,

including, *inter alia*, in paragraph 26) by no later than the date that is the later of 75 days after

the Petition Date or 60 days after the initial selection of counsel by the Creditors' Committee in

the Cases (or such later date (x) as has been agreed to, in writing, by the Pre-Petition Agent, the

Existing Receivables Facility Agents or the Credit Card Issuers, as applicable, in its sole

discretion or (y) as has been ordered by the Court) (i) challenging the validity, enforceability,

priority or extent of the Pre-Petition Secured Indebtedness, the Existing Corporate Credit Card

Obligations or the Pre-Petition Agent's or the Pre-Petition Creditors' liens on the Pre-Petition

Collateral or the Existing Receivables Facility or (ii) otherwise asserting or prosecuting any

avoidance actions or any other claims, counterclaims or causes of action, objections, contests or

defenses (collectively, **"Claims and Defenses"**) against the Pre-Petition Agent, any of the Pre-

Petition Secured Creditors, the Existing Receivables Facility Agents, any other party to the

Existing Receivables Facility or their respective affiliates, subsidiaries, directors, officers,

representatives, attorneys or advisors in connection with matters related to the Pre-Petition

Documents, the Pre-Petition Security Agreement, the Pre-Petition Secured Indebtedness, the Pre-

Petition Collateral, the Existing Receivables Facility or the Corporate Credit Card Program, as

applicable, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or

34

A00386

A0386

claim in any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding or contested matter is timely filed, (w) all payments made pursuant to this Order, including the repurchase of the Receivables Portfolio and the satisfaction of the Existing Corporate Credit Card Obligations, shall not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance for all purposes in the Cases and any subsequent chapter 7 or 11 cases of the Debtors, (x) the Pre-Petition Secured Indebtedness and all related obligations of the Debtors shall constitute as of the Petition Date allowed claims, not subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 or 11 cases of the Debtors, (y) (i) the Pre-Petition Agent's and the Pre-Petition Secured Creditors' liens on the Pre-Petition Collateral and (ii) the sale of the Receivables Portfolio and related transactions in connection with the Existing Receivables Facility shall be deemed, as applicable, to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance, and (z) (i) the Pre-Petition Secured Indebtedness and all related obligations of the Debtors, the Pre-Petition Agent's and the Pre-Petition Secured Creditors' liens on the Pre-Petition Collateral and the Pre-Petition Agent and the Pre-Petition Secured Lenders and (ii) the sale of the Receivables Portfolio and related transactions in connection with the Existing Receivables Facility, shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of the Debtors' estates, including, without limitation, any estate representative or any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If

A00387

A0387

any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 3 and 21 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter.  Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Pre-Petition Documents, the Pre-Petition Secured Indebtedness or the Existing Receivables Facility.

26.     *Limitation on Use of Financing Proceeds and Collateral.*
Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the Carve-Out may be used to (a)  object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Loan Documents, the Pre-Petition Security Agreement, the Pre-Petition Documents or the Existing Receivables Facility, or the liens or claims granted under this Order, the DIP Loan Documents, the Pre-Petition Documents or the Existing Receivables Facility, (b) challenge the repurchase of the Receivables Portfolio or the satisfaction of the Existing Corporate Credit Card Obligations, (c) assert any Claims and Defenses or other causes of action against the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Creditors, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility or their respective agents, affiliates, representatives, attorneys or advisors related to the Pre-Petition Documents, the Pre-Petition

A00388
A0388

Secured Indebtedness, the Existing Receivables Facility or the Corporate Credit Card Program,

(d) prevent, hinder or otherwise delay, the Administrative Agent's or the Pre-Petition Agent's

assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with

the DIP Loan Documents, the Pre-Petition Documents or this Order, (e) seek to modify any of

the rights granted to the Administrative Agent, the Secured DIP Creditors, the Pre-Petition

