UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑x

In re                                          :

                                               :     Chapter 11 Case Nos.

                                               :

DANA CORPORATION, *et al.*,                    :     06-10354 (BRL)

                                               :

Debtors.[1]                                    :     (Jointly Administered)

                                               :

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑x

### FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 AND (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Upon the motion, dated March 3, 2006 (the "**Motion**"), of Dana Corporation (the "**Borrower**" or "**Dana**"), and all of its affiliated debtors that have commenced chapter 11 cases and are debtors in these jointly administered chapter 11 cases (such affiliates, together with any entities that subsequently commence jointly administered chapter 11 cases (the "**Cases**") and become guarantors under the DIP Loan Agreement (as defined below), the "**Guarantors**"), as debtors and debtors in possession (collectively, the "**Debtors**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rules 2002, 4001

---

[1]    In addition to Dana Corporation, the following entities are debtors in these jointly administered cases: Dakota New York Corp., Brake Systems, Inc., BWDAC, Inc., Coupled Products, Inc., Dana Atlantic LLC, Dana Automotive Aftermarket, Inc., Dana Brazil Holdings I LLC, Dana Brazil Holdings LLC, Dana Information Technology LLC, Dana International Finance Inc., Dana International Holdings, Inc., Dana Risk Management Services, Inc., Dana Technology Inc., Dana World Trade Corporation, Dandorr L.L.C., Dorr Leasing Corporation, DTF Trucking, Inc., Echlin-Ponce, Inc., EFMG LLC, EPE, Inc., ERS LLC, Flight Operations, Inc., Friction Inc., Friction Materials, Inc., Glacier Vandervell Inc., Hose & Tubing Products, Inc., Lipe Corporation, Long Automotive LLC, Long Cooling LLC, Long USA LLC, Midland Brake, Inc., Prattville Mfg., Inc., Reinz Wisconsin Gasket LLC, Spicer Heavy Axle & Brake, Inc., Spicer Heavy Axle Holdings, Inc., Spicer Outdoor Power Equipment Components LLC, Torque-Traction Integration Technologies, LLC, Torque-Traction Manufacturing Technologies, LLC, Torque-Traction Technologies, LLC, United Brake Systems Inc.

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking,

pursuant to the interim order (the "**Interim Order**"):

        (a)  authority to execute and enter into that certain Senior Secured Superpriority

Debtor-in-Possession Credit Agreement dated as of March 3, 2006, as to be amended by

the amendment substantially in the form of Amendment No. 1 to the Senior Secured

Superpriority Credit Agreement (as so amended, the "**DIP Loan Agreement**"), a copy of

which was filed with the Court prior to the commencement of the Final Hearing (as

defined below), among the Borrower, the Guarantors, Citicorp North America, Inc., as

Administrative Agent (the "**Administrative Agent**"), Bank of America, N.A. and

JPMorgan Chase Bank, N.A., as Co-Syndication Agents (together with the

Administrative Agent, the "**Agents**"), acting as Agents for themselves, Citicorp North

America, Inc., as Initial Swing Line Lender (the "**Initial Swing Line Lender**"), and

Bank of America, N.A., Citicorp North America, Inc. and JPMorgan Chase Bank, N.A.,

as Initial Issuing Banks (the "**Initial Issuing Banks**"), and a syndicate of financial

institutions (together with the Agents, the Initial Swing Line Lender and the Initial

Issuing Banks, the "**Lenders**"), to be arranged by Citigroup Capital Markets Inc., J.P.

Morgan Securities Inc. and Banc of America Securities LLC, as Joint Lead Arrangers and

Joint Bookrunners, substantially in the form annexed to the Motion as Exhibit A, and all

other documents, agreements or instruments in connection therewith or related thereto

(together with the DIP Loan Agreement, as any of the foregoing may be amended or

modified from time to time in accordance with the terms of this Final Order (as defined

below), collectively, the "**DIP Loan Documents**"), which, if approved on a final basis,

would provide the Debtors with postpetition secured credit of up to $1,450,000,000 (the

A00494

A0494

"**DIP Facility**") and to perform such other and further acts as may be contemplated by, or required in connection with, the DIP Loan Documents;

(b) authority to immediately obtain revolving loans, swing line loans and letters of credit under the DIP Facility up to an aggregate principal or face amount of $800,000,000 to (i) allow certain of the Debtors to repurchase the Receivables Portfolio (as defined below) under the Existing Receivables Facility (as defined below) and satisfy the Existing Corporate Credit Card Obligations (as defined below) in accordance with the terms of the Corporate Credit Card Program (as defined below), both of which would constitute an "Extraordinary Provision" (an "**Extraordinary Provision**") as such term is used and defined in the General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "**Court's Guidelines**"), (ii) pay costs and expenses in connection with such repurchase and satisfaction set forth in subparagraph (i), the DIP Loan Documents and the Cases, including but not limited to any and all fees to be paid upon the Effective Date (as defined in the DIP Loan Agreement) under the DIP Loan Documents and (iii) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations of borrowings under the DIP Loan Documents), subject, however, to the right of any statutory committee appointed in the Cases (the "**Creditors' Committee**"), if any, to challenge such repurchase or satisfaction pursuant to the provisions of paragraphs 25 and 26 of the Interim Order;

(c) authority, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, to grant senior first-priority Liens (as defined in the DIP Loan Agreement) to the Administrative Agent (for the ratable benefit of the Lenders and the

A00495

A0495

other holders (the **"Other DIP Obligees"**) of DIP Obligations (as defined below)) upon

all property of the Debtors' estates (excluding certain Excluded Property (as defined

below)) including property that presently is collateral securing the Pre-Petition Secured

Indebtedness (as defined below), subject to the Carve-Out (as defined below), which

would constitute an Extraordinary Provision under the Court's Guidelines;

      (d) authority, pursuant to section 364(c)(1) of the Bankruptcy Code, to grant a

Superpriority Claim (as defined below) to the Administrative Agent (for the ratable

benefit of the Lenders and the Other DIP Obligees (collectively, the **"Secured DIP**

**Creditors"**)) with priority over any and all administrative expenses, other than the

Carve-Out;

      (e) authority to use Cash Collateral (as defined below);

      (f) authority, pursuant to sections 361, 363(e), 364(c)(1), 364(c)(3), and 507(b) of

the Bankruptcy Code, to grant second priority liens and incur an unliquidated

administrative expense in order to adequately protect the Pre-Petition Secured Creditors

(as defined below), for, inter alia, the priming of their Liens, the continued use of their

Cash Collateral, the repurchase of the Receivables Portfolio and all use and diminution in

the value of the Pre-Petition Collateral (as defined below);

      (g) permission to allow the Lenders to accelerate the maturity of all Borrowings

(as defined in the DIP Loan Agreement) and terminate their Commitments (as defined in

the DIP Loan Agreement) upon (a) a Change of Control (as such term is defined in the

DIP Loan Agreement) or (b) the entry of an order or orders granting relief from the

automatic stay applicable under section 362 of the Bankruptcy Code to the holder or

holders of any security interest to permit foreclosure (or the granting of a deed in lieu of

A00496

A0496

foreclosure or the like) on any assets of any of the Debtors that have a value in excess of $10,000,000 in the aggregate, each of which would constitute Extraordinary Provisions under the Court's Guidelines;

(h) approval of certain stipulations by the Debtors with respect to the Pre-Petition Documents and the liens and security interests arising therefrom, which would constitute Extraordinary Provisions under the Court's Guidelines;

(i) the scheduling of a hearing (the "**Final Hearing**") to be held within 45 days of the entry of the Interim Order to consider the entry of a final order (this "**Final Order**") granting all of the relief requested in the Motion on a final basis, including (i) the relief granted in this Final Order, (ii) permitting the Debtors to waive any right to surcharge Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code, the waiver of which would constitute an Extraordinary Provision under the Court's Guidelines, and (iii) authority to borrow under the DIP Facility up to an aggregate principal amount of $1,450,000,000 to (A) refinance all pre-petition secured claims of the Pre-Petition Secured Creditors, which would constitute an Extraordinary Provision under the Court's Guidelines, (B) pay fees, costs and expenses in connection with the DIP Loan Documents and the Cases and (C) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations in the DIP Loan Documents and to the rights afforded a Creditors' Committee in this Final Order), which would constitute an Extraordinary Provision under the Court's Guidelines.

