## EXHIBIT A

**[Reclamation Order]**

CLI-1425716v8

A00583

A0583

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                                       :
In re                                                  :     Chapter 11
                                                       :
Dana Corporation, *et al.*,                            :     Case No. 06-10354 (BRL)
                                                       :
                        Debtors.                       :     (Jointly Administered)
                                                       :
-------------------------------------------------------x

### AMENDED FINAL ORDER, PURSUANT TO SECTIONS 105(a), 362 AND 546(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b): (A) ESTABLISHING PROCEDURES FOR RESOLVING RECLAMATION CLAIMS ASSERTED AGAINST THE DEBTORS AND (B) GRANTING CERTAIN RELATED RELIEF

This matter coming before the Court on the Motion of Debtors and Debtors in

Possession, Pursuant to Sections 105(a), 362 and 546(a) of the Bankruptcy Code and Bankruptcy

Rule 9019(b), for an Order: (A) Establishing Procedures for Resolving Reclamation Claims

Asserted Against the Debtors and (B) Granting Certain Related Relief (the "Motion"),[1] filed by

the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors");

the Court having reviewed the Motion and the Affidavit of Michael J. Burns filed in support of

the Debtors' first day papers (the "Affidavit") and having considered the statements of counsel

and evidence adduced with respect to the Motion at a hearing before the Court on March 6, 2006

(collectively, the "Hearing"); the Court having entered its Order granting the Motion on March 6,

2006 (Docket No. 82) (the "Prior Order"), which was subject to the right of the subsequently-

appointed Official Committee of Unsecured Creditors (the "Committee") to review and interpose

objections; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2),

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

ATI-2217391v3

(c) notice of the Motion and the Hearing was sufficient under the circumstances and (d) in light

of the circumstances, the requirements of Local Bankruptcy Rule 9013-1(b) that a separate

memorandum of law be filed in support of the Motion is waived; and the Committee having

reviewed the Motion and the Prior Order and having agreed with the Debtors on the

modifications set forth in this Order; and the Court having determined that the legal and factual

bases set forth in the Motion and the Affidavit and at the Hearing establish just cause for the

relief granted herein;

    IT IS HEREBY ORDERED THAT:

    1.    The Motion is GRANTED on the terms set forth herein. The Prior Order

is amended and superseded in its entirety by this Order.

    2.    The Debtors hereby are authorized to resolve all Reclamation Claims in

accordance with the exclusive Reclamation Procedures set forth below, which are hereby

approved and authorized in their entirety:

    (a)    Any Seller asserting a Reclamation Claim must satisfy all procedural and
           timing requirements under applicable law and demonstrate that it has
           satisfied all legal elements entitling it to a right of reclamation;

    (b)    Any Seller asserting a Reclamation Claim must deliver a copy of its
           written reclamation demand to the Debtors, at 4500 Dorr Street, Toledo,
           Ohio 43615, to the attention of Donald W. Commons, Esq.. Upon receipt
           of any written reclamation demand, the Debtors shall serve a copy of this
           Order upon the Seller at the address indicated in its reclamation demand.
           Those parties previously served with a copy of the Prior Order shall be
           served with a copy of this Order by the Debtors as soon as practicable
           after the entry of this Order;

    (c)    After receipt of all timely reclamation demands and an opportunity to
           review such demands — including, without limitation, whether the
           demand is subordinate to the prior rights of a holder of a security interest
           in the applicable Goods or the proceeds thereof — but, absent further
           order of the Court, no later than 120 days after the Petition Date (the
           "Reclamation Notice Deadline"), the Debtors, after consultation with the
           Committee, shall file a Notice (the "Reclamation Notice"), listing the
           Reclamation Claims and amount, if any, that the Debtors believe to be

A00585

A0585

valid for each such Reclamation Claim.  The Debtors shall provide a draft
of the Reclamation Notice that is as complete as is practicable to the
Committee ten days prior to filing it with the Bankruptcy Court.  The
Debtors will serve the Reclamation Notice on the following parties
(collectively, the "Notice Parties"): (i) the Office of the United States
Trustee for the Southern District of New York (the "U.S. Trustee"),
Manhattan Office, 33 Whitehall Street, 21st Floor, New York, New York
10004 (Attn:  Greg M. Zipes, Esq.); (ii) counsel to the Committee;
(iii) each Seller that is subject to the Reclamation Notice at the address
indicated in its reclamation demand; and (iv) counsel to the administrative
agent (the "Agent") for the Debtors' proposed postpetition lenders;

(d)     If the Debtors fail to file the Reclamation Notice within the required
period of time, any holder of a Reclamation Claim may bring a motion on
its own behalf to seek relief with respect to its Reclamation Claim, but
may not bring any such motion until the expiration of the Reclamation
Notice Deadline;

(e)     All Notice Parties shall have the right and opportunity to object to the
proposed allowance or disallowance of any asserted Reclamation Claim in
the Reclamation Notice as set forth therein;

(f)     Any Reclamation Claim that is included in the Reclamation Notice and is
not the subject of an objection within 30 days after service of the
Reclamation Notice, shall be deemed a valid Reclamation Claim allowed
by the Court in the amount identified in the Reclamation Notice; provided
that all issues relating to the treatment of any such allowed Reclamation
Claim shall be reserved;

(g)     Notwithstanding and without limiting the foregoing, the Debtors are
authorized, but not required, to negotiate in their sole discretion with any
Seller and to seek an agreement with any Seller to resolve its Reclamation
Claim and the treatment thereof.  If the Debtors and a Seller are able to
agree on the validity, amount and/or treatment of the Seller's Reclamation
Claim, the Debtors shall prepare a notice of settlement (the "Settlement
Notice"), file it with the Court and serve such Settlement Notice on
counsel to the Agent, counsel to the Committee, the U.S. Trustee and the
Seller subject to the settlement at the addresses set forth in subsection (c)
above.  The Agent,  the Committee and the U.S. Trustee shall have
ten days from the date of the Settlement Notice to file with the Court an
objection thereto (a "Settlement Objection").  Settlement Objections must
be served so as to be received by the Debtors, the Debtors' counsel, the
applicable Seller, counsel to the Agent, counsel to the Committee and the
U.S. Trustee within the ten-day objection period;

(h)     If no Settlement Objection with respect to a Settlement Notice is timely
filed and served, the Reclamation Claim at issue shall be allowed and

A00586
A0586

treated in accordance with the Settlement Notice without further order of the Court. If a Settlement Objection with respect to a Settlement Notice is timely filed and served, the parties may negotiate a consensual resolution of such objection to be incorporated in a stipulation filed with the Court (a "Settlement Stipulation"). Upon the filing of a Settlement Stipulation, the applicable Reclamation Claim shall be allowed and treated in accordance with the terms of the Settlement Stipulation without further order of the Court. If no consensual resolution of a Settlement Objection is reached within 30 days after the date of the Settlement Objection, unless such period is extended by mutual agreement of the Debtors and the party filing the Settlement Objection, the Debtors shall thereafter file a motion for the Court to resolve the Settlement Objection; and

(i)    Nothing in the Reclamation Procedures shall modify the automatic stay of section 362(a) of the Bankruptcy Code with respect to any Goods. As such, the Reclamation Procedures shall not alter in any way the procedures, standards and burden of proof applicable or required pursuant to section 362(a) of the Bankruptcy Code with respect to any attempt by a Seller to obtain possession of any of the Goods or otherwise to collect its Reclamation Claim. Without limiting the foregoing, no Seller shall be entitled to obtain possession of any Goods without first filing a motion with the Court for relief from the automatic stay or obtaining the prior express written consent of the Debtors. The Debtors and all other parties in interest reserve all rights to object to any such motion for relief from the automatic stay. Sellers shall be prohibited from seeking relief from the stay with respect to any reclamation demand until the time a Reclamation Notice is filed by the Debtors with respect to such reclamation demand or the Reclamation Notice Deadline otherwise expires.

3.    The foregoing Reclamation Procedures are the sole and exclusive method for the resolution and payment of reclamation claims asserted against the Debtors. All Sellers are prohibited from seeking any other means for the resolution or treatment of their Reclamation Claims, including, without limitation: (a) commencing adversary proceedings against the Debtors in connection with any reclamation claims; (b) seeking to obtain possession of any Goods; or (c) interfering with the delivery of any Goods to the Debtors, subject to further order of this Court.

4.    All adversary proceedings and contested matters in these cases asserting Reclamation Claims, whether currently pending or initiated in the future and whether or not

ATI-2217391v3                                    -4-

A00587

A0587

joined with other relief, except those proceedings initiated by the Debtors, the Committee or any other party in accordance with these Reclamation Procedures, are stayed and the claims asserted therein shall be resolved exclusively pursuant to the Reclamation Procedures set forth herein.

    5.    Nothing contained herein or in the Motion shall limit the Debtors' ability to make payments to creditors in accordance with any other orders of this Court, regardless of whether such creditors have asserted Reclamation Claims.

