Hearing Date and Time: February 28, 2007 at 10:00 a.m.
Response Deadline:  January 26, 2007 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Dana Corporation, *et al.*, | : | Case No. 06-10354 (BRL) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

-------------------------------------------------------------x

---

## INITIAL BRIEF OF DEBTORS AND DEBTORS IN POSSESSION IN SUPPORT OF PRIOR LIEN DEFENSE TO RECLAMATION CLAIMS

---

Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Pachulski Stang Ziehl Young Jones
    & Weintraub LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777


CONFLICTS COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

17290-001\DOCS_NY:11122.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   FACTS ...................................................................................................3

    A.    The Prepetition Credit Facility....................................................3

    B.    The Postpetition Credit Facility ..................................................7

        1.    The Interim DIP Order and the DIP Lien ......................7

        2.    Use of Cash Collateral and Replacement Liens...........8

        3.    The Final DIP Order and Repayment of the Prepetition Credit
          Facility ............................................................................10

    C.    The Reclamation Procedures and the Reclamation Claims ....................................10

III.  ARGUMENT.........................................................................................13

    A.    Section 546(c) of the Bankruptcy Code Expressly Provides That the
          Objecting Claimants' Rights to the Reclaimed Goods Are Subject to the
          Prior Rights of the Prepetition Lenders ..................................................13

    B.    The Remaining Reclamation Claims Are Valueless....................16

        1.    The Remaining Reclamation Claims Are Valueless Because
          the Aggregate Prepetition Indebtedness Exceeds the Individual
          Value of the Reclamation Claims ...........................................16

        2.    The Remaining Reclamation Claims Are Valueless Because the
          Reclaimed Goods Were Disposed in Satisfaction of the Prepetition
          Lien ....................................................................................19

            a.    The Dairy Mart Case...........................................21

            b.    The Remaining Reclamation Claims Are Valueless Because
              the *Dairy Mart* Analysis Is Applicable in the Debtors'
              Chapter 11 Cases.......................................................24

IV.   RESERVATION OF RIGHTS ...............................................................25

V.    CONCLUSION......................................................................................27

17290-001\DOCS_NY:11122.1

A00711

A0711

PACHULSKI STANG ZIEHL YOUNG
    JONES & WEINTRAUB LLP
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Conflicts Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Dana Corporation, *et al.*, | : | Case No. 06-10354 (BRL) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

---------------------------------------------------------------x

### INITIAL BRIEF OF DEBTORS AND DEBTORS IN POSSESSION
### IN SUPPORT OF PRIOR LIEN DEFENSE TO RECLAMATION CLAIMS

In accordance with the Court's Order, Pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rules 7042 and 9014: (I) Bifurcating Consideration of Issues

Relating to Reclamation Claims; (II) Establishing a Briefing Schedule for Consideration of

Certain Common Issues; and (III) Granting Certain Related Relief (Docket No. 3865)

(the "Reclamation Scheduling Order"), the above-captioned debtors and debtors in possession

(collectively, the "Debtors") hereby submit this Initial Brief in support of certain of the Debtors'

legal defenses to the Remaining Reclamation Claims (as such term is defined below).

## I.    INTRODUCTION

Under the governing statutory provisions, as interpreted in this District, all of the

reclamation claims asserted in these cases are valueless.  Under the plain language of

A00712
A0712

section 546(c) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), which is consistent with the applicable provisions of the Uniform Commercial Code (the "UCC"), the rights of parties asserting reclamation claims are expressly subject to the superior rights of a party with a prior lien or security interest in such goods, and the existence of such a prior lien provides a complete defense to reclamation claims (the "Prior Lien Defense"). Here, the Prior Lien Defense is applicable because the Debtors' prepetition secured lenders held a preexisting floating lien on the equipment and inventory that are the subject of the asserted reclamation claims (the "Reclaimed Goods").

Under the Prior Lien Defense, the rights of prior lienholders in these cases serve to render all reclamation claims valueless by cutting off the reclaiming parties' rights to the Reclaimed Goods at issue. *First*, because the doctrine of marshaling does not apply in the reclamation context, the Debtors' prepetition secured lenders had the right to satisfy their claims out of any of their collateral — which includes all of the Reclaimed Goods. Outside of bankruptcy, this would mean that the parties asserting reclamation claims (collectively, the "Reclamation Claimants") would have no right to achieve the actual return of the Reclaimed Goods because doing so would serve to destroy rights of the prior lienholders in such goods, which would be an impermissible reordering of priorities under applicable law. Reclaiming creditors have no greater rights under the Bankruptcy Code.

*Second*, the Reclaimed Goods in these cases effectively were disposed of, with the proceeds used to satisfy the prepetition secured lenders' secured claims. This disposition occurred when the Reclaimed Goods and the proceeds thereof were pledged to the Debtors' postpetition lenders, thereby providing the Debtors with access to the funds used to pay the prepetition secured lenders' claims. Because the Reclaimed Goods were disposed of in this

17290-001\DOCS_NY:11122.1

A00713
A0713

manner, the potential rights of reclaiming creditors in these same goods have been extinguished and rendered valueless.

Following the analysis of case law from this District and others — most notably, Judge Gonzalez's decision in *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D.N.Y. 2003) —the existence and satisfaction of the prior floating inventory liens on the Reclaimed Goods renders even otherwise valid reclamation claims valueless. Accordingly, the reclamation claims asserted in these cases have been properly reconciled in the amount of $0.00, as set forth in the Reclamation Notice (as such term is defined below), and all of the Remaining Reclamation Claims should be valued at $0.00.[1]

## II.    FACTS

### A.    The Prepetition Credit Facility

Debtor Dana Corporation ("Dana") was the borrower under that certain Five-Year Credit Agreement, dated March 4, 2005 (as amended, the "Prepetition Credit Facility").[2] The Prepetition Credit Facility was a $400 million revolving credit facility, of which up to a maximum of $100 million could be utilized for letters of credit.[3] In connection with the Prepetition Lenders' agreement to waive certain defaults under the Prepetition Credit Facility,

---

[1]    Although the Reclamation Claims are valueless as reclamation claims, the liabilities underlying the Reclamation Claims may constitute, in whole or in part, valid general unsecured nonpriority claims under section 502 of the Bankruptcy Code or valid administrative priority claims under section 503(b)(9) of the Bankruptcy Code. The Debtors reserve the right to object to these claims as part of the normal claims process in these cases.

[2]    The Prepetition Credit Facility was by and among:  (a) Dana, as borrower; (b) various banks, financial institutions and other institutional lenders that have been, at one time or another, parties to the Prepetition Credit Facility (collectively, the "Prepetition Lenders"); (c) Citicorp USA, Inc., as administrative agent; (d) Deutsche Bank Securities, Inc. and Bank of America, N.A. ("Bank of America"), as syndication agents; (e) JPMorgan Chase Bank, N.A. ("JPMorgan Chase") and SunTrust Bank, as documentation agents; and (f) Citigroup Global Markets, Inc., as lead arranger and book manager. The Prepetition Credit Facility, along with all schedules and amendments thereto and waivers thereof, is attached hereto as Exhibit A.

[3]    *See* Prepetition Credit Facility § 2.01.

17290-001\DOCS_NY:11122.1

A00714
A0714

Dana and certain of Dana's domestic subsidiaries (collectively, the "Grantors")[4] entered into that

certain Security Agreement (the "Security Agreement"),[5] dated November 18, 2005, with

Citicorp USA, Inc., as administrative agent under the Prepetition Credit Facility. Pursuant to the

Security Agreement, the Grantors granted to the Prepetition Lenders a security interest in their

equipment, inventory, accounts and certain other current assets. Specifically, under the Security

Agreement, each Grantor granted security interests (collectively, the "Prepetition Lien") in such

Grantor's right, title and interest in, among other things:

- "all equipment in all of its forms, including, without limitation, all machinery, tools, vessels, furniture and fixtures, and all parts thereof and all accessions thereto, including, without limitation, computer programs and supporting information that constitute equipment within the meaning of the UCC[6] . . . , but excluding motor vehicles and aircraft" (collectively, the "Prepetition Equipment");[7]

- "all inventory in all of its forms, including, without limitation, (i) all raw materials, work in process, finished goods and materials used or consumed in the manufacture, production, preparation or shipping thereof, and (ii) finished goods that are returned to or repossessed or stopped in transit by such Grantor, and all accessions thereto and all software that is imbedded in and is part of the inventory" (collectively, the "Prepetition Inventory" and, together with the Prepetition Equipment, the "Prepetition Collateral");[8] and

---

[4]   With the exceptions of Debtors Dakota New York Corporation and Dana Information Technology LLC, all of the Debtors are Grantors under the Security Agreement. Based upon a review of the Reclamation Claims that have been asserted, it appears that none of the Reclamation Claims are being asserted against either of these two Debtors. Accordingly, the fact that these Debtors are not Grantors under the Security Agreement is irrelevant for the purposes of the argument set forth herein.