Agent, the Pre-Petition Secured Creditors or the Existing Receivables Facility Agents, any party

to the Existing Receivables Facility hereunder or under the DIP Loan Documents, the Pre-

Petition Documents, the Pre-Petition Security Agreement, the Receivables Sale Agreement or the

Receivables Funding Agreement in each of the foregoing cases without such parties' prior

written consent, or (f) pay any amount on account of any claims arising prior to the Petition Date

unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the

DIP Loan Agreement or otherwise approved by the Administrative Agent in its reasonable

discretion; provided that, notwithstanding anything to the contrary herein, any statutory

committee appointed by the U.S. Trustee shall be limited to $250,000, in the aggregate for all

such committees, to perform the investigations contemplated hereby.

       27.    If any provision of this Order is hereafter modified, vacated or stayed by

subsequent order of this or any other Court for any reason, such modification, vacation, or stay

shall not affect the validity of any liability incurred pursuant to this Order and prior to the later of

(a) the effective date of such modification, vacation, or stay, or (b) the entry of the order pursuant

to which such modification, vacation, or stay was established, nor the validity, priority, or

enforceability of any Lien granted by the Debtors to the Administrative Agent or the Pre-Petition

Agent.

A00389

A0389

28.     The DIP Loan Documents and the provisions of this Order, including all findings herein, shall be binding to the fullest extent permitted by applicable law upon all parties in interest in these cases including without limitation the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Creditors, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility, the Creditors' Committee and the Debtors and their respective successors and assigns and shall inure to the benefit of the Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility and the Debtors and their respective successors and assigns; *provided, however*, that the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent and the Pre-Petition Secured Creditors shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

29.     Any Agent's or any Lender's failure to seek relief or otherwise exercise its rights and remedies under the DIP Credit Facility or this Order shall not constitute a waiver of any of the Agents' or any Lender's rights hereunder, thereunder, or otherwise.

30.     In the event of any inconsistency between the terms and conditions of any DIP Loan Document and of this Order, the provisions of this Order shall govern and control.

31.     This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon execution hereof.

32.     The Final Hearing to consider the Motion and Final Order shall be held on March 29, 2006 at United States Bankruptcy Court, 1 Bowling Green, New York, New York, before the Honorable Burton R. Lifland, United States Bankruptcy Judge.  Following entry of this Order, the Debtors shall, on or before March 6, 2006, provide notice of the Motion, this

38

A00390

A0390

Order and the Final Hearing by telecopy, overnight delivery service, hand delivery or U.S. mail

to each of the Initial Notice Parties and, without duplication, to (i) if practicable, the applicable

state and local taxing authorities, (ii) parties who have filed a request for service prior to such

date, and (iii) other secured parties as shown on any UCC searches conducted prepetition.  Such

notice shall constitute good and sufficient notice of the Final Hearing.  The notice of approval of

this Order shall state that any party in interest objecting to the DIP Credit Facility or the terms of

the Final Order shall file written objections with the United States Bankruptcy Court Clerk for

the Southern District of New York no later than March 24, 2006, which objections shall be

served so that same are received by no later than 4:00 p.m. (prevailing Eastern time) on such date

by: (a) Jones Day, counsel to the Debtors, 222 E. 41st St., New York, NY  10017, Attn:  Corinne

Ball, Esq. and Richard H. Engman, Esq., and 901 Lakeside Ave., Cleveland, OH  44114, Attn:

Heather Lennox, Esq., (b) Shearman & Sterling LLP, counsel to the Administrative Agent, 599

Lexington Avenue, New York, New York 10022, Attn:  Douglas P. Bartner, Esq. and Marc B.

Hankin, Esq., (c) Shearman & Sterling LLP, counsel to the Pre-Petition Agent, 599 Lexington

Avenue, New York, New York 10022, Attn: Maura E. O'Sullivan, Esq.; and (d) the Office of the

United States trustee, and (e) attorneys for the Creditors' Committee once appointed.