The interim hearing (the "**Interim Hearing**") has been held by this Court on March 3, 2006, at which the Court issued and entered the Interim Order (a) authorizing the

A00497

A0497

Borrower to borrow or obtain letters of credit up to an aggregate principal or face amount of $800,000,000 from the DIP Lenders as provided for in the Interim Order and (b) scheduling the Final Hearing to consider entry of an order authorizing the balance of the Financing, all as set forth in the Motion, the Interim Order, this Final Order and the loan documentation filed with the Court; and

the Final Hearing having been held by this Court on March 29, 2006 at 10:00 a.m.; and

due and appropriate notice of the Motion, the relief requested therein and the Final Hearing having been served by the Debtors on the fifty largest unsecured creditors of the Debtors, on the Administrative Agent, the DIP Lenders, the Pre-Petition Agent, the indenture trustee for the Debtors' senior noteholders, counsel to the Creditors' Committee, counsel to a certain ad hoc committee of holders of Dana notes[2] (the **"Ad Hoc Noteholders' Committee"**) counsel to known holders of the pre-petition liens against the Debtors' property, the lessors of non-residential real property to the Debtors and the United States Trustee for the Southern District of New York; and

objections to the Motion having been filed by Electric Plant Board of Glasgow, Kentucky (Docket No. 498), KeyBank National Association (Docket No. 608), Escambia County, Florida Tax Collector (Docket No. 619) and The Martinez Group, Inc. (Docket No. 624) (and any other objections filed or raised at the Final Hearing, collectively, the "Objections"), and

---

[2]    The membership of the Ad Hoc Noteholders' Committee is set forth in the Verified Statement of Strook & Strook & Lavan Pursuant to Bankruptcy Rule 2019 filed on March 22, 2006, as may be amended from time to time. The Verified Statement represents that, as of the date thereof, the members of the Ad Hoc Noteholders' Committee hold approximately 41% of the aggregate outstanding principal amount of the Debtors' bond obligations.

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00498

A0498

a response to the Motion having been filed by Bendix Spicer Foundation Brake LLC (Docket

No. 621); and

upon the record made by the Debtors at the Interim Hearing and the Final Hearing

and after due deliberation and consideration and sufficient cause appearing therefore;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334,

over the Cases, and over the persons and property affected hereby.  Consideration of the Motion

constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for

the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and

Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014.  Venue of the Cases in this Court is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Under the circumstances, the notice given by the Debtors of the Motion,

the Interim Hearing and the Final Hearing constitutes due and sufficient notice thereof and

complies with Bankruptcy Rules 4001(b), (c) and (d).

3.      *Debtors' Stipulations.*  Without prejudice to the rights of any other party

(but subject to the limitations thereon and the reservation of the Debtors' rights continued in

paragraph 25 below) the Debtors, for themselves and not for their estates, admit, stipulate, and

agree that:

(a)      (i) As of March 3, 2006 (the **"Petition Date"**), the Borrower and the Guarantors

(other than Dakota New York Corp. and Dana Information Technology LLC) were indebted and

liable to the Pre-Petition Secured Creditors (as defined below), without defense, counterclaim or

offset of any kind, (A) in the aggregate principal amount of not less than approximately $381

million for loans made, credit extended, obligations and letters of credit issued and drawn upon,

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00499

A0499

and (B) in respect of undrawn letters of credit having a maximum exposure of not less than approximately $117 million, in each case under the Pre-Petition Documents (as defined in the DIP Loan Agreement), pursuant to and in accordance with the terms of, the Pre-Petition Documents, plus, in each case, interest thereon and fees, expenses (including any reasonable attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Pre-Petition Documents), charges and other obligations incurred in connection therewith as provided in the Security Agreement, dated as of November 18, 2005 (the **"Pre-Petition Security Agreement"**), from Dana Corporation and the other grantors referred to therein to Citicorp USA, Inc., as Administrative Agent (the **"Pre-Petition Agent"**), under the Pre-Petition Documents, and the applicable Pre-Petition Document (all such indebtedness set forth in (i), the **"Pre-Petition Secured Indebtedness,"** and the persons from time to time holding such indebtedness, the **"Pre-Petition Secured Creditors"**), (ii) the Pre-Petition Secured Indebtedness constitutes the legal, valid and binding obligation of such Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (iii) no portion of the Pre-Petition Secured Indebtedness is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-Petition Secured Creditors, the Pre-Petition Agent under the Pre-Petition Documents, and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys, in each case in connection with the Pre-Petition Secured Indebtedness.

A00500

A0500

(b)    The liens and security interests granted to the Pre-Petition Agent pursuant to and

in connection with the Pre-Petition Security Agreement, including, without limitation, all

security agreements, pledge agreements, mortgages, deeds of trust, control agreements and other

security documents executed by any of the Debtors in favor of the Pre-Petition Agent, for its

benefit and for the benefit of the Pre-Petition Secured Creditors) in connection with the Pre-

Petition Documents, are (i) valid, binding, perfected, enforceable, first-priority liens and security

interests in the tangible and intangible property constituting the Pre-Petition Collateral,

including, as more fully described in the Pre-Petition Security Agreement, the Debtors'

machinery and equipment, inventory, receivables (subject to the Intercreditor Agreement

described below) and equity interests in Dana Asset Funding LLC ("**DAF**"), (ii) not subject to

avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable

nonbankruptcy law and (iii) subject and subordinate only to (A) the Liens of the Secured DIP

Creditors, (B) the Carve-Out and (C) valid, perfected and unavoidable liens permitted under the

Pre-Petition Security Agreement to the extent such permitted liens are senior to or pari passu

with the liens of the Pre-Petition Agent on the Pre-Petition Collateral.

(c)    The aggregate value of the Pre-Petition Collateral exceeds the aggregate amount

of the Pre-Petition Secured Indebtedness;

(d)    The Debtors sold, assigned and transferred to DAF all of their right, title and

interest in and to certain accounts receivable and other related rights (the "**Receivables

Portfolio**") pursuant to that certain Amended and Restated Purchase and Contribution

Agreement, dated as of April 15, 2005 (as amended, the "**Receivables Sale Agreement**"). DAF,

in turn, sold, assigned and transferred its interest in the Receivables Portfolio pursuant to the

Amended and Restated Receivables Purchase Agreement, dated as of April 15, 2005 (as

A00501

A0501

amended, the "**Receivables Funding Agreement**" and together with the Receivables Sale

Agreement, the "**Existing Receivables Facility**"), among DAF, Dana as collection agent, Falcon

Asset Securitization Corporation and Variable Funding Capital Company LLC (as assignee of

Blue Ridge Asset Funding Corporation), as conduit purchasers, Wachovia Bank, National

Association, as a committed purchaser and VFCC Agent (the "**VFCC Agent**") and JP Morgan

Chase Bank, N.A. as a committed purchaser, as Falcon Agent and as Program Agent (the

"**Program Agent**" and together with the VFCC Agent, the "**Existing Receivables Facility**

**Agents**"). As of the Petition Date, approximately $210,000,000 was outstanding under the

Existing Receivables Facility, plus all interest, fees, expenses, charges and other obligations

incurred in connection therewith as provided in the Existing Receivables Facility.

(e)       The Pre-Petition Agent, the Program Agent and the VFCC Agent are parties to

that certain Intercreditor Agreement, dated as of November 18, 2005 (the "**Intercreditor**

**Agreement**"), under which, in exchange for the agreement of the Program Agent and the VFCC

Agent to permit the pledge of the stock of DAF in favor of the Pre-Petition Agent, the Pre-

Petition Agent agreed that its Lien on receivables and related assets under the Existing

Receivables Facility would not attach unless and until the Existing Receivables Facility was

terminated and all outstanding amounts repaid.

(f)  ·     The Debtors and certain of the Debtors' direct and indirect subsidiaries, including

certain non-Debtor subsidiaries, in the ordinary course of their businesses use credit cards issued

pursuant to the (i) Citibank Business Card Purchasing Card Agreement, dated August 31, 1994,

between Dana Corporation and Citibank (South Dakota), N.A. and Dana Corporation,

(ii) Citibank Purchasing Card Agreement, dated January 18, 2005,  between Citibank

International plc and Dana Corporation, and (iii) Citibank Corporate Card Agreement, dated

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

10

A00502

A0502

January 24, 2005, between Citibank International plc and Dana Corporation, each as amended, restated, or otherwise modified from time to time (the "**Corporate Credit Card Program**").