Dated: New York, New York
        March 29, 2006

                                      /s/Burton R. Lifland_____
                                      UNITED STATES BANKRUPTCY JUDGE

A00588

A0588



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re:                                                   Chapter 11

DANA CORPORATION, et al.,                                Case No. 06-10354 (BRL)

          Debtors.                                    (Jointly Administered)

-------------------------------------------------------x

### STIPULATION AND ORDER AMONG THE DEBTORS, THE RECEIVABLES FACILITY AGENTS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE AD HOC NOTEHOLDERS' COMMITTEE EXTENDING THE CHALLENGE PERIOD SET FORTH IN THE FINAL ORDER AUTHORIZING POSTPETITION SECURED FINANCING

**WHEREAS**, On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York;

**WHEREAS**, the Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed;

**WHEREAS**, on March 10, 2006, the United States Trustee appointed an Official Joint Committee of Unsecured Creditors in the Debtors' proceedings, consisting of the following seven (7) members: Wilmington Trust Company, P. Schoenfeld Asset Management LLC, Sypris Technologies, Inc., Metaldyne Company LLC, Eaton Corporation, The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and Judy Scott as Executrix for the estate of Matthew

Scott[1] (the "Committee"). The Committee retained Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") as its counsel to represent the Committee in all matters during the pendency of the Debtors' chapter 11 cases except those that give rise to a conflict of interest. For those matters where Kramer Levin has a conflict of interest, the Committee retained Halperin Battaglia Raicht, LLP to serve as its counsel;

WHEREAS, on March 22, 2006, membership of a certain ad hoc committee of holders of notes of Dana Corporation (the "Ad Hoc Noteholders' Committee) was set forth in the Verified Statement of Stroock & Stroock & Lavan Pursuant to Bankruptcy Rule 2019;

WHEREAS, prior to the Petition Date, the Debtors financed their operations through, among things, a receivables securitization program pursuant to which the Debtors sold certain of their receivables (the "Receivables Portfolio") to Dana Asset Funding LLC ("DAF"), a non-debtor affiliate, under a certain Amended and Restated Purchase and Contribution Agreement, dated April 15, 2005 ("PCA");

WHEREAS, interests in the Receivables Portfolio were simultaneously sold or pledged by DAF under a certain Amended and Restated Receivables Purchase Agreement, dated April 15, 2005, ("RPA") between DAF, on the one hand, and the following parties, on the other: Dana Corporation, as Collection Agent, Falcon Asset Securitization Corporation, as Conduit Purchaser, Variable Funding Capital Company LLC (as assignee of Blue Ridge Asset Funding Corporation), as Conduit Purchaser, JP Morgan Chase Bank, N.A. ("JP Morgan"), as Committed purchaser and agent of Falcon Asset

---

[1]     The Committee was thereafter amended to reflect that Mr. Julio Gonzalez, Jr., as Special Administrator of the Estate of Julio Gonzalez, replaced Ms. Scott as a member of the Committee.

A00539
A0539

Securitization Corporation and program agent, and Wachovia Bank National Association ("Wachovia"), as Committed purchaser and agent of Variable Funding Capital Company;

WHEREAS, the PCA and RPA shall be referred to hereinafter, collectively, as the "Receivables Facility" and JP Morgan and Wachovia shall be referred to hereinafter, collectively, as the "Receivables Facility Agents;"

WHEREAS, by order dated March 29, 2006 (the "Final DIP Order"), the Debtors were authorized to enter into a $1,450,000,000 post-petition financing facility with the Post-Petition Lenders;[2]

WHEREAS, Paragraph 25 of the Final DIP Order provides, among other things, but in pertinent part, that any party in interest can challenge the repurchase of the Receivables Facility as well as the liens and claims of the Receivables Facility Agents, by filing an adversary proceeding or authorization to file an adversary proceeding by June 19, 2006 (the "Challenge Period") (which can be extended by agreement with the Receivables Facility Agents or by Order of the Bankruptcy Court);[3] and

---

[2]     The "Post-Petition Lenders" means (a) Citicorp North America, Inc., as Administrative agent, Initial Swing Lender, one of the Initial Issuing Banks, and member of syndicate of lenders, (b) Bank of America, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (c) JP Morgan Chase Bank, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (d) Citigroup Capital Markets Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions, (e) JP Morgan Securities Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions and (f) Banc of America Securities LLC, as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions.

[3]     Under the Final DIP Order, the Committee and the Ad Hoc Noteholders' Committee are not required to make a motion for authority to commence such an adversary proceeding since the Debtors stipulated in the Final DIP Order to confer standing to commence such actions upon the Committee and Ad Hoc Noteholders' Committee. The challenge period is automatically tolled if the either the Committee or the Ad Hoc Noteholders' Committee delivers a notice (in letter form) to counsel for the Receivables Facility Agents (with a copy to counsel for the Debtors) before the challenge period expires describing the allegations and claims they would assert in the context of a formal complaint. The Receivables Facility Agents can terminate the tolling period upon 10 business days' notice (in letter form) to the party that served the challenge notice.

A00540

A0540

**WHEREAS**, at the Debtors' request, the Receivables Facility Agents have agreed to extend the Challenge Period as it relates to the Committee and the Ad Hoc Noteholders' Committee, only, under Paragraph 25 of the Final DIP Order.[4]

**NOW, THEREFORE**, in consideration of the foregoing premises and of the mutual agreements and covenants hereinafter set forth, the parties hereto, intending to be legally bound hereby, agree as follows:

1.      The Challenge Period for the Committee and the Ad Hoc Noteholders' Committee to contest the liens and claims under the Receivables Facility as set forth in Paragraph 25 of the Final DIP Order, is hereby extended through and including September 29, 2006.

2.      Nothing herein shall prejudice the Committee's or the Ad Hoc Noteholders' Committee's rights to seek an additional extension(s) of the Challenge Period for the Receivables Facility in accordance with the terms of the Final DIP Order.

3.      Except as expressly modified hereby, the terms of the Final DIP Order shall remain in full force and effect.

Dated:  New York, New York
        June 29, 2006                     **HALPERIN BATTAGLIA RAICHT, LLP**
                                          Conflicts Counsel to the Official Committee
                                           Of Unsecured Creditors


                                          By:     /s/ Christopher J. Battaglia
                                                  Alan D. Halperin (AH-8432)
                                                  Christopher J. Battaglia (CB-4436)

---

[4]      The Debtors, the Committee, the Ad Hoc Noteholders' Committee and the Pre-Petition Agent and Credit Card Issuers (all as defined in the Final DIP Order) have also agreed to extend the Challenge Period as it relates to the Committee's right to challenge the Pre-Petition Secured Indebtedness and the Existing Corporate Credit Card Obligations (all as defined in the Final DIP Order). The agreement by and among the Debtors, the Committee, the Ad Hoc Noteholders' Committee, the Pre-Petition Agent and Credit Card Issuers will be the subject of a separate stipulation and order to be submitted to this Court.

{00017317.3 / 0522-001}                          4

A00541
A0541

Robert D. Raicht (RR-2370)
Neal W. Cohen (NC-3573)

555 Madison Avenue
New York, New York 10022
(212) 765-9100

**JONES DAY**

Counsel to the Debtors and Debtors-in                              Possession

By:      /s/ Corinne Ball _____              Corinne Ball (CB-
8203)

Richard H. Engman (RE-7861)
222 East 41st Street
New York, New York  10017
(212) 326-3939

**LATHAM & WATKINS LLP**
Counsel to the Receivables Facilities Agents

By:      /s/ David Heller _____
David Heller (DH-0840)
Nancy L. Schimmel (NS-6187)
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL  60606
(312) 876-7700

**STROOCK & STROOCK & LAVAN LLP**
Counsel to the Ad Hoc Noteholders'
Committee

By:      /s/ Shannon Nagle _____
Shannon Nagle (SN-5793)
180 Maiden Lane
New York, NY  10038
(212) 806-5400

SO ORDERED THIS 6th DAY
OF JULY, 2006

 /s/ Hon. Burton R. Lifland _____
UNITED STATES BANKRUPTCY JUDGE

{00017317.3 / 0522-001}                     5

A00542

A0542



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:                                        Chapter 11

DANA CORPORATION, et al.,                     Case No. 06-10354 (BRL)

                    Debtors.                  (Jointly Administered)

---------------------------------------------------------x

### STIPULATION AND ORDER AMONG THE DEBTORS, THE PRE-PETITION AGENT, THE CREDIT CARD ISSUERS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE AD HOC NOTEHOLDERS' COMMITTEE EXTENDING THE CHALLENGE PERIOD SET FORTH IN THE FINAL ORDER AUTHORIZING POSTPETITION SECURED FINANCING

### INTRODUCTION

**WHEREAS,** On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York;

**WHEREAS,** the Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed;

**WHEREAS,** on March 10, 2006, the United States Trustee appointed an Official Joint Committee of Unsecured Creditors in the Debtors' proceedings, consisting of the following seven (7) members: Wilmington Trust Company, P. Schoenfeld Asset Management LLC, Sypris Technologies, Inc., Metaldyne Company LLC, Eaton Corporation, The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and Judy Scott as Executrix for the estate of Matthew Scott

{00019685.1 / 0522-001}

A00543
A0543

(the "Committee").[1]    The Committee retained Kramer Levin Naftalis & Frankel LLP

("Kramer Levin") as its counsel to represent the Committee in all matters during the

pendency of the Debtors' chapter 11 cases except those that give rise to a conflict of interest.

For those matters where Kramer Levin has a conflict of interest, the Committee retained

Halperin Battaglia Raicht, LLP to serve as its counsel;

**WHEREAS**, on March 22, 2006, membership of a certain ad hoc committee

of holders of notes of Dana Corporation (the "Ad Hoc Noteholders' Committee") was set

forth in the Verified Statement of Stroock & Stroock & Lavan Pursuant to Bankruptcy Rule

2019;

## PREPETITION OBLIGATIONS

**WHEREAS**, prior to the Petition Date, on March 4, 2005, Dana Corporation

entered into a certain $400 Million Dollar revolving credit facility (the "Five Year Credit

Agreement") among and between various lenders and the following parties:[2]

| | |
|---|---|
| Citicorp USA, Inc. | Administrative Agent |
| Deutsche Bank Securities Inc. | One of the co-syndication agents |
| Bank of America, N.A. | One of the co-syndication agents |
| JP Morgan Chase Bank, N.A. | Documentation Agent |
| SunTrust Bank | Documentation Agent |
| Citigroup Global Markets, Inc. | Lead Arranger & Book Manager |

(The Five Year Credit Agreement along with all amendments, waivers, schedules, exhibits,

modification, letters of credit, hedge agreements, bilateral obligations, subordination

---

[1]    The Committee was thereafter amended to reflect that Mr. Julio Gonzalez, Jr., as Special
Administrator of the Estate of Julio Gonzalez, replaced Ms. Scott as a member of the Committee.