[5]   The Security Agreement, along with all schedules thereto, is attached hereto as Exhibit B.

[6]   The Security Agreement defines "UCC" as "the Uniform Commercial Code as in effect, from time to time, in the State of New York, provided that, if perfection or the effect of perfection or non-perfection or the priority of any security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, 'UCC' means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions hereof relating to such perfection, effect of perfection or non-perfection or priority." *See* Security Agreement Recital 10.

[7]   *See* Security Agreement § 1(a).

[8]   *See* Security Agreement § 1(b).

-4-

A00715

A0715

- "the Pledged Deposit Accounts[9] and all funds and financial assets from time to time credited thereto."[10]

\Pursuant to the Interim DIP Order and Final DIP Order (as such terms are defined below), the Prepetition Lien has been determined to be a "valid, binding, perfected, enforceable, first-priority lien[ ] and security interest[ ] in the tangible and intangible property constituting the [collateral pledged to the Prepetition Lenders pursuant to the Security Agreement], including ... the Debtors' machinery and equipment [and] inventory...."[11]

As of March 3, 2006 (the "Petition Date"), borrowings under the Prepetition Credit Facility were not less than $381 million (the "Prepetition Indebtedness").[12]  At that time, the aggregate value of all collateral (including the Prepetition Collateral) pledged to the Prepetition Lenders under the Security Agreement exceeded amount of the Prepetition Indebtedness.[13]

The stipulations, admissions, and findings contained in the Interim DIP Order and the Final DIP Order relating to the validity, enforceability, priority, and extent of the Prepetition Lien and the Prepetition Indebtedness *are binding upon all parties in interest unless certain events occur*, including in particular the filing of a timely challenge to the liens and claims of the Prepetition Lenders.[14]  At this time, *none of these events has occurred.*  The period to

---

[9]  The Security Agreement defines "Pledged Deposit Accounts" as "the domestic deposit accounts" owned by certain of the Grantors.  See Security Agreement, at Preliminary Statement 6.

[10]  *See* Security Agreement, at § 1(e)(i).

[11]  Interim DIP Order ¶ 3(b); Final DIP Order ¶ 3(b).  As described below, this finding is based on a stipulation with the Debtors that is now binding on all of the Reclamation Claimants.

[12]  *See* Final DIP Order ¶ 3(a).

[13]  *See* Interim DIP Order ¶ 3(c); Final DIP Order ¶ 3(c) ("The aggregate value of the Pre-Petition Collateral exceeds the aggregate amount of the Pre-Petition Secured Indebtedness").  Because the Debtors have stipulated to this fact in the Interim DIP Order and the Final DIP Order, they do not intend to challenge those stipulations for the purposes of this litigation.

[14]  Interim DIP Order ¶ 25; Final DIP Order ¶ 25.  Paragraph 25 of the Final DIP Order provides, in relevant part:

17290-001\DOCS_NY:11122.1

A00716

A0716

challenge the Prepetition Lien and Prepetition Indebtedness (which otherwise expired on June 19, 2006) has been extended *only* for the Official Committee of Unsecured Creditors and the Ad Hoc Committee of Noteholders pursuant to stipulated orders approved by the Court after the entry of the Final DIP Order.[15]  The relevant challenge period, however, has not been extended for *any* of the Reclamation Claimants, and such claimants' time to assert challenges to the stipulations and findings set forth in paragraph 3 of the Final DIP Order has expired.

In fact, as of the date hereof, no party has filed an adversary proceeding or contested matter challenging the validity, enforceability, priority or extent of the Prepetition Lien or the Prepetition Indebtedness.  Accordingly, at this time, the existence and validity of the Prepetition Lien are established facts that the Debtors are entitled to rely upon for purposes of

---

(continued...)

The stipulations and admissions contained in the Final Order, including, without limitation, in paragraphs 3 and 21 of this Final Order, shall be binding upon all other parties in interest, including, without limitation, any Creditors' Committee, unless (a) a party in interest has timely filed an adversary proceeding or contested matter, or commenced litigation for authorization to commence such adversary proceeding or contested matter ... by no later than June 19, 2006 [which challenges certain aspects of the stipulations and admissions], and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter...

[15]   Four such stipulations have been entered by the Court to date (collectively, the "Challenge Period Stipulations"): (a) the Stipulation and Order Among the Debtors, the Receivables Facility Agents, the Official Committee of Unsecured Creditors and the Ad Hoc Noteholders' Committee Extending the Challenge Period Set Forth in the Final Order Authorizing Postpetition Secured Financing (Docket No. 1680), entered on July 7, 2006; (b) the Stipulation and Order Among the Debtors, the Pre-Petition Agent, the Credit Card Issuers, the Official Committee of Unsecured Creditors and the Ad Hoc Noteholders' Committee Extending the Challenge Period Set Forth in the Final Order Authorizing Postpetition Secured Financing (Docket No. 2044), entered on July 18, 2006; (c) the Second Stipulation and Order Among the Debtors, the Pre-Petition Agent, the Credit Card Issuers, the Official Committee of Unsecured Creditors and the Ad Hoc Noteholders' Committee Extending the Challenge Period Set Forth in the Final Order Authorizing Postpetition Secured Financing (Docket No. 3646), entered on September 25, 2006; and (d) the Second Stipulation and Order Among the Debtors, the Receivables Facility Agents, the Official Committee of Unsecured Creditors and the Ad Hoc Noteholders' Committee Extending the Challenge Period Set Forth in the Final Order Authorizing Postpetition Secured Financing (Docket No. 3703), entered on September 29, 2006.

17290-001\DOCS_NY:11122.1

A00717

A0717

this litigation. *See* Transcript of October 11, 2006 Hearing (Docket No. 3929), at 48: 3-4 (Court

noting that "[t]he liens have not been challenged. They are there.").[16]

B.    The Postpetition Credit Facility

On the Petition Date, the Court entered an interim order (Docket No. 55)

(the "Interim DIP Order"):[17]  (1) authorizing the Debtors to (a) obtain $1.45 billion in secured

postpetition financing under that certain Senior Secured Superpriority Debtor-in-Possession

Credit Agreement, dated March 3, 2006 (as amended, the "DIP Facility"),[18] and (b) utilize the

Prepetition Lenders' cash collateral; and (2) granting adequate protection to the Prepetition

Lenders.

1.    The Interim DIP Order and the DIP Lien

Under the DIP Facility and pursuant to the Interim DIP Order, the DIP Lenders

were granted "a valid, binding, continuing, enforceable, fully-perfected first priority senior

priming security interest in and lien upon all pre-petition and post-petition property of the

Debtors ... whether now existing or hereafter acquired, that is subject to the existing liens

---

[16]    Under the terms of the Reclamation Scheduling Order, any ruling of the Court on the issues raised herein will not "prejudice the rights of the Official Committee of Unsecured Creditors or the Ad Hoc Noteholders' Committee to challenge the prepetition liens of the Debtors' prepetition lenders, all of which are preserved in full," consistent with the terms of the Challenge Period Stipulations. *See* Reclamation Scheduling Order ¶ 6.

[17]    The Interim DIP Order is captioned as the Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 and Fed. Bankr. P. 2002, 4001 and 9014 and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b), 4001(c) and 4001(d).  A copy of the Interim DIP Order is attached hereto as Exhibit C and incorporated herein by reference.

[18]    The DIP Facility was entered into by and among: (a) Dana, as borrower; (b) the Debtors, as guarantors; (c) various banks, financial institutions and other institutional lenders party thereto (collectively, the "DIP Lenders"); (c) Citicorp North America, Inc. ("Citicorp"), as administrative agent; (d) Bank of America and JPMorgan Chase, as co-syndication agents; (e) Citicorp, as initial swing line lender; (f) Bank of America, Citicorp and JPMorgan Chase, as initial issuing banks; and (g) Citigroup Capital Markets, Inc., J.P. Morgan Securities Inc. and Banc of America Securities LLC, as joint lead arrangers and joint bookrunners. The DIP Facility, along with all schedules thereto, is attached hereto as Exhibit D.