     SO ORDERED by the Court this 3rd day of March, 2006.


          /s/Burton R. Lifland   
          United States Bankruptcy Judge

A00391

A0391

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                       :
In re                                                  :    Chapter 11
                                                       :
Dana Corporation, *et al.*,                            :    Case No. 06-10354 (BRL)
                                                       :
                                    Debtors.           :    (Jointly Administered)
                                                       :
------------------------------------------------------x

**AMENDED FINAL ORDER, PURSUANT TO SECTIONS 105(a), 362 AND 546(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b): (A) ESTABLISHING PROCEDURES FOR RESOLVING RECLAMATION CLAIMS ASSERTED AGAINST THE DEBTORS AND (B) GRANTING CERTAIN RELATED RELIEF**

This matter coming before the Court on the Motion of Debtors and Debtors in Possession, Pursuant to Sections 105(a), 362 and 546(a) of the Bankruptcy Code and Bankruptcy Rule 9019(b), for an Order: (A) Establishing Procedures for Resolving Reclamation Claims Asserted Against the Debtors and (B) Granting Certain Related Relief (the "Motion"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Motion and the Affidavit of Michael J. Burns filed in support of the Debtors' first day papers (the "Affidavit") and having considered the statements of counsel and evidence adduced with respect to the Motion at a hearing before the Court on March 6, 2006 (collectively, the "Hearing"); the Court having entered its Order granting the Motion on March 6, 2006 (Docket No. 82) (the "Prior Order"), which was subject to the right of the subsequently-appointed Official Committee of Unsecured Creditors (the "Committee") to review and interpose objections; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2),

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

ATI-2217391v3

A00392
A0392

(c) notice of the Motion and the Hearing was sufficient under the circumstances and (d) in light

of the circumstances, the requirements of Local Bankruptcy Rule 9013-1(b) that a separate

memorandum of law be filed in support of the Motion is waived; and the Committee having

reviewed the Motion and the Prior Order and having agreed with the Debtors on the

modifications set forth in this Order; and the Court having determined that the legal and factual

bases set forth in the Motion and the Affidavit and at the Hearing establish just cause for the

relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on the terms set forth herein.  The Prior Order

is amended and superseded in its entirety by this Order.

2.      The Debtors hereby are authorized to resolve all Reclamation Claims in

accordance with the exclusive Reclamation Procedures set forth below, which are hereby

approved and authorized in their entirety:

(a)     Any Seller asserting a Reclamation Claim must satisfy all procedural and
timing requirements under applicable law and demonstrate that it has
satisfied all legal elements entitling it to a right of reclamation;

(b)     Any Seller asserting a Reclamation Claim must deliver a copy of its
written reclamation demand to the Debtors, at 4500 Dorr Street, Toledo,
Ohio  43615, to the attention of Donald W. Commons, Esq..  Upon receipt
of any written reclamation demand, the Debtors shall serve a copy of this
Order upon the Seller at the address indicated in its reclamation demand.
Those parties previously served with a copy of the Prior Order shall be
served with a copy of this Order by the Debtors as soon as practicable
after the entry of this Order;

(c)     After receipt of all timely reclamation demands and an opportunity to
review such demands — including, without limitation, whether the
demand is subordinate to the prior rights of a holder of a security interest
in the applicable Goods or the proceeds thereof — but, absent further
order of the Court, no later than 120 days after the Petition Date (the
"Reclamation Notice Deadline"), the Debtors, after consultation with the
Committee, shall file a Notice (the "Reclamation Notice"), listing the
Reclamation Claims and amount, if any, that the Debtors believe to be

A00393

A0393

valid for each such Reclamation Claim. The Debtors shall provide a draft of the Reclamation Notice that is as complete as is practicable to the Committee ten days prior to filing it with the Bankruptcy Court. The Debtors will serve the Reclamation Notice on the following parties (collectively, the "Notice Parties"): (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), Manhattan Office, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Greg M. Zipes, Esq.); (ii) counsel to the Committee; (iii) each Seller that is subject to the Reclamation Notice at the address indicated in its reclamation demand; and (iv) counsel to the administrative agent (the "Agent") for the Debtors' proposed postpetition lenders;