(g)    The Borrower is the obligor under the Corporate Credit Card Program, and as of the Petition Date, is indebted and liable to the issuers of the credit cards thereunder (collectively, the "**Credit Card Issuers**"), without defense, counterclaim or offset of any kind, for obligations arising under the Corporate Credit Card Program in the aggregate principal amount of not less than $9,000,000 plus all interest, fees, expenses, charges and other obligations incurred in connection therewith as provided under the Corporate Credit Card Program (the "**Existing Corporate Credit Card Obligations**"). The Existing Corporate Card Obligations qualify as Pre-Petition Secured Indebtedness and are secured by the Pre-Petition Collateral pursuant to the Pre-Petition Security Agreement.

4.    *Findings Regarding the Financing.*

(a)    An immediate need exists for the Debtors to obtain funds and financial accommodations and use Cash Collateral with which to continue their operations, meet their payroll and other necessary, ordinary course business expenditures, acquire goods and services, and administer and preserve the value of their estates. The ability of the Debtors to finance their operations and successfully reorganize requires the availability of additional working capital and use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates and their creditors.

(b)    The Debtors are unable to obtain unsecured credit allowable only as an administrative expense allowable under section 503(b)(1) of the Bankruptcy Code.

(c)    The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code except under the terms and

A00503

A0503

conditions provided in the Interim Order, this Final Order and the DIP Loan Documents.  The

Debtors are unable to obtain credit for borrowed money under sections 364(c)(2) and 364(c)(3)

without the Debtors' granting to the Administrative Agent (for the ratable benefit of the Secured

DIP Parties) (i) Liens on various of the assets of the Debtors pursuant to sections 364(c)(2),

364(c)(3) and 364(d)(1) of the Bankruptcy Code and (ii) superpriority administrative expense

claim status pursuant to section 364(c)(1) of the Bankruptcy Code, in each case as provided by

the Interim Order, this Final Order and the Loan Documents and subject to the Carve-Out.

       (d)      The ability of the Debtors to finance their operations and have available sufficient

working capital through the incurrence of indebtedness for borrowed money and other financial

accommodations and use Cash Collateral is vital to the Debtors' ability to preserve and maintain

their going concern value.

       (e)      The relief requested in the Motion is necessary, essential and appropriate for the

continued operation of the Debtors' businesses and the preservation of their estates.

       (f)      It is in the best interest of Debtors' estates to establish the DIP Credit Facility

contemplated by the DIP Loan Agreement and the other DIP Loan Documents.

       (g)      The terms and conditions of the DIP Credit Facility, as described in the Motion

and as set forth at the hearing on the Motion, including those which provide for the payment to

the Agents and the Lenders of interest and fees related to the DIP Credit Facility at the times and

in the manner provided under the DIP Credit Facility, and the use of Cash Collateral are fair,

reasonable and the best available under the circumstances, reflect the Debtors' exercise of

prudent business judgment consistent with their fiduciary duties and constitute reasonably

equivalent value and fair consideration.

A00504

A0504

(h)     The DIP Loan Agreement was negotiated in good faith and at arm's length between the Debtors, on the one hand, and the Agents and the Lenders, on the other hand.  Credit to be extended under the DIP Credit Facility, including without limitation (i) all loans made to, and all letters of credit issued for the account of, the Debtors pursuant to the DIP Loan Agreement, (ii) any Obligations and all other Secured Obligations (each as defined in the DIP Loan Agreement), including any hedging obligations of the Debtors permitted under the DIP Loan Agreement and any Debt (as defined in the DIP Loan Agreement) permitted by Section 5.02(b)(iv) thereof, in each case owing to the Administrative Agent, any Lender or any of their respective banking affiliates and (iii) all post-petition obligations incurred by the Debtors under the Corporate Credit Card Program (all of the foregoing in clauses (i), (ii) and (iii) collectively, the **"DIP Obligations"**), shall be deemed to have been extended by the Administrative Agent, the Secured DIP Creditors and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(i)     Good and sufficient cause has been shown for the entry of this Final Order.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Among other things, the entry of this Final Order:  (i) will enable the Debtors to continue the operation of their business and avoid immediate and irreparable harm to the Debtors' estates; (ii) will permit the Debtors to meet payroll and other operating expenses; (iii) will enable the Debtors to obtain needed supplies and to pay employees; and (iv) is in the best interests of the Debtors, their creditors and their estates.  The financing arrangement

A00505

A0505

authorized hereunder is vital to avoid immediate and irreparable harm to the Debtors' estates.
Consummation of such financing therefore is in the best interests of the Debtors' estates.

     5.    *Authorization of the Financing and the DIP Loan Documents.*

(a)    The Debtors are authorized to:

(i)    establish the DIP Credit Facility;

(ii)    execute and deliver to the Lenders each of the DIP Loan Documents to which any Debtor is a party; and

(iii)    with respect to the Borrower, borrow up to an aggregate principal or face amount, inclusive of amounts authorized by the Interim Order, of $1,450,000,000 (plus interest, fees and other expenses provided for in the DIP Loan Documents) under the DIP Credit Facility, and the Guarantors are authorized to guarantee such borrowings, subject to the limitations of borrowings under the DIP Loan Documents, and in accordance with the terms of this Final Order and the DIP Loan Documents, which shall be used solely for purposes of (A) (1) repurchasing the Receivables Portfolio under the Existing Receivables Facility, (2) refinancing the Pre-Petition Secured Indebtedness and (3) satisfying the Existing Corporate Credit Card Obligations in accordance with the terms of the Corporate Credit Card Program (which are Extraordinary Provisions under the Court's Guidelines), (B) paying costs and expenses in connection with such uses and the Cases, including but not limited to the non-refundable payment of any and all fees to be paid under, and in accordance with the terms of, the DIP Loan Documents (including, but not limited to, the separate fee letter dated March 2, 2006, among the Borrower, Citigroup Global Markets Inc., J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Banc of America Securities LLC and Bank of America, N.A., which was described to this Court during the Interim Hearing and Final Hearing (the "**Fee Letter**")) and the

A00506

A0506

reasonable costs and expenses as may be due from time under the DIP Loan Documents, and (C) to provide financing for working capital, letters of credit, capital expenditures and other general corporate purposes of the Debtors (subject to any limitations of borrowings under the DIP Loan Documents).

(b)     The Debtors are hereby authorized and empowered, without further approval of this Court, to do and perform all acts and to make, execute and deliver all instruments and documents and any exhibits attached thereto (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the Liens described in and provided for by the DIP Loan Documents.  In addition, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by any Lender or any of their respective affiliates, *provided, however*, that nothing herein shall require any Lender or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(c)     The Debtors are further authorized and empowered, without further approval of the Court, to execute and deliver one or more amendments to the DIP Loan Agreement for, among other things, the purpose of (i) adding additional financial institutions as Lenders, and (ii) reallocating the commitments for the DIP Credit Facility among the Lenders, in each case in such form as the Debtors, the Administrative Agent and the Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Loan Agreement that do not shorten the maturity of the extension of credit thereunder or increase either the commitments, the rate of interest payable, or letter of credit fees payable thereunder,

A00507

A0507

provided that the Debtors serve the Creditors' Committee and the Ad Hoc Noteholders' Committee with notice of any modifications). Notwithstanding any other provision hereof, without further approval of the Court, amendments to the DIP Loan Document may be made at any time prior to the Successful Syndication (as defined in the Fee Letter), as contemplated by the Fee Letter (permitting certain modifications to the DIP Loan Agreement necessary or advisable to ensure a successful syndication).

  (d) The DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Loan Documents and this Final Order. No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

  6. *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of this Final Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the Administrative Agent for its own behalf and the benefit of the Secured DIP Creditors (all property identified in clauses (a), (b) and (c) below being collectively referred to as the **"Collateral"**), subject, only in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP Loan Agreement), to the payment of the Carve-Out (all such liens and security interests granted to the Administrative Agent, for its

A00508
A0508

benefit and for the benefit of the Secured DIP Creditors, pursuant to the Interim Order, this Final

Order and the DIP Loan Documents, the **"DIP Liens"**):

    (a)    <u>First Lien on Cash Balances and Unencumbered Property</u>. Pursuant to section

364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first

priority senior security interest as of the date of the Interim Order in and lien upon all pre-

petition and post-petition property of the Debtors that is not Excluded Property,[3] whether

existing on the Petition Date or thereafter acquired, to the extent not subject to valid, perfected

non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in

existence as of the Petition Date that are perfected subsequent to such date to the extent

permitted by section 546(b) of the Bankruptcy Code (collectively, **"Unencumbered Property"**),

including without limitation, all cash and cash collateral of the Debtors and any investment of

such cash and cash collateral, inventory, accounts receivable, other rights to payment whether

arising before or after the Petition Date, contracts, properties, plants, equipment, general

intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights,

trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the

proceeds of all the foregoing.