[2]    Citicorp USA, Inc., Deutsche Bank Securities, Inc., Bank of America, N.A., JP Morgan Chase Bank,
N.A., SunTrust Bank, Citigroup Global Markets, Inc., Deutsche Bank AG New York Branch, Wachovia Bank
NA, Credit Suisse First Boston, HSNC Bank NA, Goldman Sachs Credit Partners LP, BNP Paribas, The Bank
of New York, Comerica Bank, Keybank NA, The Northern Trust Company, Toronto Dominion (Texas) LLC,
Fifth Third Bank, and Mizuho Corporate Bank Ltd. are collectively referred to as the "Pre-Petition Lenders".
Citicorp USA, Inc., on its own behalf and as Administrative Agent for the Five Year Credit Facility, is hereafter
referred to as the "Pre-Petition Agent".

A00544
A0544

agreements and any and all agreements and/or documents, instruments, and notes related thereto are hereinafter referred to as the "Five Year Credit Facility");

WHEREAS, prior to the Petition Date, on November 18, 2005, the Debtors and certain of Dana Corporation's non-debtor, domestic and foreign subsidiaries entered into a Security Agreement (the "Security Agreement") with Citicorp USA, Inc., as Agent, by which they granted the Pre-Petition Lenders a security interest in their equipment, inventory, accounts and certain other assets;

WHEREAS, prior to the Petition Date, on August 31, 1994, January 18, 2005 and January 24, 2005, respectively, the Debtors entered into certain corporate credit card arrangements issued under the following three agreements executed by Dana Corporation:[3]

| Citibank (South Dakota), N.A. | Citibank Business Card Purchasing Card Agreement dated August 31, 1994, as amended |
| Citibank International plc | Citibank Purchasing Card Agreement dated January 18, 2005, as amended |
| Citibank International plc | Citibank Corporate Card Agreement dated January 24, 2005, as amended |

(These corporate/purchasing card agreements, each as amended, restated or otherwise modified from time to time are collectively hereafter referred to as the "Corporate Credit Card Program").

---

[3]    Citibank USA, N.A. is the successor in interest to Citibank (South Dakota), N.A. Citibank USA, N.A., Citibank (South Dakota), N.A. and Citibank International plc are hereafter referred to as the "Credit Card Issuers".

A00545

A0545

## POST-PETITION PROCEDURAL BACKGROUND

WHEREAS, by order dated March 29, 2006 (the "Final DIP Order"), the Debtors were authorized to enter into a $1,450,000,000 post-petition financing facility with the Post-Petition Lenders;[4]

WHEREAS, Paragraph 25 of the Final DIP Order provides, among other things, but in pertinent part, that any party in interest can challenge the payoff of the Debtor's obligations under the Five Year Credit Facility and Corporate Credit Card Program, as well as the liens and claims of the Pre-Petition Agent, the Pre-Petition Lenders and Credit Card Issuers relative thereto, by filing an adversary proceeding or authorization to file an adversary proceeding by June 19, 2006 (the "Challenge Period") (which can be extended by agreement with the Pre-Petition Agent and the Credit Card Issuers or by Order of the Bankruptcy Court);[5]

WHEREAS, on May 19, 2006, the Committee filed an Application For An

---

[4]      The "Post-Petition Lenders" means (a) Citicorp North America, Inc., as Administrative agent, Initial Swing Lender, one of the Initial Issuing Banks, and member of syndicate of lenders, (b) Bank of America, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (c) JP Morgan Chase Bank, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (d) Citigroup Capital Markets Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions, (e) JP Morgan Securities Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions and (f) Banc of America Securities LLC, as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions.

[5]      Under the Final DIP Order, the Committee and the Ad Hoc Noteholders' Committee are not required to make a motion for authority to commence such an adversary proceeding since the Debtors stipulated in the Final DIP Order to confer standing to commence such actions upon the Committee and Ad Hoc Noteholders' Committee. The challenge period is automatically tolled if the either the Committee or the Ad Hoc Noteholders' Committee delivers a notice (in letter form) to counsel for the Pre-Petition Agent (with a copy to counsel for the Debtors) before the challenge period expires describing the allegations and claims they would assert in the context of a formal complaint. The Pre-Petition Agent can terminate the tolling period upon 10 business days' notice (in letter form) to the party that served the challenge notice.

{00019685.1 / 0522-001}                              4

A00546
A0546

Order Directing Pre-Petition Lenders And The Receivables Facility Agents To Produce

Documents And Appear For Oral Examination Pursuant To Bankruptcy Rule 2004, as well

as an Application For An Order Directing The Debtors To Produce Documents and Appear

For Oral Examination Pursuant To Bankruptcy Rule 2004 (the "Rule 2004 Applications");

**WHEREAS**, on May 24, 2006, the Bankruptcy Court entered Orders

approving the Rule 2004 Applications (the "Rule 2004 Orders");

**WHEREAS**, on May 26, 2006, the Debtors filed a motion requesting the

Court to reconsider its entry of the Rule 2004 Order as against the Debtors (the "Motion For

Reconsideration")[6];

**WHEREAS**, at the Debtors' request, the Pre-Petition Agent has agreed to

extend the Challenge Period as it relates to the Committee and the Ad Hoc Noteholders'

Committee, only, under Paragraph 25 of the Final DIP Order.[7]  Furthermore, the parties

hereto have agreed to and set a discovery schedule to facilitate the Committee's and the Ad

Hoc Noteholders' Committee's due diligence and investigation relative to the Five Year

Credit Facility and Corporate Credit Card Program during the extended Challenge Period;

**NOW, THEREFORE**, in consideration of the foregoing premises and of

the mutual agreements and covenants hereinafter set forth, the parties hereto, intending to be

legally bound hereby, agree as follows:

---

[6]      Based upon the agreements and arrangements contained herein, the Debtors subsequently withdrew their Motion For Reconsideration.

[7]      The Debtors, the Committee, the Ad Hoc Noteholders' Committee and the Existing Receivables Facility Agents (as defined in the Final DIP Order) have also agreed to extend the Challenge Period as it relates to the Committee's and Ad Hoc Noteholders' Committee's right to challenge the repurchase/payoff of the Existing Receivables Facility (as defined in the Final DIP Order) and any and all liens and claims asserted there under.  The agreement by and among the Debtors, the Committee, the Ad Hoc Noteholders' Committee and the Existing Receivables Facility Agents will be (is) the subject of a separate stipulation and order to be submitted to this Court.

A00547

A0547

1.    The Challenge Period solely for the Committee and the Ad Hoc Noteholders' Committee to contest the liens and claims under the Five Year Credit Facility and Corporate Credit Card Program as set forth in Paragraph 25 of the Final DIP Order, is hereby extended through and including December 15, 2006.

2.    The date by which the Pre-Petition Agent, the Pre-Petition Lenders, the Credit Card Issuers and the Debtors may serve a written response, objection or motion with respect to the subpoenas served pursuant to the Rule 2004 Orders (the "Subpoenas") is hereby extended to and including October 2, 2006 (any such objection or motion, a "Subpoena Objection"). Subject to and without waiving any of the rights reserved in the preceding sentence, to the extent that documents have not already been produced, document production pursuant to the Subpoenas shall commence, on a rolling basis, on October 2, 2006 and shall conclude on October 24, 2006.

3.    Oral examinations, as contemplated by the Subpoenas, shall be conducted and concluded between October 24 and December 8, 2006. The oral examinations contemplated may be conducted after December 8, 2006, but *only* as mutually agreed between the parties.

4.    Failure of the any of the Pre-Petition Agent, the Pre-Petition Lenders, the Credit Card Issuers or the Debtors to comply with the discovery schedule set forth above shall constitute cause for any further extension of the Challenge Period.

5.    In the event that the Creditors' Committee determines that its investigation with respect to the Five Year Credit Facility and the Credit Card Program cannot be completed absent resolution of a Subpoena Objection, then the Creditors' Committee (after seeking to resolve such objection consensually) shall seek, no later than October 24, 2006, an expedited hearing to resolve such Subpoena Objection. In the event

{00019685.1 / 0522-001}    6

A00548

A0548

that such a Subpoena Objection is not resolved by November 10, then this circumstance shall constitute cause for a further extension of the Challenge Period; *provided* that any such extension shall only be for a period corresponding to the delay caused in connection with the resolution of such Subpoena Objection.

6.      There shall be no further extension of the Challenge Period, except by further agreement of the parties.  However, nothing herein shall prejudice the Committee's or the Ad Hoc Noteholders' Committee's rights to seek an additional extension, *for cause only as detailed in the preceding paragraphs 4 and 5*, of the Challenge Period relative to the Five Year Credit Facility and Corporate Credit Card Program in accordance with the terms of the Final DIP Order.

7.      Nothing in this Stipulation and Order is intended to waive any rights of the Pre-Petition Agent, the Pre-Petition Lenders, the Credit Card Issuers, or the Debtors to object or to seek relief from the Bankruptcy Court with respect to the Subpoenas pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure, Rule 45 of the Federal Rules of Civil Procedure or otherwise, and the parties reserve all such rights.