-7-

A00718

A0718

presently securing the [Prepetition Credit Facility]"[19] (the "DIP Lien"), including, but not limited to:

- all "Equipment," defined as "goods other than inventory, farm products or consumer goods;"[20] and

- all "Inventory," defined as "goods, other than farm products, which (A) are leased by a person as a lessor; (B) are held by a person for sale or lease or to be furnished under a contract of service; (C) are furnished by a person under a contract of service; or (D) consist of raw materials, work in process, or materials used or consumed in a business."[21]

Thus, the DIP Lien expressly granted the DIP Lenders first priority security interests in all of the collateral constituting the Prepetition Collateral. Such security was a necessary condition of the DIP Lenders' agreement to extend postpetition financing to the Debtors under the DIP Facility.[22]

### 2. Use of Cash Collateral and Replacement Liens

The Interim DIP Order provides that "[t]he cash of the Debtors party to the [Prepetition Credit Facility], including, without limitation, the Deposited Funds,[23] or any other

---

[19]   *See* Interim DIP Order ¶ 6(b); *see also* Final DIP Order ¶ 6(b) (containing the same provision).

[20]   *See* DIP Facility § 9.01(a). "Equipment" is defined by the DIP Facility to have "the meaning specified in the UCC," with "UCC" defined as set forth at note 6 above. Section 9-102(33) of chapter 38 of the Consolidated Laws of New York provides the definition of "Equipment" set forth in the text above.

[21]   *See* DIP Facility § 9.01(b). "Inventory" is defined by the DIP Facility to have "the meaning specified in the UCC," with "UCC" defined as set forth at note 6 above. Section 9-102(48) of chapter 38 of the Consolidated Laws of New York provides the definition of "Inventory" set forth in the text above.

[22]   *See* Interim DIP Order ¶ 4(c); Final DIP Order ¶ 4(c) ("The Debtors are unable to obtain credit for borrowed money under sections 364(c)(2) and 364(c)(3) without the Debtors' granting to the Administrative Agent (for the ratable benefit of the [DIP Lenders] ... Liens on various of the assets of the Debtors...."); DIP Facility, at § 9.01 (granting liens on, among other things, the Prepetition Collateral "[t]o induce the [DIP] Lenders to make the Advances...."); Declaration of Henry S. Miller in Support of Motion of Debtors and Debtors in Possession for (I) An Interim Order Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001 and 9014 and (II) Interim and Final Orders Authorizing Them to (A) Obtain Postpetition Financing Pursuant to Sections 105, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of the Bankruptcy Code; (B) Utilize Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; and (C) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, at ¶ 13 (declaring that all proposals for postpetition financing received by the Debtors prior to the Petition Date "required that the Debtors grant liens in substantially all of their assets and that some of the proceeds of the proposed debtor in possession financing facilities be used to ... refinance the Pre-Petition Secured Indebtedness.").

[23]   "Deposited Funds" is defined by the Interim DIP Order as "any funds of any Debtor who is a party to the [Prepetition Credit Facility] [that] were on deposit with the Pre-Petition Agent or the [Prepetition Lenders]

-8-

A00719

A0719

funds on deposit at the [Prepetition Lenders] as of the Petition Date, and any proceeds generated by the collection of accounts receivable, sale of inventory or other disposition of the Pre-Petition Collateral ... are cash collateral of the [Prepetition Lenders] within the meaning of section 363(a) of the Bankruptcy Code. The Deposited Funds and all such proceeds of Pre-Petition Collateral are ... 'Cash Collateral'" (collectively, the "Cash Collateral").[24] The Interim DIP Order authorized the Debtors' use of the Prepetition Lenders' Cash Collateral on a postpetition basis.[25]

As adequate protection for the diminution of the value of the Prepetition Lenders' interest in the Prepetition Collateral occasioned by, among other things, the priming of the Prepetition Lien by the DIP Lien and the Debtors' use of the Prepetition Lenders' Cash Collateral, the Prepetition Lenders were granted a replacement security interest in, and lien upon, all of the Debtors' collateral subject to the DIP Lien (including the Prepetition Collateral and the proceeds thereof) (the "Replacement Lien").[26] The Replacement Lien was effective and perfected upon the entry of the Interim DIP Order (*i.e.*, on the Petition Date) without the need for the Debtors to execute any mortgages, financing statements, security agreements or other agreements. The Replacement Lien was subordinated in priority only to (a) the DIP Lien, (b) liens upon the DIP Lenders' collateral to which the DIP Lien was subordinate and (c) a

---

(continued...)

as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor who is a party to the [Prepetition Credit Facility] with any [Prepetition Lender] immediately prior to the filing of the Debtors' bankruptcy petitions ...." Interim DIP Order ¶ 19.

[24]  *See* Interim DIP Order ¶ 19.

[25]  *See* Interim DIP Order ¶ 20 ("The Debtors are hereby authorized to use all Cash Collateral of the Pre-Petition Creditors, and the Pre-Petition Creditors are directed promptly to turn over to the Debtors all Cash Collateral received or held by them....").

[26]  *See* Interim DIP Order ¶ 21(a).

-9-

A00720
A0720

collateral carve-out for the payment of certain professionals' fees and other fees specified in the Interim DIP Order.[27]

      3.    The Final DIP Order and Repayment of the Prepetition Credit Facility

On March 29, 2006, the Court entered a final order (Docket No. 721) (the "Final DIP Order"), which, among other things, approved the DIP Facility on a final basis and authorized the use of the Prepetition Lenders' Cash Collateral and the granting of the DIP Lien and the Replacement Lien to the DIP Lenders and Prepetition Lenders, respectively.[28] In addition, the Final DIP Order authorized the Debtors to refinance the Prepetition Indebtedness with the proceeds of the DIP Facility.[29] On March 30, 2006 (the "Payoff Date"), pursuant to the terms and conditions of the DIP Facility and the Final DIP Order, the Debtors repaid the Prepetition Indebtedness in full using funds borrowed under the DIP Facility.[30]

    C.    The Reclamation Procedures and the Reclamation Claims

As is common in the automotive industry, the Debtors regularly receive thousands of shipments of parts and other products every month from a vast supplier constituency as part of their just-in-time supply chain management systems. Following the commencement of these cases, over 450 of these suppliers sent letters to the Debtors demanding the return of the goods pursuant to section 546(c) of the Bankruptcy Code and/or section 2-702 of the UCC

---

[27]    *See id.*

[28]    The Final DIP Order is captioned as Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant To 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 and (b) Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364. The Final DIP Order is attached hereto as Exhibit E and incorporated herein by reference.

[29]    *See* Final DIP Order ¶ 5(a)(iii).

[30]    *See* Letter of David Mode of Citicorp USA, Inc., as administrative agent, dated March 30, 2006 (the "Payoff Letter") (copy attached as Exhibit F).

-10-

A00721
A0721

(collectively, the "Reclamation Claims"). The Reclamation Claims originally asserted claims against the Debtors in an aggregate amount of more than $297 million.

Each of the Reclamation Claims asserts a right to reclaim equipment or inventory, which comprised part of the Prepetition Collateral (to the extent such goods were in the Debtors' possession as of the Petition Date) and therefore were subject to the Prepetition Lien. Moreover, each of the Reclamation Claims asserts a right to reclaim goods that, on the Petition Date, became subject to the DIP Lien.

On March 29, 2006, the Court entered the Amended Final Order, Pursuant to Sections 105(a), 362 and 546(c) of the Bankruptcy Code and Bankruptcy Rule 9019(b): (A) Establishing Procedures for Resolving Reclamation Claims Asserted Against the Debtors and (B) Granting Related Relief (Docket No. 724) (the "Reclamation Procedures Order"), approving certain procedures (the "Reclamation Procedures") as the sole and exclusive method for the resolution of Reclamation Claims against the Debtors.