(d)    If the Debtors fail to file the Reclamation Notice within the required period of time, any holder of a Reclamation Claim may bring a motion on its own behalf to seek relief with respect to its Reclamation Claim, but may not bring any such motion until the expiration of the Reclamation Notice Deadline;

(e)    All Notice Parties shall have the right and opportunity to object to the proposed allowance or disallowance of any asserted Reclamation Claim in the Reclamation Notice as set forth therein;

(f)    Any Reclamation Claim that is included in the Reclamation Notice and is not the subject of an objection within 30 days after service of the Reclamation Notice, shall be deemed a valid Reclamation Claim allowed by the Court in the amount identified in the Reclamation Notice; provided that all issues relating to the treatment of any such allowed Reclamation Claim shall be reserved;

(g)    Notwithstanding and without limiting the foregoing, the Debtors are authorized, but not required, to negotiate in their sole discretion with any Seller and to seek an agreement with any Seller to resolve its Reclamation Claim and the treatment thereof. If the Debtors and a Seller are able to agree on the validity, amount and/or treatment of the Seller's Reclamation Claim, the Debtors shall prepare a notice of settlement (the "Settlement Notice"), file it with the Court and serve such Settlement Notice on counsel to the Agent, counsel to the Committee, the U.S. Trustee and the Seller subject to the settlement at the addresses set forth in subsection (c) above. The Agent, the Committee and the U.S. Trustee shall have ten days from the date of the Settlement Notice to file with the Court an objection thereto (a "Settlement Objection"). Settlement Objections must be served so as to be received by the Debtors, the Debtors' counsel, the applicable Seller, counsel to the Agent, counsel to the Committee and the U.S. Trustee within the ten-day objection period;

(h)    If no Settlement Objection with respect to a Settlement Notice is timely filed and served, the Reclamation Claim at issue shall be allowed and

A00394

A0394

treated in accordance with the Settlement Notice without further order of the Court. If a Settlement Objection with respect to a Settlement Notice is timely filed and served, the parties may negotiate a consensual resolution of such objection to be incorporated in a stipulation filed with the Court (a "Settlement Stipulation"). Upon the filing of a Settlement Stipulation, the applicable Reclamation Claim shall be allowed and treated in accordance with the terms of the Settlement Stipulation without further order of the Court. If no consensual resolution of a Settlement Objection is reached within 30 days after the date of the Settlement Objection, unless such period is extended by mutual agreement of the Debtors and the party filing the Settlement Objection, the Debtors shall thereafter file a motion for the Court to resolve the Settlement Objection; and

(i)    Nothing in the Reclamation Procedures shall modify the automatic stay of section 362(a) of the Bankruptcy Code with respect to any Goods. As such, the Reclamation Procedures shall not alter in any way the procedures, standards and burden of proof applicable or required pursuant to section 362(a) of the Bankruptcy Code with respect to any attempt by a Seller to obtain possession of any of the Goods or otherwise to collect its Reclamation Claim. Without limiting the foregoing, no Seller shall be entitled to obtain possession of any Goods without first filing a motion with the Court for relief from the automatic stay or obtaining the prior express written consent of the Debtors. The Debtors and all other parties in interest reserve all rights to object to any such motion for relief from the automatic stay. Sellers shall be prohibited from seeking relief from the stay with respect to any reclamation demand until the time a Reclamation Notice is filed by the Debtors with respect to such reclamation demand or the Reclamation Notice Deadline otherwise expires.

3.    The foregoing Reclamation Procedures are the sole and exclusive method for the resolution and payment of reclamation claims asserted against the Debtors. All Sellers are prohibited from seeking any other means for the resolution or treatment of their Reclamation Claims, including, without limitation: (a) commencing adversary proceedings against the Debtors in connection with any reclamation claims; (b) seeking to obtain possession of any Goods; or (c) interfering with the delivery of any Goods to the Debtors, subject to further order of this Court.