---

[3]    **"Excluded Property"** means (i) the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code, together with all proceeds thereof, (ii) property constituting withholdings required under any law (including but not limited to federal, state and local income, payroll and trust fund taxes and insurance payments of any nature, whether imposed on the employer or employee or otherwise) from any amounts due to any employee of a Debtor or Guarantor, and any withholdings from an employee considered a "plan asset" under Title I of ERISA (as defined in the DIP Loan Agreement), (iii) 34% of the equity interests in certain Foreign Subsidiaries (as defined in the DIP Loan Agreement) in accordance with, and subject to the provisions of, Section 9.01(e)(iii) of the DIP Loan Agreement, and (iv) trademarks consisting of United States intent-to-use trademark applications to the extent that, and solely during the period in which, the grant of a security interest therein would impair the validity or enforceability of such intent-to-use trademark applications under applicable federal law. For the avoidance of doubt, Excluded Property is not Collateral and the defined term "Collateral" shall not include "Excluded Property".

A00509
A0509

(b)    Liens Priming Pre-Petition Secured Creditors' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest as of the date of the Interim Order in and lien upon all pre-petition and post-petition property of the Debtors (not including Excluded Property, but including, without limitation, cash collateral, inventory, machinery, accounts receivable, other rights to payment whether arising before or after the Petition Date and the equity interests of DAF), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Pre-Prepetition Secured Indebtedness (including in respect of issued but undrawn letters of credit).  Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Creditors arising from current and future liens of the Pre-Petition Secured Creditors (including, without limitation, adequate protection liens granted hereunder), and shall be subject and subordinate to (i) the Carve-Out to the extent specifically provided for herein, (ii) any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, (iii) any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Secured Creditors become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (iv) statutory liens or security interests arising after the Petition Date and permitted under the DIP Credit Agreement that by operation of law would have priority over a previously perfected security interest.

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests as of the date of the Interim Order in and liens upon the all pre-petition and post-petition property of the Debtors (other than Excluded Property and the property described in clauses (a) and (b) of

A00510

A0510

this paragraph 6, as to which liens and security interests in favor of the Administrative Agent

will be as described in such clauses), whether now existing or hereafter acquired, that is subject

to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date, or

to valid and unavoidable liens in existence immediately prior to the Petition Date that are

perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code,

which security interests and liens in favor of the Administrative Agent and the Secured DIP

Creditors are immediately junior to such valid, perfected and unavoidable liens.

(d)    Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate Protection

Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that

is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation,

any liens or security interests granted in favor of any federal, state, municipal or other

governmental unit, commission, board or court for any liability of the Debtors, other than with

respect to any liens or security interests arising after the Petition Date and permitted under the

DIP Loan Agreement to be senior to the DIP Liens.

7.    *Superpriority Claim.*  In addition to the DIP Liens granted herein, all of

the DIP Obligations shall be an allowed administrative expense claim with priority, subject only

to the Carve-Out to the extent specifically provided for herein, under section 364(c)(1) of the

Bankruptcy Code and otherwise, over all administrative expense claims and unsecured claims

against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever,

including, without limitation, administrative expenses or other claims of the kinds specified in or

ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b),

546(c), 726, 1113 and 1114 of the Bankruptcy Code (the "**Superpriority Claim**"), whether or

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00511
A0511

not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (other than to the extent of any statutory liens or security interests arising after the Petition Date and permitted under the DIP Loan Agreement that by operation of law would have priority over a previously perfected security interest), which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof.

8.      All amounts applied to the payment of the DIP Obligations shall be applied thereto in the manner set forth in the DIP Loan Documents.

9.      The Debtors (i) hereby are authorized and directed to pay, upon notice to counsel to the Creditors' Committee and counsel to the Ad Hoc Noteholders' Committee, all reasonable costs, fees and out of pocket expenses of the Agents, including reasonable costs, fees and expenses incurred in connection with the negotiation, documentation and administration of the DIP Credit Facility and the matters set forth in this Final Order and all other matters arising in or in connection with the Cases, and all reasonable attorneys' fees and expenses and financial advisors' fees and expenses incurred by the Agents in connection therewith, and (ii) shall promptly reimburse, upon notice to counsel to the Creditors' Committee and counsel to the Ad Hoc Noteholders' Committee, the Agents for such other costs and expenses provided for in section 10.04(a) of the DIP Loan Agreement.  None of such costs and expenses shall be subject to the approval of the Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

10.      Each officer of the Debtors as may be so authorized by the Board of Directors of each of the Debtors, acting singly, is hereby authorized to execute and deliver each

A00512
A0512

of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

11.    The DIP Loan Agreement and each of the DIP Loan Documents, respectively, shall constitute and evidence the valid and binding obligations of each of the Debtors, which obligations shall be enforceable against each of the Debtors in accordance with their terms and the terms of this Final Order.

12.    Interest on the DIP Obligations under the DIP Credit Facility shall accrue at the rates (including applicable default rates) and shall be paid at the times as provided in the DIP Loan Documents.  All DIP Obligations under the DIP Credit Facility shall become due and payable, without notice or demand, on the Termination Date (as defined in the DIP Loan Agreement) in accordance with the terms of the DIP Loan Agreement.

13.    Without limiting the foregoing, except for the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 330 and 331 of the Bankruptcy Code that have been or may be incurred in these Cases, and no priority claims to the Collateral are, or will be, prior to or on a parity with the DIP Obligations or the Superpriority Claim.

14.    *Lien & Collateral Protections.*  The automatic stay imposed under section 362(a)(4) of the Bankruptcy Code is hereby lifted to permit (i) the Debtors to grant the DIP Liens and to perform the Debtors' liabilities and obligations to the Agents and the Lenders under the DIP Credit Facility, and (ii) the delivery by the Administrative Agent of an Enforcement Notice (as defined below) and the exercise of remedies by the Administrative Agent following an Event of Default in accordance with Paragraph 15 below.

A00513
A0513

(a)      Except as otherwise agreed in writing between the Debtors and the Administrative Agent, the Debtors shall use Advances (as defined in the DIP Loan Agreement), or proceeds of any Collateral only as provided in the DIP Loan Documents and this Final Order.  For purposes of this Final Order, "proceeds" of any Collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such Collateral as well as (i) any and all proceeds of any insurance, indemnity or warranty or guaranty payable to the Debtors from time to time with respect to any of such Collateral, (ii) any and all payments (in any form whatsoever) made or due and payable to the Debtors in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such Collateral by any governmental body, authority, bureau or agency (or any person under color of governmental authority) and (iii) any other payments, dividends, interest or other distributions on or in respect of any of such Collateral.

(b)      The Debtors shall be permitted to use Advances to (i) purchase any accounts receivable that were previously sold pursuant to the Existing Receivables Facility, (ii) refinance the Pre-Petition Secured Indebtedness and (iii) satisfy the Existing Corporate Credit Card Obligations in accordance with the terms of the Corporate Credit Card Program.

(c)      The Debtors shall not be permitted to make any payments on any pre-petition debt prior to the effective date of a plan of reorganization, except with respect to the pre-petition obligations as set forth in this Final Order or as otherwise provided in the First Day Orders (as defined in the DIP Loan Agreement), or as otherwise provided in the DIP Loan Agreement or to provide adequate protection or cure to any third party.