8.      Except as expressly modified hereby, the terms of the Final DIP Order shall remain in full force and effect.

A00549

A0549

Dated: New York, New York
    July 12, 2006

HALPERIN BATTAGLIA RAICHT, LLP
Conflicts Counsel to the Official Committee
    Of Unsecured Creditors


By:     /s/ Christopher J. Battaglia
        Alan D. Halperin (AH-8432)
        Christopher J. Battaglia (CB-4436)
        Robert D. Raicht (RR-2370)
        Neal W. Cohen (NC-3573)
        555 Madison Avenue
        New York, New York 10022
        (212) 765-9100


JONES DAY
Counsel to the Debtors and Debtors-in
    Possession

By:     /s/ Richard Engman
        Corinne Ball (CB-8203)
        Richard H. Engman (RE-7861)
        222 East 41st Street
        New York, New York 10017
        (212) 326-3939


SHEARMAN & STERLING LLP
Counsel to the Pre-Petition Agent and the
    Credit Card Issuers

By:     /s/ Douglas P. Bartner
        Douglas P. Bartner (DB-2301)
        Lynette C. Kelly (LK-7971)
        Marc B. Hankin (MH-7001)
        599 Lexington Avenue
        New York, New York 10022
        (212) 848-4000

{00019685.1 / 0522-001}                8

A00550
A0550

**STROOCK & STROOCK & LAVAN LLP**
Counsel to the Ad Hoc Noteholders'
  Committee


By:     _/s/ Shannon L. Nagle_____
       Shannon Nagle (SN-5793)
       180 Maiden Lane
       New York, NY 10038
       (212) 806-5400


SO ORDERED THIS 18TH DAY
OF JULY, 2006

/s/Burton R. Lifland_____
UNITED STATES BANKRUPTCY JUDGE

A00551

A0551

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                              Chapter 11

DANA CORPORATION, et al.,                           Case No. 06-10354 (BRL)

            Debtors.                   (Jointly Administered)

--------------------------------------------------------x

### SECOND STIPULATION AND ORDER AMONG THE DEBTORS, THE PRE-PETITION AGENT, THE CREDIT CARD ISSUERS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE AD HOC NOTEHOLDERS' COMMITTEE EXTENDING THE CHALLENGE PERIOD SET FORTH IN THE FINAL ORDER AUTHORIZING POSTPETITION SECURED FINANCING

### INTRODUCTION

**WHEREAS**, On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York;

**WHEREAS**, the Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed;

**WHEREAS**, on March 10, 2006, the United States Trustee appointed an Official Joint Committee of Unsecured Creditors in the Debtors' proceedings, consisting of the following seven (7) members: Wilmington Trust Company, P. Schoenfeld Asset Management LLC, Sypris Technologies, Inc., Metaldyne Company LLC, Eaton Corporation, The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and Judy Scott as Executrix for the estate of Matthew Scott

A00552
A0552

(the "Committee").[1]    The Committee retained Kramer Levin Naftalis & Frankel LLP

("Kramer Levin") as its counsel to represent the Committee in all matters during the

pendency of the Debtors' chapter 11 cases except those that give rise to a conflict of interest.

For those matters where Kramer Levin has a conflict of interest, the Committee retained

Halperin Battaglia Raicht, LLP to serve as its counsel;

WHEREAS, on March 22, 2006, membership of a certain ad hoc committee

of holders of notes of Dana Corporation (the "Ad Hoc Noteholders' Committee") was set

forth in the Verified Statement of Strooock & Strooock & Lavan Pursuant to Bankruptcy Rule

2019;

## PREPETITION OBLIGATIONS

WHEREAS, prior to the Petition Date, on March 4, 2005, Dana Corporation

entered into a certain $400 Million Dollar revolving credit facility (the "Five Year Credit

Agreement") among and between various lenders and the following parties:[2]

| | |
|---|---|
| Citicorp USA, Inc. | Administrative Agent |
| Deutsche Bank Securities Inc. | One of the co-syndication agents |
| Bank of America, N.A. | One of the co-syndication agents |
| JP Morgan Chase Bank, N.A. | Documentation Agent |
| SunTrust Bank | Documentation Agent |
| Citigroup Global Markets, Inc. | Lead Arranger & Book Manager |

(The Five Year Credit Agreement along with all amendments, waivers, schedules, exhibits,

modification, letters of credit, hedge agreements, bilateral obligations, subordination

---

[1]    The Committee was thereafter amended to reflect that Mr. Julio Gonzalez, Jr., as Special
Administrator of the Estate of Julio Gonzalez, replaced Ms. Scott as a member of the Committee.

[2]    Citicorp USA, Inc., Deutsche Bank Securities, Inc., Bank of America, N.A., JP Morgan Chase Bank,
N.A., SunTrust Bank, Citigroup Global Markets, Inc., Deutsche Bank AG New York Branch, Wachovia Bank
NA, Credit Suisse First Boston, HSNC Bank NA, Goldman Sachs Credit Partners LP, BNP Paribas, The Bank
of New York, Comerica Bank, Keybank NA, The Northern Trust Company, Toronto Dominion (Texas) LLC,
Fifth Third Bank, and Mizuho Corporate Bank Ltd. are collectively referred to as the "Pre-Petition Lenders".
Citicorp USA, Inc., on its own behalf and as Administrative Agent for the Five Year Credit Facility, is hereafter
referred to as the "Pre-Petition Agent".

A00553
A0553

agreements and any and all agreements and/or documents, instruments, and notes related thereto are hereinafter referred to as the "Five Year Credit Facility");

WHEREAS, prior to the Petition Date, on November 18, 2005, the Debtors and certain of Dana Corporation's non-debtor, domestic and foreign subsidiaries entered into a Security Agreement (the "Security Agreement") with Citicorp USA, Inc., as Agent, by which they granted the Pre-Petition Lenders a security interest in their equipment, inventory, accounts and certain other assets;

WHEREAS, prior to the Petition Date, on August 31, 1994, January 18, 2005 and January 24, 2005, respectively, he Debtors entered into certain corporate credit card arrangements issued under the following three agreements executed by Dana Corporation:[3]

| Citibank (South Dakota), N.A. | Citibank Business Card Purchasing Card Agreement dated August 31, 1994, as amended |
| Citibank International plc | Citibank Purchasing Card Agreement dated January 18, 2005, as amended |
| Citibank International plc | Citibank Corporate Card Agreement dated January 24, 2005, as amended |

(These corporate/purchasing card agreements, each as amended, restated or otherwise modified from time to time are collectively hereafter referred to as the "Corporate Credit Card Program").

---

[3]     Citibank USA, N.A. is the successor in interest to Citibank (South Dakota), N.A.  Citibank USA, N.A., Citibank (South Dakota), N.A. and Citibank International plc are hereafter referred to as the "Credit Card Issuers".

3

A00554
A0554

## POST-PETITION PROCEDURAL BACKGROUND

**WHEREAS**, by order dated March 29, 2006 (the "Final DIP Order"), the Debtors were authorized to enter into a $1,450,000,000 post-petition financing facility with the Post-Petition Lenders;[4]

**WHEREAS**, Paragraph 25 of the Final DIP Order provides, among other things, but in pertinent part, that any party in interest can challenge the payoff of the Debtor's obligations under the Five Year Credit Facility and Corporate Credit Card Program, as well as the liens and claims of the Pre-Petition Agent, the Pre-Petition Lenders and Credit Card Issuers relative thereto, by filing an adversary proceeding or authorization to file an adversary proceeding by June 19, 2006 (the "Challenge Period") (which can be extended by agreement with the Pre-Petition Agent and the Credit Card Issuers or by Order of the Bankruptcy Court);[5]

**WHEREAS**, on May 19, 2006, the Committee filed an Application For An Order Directing Pre-Petition Lenders And The Receivables Facility Agents To Produce Documents And Appear For Oral Examination Pursuant To Bankruptcy Rule 2004, as well

---

[4]     The "Post-Petition Lenders" means (a) Citicorp North America, Inc., as Administrative agent, Initial Swing Lender, one of the Initial Issuing Banks, and member of syndicate of lenders, (b) Bank of America, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (c) JP Morgan Chase Bank, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (d) Citigroup Capital Markets Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions, (e) JP Morgan Securities Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions and (f) Banc of America Securities LLC, as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions.

[5]     Under the Final DIP Order, the Committee and the Ad Hoc Noteholders' Committee are not required to make a motion for authority to commence such an adversary proceeding since the Debtors stipulated in the Final DIP Order to confer standing to commence such actions upon the Committee and Ad Hoc Noteholders' Committee. The challenge period is automatically tolled if the either the Committee or the Ad Hoc Noteholders' Committee delivers a notice (in letter form) to counsel for the Pre-Petition Agent (with a copy to counsel for the Debtors) before the challenge period expires describing the allegations and claims they would assert in the context of a formal complaint. The Pre-Petition Agent can terminate the tolling period upon 10 business days' notice (in letter form) to the party that served the challenge notice.

4

A00555

A0555

as an Application For An Order Directing The Debtors To Produce Documents and Appear For Oral Examination Pursuant To Bankruptcy Rule 2004 (the "Rule 2004 Applications");

**WHEREAS**, on May 24, 2006, the Bankruptcy Court entered Orders approving the Rule 2004 Applications (the "Rule 2004 Orders");

**WHEREAS**, on July 18, 2006, this Court approved a Stipulation And Order Among The Debtors, The Pre-Petition Agent, The Credit Card Issuers, The Official Committee Of Unsecured Creditors And The Ad Hoc Noteholders' Committee Extending The Challenge Period Set Forth In The Final Order Authorizing  Postpetition Secured Financing (the "First Stipulation") that, among other things, extended the Challenge Period as it relates to the Committee and the Ad Hoc Noteholders' Committee and set forth an agreed discovery schedule to facilitate the Committee's and the Ad Hoc Committee's due diligence and investigation relative to the Five Year Credit Facility and Corporate Credit Card Program during the extended Challenge Period;

**WHEREAS**, at the Debtors' request, the Pre-Petition Agent has agreed to further extend the Challenge Period as it relates to the Committee and the Ad Hoc Noteholders' Committee, only, under Paragraph 25 of the Final DIP Order.  Furthermore, the parties hereto have agreed to and set a discovery schedule to facilitate the Committee's and the Ad Hoc Noteholders' Committee's due diligence and investigation relative to the Five Year Credit Facility and Corporate Credit Card Program during the extended Challenge Period;

**NOW, THEREFORE**, in consideration of the foregoing premises and of the mutual agreements and covenants hereinafter set forth, the parties hereto, intending to be legally bound hereby, agree as follows:

5

A00556
A0556

1.    The Challenge Period solely for the Committee and the Ad Hoc Noteholders' Committee to contest the liens and claims under the Five Year Credit Facility and Corporate Credit Card Program as set forth in Paragraph 25 of the Final DIP Order and the First Stipulation is hereby extended through and including the earlier of the date that is one hundred (100) days after (i) any of the Debtors, the Committee, the Ad Hoc Noteholders' Committee, the Pre-Petition Agent, or the Credit Card Issuers sends a written notice to the other parties hereto setting the last day of the Challenge Period on such one hundredth (100th) day in accordance with the terms of this Stipulation, and (ii) the Debtors or any other party in interest first files a disclosure statement with the Court pursuant to Section 1125 of the Bankruptcy Code.  The date of such notice or the filing of the disclosure statement shall be the "Investigation Commencement Date."