Pursuant to the Reclamation Procedures Order, on June 30, 2006, the Debtors filed the Notice of Reconciled Reclamation Claims Under Amended Final Order, Pursuant to Sections 105(a), 362 and 546(c) of the Bankruptcy Code and Bankruptcy Rule 9019(b): (A) Establishing Procedures for Resolving Reclamation Claims Asserted Against the Debtors and (B) Granting Certain Related Relief (Docket No. 1650) (the "Reclamation Notice"). In the Reclamation Notice, the Debtors asserted that various fact-intensive defenses to the Reclamation Claims (collectively, the "Fact-Intensive Defenses") substantially reduced the aggregate amount of Reclamation Claims acknowledged by the Debtors as potentially valid.[31] The Reclamation

---

[31]     The Debtors explained in the Reclamation Notice that the reconciliations contained therein represented the Debtors' *preliminary* review of the Reclamation Claims based upon the Fact-Intensive Defenses and that the Debtors reserved their rights to supplement or amend their reconciliation of the Reclamation Claims upon further review of the facts and circumstances of each claim. *See* Reclamation Notice ¶ 16. The

-11-

A00722

A0722

Notice also asserted the Prior Lien Defense, arguing that the Reclamation Claims were rendered valueless by the existence of prior liens on the Reclaimed Goods and therefore were not entitled to treatment as reclamation claims.[32] Accordingly, after application of both the Fact-Intensive Defenses and the Prior Lien Defense, the Reclamation Notice identified the reconciled total of each Reclamation Claim as $0.00.[33]

To date, approximately 132 Reclamation Claimants (collectively, the "Objecting Claimants") have filed objections to the Reclamation Notice that remain unresolved (collectively, the "Reclamation Objections").[34] The Reclamation Claims of the Objecting Claimants are referred to herein collectively as the "Remaining Reclamation Claims." The face amount of claims asserted in the Remaining Reclamation Claims exceeds $110 million.

---

(continued...)

Fact-Intensive Defenses include (without limitation) reductions to Reclamation Claims attributable to: (a) agreements between the Debtors and a Reclamation Claimant providing for the withdrawal or reduction of the Reclamation Claim; (b) the untimeliness of a Reclamation Claimant's demand letter; (c) a Reclamation Claimant's failure to adequately identify invoices corresponding to the goods reclaimed; (d) the Debtors' payment of the invoices underlying a Reclamation Claim; (e) the Debtors' consumption, alteration or modification of the goods reclaimed; (f) the Debtors' receipt of the reclaimed goods outside the 45-day period within which reclaimed goods must have been delivered to the Debtors pursuant to section 546(c) of the Bankruptcy Code; (g) reclaimed goods having been shipped to a non-debtor party; (h) the Reclamation Claim having asserted amounts unrelated to goods delivered to the Debtors; and (i) any variance between the amount of a Reclamation Claim asserted in a Reclamation Claimant's initial demand letter and the amount asserted in later submissions of certain information in electronic spreadsheet format in support of the Reclamation Claim. A more detailed description of the Fact-Intensive Defenses is provided in paragraph 15 of the Reclamation Notice.

[32] As noted above, the liabilities underlying the Reclamation Claims potentially could be entitled to treatment, in whole or in part, as general unsecured nonpriority claims under section 502 of the Bankruptcy Code or valid administrative priority claims under section 503(b)(9) of the Bankruptcy Code.

[33] See id. at ¶ 15, Exhibit B.

[34] Pursuant to paragraph 2(f) of the Reclamation Procedures Order, the more than 300 Reclamation Claimants that did not object or otherwise respond to the Reclamation Notice have had their Reclamation Claims allowed in the amount set forth in the Reclamation Notice — $0.

-12-

A00723

A0723

## III.   ARGUMENT

### A.   Section 546(c) of the Bankruptcy Code Expressly Provides That the Objecting Claimants' Rights to the Reclaimed Goods Are Subject to the Prior Rights of the Prepetition Lenders

As described in detail in the factual section of this Initial brief, the Prepetition Lien constitutes a valid prior lien on all of the Reclaimed Goods. The existence of such lien means that under *either* state reclamation law or the applicable provisions of the Bankruptcy Code, the Prior Lien Defense applies to all of the Remaining Reclamation Claims.

A seller's right to reclamation in bankruptcy arises under section 546(c) of the Bankruptcy Code.[35] Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), section 546(c) of the Bankruptcy Code expressly grounded a seller's right of reclamation in nonbankruptcy law.[36] Typically, the nonbankruptcy statutory basis of a seller's right to reclaim is a state's version of section 2-702 of the UCC.[37] Of note,

---

[35]    Section 546(c) of the Bankruptcy Code provides that:

> (c) (1) ... *subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof,* the rights and powers of the trustee under sections 544(a), 545, 547 and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title but such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods —
>
>> (A) not later than 45 days after the date of receipt of such goods by the debtor; or (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.
>
> (2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9).

11 U.S.C. § 546(c) (emphasis added).

[36]    Prior to BAPCPA's effective date, section 546(c) of the Bankruptcy Code provided that "the rights and powers of a trustee under ... this title are subject to *any statutory or common-law right* of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods ...." (emphasis added). Thus, section 546(c) of the Bankruptcy Code historically had been viewed as a provision that "recognize[s] any right to reclamation that a seller may have under applicable nonbankruptcy law." *Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.),* 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999) (citing *In re Victory Markets Inc.,* 212 B.R. 738, 741 (Bankr. N.D.N.Y. 1997)).

[37]    Section 2-702 of the UCC (as amended in 2003) provides:

-13-

A00724

A0724

section 2-702(3) of the UCC subjects "the seller's right to reclaim ... to the rights of a buyer in

ordinary course of business *or other good faith purchaser for value* ...." (emphasis added). It is

well settled that a secured creditor with a lien on the goods to be reclaimed qualifies as a "good

faith purchaser for value" of those goods within the meaning of section 2-702(3) of the UCC.

*See, e.g., Arlco Inc.*, 239 B.R. at 267-68 (stating that "[m]ost courts have treated a holder of a

prior perfected, floating lien on inventory ... as a good faith purchaser with rights superior to

those of a reclaiming seller" and collecting cases demonstrating the majority rule) (quotation

omitted); *Victory Markets*, 212 B.R. at 742 (same). Accordingly, under applicable state-law

reclamation principles (which were incorporated into the pre-BAPCPA version of section 546(c)

of the Bankruptcy Code), the Prior Lien Defense is a viable defense to the right of a seller

seeking to reclaim goods.

As amended by BAPCPA, section 546(c) of the Bankruptcy Code no longer

expressly references and incorporates nonbankruptcy law. Under the amended version of

section 546(c) of the Bankruptcy Code, however, a reclaiming seller's subordination to the prior

rights of a holder of a security interest in the reclaimed goods has now been made explicit in the

federal statute itself. *See* 11 U.S.C. § 546(c) (expressly stating that a reclaiming creditors rights

in bankruptcy are "subject to the prior rights of a holder of a security interest in such goods or the

---

(continued...)

(1) If the seller discovers that the buyer is insolvent, the seller may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under Section 2-705.

(2) If the seller discovers that the buyer has received goods on credit while insolvent, the seller may reclaim the goods upon demand made within a reasonable time after the buyer's receipt of the goods. Except as provided in this subsection, the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course of business or other good faith purchaser for value under Section 2-403. Successful reclamation of goods excludes all other remedies with respect to them.

UCC § 2-702.

-14-

A00725

A0725

proceeds thereof ...."). Accordingly, while section 546(c) has been amended to delete the explicit reference to nonbankruptcy law, the corresponding addition of express language subjecting reclamation rights to prior liens makes clear that Prior Lien Defense continues to apply to reclamation claims asserted under the Bankruptcy Code.

In fact, the Debtors submit that both sources of law apply post-BAPCPA. This is because the language of section 546(c) of the Bankruptcy Code now is phrased in the form of a reservation of rights: The reclaiming seller possesses certain rights "*subject to* the prior rights of a holder of a security interest in such goods." (emphasis added).[38] As the Bankruptcy Code otherwise gives no indication of what those "prior rights" might be, the only available referent for such "prior rights" is nonbankruptcy law. The Debtors accordingly submit that section 546(c) of the Bankruptcy Code, as revised by BAPCPA, preserves nonbankruptcy law with respect to the Prior Lien Defense. *See, e.g., 5 Collier on Bankruptcy* ¶ 546.04[2][a][vii] (15th ed. rev. 2006) (stating that "[u]sing prior versions of section 546(c)(1) as a guide, this provision appears intended to state that the seller's reclamation rights remain 'subject to' the secured creditor's rights."). Indeed, nothing in the legislative history suggests otherwise. Ultimately, however, it matters little to the issues addressed in this Initial Brief whether the source of law for determining the validity of reclamation claims is state or federal law, as the Prior Lien Defense is valid under both.