4.    All adversary proceedings and contested matters in these cases asserting Reclamation Claims, whether currently pending or initiated in the future and whether or not

A00395
A0395

joined with other relief, except those proceedings initiated by the Debtors, the Committee or any other party in accordance with these Reclamation Procedures, are stayed and the claims asserted therein shall be resolved exclusively pursuant to the Reclamation Procedures set forth herein.

   5. Nothing contained herein or in the Motion shall limit the Debtors' ability to make payments to creditors in accordance with any other orders of this Court, regardless of whether such creditors have asserted Reclamation Claims.

Dated: New York, New York
   March 29, 2006

        /s/Burton R. Lifland
        UNITED STATES BANKRUPTCY JUDGE

A00396

A0396

McDERMOTT WILL & EMERY LLP
James M. Sullivan (JS-2189)
340 Madison Avenue
New York, New York  10017
Telephone:  (212) 547-5400
Facsimile:  (212) 547-5444

*Counsel for The Timken Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------ x

**In re**                                                            :  **Chapter 11**
                                                                       :
**DANA CORPORATION, et al.,**                  :  **Case No. 06-10354 (BRL)**
                                                                       :
          **Debtors.**                                        :  **(Jointly Administered)**
                                                                       :
                                                                       :
------------------------------------------------ x

### NOTICE OF DEMAND FOR RECLAMATION

          The Timken Corporation ("Timken"), by and through its undersigned counsel,

hereby gives notice that on March 10, 2006 Timken served written demand of its demand for

reclamation, a true and exact copy of which is attached hereto as Exhibit 1 (the "Notice").  The

goods subject to Timken's demand for reclamation are described in the Notice.

Dated: New York, New York
          March 10, 2006

                                                  Respectfully submitted,

                                                  McDERMOTT WILL & EMERY LLP

                                                  By:/s/  James M. Sullivan
                                                        James M. Sullivan (JS-2189)
                                                        340 Madison Avenue
                                                        New York, New York 10017
                                                        Telephone: (212) 547-5400
                                                        Facsimile: (212) 547-5444

                                                  *Counsel for The Timken Corporation*

NYK 1026771-1.064980.0025

A00397

A0397

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

James M. Sullivan
Attorney at Law
jmsullivan@mwe.com
212.547.5477

March 10, 2006

VIA EMAIL AND REGULAR MAIL

Mr. Jeffrey Wawrzyniak
Dana Corporation
4500 Dorr Street
Toledo, OH 43615
EMAIL: jeff.wawrzyniak@dana.com

Re:    In re Dana Corporation et al., Case No. 06-10354
       <u>Reclamation Claim of The Timken Corporation</u>

Dear Mr. Wawrzyniak:

This firm represents The Timken Corporation ("Timken") in connection with the above referenced matter. Pursuant to Bankruptcy Code Section 546(c), 11 U.S.C. Section 546(c), Timken hereby demands reclamation of all its products received by the above referenced debtors within the applicable statutory reclamation period, or the proceeds thereof, including but not limited to all products that are identified on Exhibits A (Automotive), B (Industrial), and C (Steel) attached hereto with a value of no less than $9,029,409. Timken demands an immediate inventory from you of all products and all other items subject to reclamation pursuant to this Notice and an accounting of the proceeds of any such products or items that may be, or may have been, sold to a third party. Timken will provide additional documentation supporting the claim upon request.

Sincerely,

James M. Sullivan

Enclosure

NYK 1026765-1.064980.0025

U.S. practice conducted through McDermott Will & Emery LLP.
340 Madison Avenue  New York, New York  10017-4613  Telephone: 212.547.5400  Facsimile: 212.547.5444  www.mwe.com

A00398
A0398