15.     *Protection of Lenders' Rights.*  (a)  So long as there are any borrowings or letters of credit or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters of credit are

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00514
A0514

outstanding) outstanding, the Lenders have any Commitment (as defined in the DIP Loan

Agreement) under the DIP Loan Agreement or any other DIP Obligations are outstanding, the

Pre-Petition Agent, the Pre-Petition Secured Creditors and the holders of Debtor Liens (as

defined below) shall (i) not take any action to foreclose upon or recover in connection with the

liens granted thereto pursuant to the Pre-Petition Security Agreement, other agreements, or

operation of law or this Final Order, or otherwise exercise remedies against any Collateral,

except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any

release of Collateral authorized under the DIP Loan Documents, (iii) not file any further

financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments, or otherwise take any action to perfect their security interests in the Collateral

unless, solely as to this clause (iii), the Administrative Agent files financing statements or other

documents to perfect the liens granted pursuant to this Final Order, or as may be required by

applicable state law to continue the perfection of valid and unavoidable liens or security interests

as of the Petition Date and (iv) not seek to terminate or modify the use of Cash Collateral, or

obtain additional or different adequate protection than as set forth in this Final Order.  Nothing

herein shall be read to permit the Pre-Petition Agent, the Pre-Petition Secured Creditors or the

holders of Debtor Liens to take any action in violation of the Bankruptcy Code or other

applicable law.  This paragraph 15(a) defines the relative rights of the Administrative Agent and

the Lenders, on the one hand, and the Pre-Petition Agent and the Pre-Petition Secured Creditors,

on the other, and is not intended to confer any rights on the Debtors.

          (b)      Upon the occurrence of an Event of Default and at any time thereafter

during the continuance thereof, the automatic stay provisions of section 362 of the Bankruptcy

Code are vacated and modified to the extent necessary to permit the Administrative Agent and

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00515

A0515

the Lenders to exercise, (i) immediately upon such occurrence, all rights and remedies under the DIP Loan Documents other than those rights and remedies against the Collateral as provided in clause (ii) below and (ii) with five (5) business days' prior written notice (an "**Enforcement Notice**") of any such occurrence, in each case given to the Borrower, the Debtors' counsel, counsel to any Creditors' Committee, counsel to the Ad Hoc Noteholders' Committee and the U.S. Trustee, all rights and remedies against the Collateral provided for in the DIP Loan Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Administrative Agent or any Lender). Such Enforcement Notice shall also be filed with the Court. In any hearing after the giving of the Enforcement Notice, the only issues that may be raised by any party (other than the Creditors' Committee and the Ad Hoc Noteholders' Committee) in opposition to the giving of the Enforcement Notice shall be whether, in fact, (i) an Event of Default has occurred and is continuing or (ii) such Event of Default is primarily due to, or primarily arises from, the willful misconduct of the Agents or the Lenders; *provided, further,* that, subject to the foregoing provisions of this subparagraph (b), the Debtors, the Pre-Petition Agent and the Pre-Petition Secured Creditors hereby waive their rights to seek relief including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent set forth in this Final Order or the DIP Loan Documents. In no event shall the Administrative Agent, the Lenders, the Pre-Petition Agent or the Pre-Petition Secured Creditors be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

        16.     (a)    The term "**Carve-Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States trustee under section 1930(a) of title 28 of the United States Code, (ii) all fees and expenses incurred by a trustee

A00516

A0516

under section 726(b) of the Bankruptcy Code and (iii) an amount not exceeding $20,000,000 in

the aggregate, which amount may be used after the occurrence and during the continuance of an

Event of Default, to pay fees or expenses incurred by the Borrower and any Creditors'

Committee in respect of (A) allowances of compensation for services rendered or reimbursement

or expenses awarded by the Bankruptcy Court to the Borrower's or any Creditors' Committee's

professionals, any chapter 11 trustee or examiners appointed in these cases, and (B) the

reimbursement of expenses incurred by Creditors' Committee members in the performance of

their duties that are allowed by the Bankruptcy Court; *provided, however,* that the Borrower and

each Guarantor shall be permitted to pay compensation and reimbursement of expenses allowed

and payable under sections 330 and 331 of the Bankruptcy Code and the Carve-Out shall not be

reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to

the extent ultimately allowed by the Bankruptcy Court) prior to the occurrence of an Event of

Default in respect of which the Carve-Out is invoked or any fees, expenses, indemnities or other

amounts paid to the Administrative Agent, the Lenders and their respective attorneys and agents

under the DIP Loan Documents or otherwise; and *provided, further,* that (x) nothing herein shall

be construed to impair the ability of any party to object to any of the fees, expenses,

reimbursement or compensation described in clauses (A) and (B) above and (y) following the

Termination Date cash or other amounts on deposit in the L/C Cash Collateral Account (as

defined in the DIP Loan Agreement), shall not be subject to the Carve-Out; and

(b)    So long as no Event of Default shall have occurred and be continuing under the

DIP Loan Agreement, the Debtors shall be permitted to pay administrative expenses of the kind

specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of business of

A00517

A0517

the Debtors, subject to the maximum amounts for such type of expenditures contained in the provisions of the DIP Credit Documents in the aggregate, as the same may be due and payable.

17.    Except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Administrative Agent or the Pre-Petition Agent, as applicable.

18.    Without limiting the provisions and protections of paragraph 17 above, if at any time prior to (i) the indefeasible repayment in full in cash of all DIP Obligations, and (ii) the termination of the Commitments, any Debtor or any trustee subsequently appointed shall obtain credit or incur debt pursuant to section 364(b), 364(c) or 364(d) of the Bankruptcy Code, then, except as permitted or contemplated by the DIP Loan Agreement, all of the consideration for such credit or debt shall immediately be applied to the indefeasible payment in full in cash of the DIP Obligations (including cash collateralization of outstanding letters of credit issued under the DIP Loan Agreement) in accordance with the DIP Loan Documents.

19.    *Cash Collateral.*  To the extent any funds of any Debtor who is a party to the Pre-Petition Documents were on deposit with the Pre-Petition Agent or the Pre-Petition Secured Creditors as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor who is a party to the Pre-Petition Documents with any Pre-Petition Secured Creditor immediately prior to the filing of the Debtors' bankruptcy petitions (the **"Petition Time"**) (regardless of whether, as of the Petition Time, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the **"Deposited Funds"**) are subject to rights of set-off.  By virtue of such set-off rights, the Deposited Funds are

A00518
A0518

subject to a lien in favor of such Pre-Petition Secured Creditors pursuant to sections 506(a) and

553 of the Bankruptcy Code. The cash of the Debtors party to the Pre-Petition Documents,

including, without limitation, the Deposited Funds or any other funds on deposit at the Pre-

Petition Secured Creditors as of the Petition Date, and any proceeds generated by the collection

of accounts receivable, sale of inventory or other disposition of the Pre-Petition Collateral

(including the Deposited Funds or any other funds on deposit with the Pre-Petition Secured

Creditors as of the Petition Date) are cash collateral of the Pre-Petition Secured Creditors within

the meaning of section 363(a) of the Bankruptcy Code. The Deposited Funds and all such

proceeds of Pre-Petition Collateral are referred to herein as "**Cash Collateral**." The Pre-Petition

Secured Creditors have objected to the use by the Debtors of the Pre-Petition Collateral,

including the Cash Collateral, except on the terms of this Final Order.

20.      *Use of Cash Collateral.* The Debtors are hereby authorized to use all Cash

Collateral of the Pre-Petition Secured Creditors, and the Pre-Petition Secured Creditors are

directed promptly to turn over to the Debtors all Cash Collateral received or held by them,

*provided* that the Pre-Petition Secured Creditors are granted adequate protection as hereinafter

set forth. The Debtors' right to use Cash Collateral shall terminate automatically on the

Termination Date.

21.      *Adequate Protection.* The Debtors acknowledge and stipulate that, during

the period prior to the Pre-Petition Secured Indebtedness being refinanced as authorized by this

Final Order and contemplated by the DIP Loan Documents, the Pre-Petition Secured Creditors

are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate

protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and

equal in amount to the aggregate diminution in value of the Pre-Petition Collateral, including,

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00519

A0519

without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition Collateral by the Administrative Agent and the Secured DIP Creditors granted pursuant to the DIP Loan Documents and this Final Order, the repurchase of the Receivables Portfolio (including but not limited to the loss of value of the Pre-Petition Agent's Lien on the equity interests of DAF resulting from such repurchase) and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such aggregate diminution, the **"Adequate Protection Obligations"**). Prior to the refinancing of the Pre-Petition Secured Indebtedness, the Pre-Petition Agent and the Pre-Petition Secured Creditors are hereby granted the following adequate protection; *provided, however*, that the adequate protection described in clause (c)(iii) of this paragraph 21 shall be provided for the period set forth therein:

(a)    Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of the Pre-Petition Secured Creditors), is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (x) the security interests and liens granted to the Administrative Agent for the benefit of the Secured DIP Creditors in this Final Order and pursuant to the DIP Loan Documents and any liens on the Collateral to which such liens so granted to the Administrative Agent are junior and (y) the Carve-Out (the **"Adequate Protection Liens"**);