2.    The date by which the Pre-Petition Agent, the Pre-Petition Lenders, the Credit Card Issuers and the Debtors may serve a written response, objection or motion with respect to the subpoenas served pursuant to the Rule 2004 Orders (the "Subpoenas") is hereby extended to the thirtieth (30th) day following the Investigation Commencement Date (any such objection or motion, a "Subpoena Objection").  Subject to and without waiving any of the rights reserved in the preceding sentence, to the extent that documents have not already been produced, document production pursuant to the Subpoenas shall commence, on a rolling basis, on the thirty-first (31st) day following the Investigation Commencement Date and shall conclude on the fiftieth (50th) day following the Investigation Commencement Date.

3.    Oral examinations, as contemplated by the Subpoenas, shall be conducted and concluded between the fifty-first (51st) day following the Investigation Commencement Date and the ninety-fifth (95th) day following the Investigation

6

Commencement Date. The oral examinations contemplated may be conducted after such ninety-fifth (95th) day, but *only* as mutually agreed between the parties.

      4.     Failure of the any of the Pre-Petition Agent, the Pre-Petition Lenders, the Credit Card Issuers or the Debtors to comply with the discovery schedule set forth above shall constitute cause for any further extension of the Challenge Period.

      5.     In the event that the Creditors' Committee determines that its investigation with respect to the Five Year Credit Facility and the Credit Card Program cannot be completed absent resolution of a Subpoena Objection, then the Creditors' Committee (after seeking to resolve such objection consensually) shall seek, no later than the fifty-first (51st) day after the Investigation Commencement Date, an expedited hearing to resolve such Subpoena Objection. In the event that such a Subpoena Objection is not resolved by the seventieth (70th) day after the Investigation Commencement Date, then this circumstance shall constitute cause for a further extension of the Challenge Period; *provided* that any such extension shall only be for a period corresponding to the delay caused in connection with the resolution of such Subpoena Objection.

      6.     There shall be no further extension of the Challenge Period, except by further agreement of the parties. However, nothing herein shall prejudice the Committee's or the Ad Hoc Noteholders' Committee's rights to seek an additional extension, *for cause only as detailed in the preceding paragraphs 4 and 5*, of the Challenge Period relative to the Five Year Credit Facility and Corporate Credit Card Program in accordance with the terms of the Final DIP Order.

      7.     Nothing in this Stipulation and Order is intended to waive any rights of the Pre-Petition Agent, the Pre-Petition Lenders, the Credit Card Issuers, or the Debtors to object or to seek relief from the Bankruptcy Court with respect to the Subpoenas pursuant to

A00558

A0558

Rule 9016 of the Federal Rules of Bankruptcy Procedure, Rule 45 of the Federal Rules of

Civil Procedure or otherwise, and the parties reserve all such rights.

        8.     In the event that any date set forth in this Stipulation shall fall on a

date that is not a business day, then such date shall be deemed to be the next following

business day.

        9.     Except as expressly modified hereby, the terms of the Final DIP

Order shall remain in full force and effect.

Dated: New York, New York
       September 21, 2006

**HALPERIN BATTAGLIA RAICHT, LLP**
Conflicts Counsel to the Official Committee
  Of Unsecured Creditors

By:    */s/ Christopher J. Battaglia*
         Alan D. Halperin (AH-8432)
         Christopher J. Battaglia (CB-4436)

Robert D. Raicht (RR-2370)
    Neal W. Cohen (NC-3573)

         555 Madison Avenue
         New York, New York 10022
         (212) 765-9100

**JONES DAY**
Counsel to the Debtors and Debtors-in
  Possession

By:    */s/ Richard H. Engman*
         Corinne Ball (CB-8203)
         Richard H. Engman (RE-7861)
         222 East 41st Street
         New York, New York  10017
         (212) 326-3939

8

A00559

A0559

**SHEARMAN & STERLING LLP**
Counsel to the Pre-Petition Agent and the
  Credit Card Issuers


By:    */s/ Douglas P. Bartner*
        Douglas P. Bartner (DB-2301)
        Lynette C. Kelly (LK-7971)
        Marc B. Hankin (MH-7001)
        599 Lexington Avenue
        New York, New York 10022
        (212) 848-4000


**STROOCK & STROOCK & LAVAN LLP**
Counsel to the Ad Hoc Noteholders'
  Committee


By:    */s/ Shannon Nagle*
        Shannon Nagle (SN-5793)
        180 Maiden Lane
        New York, NY 10038
        (212) 806-5400


SO ORDERED THIS 25th DAY
OF SEPTEMBER, 2006

   */s/ Burton R. Lifland*
UNITED STATES BANKRUPTCY JUDGE

A00560

A0560

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------\---------------------------------------------x

In re:                                        Chapter 11

DANA CORPORATION, et al.,                     Case No. 06-10354 (BRL)

                    Debtors.                  (Jointly Administered)

---------------------------------------------------x

### SECOND STIPULATION AND ORDER AMONG THE DEBTORS, THE RECEIVABLES FACILITY AGENTS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE AD HOC NOTEHOLDERS' COMMITTEE EXTENDING THE CHALLENGE PERIOD SET FORTH IN THE FINAL ORDER AUTHORIZING POSTPETITION SECURED FINANCING

WHEREAS, On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York;

WHEREAS, the Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed;

WHEREAS, on March 10, 2006, the United States Trustee appointed an Official Joint Committee of Unsecured Creditors in the Debtors' proceedings, consisting of the following seven (7) members: Wilmington Trust Company, P. Schoenfeld Asset Management LLC, Sypris Technologies, Inc., Metaldyne Company LLC, Eaton Corporation, The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and Judy Scott as Executrix for the estate of Matthew

{00021503.1 / 0522-001}

A00561

A0561

Scott[1] (the "Committee"). The Committee retained Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") as its counsel to represent the Committee in all matters during the pendency of the Debtors' chapter 11 cases except those that give rise to a conflict of interest. For those matters where Kramer Levin has a conflict of interest, the Committee retained Halperin Battaglia Raicht, LLP to serve as its counsel;

WHEREAS, on March 22, 2006, membership of a certain ad hoc committee of holders of notes of Dana Corporation (the "Ad Hoc Noteholders' Committee) was set forth in the Verified Statement of Stroock & Stroock & Lavan Pursuant to Bankruptcy Rule 2019 (as supplemented from time to time);

WHEREAS, prior to the Petition Date, the Debtors financed their operations through, among things, a receivables securitization program pursuant to which the Debtors sold certain of their receivables (the "Receivables Portfolio") to Dana Asset Funding LLC ("DAF"), a non-debtor affiliate, under a certain Amended and Restated Purchase and Contribution Agreement, dated April 15, 2005 ("PCA");

WHEREAS, interests in the Receivables Portfolio were simultaneously sold or pledged by DAF under a certain Amended and Restated Receivables Purchase Agreement, dated April 15, 2005, ("RPA") between DAF, on the one hand, and the following parties, on the other: Dana Corporation, as Collection Agent, Falcon Asset Securitization Corporation, as Conduit Purchaser, Variable Funding Capital Company LLC (as assignee of Blue Ridge Asset Funding Corporation), as Conduit Purchaser, JP Morgan Chase Bank, N.A. ("JP Morgan"), as Committed purchaser and agent of Falcon Asset

---

[1]     The Committee was thereafter amended to reflect that Mr. Julio Gonzalez, Jr., as Special Administrator of the Estate of Julio Gonzalez, replaced Ms. Scott as a member of the Committee.

A00562

A0562

Securitization Corporation and program agent, and Wachovia Bank National Association ("Wachovia"), as Committed purchaser and agent of Variable Funding Capital Company;

     **WHEREAS**, the PCA and RPA shall be referred to hereinafter, collectively, as the "Receivables Facility" and JP Morgan and Wachovia shall be referred to hereinafter, collectively, as the "Receivables Facility Agents;"

     **WHEREAS**, on or about February 24, 2006, the Debtor, DAF, and the Receivables Facility Agents entered into a Waiver To Amended and Restated Receivables Purchase Agreement and Waiver To Amended and Restated Purchase and Contribution Agreement ("Waiver"), relative to which the Receivables Facility Agents required DAF to pay an aggregate $1 million waiver fee ("Waiver Fee");

     **WHEREAS**, on or about February 27, 2006, the Waiver Fee was paid by Dana Corporation in two equal payments of $500,000.00, one to each of the Receivables Facility Agents;

     **WHEREAS**, by order dated March 29, 2006 (the "Final DIP Order"), the Debtors were authorized to enter into a $1,450,000,000 post-petition financing facility with the Post-Petition Lenders;[2]

     **WHEREAS**, Paragraph 25 of the Final DIP Order provides, among other things, but in pertinent part, that any party in interest can challenge the repurchase of the Receivables Facility as well as the liens and claims of the Receivables Facility Agents, by

---

[2]     The "Post-Petition Lenders" means (a) Citicorp North America, Inc., as Administrative agent, Initial Swing Lender, one of the Initial Issuing Banks, and member of syndicate of lenders, (b) Bank of America, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (c) JP Morgan Chase Bank, NA, as one of the co-syndication agents, one of the Initial Issuing Banks and member of syndicate of lenders, (d) Citigroup Capital Markets Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions, (e) JP Morgan Securities Inc., as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions and (f) Banc of America Securities LLC, as one of the Joint Lead Arrangers and Joint Lead Bookrunners of a syndicate of financial institutions.