---

[38]    Certain Reclamation Objections have suggested in prior pleadings filed in these cases that it is the rights of the trustee — rather than those of a reclaiming seller — that the revised statute has subjected to the prior rights of a holder of a security interest in reclaimed goods. *See, e.g.,* Reclamation Objections filed by Akebono Corporation (Docket No. 2455), at 6 n7; Emhart Teknologies, Inc. (Docket No. 2398) ¶ 16. It is frankly unclear what this interpretation of the statute would even mean. As applicable state law prior to the enactment of BAPCPA provided for a Prior Lien Defense, the amendments to section 546(c) are best viewed as a clarification that such defense continues to apply post-BAPCPA. The suggestion that this amendment instead created a new, undefined defense that has the opposite effect from the state law defense is nowhere supported in the legislative history, the plain language of the Bankruptcy Code or otherwise.

-15-

A00726
A0726

In the Debtors' chapter 11 cases, the Prepetition Lien held by the Prepetition Lenders is a "valid, binding, perfected, enforceable, first-priority lien[ ] and security interest[ ] in the tangible and intangible property constituting the [collateral pledged to the Prepetition Lenders pursuant to the Security Agreement]," including the Prepetition Collateral.[39] The Reclaimed Goods are all Prepetition Equipment or Prepetition Inventory and, therefore, are all part of the Prepetition Collateral. The proceeds generated by the Debtors' collection of accounts receivable or sale of inventory constitute the Prepetition Lenders' Cash Collateral.[40] Accordingly, (1) the rights of the Prepetition Lenders in the Reclaimed Goods are superior to the reclamation rights of the Objecting Claimants and (2) the Prior Lien Defense is applicable to the Remaining Reclamation Claims.

> B.     The Remaining Reclamation Claims Are Valueless

>> 1.     The Remaining Reclamation Claims Are Valueless Because the Aggregate Prepetition Indebtedness Exceeds the Individual Value of the Reclamation Claims

As described above, section 546(c) of the Bankruptcy Code preserves nonbankruptcy law with respect to the Prior Lien Defense.[41] Thus, the Objecting Claimants — whose reclamation rights are subordinated to the rights of the Prepetition Lenders in the Reclaimed Goods — are not entitled to a recovery on account of the Remaining Reclamation Claims greater than the recovery that would be available to them under nonbankruptcy law. *See, e.g., Toshiba Am., Inc. v. Video King of Illinois, Inc. (In re Video King of Illinois, Inc.),* 100 B.R. 1008, 1017 (Bankr. N.D. Ill. 1989) (stating that, if a seller's reclamation rights "would

---

[39]     *See* Security Agreement §§ 1(a), 1(b); Interim DIP Order ¶ 3(b); Final DIP Order ¶ 3(b).

[40]     *See* Interim DIP Order ¶ 19; Final DIP Order ¶ 19.

[41]     Even if the Court were to find that the amendments to section 546(c) under BAPCPA created a federal reclamation right, because the Prior Lien Defense continues to apply thereunder, the arguments set forth in this section would continue to apply.

-16-

A00727
A0727

be valueless outside of bankruptcy because the goods in question for whatever reason would go first to satisfy [the secured lender's] claim, those rights are equally valueless in the bankruptcy context."); *Victory Markets*, 212 B.R. at 743 (stating that "if the goods of the seller would be fully used to satisfy the lien of the superior lien creditor, the seller's right of reclamation would be valueless" and that a reclaiming seller is "required to show that its claim has value beyond the claims of the priority secured lienholders."). Because a reclamation claim is valueless *outside* of bankruptcy where its value does not exceed the secured claim of a lender with a prior right to the reclaimed goods, the Remaining Reclamation Claims (each of which is dwarfed by the Prepetition Indebtedness) are similarly valueless *inside* the Debtors' chapter 11 cases.

A review of applicable nonbankruptcy law makes clear that the Reclamation Claimants would have no reclamation rights outside of chapter 11. First, under applicable nonbankruptcy law, the right of reclamation is an *in rem* right. Thus, a reclaiming seller is obliged to satisfy its reclamation claims only out of the specific goods to be reclaimed. *See Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 287-88 (B.A.P. 6th Cir. 2004) (stating that "a seller's right to reclaim goods ... only extends to the particular goods it sold to the buyer. Thus, its reclamation rights only extend[] to the goods or its traceable proceeds.") (quoting *In re Bridge Information Sys., Inc.*, 288 B.R. 133, 138 (Bankr. E.D. Mo. 2001)); *Action Indus., Inc. (Dollarama) v. Dixie Enters., Inc. (In re Dixie Enters., Inc.)*, 22 B.R. 855, 859 (Bankr. S.D. Ohio 1982) ("A right to reclamation is literally an *in rem* right.").

Because a reclamation claim must be satisfied out of the specific goods being reclaimed, where the value of a secured lender's claim exceeds the value of a seller's individual reclamation claim, the reclamation claim is valueless. *See, e.g., Allegiance Healthcare Corp. v.*

-17-

A00728

A0728

*Primary Health Sys., Inc. (In re Primary Health Sys., Inc.)*, 258 B.R. 111, 117-18 (Bankr. D.

Del. 2001) (stating that "a reclaiming seller would not have been able to reclaim its goods if the

goods were not worth more than the value of the floating lien"); *Arlco*, 239 B.R. at 272 (stating

that "it is only when the reclaiming seller's goods or traceable proceeds from those goods are in

excess of the value of the superior claimant's claim that the reclaiming seller will be allowed

either to reclaim the goods or receive an administrative claim or lien in an amount equal to the

goods that remain after the superior claim has been paid."); *see also Pittsburgh-Canfield Corp.*,

309 B.R. at 287.

      The fact that the holder of a prior security interest in reclaimed goods may be

oversecured after taking into account other collateral does not alter the foregoing analysis.

*See Pittsburgh-Canfield Corp.*, 309 B.R. at 288 (stating that the reclaiming seller's reclamation

was entitled to recovery "only to the extent that the value of the *specific* inventory in which the

reclaiming seller asserts an interest exceeds the amount of the floating lien in the debtor's

inventory" and finding that the bankruptcy court did not abuse its discretion in holding that

seller's reclamation claims aggregating $450,000 were valueless where the substantially

oversecured prepetition lender was owed $130 million) (emphasis added).[42]

      This result makes sense because a reclamation claimant has no right to demand

that a holder of a prior lien marshal the debtor's assets in a manner favorable to the reclamation

claimant. *Pittsburgh-Canfield Corp.*, 309 B.R. at 291-92.  While junior secured creditors

sometimes have the right to require the marshaling of collateral under applicable law, most

courts have "denie[d] unsecured creditors standing to invoke the doctrine of marshaling." *In re*

---

[42]    Although stated in the text above, the Debtors wish to emphasize here that they are not asserting that the
Prepetition Secured Lenders were undersecured as a part of the factual underpinning for the relief sought
herein.  The Debtors believe that the relief requested herein is applicable whether or not the Prepetition
Secured Lenders are undersecured or oversecured, and that this issue is irrelevant to the arguments raised in
this Initial Brief.

A00729

A0729

*Gibson Group, Inc.*, 151 B.R. 133, 134-35 (Bankr. S.D. Ohio 1993); *see also U.S. v. Herman*, 310 F.2d 846, 848 (2d Cir. 1962) (denying even junior lienholder any right to require marshaling of assets where doing so would inconvenience senior lienholder); *see also infra* n.45. Absent the right to direct the Prepetition Secured Lenders to satisfy their claims out of goods other than the Reclaimed Goods, the Reclamation Claimants have no ability to enforce their rights to reclaim their specific goods.[43]

As described above, the Prepetition Indebtedness totaled approximately $381 million, all of which was secured by the Prepetition Lien. The largest of the Remaining Reclamation Claims asserts a liability totaling approximately $9.6 million.[44] Because the Prepetition Indebtedness exceeds the value of each individual Remaining Reclamation Claim, the Remaining Reclamation Claims are valueless.

    2.    The Remaining Reclamation Claims Are Valueless Because the
          Reclaimed Goods Were Disposed in Satisfaction of the Prepetition Lien

A second independent reason supports the conclusion that the Reclamation Claims are valueless: where goods subject to reclamation have been disposed of as part of a transaction to repay the prior lienholder's claims, this transaction renders reclamation claims valueless.