A00520
A0520

(b)    Section 507(b) Claim. To the extent the Adequate Protection Liens are not adequate to protect against the diminution in value of the Pre-Petition Collateral, that part of the Adequate Protection Obligations that are not satisfied in full from the proceeds of property subject to the Adequate Protection Liens shall be an allowed administrative expense claim with priority under sections 503(b) and 507(b) of the Bankruptcy Code over all administrative expenses of the kind specified in section 503(b) or 507(a) of the Bankruptcy Code, subordinate only to (x) the Carve-Out and (y) the DIP Obligations (without the requirement to file any motion or pleading or to make any demand); *provided, however*, that the Pre-Petition Agent and the Pre-Petition Secured Creditors shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under sections 503(b) and 507(b) of the Bankruptcy Code granted hereunder or under the Pre-Petition Security Agreement unless and until the DIP Obligations have indefeasibly been paid in cash in full;

(c)    Interest, Fees and Expenses. The Pre-Petition Secured Creditors shall receive from the Debtors, upon notice to counsel to the Creditors' Committee and counsel to the Ad Hoc Noteholders' Committee, (i) immediate cash payment of all accrued and unpaid interest on the Pre-Petition Secured Indebtedness and letter of credit fees at the applicable rates provided for in the Pre-Petition Documents, and all other accrued and unpaid fees and disbursements payable to or for the benefit of the Pre-Petition Secured Creditors under the Pre-Petition Documents and incurred prior to the Petition Date including, but not limited to, reasonable fees owed and amounts to be paid or reimbursed for counsel, financial and other consultants for the Pre-Petition Agent pursuant to Section 8.04 of the Five-Year Credit Agreement Dated as of March 4, 2005, among Dana Corporation as borrower, and the banks, financial institutions and other institutional lenders as lenders, and issuers of letters of credit listed on the signature pages thereof as issuers,

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC
29

A00521
A0521

and Citicorp USA, Inc. as administrative agent (the **"Pre-Petition Credit Agreement Agent"**),

and Deutsche Bank Securities Inc. and Bank of America, N.A. as syndication agents, and

JPMorgan Chase Bank, N.A. and SunTrust Bank as documentation agents, and Citigroup Global

Markets Inc. as lead arranger and book manager (the **"Pre-Petition Credit Agreement"**);

(ii) the monthly payment of current interest and letter of credit fees at the applicable non-default

rates pursuant to the applicable Pre-Petition Document (including interest calculated at the Base

Rate (as defined in the Pre-Petition Credit Agreement) pursuant to Section 2.09(e) of the Pre-

Petition Credit Agreement), and all other accrued and unpaid fees and disbursements (including,

but not limited to, reasonable fees owed to the Pre-Petition Agent and the Pre-Petition Credit

Agreement Agent), *provided* that the Pre-Petition Secured Creditors reserve their rights to assert

claims for the payment of additional interest for the post-petition period calculated at any other

applicable rate of interest (including, without limitation, default rates), and for the payment of

any other amounts provided for in the Pre-Petition Documents, and this Final Order is without

prejudice to the rights of the Debtors or any other party to contest any such assertion; and

(iii) current cash payments of all reasonable fees and disbursements of professionals (including,

but not limited to, the reasonable fees and disbursements of counsel and internal and third-party

consultants, including financial consultants and auditors) for the Pre-Petition Agent and the Pre-

Petition Credit Agreement Agent during the period ending the latest of (A) the conclusion of the

Challenge Period (as defined below), (B) the conclusion of the Tolling Period (as defined

below), and (C) the date of entry of a final non-appealable order with respect to all Claims and

Defenses (as defined below), in each case with respect to any part of the Pre-Petition Secured

Indebtedness;

A00522

A0522

(d)    <u>Monitoring of Collateral.</u>  The Pre-Petition Agent (for the benefit of the Pre-Petition Secured Creditors) shall be permitted to retain expert consultants and financial advisors at the expense of the Debtors, which consultants and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the Collateral;

(e)    <u>Information.</u>  The Debtors shall provide the Pre-Petition Agent and the Creditors' Committee with any written financial information or periodic reporting that is provided to, or required to be provided to, the Administrative Agent or the Lenders; and

(f)    <u>Pre-Petition Letters of Credit.</u>  Subject to the terms and conditions of the DIP Loan Documents, letters of credit issued and outstanding under the Pre-Petition Documents shall be replaced by letters of credit issued under the DIP Loan Documents at the earliest of (i) the expiry of such letters of credit, (ii) the next notice date for non-renewal of such letters of credit, and (iii) the date the Pre-Petition Secured Indebtedness is refinanced as authorized by this Final Order.  Each Pre-Petition Secured Creditor that has issued such letters of credit, in consultation with and after prior notice to the Debtors, is authorized to provide notice of non-renewal to letter of credit beneficiaries to prevent the automatic renewal of "evergreen" letters of credit.

22.    *Reservation of Rights of Pre-Petition Secured Creditors.*  Under the circumstances and given that the above described Adequate Protection Obligations are consistent with the Bankruptcy Code, including section 506(b) thereof, this Court finds that the Adequate Protection Obligations provided herein are reasonable and sufficient to protect the interests of the Pre-Petition Secured Creditors.  Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Pre-Petition Agent, any Pre-Petition Secured Creditor, the Administrative Agent or any Lender,

A00523
A0523

including, without limitation rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of set-off or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). The Pre-Petition Agent and the Pre-Petition Secured Creditors shall have the right to request further or different adequate protection under sections 361, 363(e) and 364(d)(2) of the Bankruptcy Code in the event that the Pre-Petition Secured Indebtedness is not refinanced as authorized by this Final Order and contemplated by the DIP Loan Agreement. The Debtors or any other party in interest may object to any such request, and with respect to such objections nothing herein shall operate to shift any applicable burdens of proof from those set forth in the Bankruptcy Code.

     23.    *Perfection of DIP Liens and Adequate Protection Liens.* (a) This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of (i) the Administrative Agent's Liens (for the ratable benefit of the Secured DIP Creditors) upon the Collateral to secure all DIP Obligations and (ii) the Pre-Petition Agent's Adequate Protection Liens (for the ratable benefit of the Pre-Petition Secured Creditors), without the necessity of filing or recording any financing statement, mortgage or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens of the Administrative Agent or the Adequate Protection Liens of the Pre-Petition Agent, or to entitle the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent or the Pre-Petition Secured Creditors to the priority granted herein (including, in respect of cash, any requirement that the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent or the Pre-Petition Secured Creditors have possession of or dominion and control over, any such cash in order to perfect an interest therein); *provided* that, upon the

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00524

A0524

request of the Administrative Agent or the Pre-Petition Agent in accordance with the terms of this Final Order, the Debtors may execute and the Administrative Agent and the Pre-Petition Agent may file or record financing statements or other instruments to evidence and to perfect the Liens authorized hereby; and *provided further* that no such filing or recordation shall be necessary or required in order to create or perfect any such Lien.

(b)     In the discretion of the Administrative Agent, a certified copy of this Final Order may be filed with or recorded in, in addition to or in lieu of a mortgage, financing statement or similar perfection document, any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property.

(c)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the Secured DIP Creditors in accordance with the terms of the DIP Loan Agreement or this Final Order.