A00563

A0563

filing an adversary proceeding or authorization to file an adversary proceeding by June 19, 2006 (the "Challenge Period") (which can be extended by agreement with the Receivables Facility Agents or by Order of the Bankruptcy Court);[3]

WHEREAS, on July 6th, this Court approved a Stipulation and Order Among the Debtors, the Receivables Facility Agents, the Official Committee of Unsecured Creditors and the Ad Hoc Noteholders' Committee Extending the Challenge Period Set Forth in the Final Order Authorizing Postpetition Secured Financing (the "First Extension Stipulation & Order"), thereby extending the Challenge Period to September 29, 2006;

WHEREAS, the Committee has performed its due diligence relative to the liens asserted by the Receivables Facility Agents under the Receivables Facility and have determined that such liens were valid and perfected pre-petition liens in all respects, except relative to the payment of the Waiver Fee by Dana Corporation;

WHEREAS, the Committee has informally raised a potential challenge relative to the payment of the Waiver Fee;

WHEREAS, at the Debtors' request, the Receivables Facility Agents have further agreed to extend the Challenge Period as it relates to the Committee and the Ad Hoc Noteholders' Committee, only, and only with regard to the payment of the Waiver Fee, under Paragraph 25 of the Final DIP Order[4] and the First Extension Stipulation & Order.

---

[3]     Under the Final DIP Order, the Committee and the Ad Hoc Noteholders' Committee are not required to make a motion for authority to commence such an adversary proceeding since the Debtors stipulated in the Final DIP Order to confer standing to commence such actions upon the Committee and Ad Hoc Noteholders' Committee.  The challenge period is automatically tolled if the either the Committee or the Ad Hoc Noteholders' Committee delivers a notice (in letter form) to counsel for the Receivables Facility Agents (with a copy to counsel for the Debtors) before the challenge period expires describing the allegations and claims they would assert in the context of a formal complaint.  The Receivables Facility Agents can terminate the tolling period upon 10 business days' notice (in letter form) to the party that served the challenge notice.

[4]     The Debtors, the Committee, the Ad Hoc Noteholders' Committee and the Pre-Petition Agent and Credit Card Issuers (all as defined in the Final DIP Order) have also agreed to further extend the Challenge

A00564
A0564

**WHEREAS,** the Committee will allow the Challenge Period to expire on September 29, 2006 with respect to all the liens asserted by the Receivable Facility Agents under the Receivable Facility with the exception of the any and all claims and/or causes of action the Debtors' Estates may have relative to the payment of the Waiver Fee;

**NOW, THEREFORE,** in consideration of the foregoing premises and of the mutual agreements and covenants hereinafter set forth, the parties hereto, intending to be legally bound hereby, agree as follows:

1.     The Challenge Period for the Committee and the Ad Hoc Noteholders' Committee to contest the liens and claims under the Receivables Facility as set forth in Paragraph 25 of the Final DIP Order and the First Extension Stipulation & Order, will expire on September 29, 2006, *with the exception* of the Committee and Ad Hoc Noteholders' Committees' right to challenge any and all liens and claims relative to, and the payment of, the Waiver Fee, provided however, the Challenge Period (solely with regard to the Waiver Fee) is hereby extended through and including the earlier of the date that is one hundred (100) days after (i) any of the Debtors, the Committee, the Ad Hoc Noteholders' Committee, the Receivables Facility Agents sends a written notice to the other parties hereto setting the last day of the Challenge Period on such one hundredth (100th) day in accordance with the terms of this Stipulation, and (ii) the Debtors or any other party in interest first files a disclosure statement with the Court pursuant to Section 1125 of the Bankruptcy Code.

2.     Nothing herein shall prejudice the Committee's or the Ad Hoc Noteholders' Committee's rights to seek an additional extension(s) of the Challenge Period,

---

Period as it relates to the Committee's right to challenge the Pre-Petition Secured Indebtedness and the Existing Corporate Credit Card Obligations (all as defined in the Final DIP Order). The agreement by and among the Debtors, the Committee, the Ad Hoc Noteholders' Committee, the Pre-Petition Agent and Credit Card Issuers will be the subject of a separate (second) stipulation and order submitted to this Court.

{00021503.1 / 0522-001}                                    5

A00565

A0565

solely as it relates to the Waiver Fee, in accordance with the terms of the Final DIP Order, the First Extension Stipulation & Order and this Stipulation.

       3.     In the event that any date set forth in this Stipulation shall fall on a date that is not a business day, then such date shall be deemed to be the next following business day.

       4.     Except as expressly modified hereby, the terms of the Final DIP Order shall remain in full force and effect.

Dated: New York, New York
       September 27, 2006

               **HALPERIN BATTAGLIA RAICHT, LLP**
               Conflicts Counsel to the Official Committee
                 Of Unsecured Creditors

             By:    /s/ Christopher J. Battaglia
                    Alan D. Halperin (AH-8432)
                    Christopher J. Battaglia (CB-4436)

Robert D. Raicht (RR-2370)
Neal W. Cohen (NC-3573)

                    555 Madison Avenue
                    New York, New York 10022
                    (212) 765-9100

                 **JONES DAY**
Counsel to the Debtors and Debtors-in       Possession

By:    /s/Richard H. Engman
Corinne Ball (CB-8203)

                    Richard H. Engman (RE-7861)
                    222 East 41st Street
                    New York, New York  10017
                    (212) 326-3939

                 **LATHAM & WATKINS LLP**

{00021503.1 / 0522-001}         6

A00566

A0566

Counsel to the Receivables Facilities Agents

By:     /s/ David Heller
        David Heller (DH-0840)
        Nancy L. Schimmel (NS-6187)
        Sears Tower, Suite 5800
        233 South Wacker Drive
        Chicago, IL  60606
        (312) 876-7700

**STROOCK & STROOCK & LAVAN LLP**
Counsel to the Ad Hoc Noteholders'
   Committee

By:     /s/ Shannon Nagle
        Shannon Nagle (SN-5793)
        180 Maiden Lane
        New York, NY  10038
        (212) 806-5400

SO ORDERED THIS 29 DAY
OF SEPTEMBER, 2006

Burton R. Lifland
UNITED STATES BANKRUPTCY JUDGE

{00021503.1 / 0522-001}                        7

A00567

A0567

March 30, 2006

Dana Corporation
4500 Dorr Street
Toledo, Ohio 43615

Re:    Five-Year Credit Agreement, dated as of March 4, 2005 (as amended through the date
hereof, the *"Existing Credit Agreement"*), among Dana Corporation, a Virginia
corporation (the *"Company"*), the banks, financial institutions and other institutional
lenders and issuers of letters of credit party thereto, and Citicorp USA, Inc., as
administrative agent (the *"Administrative Agent"*) for the Lenders, Deutsche Bank
Securities Inc. and Bank of America, N.A., as syndication agents, JPMorgan Chase Bank,
N.A. and Suntrust Bank, as documentation agents, and Citigroup Global Markets Inc., as
lead arranger and book manager. Capitalized terms not otherwise defined in this Letter
have the same meanings as specified in the Existing Credit Agreement.

Ladies and Gentlemen:

The Administrative Agent understands that the Company intends to pay all indebtedness and
obligations (the *"Obligations"*) outstanding under the Existing Credit Agreement with proceeds from the
senior secured superpriority debtor-in-possession financing by a syndicate of lenders and Citicorp North
America, Inc., as a lender and as administrative agent dated as of March 3, 2006, such payment scheduled
to occur on March 30, 2006 (the *"Scheduled Payment Date"*).

The aggregate principal balance (the *"Unpaid Principal"*) and unpaid accrued interest and fees
(the *"Unpaid Interest/Fees"*) due the Lender under the Existing Credit Agreement, if paid in immediately
available funds by 4:00 p.m. (New York time), on the Scheduled Payment Date, will be $377,879,482.36
(the *"Payoff Amount"*), assuming that pursuant to the Final Order filed entered by the United States
Bankruptcy Court in the Southern District of New York on March 29, 2006 (the *"Final Order"*), each
Issuing Bank shall have accepted a backstopping letter of credit in respect of outstanding Letters of Credit
issued by it; underline provided that the Payoff Amount shall not include, and the Company shall be liable for, any
existing or future fees, commissions, reimbursement obligations or any other similar fees or expenses in
respect of outstanding Letters of Credit issued by an Issuing Bank and as to which such Issuing Bank has
received and accepted a backstopping letter of credit in accordance with the Final Order. From and after
the Scheduled Payment Date, if the Payoff Amount is not paid in full in immediately available funds,
interest and fees shall continue to accrue, assuming no change in applicable interest rates, on the Unpaid
Principal daily balance at the rate set forth in Existing Credit Agreement for Base Rate Advances per day
until paid in full (such additional accrued interest is herein called the *"Additional Interest/Fees"*).

Payment of the Payoff Amount plus any Additional Interest/Fees and Expenses should be made
by wire transfer to Citibank, N.A., Account No. 3685-2248, ABA No. 021000089, Account Name: NAIB
Medium Term Finance, Attn: Kwasi, Reference: Dana Pre-Petition.

Notwithstanding the foregoing, it is understood and agreed that payment of the Payoff Amount
shall not impair the obligations of the Company or any of its subsidiaries pursuant to paragraph 21 of the
Final Order.

NYDOCS02/760233
Payoff Letter

A00568
A0568

Very truly yours,

CITICORP USA, INC., as Administrative Agent

By: _____
        Name:

Title:

Acknowledged and agreed to
as of March 30, 2006

DANA CORPORATION

By: _____
Name: Kenneth A. Hiltz
Title: Chief Financial Officer

By: _____
Name: Teresa Mulawz
Title: Treasurer

NYDOCS02/760233
Payoff Letter

A00569

A0569

Very truly yours,

CITICORP USA, INC., as Administrative Agent

By: _____
     David Mode
     Director

Acknowledged and agreed to
as of March 30, 2006

DANA CORPORATION

By:_____
Name:
Title:

By:_____
Name:
Title:

NYDOCS02/760233
Payoff Letter

A00570

A0570

Hearing Date: N/A
Objection Deadline: July 31, 2006 at 4:00 p.m

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Heather Lennox (HL 3046)
Carl E. Black (CB 4803)
Ryan T. Routh (RR 1994)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
Jeffrey B. Ellman (JE 5638)

Attorneys for Debtors
  and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                    :
In re                               :   Chapter 11
                                    :
Dana Corporation, *et al.,*         :   Case No. 06-10354 (BRL)
                                    :
            Debtors.                :   (Jointly Administered)
                                    :
-------------------------------------------------------x

**DEBTORS' NOTICE OF RECONCILED RECLAMATION
CLAIMS UNDER AMENDED FINAL ORDER, PURSUANT
TO SECTIONS 105(a), 362 AND 546(c) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 9019(b): (A) ESTABLISHING
PROCEDURES FOR RESOLVING RECLAMATION CLAIMS ASSERTED
AGAINST THE DEBTORS AND (B) GRANTING CERTAIN RELATED RELIEF**

CLI-1425716v8

A00571
A0571

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Dana Corporation ("Dana") and 40 of its domestic direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent as follows:

### Background

1.    On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By an order entered on the Petition Date, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On March 10, 2006, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors, pursuant to section 1102 of the Bankruptcy Code. On June 27, 2006, the U.S. Trustee appointed an official committee of equity holders, pursuant to section 1102 of the Bankruptcy Code.