---

[43]    This result also is equitable because suppliers of goods like the Reclamation Claimants have sufficient notice of the prior liens and the means to seek appropriate protections for themselves. The liens and security interests of a prior lienholder must be perfected to make reclamation claims subject to such liens. *See, e.g., Arlco*, 239 B.R. at 267-68. Perfection of interests in the types of property subject to reclamation — namely equipment and inventory — is completed through the filing of publicly-available security documents. *See* UCC § 9-310(a) ("Except as otherwise provided ..., a financing statement must be filed to perfect all security interests and agricultural liens."). Here, the filing of UCC financing statements in respect of the Security Agreement in November 2005 perfected the Prepetition Secured Lenders' liens and put the Reclamation Claimants on notice that they were shipping goods into those liens. The Reclamation Claimants thus had the opportunity to seek protections for themselves, such as by seeking purchase money security interests, requiring cash in advance or otherwise limiting available trade credit.

[44]    Indeed, the amount of the Prepetition Indebtedness (approximately $381 million) substantially exceeded the aggregate amount of all Reclamation Claims asserted against the Debtors (approximately $297 million).

-19-

A00730

A0730

It is well established and uncontroversial that a seller's right of reclamation is rendered valueless where the goods at issue, or the liquidated proceeds thereof, have been actually applied in satisfaction of a prior secured creditor's claim. "Once the goods or the proceeds from the sale of those goods have been 'paid' to the secured creditor, the reclaiming seller's claim in those goods is valued at zero." *Arlco*, 239 B.R. at 276 (holding that reclamation claims were valueless where the proceeds of the reclaimed goods were used to repay a secured lender with a security interest therein); *see also Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.)*, 964 F.2d 842, 848 (8th Cir. 1998) (stating that "[i]f the [plan of reorganization] had *in fact* satisfied the claims of [the secured] creditors with the [reclaimed goods], or their proceeds, then [the reclamation claimant]'s right to reclaim would be valueless."); *Pittsburgh-Canfield Corp.*, 309 B.R. at 287-88 (holding that a reclamation claim was rendered valueless where the prepetition lien on inventory was assigned to the postpetition lender and the proceeds from liquidation of the reclaimed goods was used to repay postpetition credit facility).

This approach has been adopted in this District by Judge Gonzalez in *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 135-36 (Bankr. S.D.N.Y. 2003), in the context of a refinancing transaction substantially similar to the one presented here. *Dairy Mart* holds that, where the claim of a prepetition secured lender with a floating lien on inventory is paid out of the proceeds of a postpetition credit facility supported by a new floating lien on inventory, the reclaimed goods securing the prepetition lender's debt effectively have been disposed in satisfaction of that debt. Such a sale of goods in satisfaction of prepetition secured debt renders all reclamation claims for those goods valueless. Applying *Dairy Mart* and similar authorities to the facts of the Debtors' chapter 11 cases, the Remaining Reclamation Claims should be

A00731

A0731

considered valueless.  Because of the many factual similarities to the Debtors' cases, the <u>Dairy Mart</u> is particularly on point and is described in detail below.

### a.    The Dairy Mart Case.

### (i)    Facts.

In *Dairy Mart*, the debtors' prepetition secured lender, Citizens Bank ("Citizens"), held a lien on the inventory of the Dairy Mart debtors (collectively, "Dairy Mart").  Within one week of the petition date, Dairy Mart and Citizens entered into a stipulation allowing Dairy Mart to use the lender's cash collateral.  This stipulation was approved by a series of interim orders of the bankruptcy court (collectively, the "Cash Collateral Order").  Pursuant to the Cash Collateral Order, Citizens was granted, as adequate protection, replacement liens on (A) all of its prepetition collateral, (B) the proceeds thereof and (C) all property constituting prepetition collateral coming into existence postpetition.  *Dairy Mart*, 302 B.R. at 130-31.

Contemporaneously, Dairy Mart sought approval of a new postpetition secured credit facility (the "Dairy Mart DIP") with Foothill Capital Corporation ("Foothill").  Among other security, the Dairy Mart DIP provided Foothill with first priority liens on, and security interests in, all of Dairy Mart's property subject to Citizens' liens.  The final order approving the Dairy Mart DIP (the "Dairy Mart DIP Order") further provided for (A) the repayment of all amounts outstanding under the prepetition credit agreement and (B) Citizens' contemporaneous release of its liens and security interests at the time of such repayment.  *Id.* 302 B.R. at 131.

Several months into their chapter 11 cases, Dairy Mart filed an omnibus objection to claims asserted against their estates seeking, among other things, the reclassification of certain reclamation claims as general unsecured nonpriority claims.  Dairy Mart argued that, even assuming that the reclamation claims were otherwise valid, they were subject to Citizens' prior perfected floating lien on Dairy Mart's inventory and therefore had been rendered valueless at the

17290-001\DOCS_NY:11122.1

A00732

A0732

time of Citizens' repayment. The reclamation claimants responded that, because (A) Dairy Mart

still held the reclaimed goods at the time the reclamation claims were made and (B) Citizens'

claim was satisfied from the proceeds of the Dairy Mart DIP, rather than from the actual

disposition of the reclaimed goods, the reclamation claims retained value. *Dairy Mart*,

302 B.R. at 132.

> (ii)    **Analysis and Holding.**

Consistent with the discussion in Sections III.A and III.B.1 above, the *Dairy Mart*

court observed that (A) the reclaiming sellers' rights were subject to Citizens' rights in and to the

reclaimed goods and (B) "it is only when the reclaiming seller's goods or traceable proceeds from

those goods are in excess of the value of the superior claimant's claim that the reclaiming seller

will be allowed either to reclaim the goods or receive an administrative claim or lien in an

amount equal to the goods that remain after the superior claim has been paid." *Id.* at 133-34.

The court further observed that, rather than seek court approval to foreclose on the

reclaimed goods, Citizens' agreed to Dairy Mart's continued use of its collateral pursuant to the

Cash Collateral Order and pending its repayment in full upon approval of the Dairy Mart DIP.

"Therefore, in order to determine whether any goods — or traceable proceeds therefrom —

remain, the Court must consider whether the disposition of that collateral was applied to the

payment of Citizens' loan." *Id.* at 134.

The court found that "[w]hatever reclamation goods may have been present on the

date of the demand or the proceeds of the sale of those items — all of which was subject to

Citizens' rights — were used to satisfy Citizens' secured claim." *Id.* Because (A) Citizens

retained a lien on all cash proceeds generated by the sale of the reclaimed goods pursuant to the

17290-001\DOCS_NY:11122.1

A00733

A0733

Cash Collateral Order, (B) marshaling of Dairy Mart's cash was not permissible[45] and (C) the reclaimed goods were "liquidated and the proceeds were either swept directly by Citizens as a paydown or swept by Foothill with Citizens' lien attaching to such proceeds in Foothill's possession, the Reclamation Claims were rendered valueless." *Id.*

The court further held that the combination of (A) Citizens' release of its liens upon Dairy Mart's payment of Citizens' prepetition credit facility using the funds borrowed under the Dairy Mart DIP and (B) the imposition of liens upon that same collateral in favor of Foothill effectively amounted to the disposition of that collateral for the purpose of paying Citizens' claims and satisfying Citizens' liens. Specifically, the court stated that

> the only way the [Dairy Mart] Debtors could get a post-petition loan was if they afforded the debtor-in-possession lender a lien on all the pre-petition lender's collateral. *In effect, that was the disposition of the collateral* — the lien was given to the new lender in exchange for payment to Citizens or in effect 'sold' to the new lender. The transaction of releasing Citizens' lien and simultaneously granting the lien to the post-petition lender, Foothill, must be viewed as an integrated transaction.... There was a direct nexus between the release of the liens on the pre-petition collateral and the payment on the pre-petition secured loan . . . . *Thus, at the time that Citizens' secured claim was paid . . ., all of the goods or proceeds of those goods were disposed of to 'pay' Citizens' secured claim.* In this context, the reclamation goods or the proceeds from those goods have been used to satisfy the secured creditor's claim. As such the goods or their proceeds have effectively been 'paid' to the secured creditor, and the Reclamation Claims in those goods is valued at zero.

---

[45]    The court explained that marshaling is inapplicable to the relative rights of reclaiming creditors and prior secured parties because (a) reclamation claimants are not secured creditors, (b) marshaling is not a remedy available against good faith purchasers and (c) of "the prejudice that would result to the senior creditor by the imposed delay, added cost or inconvenience in collecting on its claim when it has a more readily available method to collect the amount owed." *Dairy Mart*, 302 B.R. at 134; *see also Arlco*, 239 B.R. at 274; *see supra*, p. 18.