24.     *Preservation of Rights Granted Under this Final Order.*  (a) Except for the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the Administrative Agent, the Secured DIP Creditors or to the Pre-Petition Agent and the Pre-Petition Secured Creditors, respectively, shall be granted or allowed while any

A00525

A0525

portion of the DIP Credit Facility (or any refinancing thereof) or the Commitments thereunder or

the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP

Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security

interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of

the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security

interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

      (b)    Unless all DIP Obligations shall have been paid in full (and, with respect to

outstanding letters of credit issued pursuant to the DIP Loan Agreement, cash collateralized in

accordance with the provisions of the DIP Loan Agreement) and either the Adequate Protection

Obligations shall have been paid in full or the Pre-Petition Secured Indebtedness shall have been

refinanced as authorized by this Final Order and contemplated by the DIP Loan Agreement, the

Debtors agree not to seek, and it shall constitute an Event of Default and a termination of the

right to use Cash Collateral under this Final Order, if any of the Debtors seek, or if there is

entered, (i) any modifications or extensions of this Final Order without the prior written consent

of the Administrative Agent, or with respect to the rights and benefits granted to the Pre-Petition

Secured Creditors, the Pre-Petition Agent, and no such consent shall be implied by any other

action, inaction or acquiescence by the Administrative Agent or the Pre-Petition Agent, or (ii) an

order dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of

the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance

with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, the DIP

Liens (including the priming liens), security interests and replacement security interests granted

to the Administrative Agent and, as applicable, the Pre-Petition Agent pursuant to this Final

Order shall continue in full force and effect and shall maintain their priorities as provided in this

A00526
A0526

Final Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, DIP Liens (including priming liens) and replacement security interests shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(c)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent or the Pre-Petition Agent, as applicable, on the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Agreement with respect to any DIP Obligations or Adequate Protection Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent or the Pre-Petition Secured Creditors prior to the actual receipt of written notice by the Administrative Agent and Pre-Petition Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent and the Pre-Petition Secured Creditors shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

A00527

A0527

(d)      Except as expressly provided in this Final Order or in the DIP Loan Documents,

the DIP Liens, the Superpriority Claims and all other rights and remedies of the Administrative

Agent and the Secured DIP Creditors granted by the provisions of this Final Order and the DIP

Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry

of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases,

terminating the joint administration of these Cases or by any other act or omission, or (ii) the

entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section

1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining

DIP Obligations.  The terms and provisions of this Final Order and the DIP Loan Documents

shall continue in these Cases, in any successor cases if these Cases cease to be jointly

administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP

Liens, the Superpriority Claims and all other rights and remedies of the Administrative Agent

and the Secured DIP Creditors granted by the provisions of this Final Order and the DIP Loan

Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid

in full.

25.      *Effect of Stipulations on Third Parties.*  Subject to the reservation of rights

set forth in this paragraph 25, the stipulations and admissions contained in this Final Order,

including, without limitation, in paragraphs 3 and 21 of this Final Order, shall be binding upon

the Debtors in all circumstances.  The stipulations and admissions contained in this Final Order,

including, without limitation, in paragraphs 3 and 21 of this Final Order, shall be binding upon

all other parties in interest, including, without limitation, any Creditors' Committee, unless (a) a

party in interest has timely filed an adversary proceeding or contested matter, or commenced

litigation for authorization to commence such adversary proceeding or contested matter

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00528
A0528

("**Authorization Motion**") (subject to the limitations contained herein, including, *inter alia*, in paragraph 26) by no later than June 19, 2006 (or such later date (x) as has been agreed to, in writing, by the Pre-Petition Agent, the Existing Receivables Facility Agents or the Credit Card Issuers, as applicable, in its sole discretion or (y) as has been ordered by the Court) (the "**Challenge Period**") (i) challenging the validity, enforceability, priority or extent of the Pre-Petition Secured Indebtedness, the Existing Corporate Credit Card Obligations or the Pre-Petition Agent's or the Pre-Petition Secured Creditors' liens on the Pre-Petition Collateral or the Existing Receivables Facility, (ii) seeking a determination that the Pre-Petition Indebtedness was under-secured as of the Petition Date or (iii) otherwise asserting or prosecuting any avoidance actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Claims and Defenses**") against the Pre-Petition Agent, any of the Pre-Petition Secured Creditors, the Existing Receivables Facility Agents, any other party to the Existing Receivables Facility or their respective affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with matters related to the Pre-Petition Documents, the Pre-Petition Security Agreement, the Pre-Petition Secured Indebtedness, the Pre-Petition Collateral, the Existing Receivables Facility or the Corporate Credit Card Program, as applicable, *provided, however,* that the Challenge Period will be automatically tolled (the "**Tolling Period**") in the event the Creditors' Committee or the Ad Hoc Noteholders' Committee delivers a notice (in the form of correspondence) prior to the expiration of the Challenge Period to counsel for the Pre-Petition Agent, the Existing Receivables Facility Agents or the Credit Card Issuers, as applicable, with a copy to the Debtors' counsel, describing the specific Claims and Defenses the Creditors' Committee or the Ad Hoc Noteholders' Committee, as applicable, seeks to bring (the "**Challenge Notice**"), and (b) there is a final order in favor of the plaintiff sustaining any such

A00529
A0529

challenge or claim in any such timely filed adversary proceeding or contested matter, *provided*

that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are

hereby irrevocably waived and relinquished as of the Petition Date.  Upon receipt of the

Challenge Notice, the Pre-Petition Agent, the Existing Receivables Facility Agents or the Credit

Card Issuers, as applicable, may terminate the Tolling Period upon 10 business days notice (in

the form of correspondence) to counsel to the party that issued the Challenge Notice.  If no such

adversary proceeding or contested matter is timely filed (it being understood that such an

adversary proceeding or contested matter is timely filed if commenced promptly following a

disposition in favor of a movant of an Authorization Motion), (w) all payments made pursuant to

this Final Order, including the repurchase of the Receivables Portfolio, the refinancing of the

Pre-Petition Secured Indebtedness and the satisfaction of the Existing Corporate Credit Card

Obligations, shall not be subject to counterclaim, set-off, subordination, recharacterization,

defense or avoidance for all purposes in the Cases and any subsequent chapter 7 or 11 cases of

the Debtors, (x) the Pre-Petition Secured Indebtedness and all related obligations of the Debtors

shall constitute as of the Petition Date allowed claims, not subject to counterclaim, set-off,

subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any

subsequent chapter 7 or 11 cases of the Debtors, (y) (i) the Pre-Petition Agent's and the Pre-

Petition Secured Creditors' liens on the Pre-Petition Collateral and (ii) the sale of the

Receivables Portfolio and related transactions in connection with the Existing Receivables

Facility shall be deemed, as applicable, to have been, as of the Petition Date, legal, valid, binding

and perfected, not subject to recharacterization, subordination or avoidance, and (z) (i) the Pre-

Petition Secured Indebtedness and all related obligations of the Debtors, the Pre-Petition Agent's

and the Pre-Petition Secured Creditors' liens on the Pre-Petition Collateral and the Pre-Petition

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00530
A0530

Agent and the Pre-Petition Secured Lenders and (ii) the sale of the Receivables Portfolio and related transactions in connection with the Existing Receivables Facility, shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of the Debtors' estates, including, without limitation, any estate representative or any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed (it being understood that such adversary proceeding or contested matter is timely filed if commenced promptly following a disposition in favor of a movant of an Authorization Motion), the stipulations and admissions contained in paragraphs 3 and 21 of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee), the Ad Hoc Noteholders' Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter (it being understood that such adversary proceeding or contested matter is timely filed if commenced promptly following a disposition in favor of a movant of an Authorization Motion).  As a result of the Debtors' stipulations in this Final Order, the Creditors' Committee and the Ad Hoc Noteholders' Committee are hereby conferred standing and authority to pursue the Claims and Defenses, and neither is required to file an Authorization Motion; *provided*, *however*, that nothing in this Final Order vests or confers on any other Person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Pre-Petition Documents, the Pre-Petition Secured Indebtedness or the Existing Receivables Facility.  This Court shall retain the

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00531

A0531

power to unwind the protections provided, and the payments made, to the Existing Receivables

Facility Agents, the Pre-Petition Agent, the Pre-Petition Secured Creditors and the Credit Card

Issuers to the extent necessary to grant full relief with respect to any Claims and Defenses that

are successful.

26.    *Limitation on Use of Financing Proceeds and Collateral.*

Notwithstanding anything herein or in any other order by this Court to the contrary, no

borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the Carve-Out

may be used to (a) object, contest or raise any defense to the validity, perfection, priority, extent

or enforceability of any amount due under the DIP Loan Documents, the Pre-Petition Security

Agreement, the Pre-Petition Documents or the Existing Receivables Facility, or the liens or

claims granted under this Final Order, the DIP Loan Documents, the Pre-Petition Documents or

the Existing Receivables Facility, (b) challenge the repurchase of the Receivables Portfolio, the

refinancing of the Pre-Petition Secured Indebtedness or the satisfaction of the Existing Corporate

Credit Card Obligations, (c) assert any Claims and Defenses or other causes of action against the

Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition

Secured Creditors, the Existing Receivables Facility Agents, any party to the Existing

Receivables Facility or their respective agents, affiliates, representatives, attorneys or advisors

related to the Pre-Petition Documents, the Pre-Petition Secured Indebtedness, the Existing

Receivables Facility or the Corporate Credit Card Program, (d) prevent, hinder or otherwise

delay, the Administrative Agent's or the Pre-Petition Agent's assertion, enforcement or

realization on the Cash Collateral or the Collateral in accordance with the DIP Loan Documents,

the Pre-Petition Documents or this Final Order, (e) seek to modify any of the rights granted to

the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00532

A0532

Secured Creditors or the Existing Receivables Facility Agents, any party to the Existing

Receivables Facility hereunder or under the DIP Loan Documents, the Pre-Petition Documents,

the Pre-Petition Security Agreement, the Receivables Sale Agreement or the Receivables

Funding Agreement in each of the foregoing cases without such parties' prior written consent, or

(f) pay any amount on account of any claims arising prior to the Petition Date unless such

payments are (i) approved by an Final Order of this Court and (ii) in accordance with the DIP

Loan Agreement or otherwise approved by the Administrative Agent in its reasonable discretion;

provided that, notwithstanding anything to the contrary herein, any statutory committee

appointed by the U.S. Trustee shall be limited to $250,000, in the aggregate for all such

committees, to perform the investigations contemplated hereby.