3.    Debtor Dakota New York Corp. ("Dakota") is a New York corporation. Debtor Dana is the direct or indirect parent of Dakota and each of the other Debtors. Dana maintains its corporate headquarters in Toledo, Ohio. The Debtors and their nondebtor affiliates (collectively, the "Dana Companies") have over 100 leased and owned domestic business locations and have operations in approximately 25 states, as well as in Mexico, Canada, 11 countries in Europe and 14 countries elsewhere in the world.

CLI-1425716v8                                -2-

A00572

A0572

4. The Dana Companies are leading suppliers of modules, systems and components for original equipment manufacturers and service customers in the light, commercial and off-highway vehicle markets. The products manufactured and supplied by the Dana Companies are used in cars; vans; sport-utility vehicles; light, medium and heavy trucks; and a wide range of off highway vehicles.

5. As disclosed in Dana's Form 10-K filed on April 27, 2006, for the year ended December 31, 2005, the Dana Companies recorded revenue of approximately $8.7 billion and had assets of approximately $7.4 billion and liabilities totaling $6.8 billion. As of the Petition Date, the Dana Companies had approximately 44,000 employees.

### The Reclamation Order and the Report Requirement

6. On March 29, 2006, the Court entered the Amended Final Order, Pursuant to Sections 105(a), 362 and 546(c) of the Bankruptcy Code and Bankruptcy Rule 9019(b): (A) Establishing Procedures for Resolving Reclamation Claims Asserted Against the Debtors and (B) Granting Certain Related Relief (Docket No. 724) (the "Reclamation Order"), establishing certain procedures (the "Reclamation Procedures") as the sole and exclusive method for the resolution of reclamation claims (each, a "Reclamation Claim") against the Debtors.[1]

7. Pursuant to the Reclamation Procedures, the Debtors are required, on or before the 120th day after the Petition Date (i.e., by July 3, 2006), to file a notice listing the Reclamation Claims and the amount, if any, that the Debtors believe to be valid for each such Reclamation Claim (the "Reclamation Notice"). Reclamation Order, ¶ 2(c). This pleading constitutes the Reclamation Notice required under the Reclamation Order.

---

[1]    A copy of the Reclamation Order is attached hereto as Exhibit A and incorporated herein by reference.

A00573
A0573

**Report**

8.     On or prior to the date of this Reclamation Notice, over 450 parties (collectively, the "Reclamation Claimants") sent reclamation letters (collectively, the "Demand Letters") to the Debtors demanding the return of certain goods previously shipped to the Debtors pursuant to section 546(c) of the Bankruptcy Code and/or section 2-702 of the Uniform Commercial Code. Following receipt of the Demand Letters, the Debtors organized these demands and initiated a comprehensive review of the Reclamation Claims. Because the Demand Letters seek reclamation of goods covered by literally tens of thousands (if not hundreds of thousands) of invoices totaling in excess of $275 million, the review and analysis of the Reclamation Claims constituted a significant and time-consuming project.

9.     On April 24, 2006, to assist in the Debtors' review of the thousands of reclamation invoices, the Debtors' counsel sent a letter (the "First Request") to each of the Reclamation Claimants requesting that the Reclamation Claimants provide the Debtors with certain information in electronic spreadsheet format in support of their Reclamation Claims (the "Supporting Information"). Although some of the Supporting Information may have been contained in the Demand Letters, the Debtors believed that the reconciliation of all of the Reclamation Claims without the cooperation of the Reclamation Claimants by providing this information in electronic format was not practical in the time periods established by the Reclamation Order. On June 2, 2006, counsel to the Debtors sent a second letter to those Reclamation Claimants who either had not responded to the First Request or had not provided the Supporting Information in the requested format. The Debtors requested the Supporting Information to assist them in (a) evaluating the thousands of invoices comprising the Reclamation Claims, (b) preparing this Reclamation Notice and (c) developing potential proposals to resolve the Reclamation Claims.

A00574

A0574

10.    Based on the Debtors' review of the Demand Letters, the Supporting

Information provided and their books and records, and an analysis of applicable law, the Debtors

prepared a chart (the "Claim Summary Chart") identifying all asserted Reclamation Claims and

the amount, if any, that the Debtors believe to be valid for each such Reclamation Claim (as

required by paragraph 2(c) of the Reclamation Order). The Claim Summary Chart is attached

hereto as Exhibit B and incorporated herein by reference.

***The Reclamation Claims Are Invalid to the Extent That
They Do Not Establish the Prima Facie Elements of a
Valid Reclamation Claim or Are Subject to a Valid Legal Defense***

11.    The Reclamation Order requires that "any Seller asserting a Reclamation

Claim must satisfy all procedural and timing requirements under applicable law and demonstrate

that it has satisfied all legal elements entitling it to a right of reclamation." Reclamation Order,

¶ 2(a). Each Reclamation Claimant bears the burden of establishing, by a preponderance of the

evidence and as a threshold matter, each element of a reclamation claim under section 546(c) of

the Bankruptcy Code.[2] See, e.g., In re Dairy Mart Convenience Stores, Inc., 302 B.R. 128, 133

(Bankr. S.D.N.Y. 2003) (stating that "[t]he reclaiming seller has the burden of establishing each

element of § 546(c) by a preponderance of the evidence."); Galey & Lord, Inc. v. Arley Corp.

(In re Arlco, Inc.), 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999) (same).

---

[2]    Section 546(c) of the Bankruptcy Code provides that, subject to certain exceptions:

> the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are
> subject to the right of a seller of goods that has sold goods to the debtor, in the
> ordinary course of such seller's business, to reclaim such goods if the debtor has
> received such goods while insolvent, within 45 days before the date of the
> commencement of a case under this title, but such a seller may not reclaim such
> goods unless such seller demands in writing reclamation of such goods ... not
> later than 45 days after the date of receipt of such goods by the debtor; or ... not
> later than 20 days after the date of commencement of the case, if the 45-day
> period expires after the commencement of the case.

11 U.S.C. § 546(c).

A00575

A0575

12.     The *prima facie* elements of a valid reclamation claim under section 546(c) of the Bankruptcy Code, at a minimum, are as follows:  (a) the reclaimed goods were shipped in the ordinary course of the seller's business; (b) the buyer of the reclaimed goods was insolvent at the time it received such goods; (c) the buyer received the reclaimed goods within the 45 day period prior to the commencement of the bankruptcy case; and (d) the seller made an adequate written reclamation demand within 45 days of the buyer's receipt of the reclaimed goods (or within 20 days of the commencement of the case if the 45-day period expired after the commencement of the buyer's bankruptcy case).  11 U.S.C. § 546(c); see also, e.g., Dairy Mart, 302 B.R. at 133; Arlco, 239 B.R. at 266; In re Child World, Inc., 145 B.R. 5, 7 (Bankr. S.D.N.Y. 1992).[3]

13.     Courts have further acknowledged the debtor's possession of the reclaimed goods at the time the demand is received as "an implicit requirement of a § 546(c) reclamation claim . . . ." Arlco, 239 B.R. at 266 (quoting Flav-O-Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.), 846 F.2d 1343, 1344 (11th Cir. 1988)); see also In re Adventist Living Ctrs., Inc., 52 F.3d 159, 162 (7th Cir. 1995) (noting that the *prima facie* elements of valid reclamation claims are "fairly stringent" and include the debtor's possession of the goods at the time the demand is received).  Reclaimed goods must be identifiable at the time the seller's reclamation demand is received by the debtor.  See, e.g., Arlco, 239 B.R. at 266-67 (stating that "to be subject to reclamation, goods must be identifiable and cannot have been processed into other products.... if the goods are not identifiable, the debtor could not identify or extract the goods to return them to the reclaiming seller.").

---

[3]     The Debtors reserve the right to argue that additional elements must be proven to establish a *prima facie* case under the current formulation of section 546(c) of the Bankruptcy Code.

A00576

A0576

14.     Finally, courts in this District have ruled, consistent with the provisions of the Bankruptcy Code, that reclamation claims may be invalid where such claims are subject to the superior rights of a holder of a security interest in the reclaimed goods. See, e.g., Dairy Mart, 302 B.R. at 134-36 (holding that reclamation claims were without value in light of a secured lender's prior floating lien on the debtor's inventory); see also 11 U.S.C. § 546(c) (expressly subjecting a seller's right to reclaim goods to "the prior rights of a holder of a security interest in such goods or the proceeds thereof....").

**The Debtors' Reconciliation and Analysis of the**
**Reclamation Claims Is Set Forth in the Claim Summary Chart**

15.     The Claim Summary Chart includes information related to the foregoing elements of a *prima facie* reclamation claim and other factual and legal bases for the reduction or disallowance of the Reclamation Claims. Each column of the Claim Summary Chart either: (a) provides basic or summary information about the Reclamation Claims and the Debtors' reconciliation of those claims or (b) explains the bases for the Debtors' reduction in the amount of the Reclamation Claims. The following is a short description of each column of the Claim Summary Chart:

- The column labeled "Claimant" sets forth the name of the Reclamation Claimant.