17290-001\DOCS_NY:11122.1

A00734

A0734

*Id.* at 135-36 (emphasis added). Accordingly, the *Dairy Mart* court concluded that the

Reclamation Claims were valueless.[46]

      **b.**    **The Remaining Reclamation Claims Are Valueless Because the
*Dairy Mart* Analysis Is Applicable in the Debtors' Chapter 11 Cases.**

Just as the refinancing of Citizens' prepetition secured debt with the proceeds of

the Dairy Mart DIP represented a sale of reclaimed goods in satisfaction of Citizens' debt in the

Dairy Mart cases, the March 2006 refinancing and payoff of the Prepetition Indebtedness with

the proceeds of the DIP Facility in the Debtors' chapter 11 cases represents a disposition of the

Reclaimed Goods in satisfaction of that secured indebtedness. By disposing the Reclaimed

Goods in this manner, the Remaining Reclamation Claims are rendered valueless.

The Debtors' facts are substantially similar to those addressed in *Dairy Mart*.

As in *Dairy Mart*:

- the Prepetition Collateral (including all of the Reclaimed Goods) was subject to the Prepetition Lien (*i.e.*, a prepetition floating lien on inventory and equipment);[47]

- pursuant to the Interim DIP Order, the Debtors were authorized to use the Prepetition Lenders' Cash Collateral, with the Replacement Lien providing a replacement security interest in, and lien upon, all of the Debtors' collateral subject to the DIP Lien (including the Prepetition Collateral and the proceeds thereof);[48]

- the DIP Lien granted to the DIP Lenders pursuant to the Interim DIP Order and the Final DIP Order provided a security interest in, and lien upon, all of the collateral constituting the Prepetition Collateral;[49]

---

[46] *But see In re Phar-Mor, Inc.*, 301 B.R. 482, 497 (Bankr. N.D. Ohio 2003) (holding that the value of reclamation claims was not affected where prepetition secured debt satisfied from proceeds of postpetition financing); *In re Georgetown Steel Co.*, 318 B.R. 340, 349 (Bankr. D.S.C. 2004) (holding that, where excess funds remained after sale of all debtor's assets and secured creditors had not objected to the reclamation relief sought by sellers, the secured lenders had released their liens and claims, which no longer were available to invalidate reclamation claims).

[47] *See* Section II.B.1 above.

[48] *See* Section II.B.2 above.

[49] *See* Section II.B.1 above.

17290-001\DOCS_NY:11122.1

A00735
A0735

- the grant of the DIP Lien was a necessary condition of the DIP Lenders' agreement to enter into the DIP Facility;[50] and

- pursuant to the Final DIP Order, the Prepetition Indebtedness was refinanced and paid off using the proceeds of the DIP Facility on the Payoff Date.[51]

Because, as in *Dairy Mart*, the Reclaimed Goods or the proceeds thereof (*i.e.*, the Prepetition Collateral and the Cash Collateral, respectively) were either liquidated in satisfaction of the Prepetition Indebtedness or pledged to the DIP Lenders pursuant to the DIP Facility, the Reclaimed Goods effectively were disposed as part of the March 2006 repayment of the Prepetition Credit Facility.  Accordingly, under *Dairy Mart* and the related case law described above, the Prior Lien Defense applies and renders the Remaining Reclamation Claims valueless, as properly reflected in the Reclamation Notice.[52]

## IV.    RESERVATION OF RIGHTS

Consistent with the Court's bifurcation of issues relating to the Remaining Reclamation Claims, the Debtors seek by this Initial Brief to address only issues relating to the

---

[50]    *See id.*

[51]    *See* Section II.B.3 above.

[52]    As argued in this Initial Brief, the Debtors seek a ruling from this Court that all of the Remaining Reclamation Claims are valueless in these chapter 11 cases for reasons applicable to all such claims.  In the event that the Court rules against the Debtors in this regard, however, the Debtors submit that the existence of the Prepetition Secured Lenders' prior liens still may render certain specific Remaining Reclamation Claims valueless because the particular Reclaimed Goods relating to such claims were sold and the proceeds of such sales were used to pay the Prepetition Indebtedness prior to the refinancing and satisfaction of such debt in full on March 30, 2006.  Even courts that may have disagreed with certain of the Debtors' other arguments relating to the impact of the refinancing of the Prepetition Indebtedness on reclamation claims commonly recognize that the disposition of specific goods to pay off prior indebtedness secured by such goods will render reclamation claims valueless.  *See, e.g., Pester Ref.*, 964 F.2d at 848 ("[i]f the [plan of reorganization] had *in fact* satisfied the claims of [the secured] creditors with the [reclaimed goods], or their proceeds, then [the reclamation claimant]'s right to reclaim would be valueless.").  Whether or not a particular Objecting Claimants' Reclaimed Goods were sold prior to the payoff of the Prepetition Indebtedness and how the proceeds of such sale were used are facts that are specific to each Objecting Claimant and therefore are not appropriately raised in this stage of the litigation, which addresses issues common to all of the Remaining Reclamation Claims.  Accordingly, in the event that the Court does not hold that all of the Remaining Reclamation Claims are valueless for the reasons set forth herein, the Debtors reserve their rights to raise these issues in connection with the litigation of the Fact-Intensive Defenses.

17290-001\DOCS_NY:11122.1

A00736

A0736

generally applicable defense asserted by the Debtors that the prior liens of the Prepetition

Secured Lenders rendered all Reclamation Claims valueless in these chapter 11 cases.[53]  If all of

the Remaining Reclamation Claims are not rendered valueless for the reasons set forth herein,

the Debtors reserve and retain all other rights that they might have to contest the Remaining

Reclamation Claims on any available factual or legal ground, including, but not limited to:

(A) all rights previously reserved by the Debtors in the Reclamation Notice; (B) all rights to

contest the Remaining Reclamation Claims based upon one or more of the Fact-Intensive

Defenses (including the right to require an Objecting Claimant to prove all of the elements of its

*prima facie* case); (C) the right to assert that the sale of the Reclaimed Goods of a particular

Reclamation Claimant and the use of those goods to pay the Prepetition Indebtedness prior to the

refinancing of that debt renders that particular reclamation claim valueless (*see supra* note 52);

and (D) to the extent they may be relevant, issues relating to the solvency of the Debtors.

      In addition, the Debtors continue to reserve their rights to supplement or amend

the Claim Summary Chart attached to the Reclamation Notice based upon their further

(A) review of information already received from, or additional information supplied by, the

Reclamation Claimants; or (B) discussions and/or negotiations with the Reclamation Claimants

with respect to the possible amendment, resolution or withdrawal of their Reclamation Claims.

---

[53]    *See* Reclamation Scheduling Order ¶ 2 ("This Court's consideration of the Prior Lien Defense to the
Remaining Reclamation Claims shall be bifurcated from the consideration of the Fact-Intensive Defenses
or any other issues relating to the Remaining Reclamation Claims, pursuant to Bankruptcy Rule 7042(b).")

17290-001\DOCS_NY:11122.1

A00737
A0737

## V.     CONCLUSION

For the reasons described above, the Court should enter an order (A) confirming

the validity of the Prior Lien Defense and (B) approving the Debtors' reconciliation of the

Remaining Reclamation Claims contained in the Reclamation Notice in the amount of $0.00.

Dated:   October 23, 2006
        New York, New York              Respectfully submitted,

                                 */s/ Robert J. Feinstein*
                                 Dean A. Ziehl (DZ-6154)
                                 Robert J. Feinstein (RF-2836)
                                 Debra I. Grassgreen (CA Bar No. 169978)
                                 Pachulski Stang Ziehl Young Jones
                                     & Weintraub LLP
                                 780 Third Avenue, 36th Floor
                                 New York, NY 10017-2024
                                 Telephone: 212/561-7700
                                 Facsimile: 212/561-7777

                                 Conflicts Counsel for
                                 Debtors and Debtors in Possession

17290-001\DOCS_NY:11122.1

A00738
A0738

Hearing Date:  December 19, 2006
Hearing Time: 10:00 a.m.