     27.    *Debtor Reimbursement Claims and Debtor Liens.*  Without limiting the

joint and several liability of each of the Debtors for the DIP Obligations, the Debtors shall use

their reasonable best efforts to ensure that Debtors that receive the benefit of funds advanced

under the DIP Facility repay their share thereof on a dollar for dollar basis.  To the extent a

Debtor (i) incurs any of the DIP Obligations (including as a result of intercompany balances

incurred after the Petition Date to the extent such balances arise from the incurrence of DIP

Obligations) or (ii) receives a postpetition intercompany loan or transfer (including as a result of

the Debtors' cash management system or otherwise) (each, a "**Beneficiary Debtor**"), and such

DIP Obligations were repaid or such postpetition intercompany loan or transfer is made

(including from cash collateral) (each an "**Advance**") by (a) any other Debtor that is a Borrower

or Guarantor under the DIP Facility or (b) any non-Debtor affiliate (together (a) and (b) an

"**Adequately Protected Debtor Entity**"), the Adequately Protected Debtor Entity shall have,

subject to the limitations set forth in paragraph 28 below (a) an allowed claim under sections

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00533

A0533

364(c)(1) and 507(b) of the Bankruptcy Code against the Beneficiary Debtor for the amount of

such Advance, having priority over any and all administrative expenses of the kind specified in

sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate

agreed between the Debtors from time to time for the period accruing from and after the date

such claim arises until repayment thereof (collectively, the "**Debtor Reimbursement Claim**")

and (b) a lien on all Collateral under section 364(c)(3) of the Bankruptcy Code securing such

Debtor Reimbursement Claim (a "**Debtor Lien**").

       28.     All Debtor Reimbursement Claims and Debtor Liens shall be junior,

subject and subordinate to and only to the Superpriority Claims, the DIP Liens, the Adequate

Protection Obligations and to and claims against such Beneficiary Debtor that are expressly

senior to, and on a parity with, or carved out from the Superpriority Claims, the DIP Liens, and

the Adequate Protection Obligations.  All Debtor Liens shall be "silent" liens and the Adequately

Protected Entity shall forbear from exercising, and shall not be entitled to exercise, any right or

remedy relating to any Debtor Reimbursement Claim or Debtor Lien, including, without

limitation, taking any of the actions that the Pre-Petition Agent, the Pre-Petition Secured

Creditors are prohibited from taking pursuant to paragraph 15, including, without limitation,

seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon

repossession or liquidation of any property of another Debtor, or taking any position with respect

to any disposition of the property, the business operations, or the reorganization of another

Debtor.  The Administrative Agent shall have the exclusive right to manage, perform and enforce

all rights and remedies described in the DIP Loan Documents.  The Debtor Lien of the

Adequately Protected Debtor Entity automatically, and without further action of any person or

entity of any kind, shall be released or otherwise terminated to the extent that property subject to

A00534

A0534

such Debtor Lien is sold or otherwise disposed of by or on behalf of the Administrative Agent or

any other Debtor or to the extent that such property is subject to lien prior to the DIP Liens and

such lien is permitted under the DIP Loan Documents.

          29.      With respect to the effect of the Debtor Liens on any sale of property by

the Debtors, (a) the Debtors may sell property, in accordance with section 363 of the Bankruptcy

Code, free and clear of any Debtor Lien, with such lien attaching to the proceeds of sale in the

same priority and subject to the same limitations and restrictions as existed in respect of the

property sold and (b) the provisions of section 363(k) of the Bankruptcy Code shall not apply.

          30.      *Setoff Rights of Third Parties.*  For the avoidance of doubt, (i) nothing

contained in this Final Order or any DIP Loan Document impairs, modifies or otherwise affects

the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense

(each, a "**Deduction**") of any customer or supplier of any Debtor in respect of any account,

account receivable, payment intangible or any other payment obligation of that customer or

supplier to any Debtor (each, a "**Customer or Supplier Obligation**"), and (ii) the DIP Liens, the

Adequate Protection Liens and the Debtor Liens against any Customer or Supplier Obligation

shall each be subject to a Deduction in respect of the applicable Customer or Supplier Obligation

to the same extent, if any, that such liens would have been subject to such Deduction under

applicable non-bankruptcy law in the absence of this Final Order.

          31.      For the avoidance of doubt, notwithstanding anything to the contrary in

this Final Order or the DIP Loan Documents, (i) no DIP Liens, Adequate Protection Liens or

Debtor Liens shall attach to any property that is subject to a valid and enforceable lease entered

into by any of the Debtors as lessee or sublessee, (ii) to the extent that any property leased by a

Debtor from a lessor as of the Petition Date is recharacterized by an order of this Court as

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00535

A0535

property of a Debtor's estate and such property is subject to a valid, perfected and unavoidable lien as of the Petition Date (the "**Lessor's Lien**"), then the DIP Liens, Adequate Protection Liens and Debtor Liens shall be subject and subordinate to such Lessor's Lien, and (iii) neither this Final Order nor the DIP Loan Documents shall impair any rights or remedies of a lessor pursuant to Section 365 of the Bankruptcy Code.

32.     If any provision of this Final Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacation, or stay shall not affect the validity of any liability incurred pursuant to this Final Order and prior to the later of (a) the effective date of such modification, vacation, or stay, or (b) the entry of the order pursuant to which such modification, vacation, or stay was established, nor the validity, priority, or enforceability of any Lien granted by the Debtors to the Administrative Agent or the Pre-Petition Agent.

33.     The DIP Loan Documents and the provisions of this Final Order, including all findings herein, shall be binding to the fullest extent permitted by applicable law upon all parties in interest in these cases including without limitation the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Creditors, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility, the Creditors' Committee and the Debtors and their respective successors and assigns and shall inure to the benefit of the Agent, the Secured DIP Creditors, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Existing Receivables Facility Agents, any party to the Existing Receivables Facility and the Debtors and their respective successors and assigns; *provided, however,* that the Administrative Agent, the Secured DIP Creditors, the Pre-Petition Agent and the Pre-Petition Secured Creditors shall have no obligation to permit the use of Cash Collateral or extend any

NYDOCS03-#799327-v12-Dana_-_Final_DIP_Order.DOC

A00536
A0536

financing to any chapter 7 trustee or similar responsible person appointed for the estates of the

Debtors.  In determining to make a loan under the DIP Loan Agreement, permitting the use of

Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this

Final Order or DIP Loan Documents, the Administrative Agent, the Pre-Petition Agent, the

Lenders and the Pre-Petition Secured Creditors shall not be deemed to be in control of the

operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with

respect to the operation or management of the Debtors (as such terms, or any similar terms, are

used in the United States Comprehensive Environmental Response, Compensation and Liability

Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).

34.    Any Agent's or any Lender's failure to seek relief or otherwise exercise its

rights and remedies under the DIP Credit Facility or this Final Order shall not constitute a waiver

of any of the Agents' or any Lender's rights hereunder, thereunder, or otherwise.

35.    In the event of any inconsistency between the terms and conditions of any

DIP Loan Document and of this Final Order, the provisions of this Final Order shall govern and

control.

36.    Any Objection which has not been withdrawn or resolved is, to the extent

not resolved, hereby overruled.

37.    This Final Order shall constitute findings of fact and conclusions of law

and shall take effect and be fully enforceable immediately upon execution hereof.

SO ORDERED by the Court this 29 day of March, 2006.


/s/Burton R. Lifland
U.S. BANKRUPTCY JUDGE

A00537

A0537