- The column labeled "Letter Assertion Amount" sets forth the amount of the claim asserted in the Reclamation Claimant's Demand Letter.

- The column labeled "Electronic Demand Amount" sets forth the amount of the claim identified in the Supporting Information provided by the Reclamation Claimant, if any.

- Where the Supporting Information submitted by a Reclamation Claimant asserted an amount for the Reclamation Claim that differed from the amount asserted in the Demand Letter, the Debtors relied on the Supporting Information as the amount validated by the Reclamation Claimants. To the extent that a Reclamation Claimant did not provide the Debtors with the requested Supporting Information in time for the Debtors to review a Reclamation Claim, the Debtors were unable to complete an invoice-by-invoice review of the Reclamation Claim and treated the Reclamation

A00577

A0577

Claimant as having failed to meet its burden to establish a *prima facie* case for the validity of the claim. The extent to which a Reclamation Claim was reduced for these reasons is set forth in the column labeled "Variance: Letter vs. Electronic"

- For certain Reclamation Claims, the Debtors and the Reclamation Claimant have reached an agreement providing for the withdrawal or reduction of the Reclamation Claim[4] prior to the date of this Reclamation Notice. The extent to which a Reclamation Claim has been withdrawn or reduced by agreement is set forth in the column labeled "Agreement Reached Adjustment."

- In some cases, the Demand Letter was untimely. The extent to which a Reclamation Claim has been reduced for this reason is set forth in the column labeled "Untimely Claim Adjustment."

- In some cases, Reclamation Claimants have failed to identify invoices corresponding to the reclaimed goods at issue. Accordingly, the Debtors were unable to determine if the amounts sought were valid and outstanding or if they were paid or otherwise objectionable. Likewise, without invoice data, the Debtors were unable to determine if the goods were in the Debtors' possession when the applicable Reclamation Demand was received or, instead, whether the goods at issue were consumed, altered or modified. The extent to which a Reclamation Claim has been reduced for this reason is set forth in the column labeled "Invoice Not Identified."

- In some cases, the Debtors have paid certain of the invoices included in a Reclamation Demand. These amounts are identified in the column labeled "Invoice Paid."

- In some cases, the reclaimed goods at issue (a) had been consumed, altered or modified by the Debtors in the course of their operations prior to the Debtors' receipt of the Demand Letter and (b) therefore were no longer identifiable and available for reclamation.[5] The extent to which a Reclamation Claim has been reduced for this reason is set forth in the column labeled "Inventory Consumed."

- Certain Reclamation Claims are invalid to the extent that the reclaimed goods were not received by the Debtors within the 45-day period prior to the Petition Date. The extent to which a Reclamation Claim has been reduced for this reason is set forth in the column labeled "Not Received in Reclam. Period."

---

[4]    See Reclamation Order, at ¶ 2(g) ("[T]he Debtors are authorized, but not required, to negotiate in their sole discretion with any Seller and to seek an agreement with any Seller to resolve its Reclamation Claim and the treatment thereof.").

[5]    In those cases where a Reclamation Claimant's Demand Letter or Supporting Information did not specify a part number corresponding to a part on hand during the relevant period of time based on the Debtors' books and records, the Debtors have assumed that such goods were consumed in the course of the Debtors' operations.

A00578
A0578

- Some Reclamation Claims identify goods that have been shipped to a non-debtor party and, therefore, are not subject to reclamation from the Debtors. The extent to which a Reclamation Claim has been reduced for this reason is set forth in the column labeled "Shipped to Non-Debtor."

- Some Reclamation Claims have asserted amounts unrelated to goods delivered to the Debtors. For example, some Reclamation Claims asserted amounts for services (rather than goods) provided to the Debtors or shipping charges and/or surcharges. Because only goods may be reclaimed, amounts of services performed are not valid Reclamation Claims. See, e.g., In re Diversified Food Serv. Distribs., Inc., 130 B.R. 427, 430 (Bankr. S.D.N.Y. 1991) (noting that section 546(c) of the Bankruptcy Code and section 2-702 of the Uniform Commercial Code "speak[ ] only of reclaiming *goods*....") (emphasis in original). In addition, in some cases, Reclamation Claimants have failed to identify the goods proposed to be reclaimed (by part number or otherwise) (collectively, the "Unidentified Goods"). The Debtors have assumed that the portion of any Reclamation Claim relating to such Unidentified Goods is not valid because no reclaimable goods have been identified. See, e.g., Conoco, Inc. v. Braniff, Inc. (In re Braniff, Inc.), 113 B.R. 745, 752 (Bankr. M.D. Fla. 1990) (holding that, to be sufficient as a matter of law, a reclamation demand "must identify the goods as to which reclamation is sought...."). The extent to which a Reclamation Claim has been reduced for these reasons is set forth in the column labeled "Not Reclaimable Good."

- The column labeled "Amount Disallowed" sets forth the aggregate amount by which the Debtors believe the Reclamation Claim should be reduced based upon the various defenses to a Reclamation Claim described above and before accounting for other legal defenses.

- The column labeled "Validated Claim Before Legal Adjust." sets forth the amount of the Reclamation Claim that the Debtors believe may be valid before applying certain available legal defenses.

- After arriving at the amounts for each Reclamation Claim set forth in the column labeled "Validated Claim Before Legal Adjust.," the Debtors reviewed their available legal defenses to the Reclamation Claims. In doing so, the Debtors determined that approximately $377 million of the Debtors' outstanding prepetition indebtedness was secured by a prepetition floating lien on the Debtors' inventory (which indebtedness was satisfied by the proceeds of a debtor in possession financing facility secured by a floating lien on the same inventory). This inventory included the goods subject to the Reclamation Claims. Accordingly, the Debtors, following the analysis in Dairy Mart and the terms of section 546(c) of the Bankruptcy Code, concluded that the existence and satisfaction of this prior lien rendered any otherwise valid portion of the Reclamation Claims valueless. In addition to this defense, the Debtors determined that other legal defenses may be applicable. The extent to which a Reclamation Claim has been reduced in light of this or other legal defenses is set forth in the column labeled "Legal Defense Adjustment."

A00579

A0579

- The column labeled "Valid Reclamation Claim" sets forth the amount of the Reclamation Claim that the Debtors believe is valid based on all of the analyses described above. As a result of various legal defenses, the valid claim amount identified for each Reclamation Claim is $0.00.

*Debtors' Reservation of Rights and Defenses*

16.     The various reductions of, and adjustments to, the Reclamation Claims set forth on the Claim Summary Chart (and as described in detail above) represent the Debtors' preliminary analysis of the Supporting Information received by Reclamation Claimants and the tens of thousands of invoices underlying such claims.  The Debtors hereby reserve all rights to supplement or amend the Claim Summary Chart based upon their further (a) review of information already received from, or additional information supplied by, the Reclamation Claimants or (b) discussions and/or negotiations with the Reclamation Claimants with respect to the possible amendment, resolution or withdrawal of their Reclamation Claims.  Moreover, the Debtors reserve the right to assert all available legal and factual defenses of any nature to each Reclamation Claim at any time (including, but not limited to, the eventual litigation of any Reclamation Claim), regardless of whether information relating to any such defense is set forth on the Claim Summary Chart.

*Procedures for Objecting to This Reclamation Notice*
*and the Proposed Treatment of Reclamation Claims*

17.     All Reclamation Claimants have the right and opportunity to object to the treatment of their respective Reclamation Claims proposed on the Claim Summary Chart and herein.  Reclamation Order, ¶ 2(e).  Objections, if any, must be made in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court Southern District of New York and be filed with the Bankruptcy Court and served in accordance with the Amended Administrative Order, Pursuant to Rule 1015(c) of the Federal Rules of Bankruptcy Procedure, Establishing Case Management and Scheduling Procedures in

A00580
A0580

these cases (Docket No. 574) (the "Case Management Order") so as to be actually received by the Debtors and the other parties entitled to service not later than July 31, 2006 at 4:00 p.m., New York City Time (the "Objection Deadline"). Any Reclamation Claim included in this Reclamation Notice that is not the subject of an objection timely filed and served prior to the Objection Deadline shall be deemed finally established in the amount identified on the Claim Summary Chart. Reclamation Order, ¶ 2(f).

18.     If a Reclamation Claimant timely and properly objects to the Debtors' proposed treatment of its Reclamation Claim, the Debtors are authorized to negotiate with the Reclamation Claimant to seek an agreement resolving its Reclamation Claim, as described in the Reclamation Order. If no such settlement is reached, the Debtors may file a motion requesting that the Court to resolve the objection.

**Notice**

19.     Pursuant to the Reclamation Order and the Case Management Order, this Reclamation Notice has been served on (a) the parties identified on the Special Service List and

A00581
A0581

the General Service List (as such terms are defined in the Case Management Order) and (b) the

Reclamation Claimants.  The Debtors submit that no other or further notice need be provided.

Dated:  June 30, 2006                              Respectfully submitted,
          New York, New York


                                                    s/Corinne Ball
                                                   Corinne Ball (CB 8203)
                                                   Richard H. Engman (RE 7861)
                                                   JONES DAY
                                                   222 East 41st Street
                                                   New York, New York  10017
                                                   Telephone:  (212) 326-3939
                                                   Facsimile:  (212) 755-7306

                                                   Heather Lennox (HL 3046)
                                                   Carl E. Black (CB 4803)
                                                   Ryan T. Routh (RR 1994)
                                                   JONES DAY
                                                   North Point
                                                   901 Lakeside Avenue
                                                   Cleveland, Ohio  44114
                                                   Telephone:  (216) 586-3939
                                                   Facsimile:  (216) 579-0212

                                                   Jeffrey B. Ellman (JE 5638)
                                                   JONES DAY
                                                   1420 Peachtree Street, N.E.
                                                   Suite 800
                                                   Atlanta, Georgia  30309-3053
                                                   Telephone:  (404) 521-3939
                                                   Facsimile:  (404) 581-8330

                                                   ATTORNEYS FOR DEBTORS
                                                   AND DEBTORS IN POSSESSION

A00582

A0582