PACHULSKI STANG ZIEHL YOUNG
     JONES & WEINTRAUB LLP
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Beth E. Levine (BL-6715)
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Conflicts Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                             :

In re                         :    Chapter 11
                             :

Dana Corporation, *et al.*,        :    Case No. 06-10354 (BRL)
                             :

              Debtors.    :    (Jointly Administered)
                             :
-------------------------------------------------------------x

### OBJECTIONS OF DEBTORS DANA CORPORATION, ET AL. TO
### DISCOVERY REQUESTS RELATED TO DEBTORS'
### PRIOR LIEN DEFENSE TO RECLAMATION CLAIMS

Pursuant to Federal Rule of Civil Procedure 26, made applicable here by Federal Rule of

Bankruptcy Procedure 7026, Federal Rule of Civil Procedure 33, made applicable here by

Federal Rule of Bankruptcy Procedure 7033, Federal Rule of Civil Procedure 34, made

applicable here by Federal Rule of Bankruptcy Procedure 7034, Federal Rule of Civil Procedure

36, made applicable here by Federal Rule of Bankruptcy Procedure 7036, and the Court's Order,

Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7042 and 9014:  (I)

Bifurcating Consideration of Issues Relating to Reclamation Claims; (II) Establishing a Briefing

Schedule for Consideration of Certain Common Issues; and (III) Granting Certain Related Relief

(Docket No. 3865) (the "Reclamation Scheduling Order"), the above-captioned debtors and

DOCS_NY:11390.2

attachments, in addition to standard objections on the grounds that particular Discovery Requests are overly broad and burdensome, vague and ambiguous, and/or seek information that is protected by the attorney client privilege and the work product doctrine, the Debtors have interposed two types of objections that bear emphasis here.

4.      First, the Debtors have objected to Discovery Requests that seek information that is simply not relevant to the Prior Lien Defense. Most of the requests to which this objection has been interposed go to the merits of the Fact Intensive Defenses and, as such, are explicitly stayed by the Reclamation Scheduling Order.

5.      In addition the Debtors have objected on overbreadth grounds to Discovery Requests that seek information that relates to potential challenges of facts already determined by in the Interim DIP Order and the Final DIP Order entered in these chapter 11 cases. For example, as set forth in the Interim DIP Order and Final DIP Order, the Debtors have already acknowledged that the aggregate value of all collateral pledged to the prepetition lenders under the prepetition security agreement, dated November 18, 2005, exceeded the Debtors' indebtedness as of the date these chapter 11 cases were filed. Because the Debtors have acknowledged that their prepetition lenders were oversecured, there is no need for discovery on this issue, and, accordingly, such requests are overly broad and burdensome and should not be permitted for purposes of the Prior Lien Defense Hearing.

6.      Similarly, as set forth in detail on pages 5 through 7 and the accompanying footnotes of the Initial Brief of Debtors and Debtors In Possession In Support of Prior Lien Defense to Reclamation Claims, the Reclamation Claimants' time to challenge the stipulations, admissions and findings contained in the Interim DIP Order and the Final DIP Order relating to

A00740

A0740

debtors in possession (collectively, the "Debtors") hereby submit their objections to the discovery requests (the "Discovery Requests") served on them by parties seeking discovery relating to the Prior Lien Defense.[1]

## BACKGROUND

1.       On October 13, 2006, upon the Debtors' motion, this Court entered the Reclamation Scheduling Order.

2.       Among other things, the Reclamation Scheduling Order provided that the Court's consideration of the Prior Lien Defense to the Remaining Reclamations Claims "shall be bifurcated from the consideration of the Fact-Intensive Defenses or any other issues relating to the Remaining Reclamation Claims, pursuant to Bankruptcy Rule 7024." Reclamation Scheduling Order ¶ 2. The Order went on to provide that "any and all litigation (including discovery) related to the Fact-Intensive Defenses shall be stayed and postponed until after the Court (a) has ruled on the applicability of the Debtors' Prior Lien Defense to the Remaining Reclamation Claims and (b) has conducted the Scheduling Conferences described in paragraph 8 below." Id. (emphasis added).

## THE OBJECTIONS

3.       The Debtors received sixteen Discovery Requests. Annexed hereto as **Exhibit A** is a chart summarizing the bases for objections to the individual Discovery Requests (the "Individual Objections"). Annexed hereto as **Exhibits B through Q** are each of the Individual Objections submitted in response to the Individual Discovery Requests. As reflected in the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Reclamation Scheduling Order.

A00741

A0741

the validity, enforceability, priority, and extent of the Prepetition Lien and the Prepetition

Indebtedness has expired. Thus, all Document Requests that are designed to elicit information

relevant to such challenges have no relevance here, are overbroad and burdensome, and should

not be permitted for purposes of the Prior Lien Defense Hearing.

7.      Attached hereto as **Exhibit A** is a chart summarizing the bases for objections to

the Discovery Responses.

8.      Attached hereto as **Exhibit B** is the Responses and Objections of Debtors Dana

Corporation, et al. to Interrogatories and Requests for Production of Documents by Air Hydro

Power, Inc. on Issues Presented By Debtors' Initial Brief Opposing Reclamation Claims.

9.      Attached hereto as **Exhibit C** is the Initial Responses and Objections of Debtors

Dana Corporation, et al. to Allegheny Ludlum Corporation's First Set of Requests for

Admissions, Interrogatories, and Requests for Production of Documents.

10.     Attached hereto as **Exhibit D** is the Responses and Objections of Debtors Dana

Corporation, et al. to Interrogatories by Berlin Metals LLC on Issues Presented By Debtors'

Initial Brief Opposing Reclamation Claims.

11.     Attached hereto as **Exhibit E** is the Responses and Objections of Debtors Dana

Corporation, et al. to Bronson Precision Products' Interrogatories and Document Requests to

Debtor Regarding Prior Lien Defense.

12.     Attached hereto as **Exhibit F** is the Responses and Objections of Debtors Dana

Corporation, et al. to First Request for Production of Documents of Daido Metal Bellefontaine

LLC.

13.     Attached hereto as **Exhibit G** is the Responses and Objections of Debtors Dana

A00742

A0742

Corporation, et al. to Dell Marketing L.P.'s First Set of Interrogatories and Requests for

Production.

14.    Attached hereto as **Exhibit H** is the Responses and Objections of Debtors Dana

Corporation, et al. to Emhart Teknologies, Inc.'s First Request for Production of Documents to

Debtors.

15.    Attached hereto as **Exhibit I** is the Responses and Objections of Debtors Dana

Corporation, et al. to Hydro Aluminum Precision Tubing North America, LLC's First Request

for Production of Documents to Debtors.

16.    Attached hereto as **Exhibit J** is the Responses and Objections of Debtors Dana

Corporation, et al. to Nucor Tuscaloosa's Requests for Production of Documents and

Interrogatories.

17.    Attached hereto as **Exhibit K** is the Responses and Objections of Debtors Dana

Corporation, et al. to Interrogatories of Osram Sylvania Products, Inc. On Issues Presented by

Debtors' Initial Brief Opposing Reclamation Claims.

18.    Attached hereto as **Exhibit L** is the Responses and Objections of Debtors Dana

Corporation, et al. to Requests for Production of Documents of Osram Sylvania Products, Inc.

Directed to the Debtors.

19.    Attached hereto as **Exhibit M** is the Responses and Objections of Debtors Dana

Corporation, et al. to Shaw Industries, Inc.'s First Set of Discovery Requests:  Request for

Admission, Interrogatories and Request for Production of Documents.

20.    Attached hereto as **Exhibit N** is the Responses and Objections of Debtors Dana

Corporation, et al. to Timken Corporation's First Set of Interrogatories and First Request for

A00743

A0743

Discovery From the Debtors.

21.     Attached hereto as **Exhibit O** is the Responses and Objections of Debtors Dana

Corporation, et al. to Toyota Tsuho America, Inc.'s First Document Request.

22.     Attached hereto as **Exhibit P** is the Responses and Objections of Debtors Dana

Corporation, et al. to Interrogatories and Requests for Production of Documents of Toyotetsu

America, Inc and Toyotetsu Mid America, LLC On Issues Presented By the Debtors' Initial

Brief Opposing Reclamation Claims.

23.     Attached hereto as **Exhibit Q** is the Responses and Objections of Debtors Dana

Corporation, et al. to Interrogatories and Document Requests of Tri-Star Engineering, Inc, to

Debtor Regarding the Prior Lien Defense.


Dated:  December 1, 2006
        New York, New York

/s/ Beth E. Levine
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Beth E. Levine (BL-6715)
Pachulski Stang Ziehl Young Jones
        & Weintraub LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777


Conflicts Counsel for
Debtors and Debtors in Possession

A00744

A0744