**Hearing Date and Time: February 28, 2007 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                                          :

In re                             :       Chapter 11
                                            :

Dana Corporation, et. al.,        :       Case No. 06-10354 (BRL)
                                            :

          Debtors.           :       (Jointly Administered)
                                            :

------------------------------------- X

---

**RESPONSE OF THE TIMKEN COMPANY, TIMKEN U.S. CORP.,
TOYOTETSU AMERICA, INC., TOYOTETSU MID AMERICA, LLC TO
REPLY BRIEF OF DEBTORS AND DEBTORS IN POSSESSION IN
SUPPORT OF PRIOR LIEN DEFENSE TO RECLAMATION CLAIMS**

---

James M. Sullivan (JS-2189)
Gary O. Ravert (GR-3091)
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173-1922
Telephone: 212.547.5400
Facsimile: 212.547.5444

Counsel for The Timken Company, Timken
U.S. Corp., Toyotetsu America, Inc., and
Toyotetsu Mid America, LLC

W. Timothy Miller *(pro hac vice)*
Paige Leigh Ellerman *(pro hac vice)*
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202
Telephone: 513.357.9359
Facsimile: 513.381.0205

Co-Counsel for Toyotetsu America, Inc.,
and Toyotetsu Mid America, LLC

NYK 1083693-2.064980.0025

The Timken Company, Timken U.S. Corp. (collectively, "Timken"), Toyotetsu America, Inc., and Toyotetsu Mid America, LLC (collectively, "Toyotetsu") hereby submit this response to the reply brief (the "Reply Brief") filed on behalf of the above-captioned debtors (the "Debtors") in support of the prior lien defense to reclamation claims (the "Prior Lien Defense").

## PRELIMINARY STATEMENT

Approximately 100 days prior to the commencement of these chapter 11 cases, the Debtors granted to their prepetition lenders (the "Prepetition Lenders") liens valued at approximately $2 billion to secure antecedent debt of approximately $400 million (the "Prepetition Lenders' Collateral"). Following the granting of such liens, the Prepetition Lenders enjoyed an equity cushion of approximately $1.6 billion (the "Equity Cushion"). Notwithstanding this grossly over-secured position, the Debtors, *not the Prepetition Lenders*, seek a "deemed" foreclosure sale solely as to reclaimed goods. The reclaimed goods represent only a small fraction of the Prepetition Lenders' Collateral. As the Debtors would have it, this deemed sale would strip *all* value from the reclamation claims.

Under the circumstances, the Debtors' legal position is grossly inequitable and should not be countenanced. Further, if successful, the Debtors' actions will encourage reclamation claim holders in future cases to take positions contrary to the goals of consensual chapter 11 reorganizations. To protect their rights, prudent reclamation claimants will likely seek to form reclamation committees to object to reclamation procedures motions, cash collateral motions, debtor in possession financing motions, sale motions, and any other form of relief that could impair reclamation rights.

- 1 -

A00864
A0864

## RESPONSE

For the following reasons, the arguments in the Reply Brief lack merit, will lead to inequitable results, and should be rejected.

### A "Deemed Foreclosure Sale" of the Reclaimed Goods Would Be Inequitable

It would be inequitable for this Court to "deem" a sale of the reclaimed goods in the presence of the gross Equity Cushion. As the Debtors acknowledged in the reclamation procedures motion filed on the first day of these cases (the "Reclamation Procedures Motion"), the value of reclamation rights may be affected by the actions of a *secured lender* if such lender forecloses on the reclaimed goods. (*See* Reclamation Procedures Motion at ¶ 12 ("[A]fter the secured creditors' superior rights have been satisfied or released, the reclaiming seller retains a property interest in any remaining goods, and in any surplus proceeds *from the secured creditors' foreclosure sale* . . .") (emphasis added) (citing *Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.)*, 239 B.R. 261, 270-71 (Bankr. S.D.N.Y. 1999); *In re Pester Ref. Co.*, 964 F.2d 842, 844-45 (8th Cir. 1992)).)

Here, no such foreclosure took place. Instead, the Debtors, not the Prepetition Lenders, seek the entry of an order deeming an effective foreclosure sale.[1] The deemed foreclosure is a fiction that could only be equitably applied, if ever,[2] in those narrow circumstances where the value of all of the collateral approximates the indebtedness it secures. Only in those cases, might it be fair to say that a foreclosure would likely result in the liquidation of the secured creditor's

---

[1] In section VI of the Reply Brief, the Debtors argue that "[t]here is no right to equitable marshaling." Yet, by seeking a deemed foreclosure, it is the Debtors, without standing to do so, that seek to marshal their assets to the detriment of the reclaiming creditors. If the Debtors' arguments were accepted here, the secured creditors' liens would be deemed satisfied from designated collateral, i.e., the reclaimed goods. This is an inequitable perversion of the marshaling doctrine that should not be permitted.

[2] As set forth in section III.C.3 of Timken's and Toyotetsu's brief in opposition to the Debtors' assertion of the Prior Lien Defense (the "Opposition Brief"), only actual foreclosures, not deemed foreclosures, should be recognized.

A00865
A0865

claim in those reclaimed goods. The size of the Equity Cushion in these cases simply does not

justify such relief. The Court should not deem a foreclosure sale because the stated purpose of

this fiction is inequitable and would render reclamation claims valueless.

<u>The Debtors Did Not Assign the Prepetition Liens</u>

The Debtors wrongly seek a ruling upholding the Prior Lien defense, but admit that the

liens were not assigned to the postpetition lender (the "DIP Lender"). Such a ruling would

require that this Court find that the "refinancing" occurred in a "single, integrated transaction,"

wherein an old lien is released and a new lien on the same collateral is created. That is simply

not what occurred here. As sophisticated parties, the Debtors should not be permitted to rewrite

the final debtor in possession financing order (the "Final DIP Order") to obtain relief that

requires an assignment, particularly when such relief would prejudice the rights of reclamation

holders. *Compare Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp.(In re

Pittsburgh-Canfield Corp.)*, 309 B.R. 277 (B.A.P. 6th Cir. 2004) (reclamation claims rendered

valueless where prepetition liens assigned) *with In re Phar-Mor, Inc.*, 301 B.R. 482 (Bankr. N.D.

Ohio 2003) (reclamation claims unaffected where prepetition liens not assigned). The Debtors

were aware, or should have been aware, of these cases. If the Debtors wanted a single,

integrated transaction, they should have structured the "refinancing" to provide for one.

<u>*Dairy Mart* is Distinguishable</u>

*Dairy Mart* is distinguishable and the Debtors do not argue otherwise. As discussed in

section III.C.2 of the Opposition Brief, *Dairy Mart* was decided on facts significantly different

than those here. First, unlike in *Dairy Mart*, the Debtors here admit that none of their inventory

was liquidated to pay off the prepetition debt. All of the prepetition debt was paid from the

postpetition financing. Second, unlike in *Dairy Mart*, the pre- and postpetition collateral

- 3 -

A00866
A0866

packages were different. Therefore, the "refinance" cannot be considered a single, integrated

transaction. Accordingly, to the extent that this Court determines that *Dairy Mart* was validly

decided, which it should not, the *Dairy Mart* holding should be limited to those cases where

(i) the postpetition lender steps exactly into the collateral shoes of the prepetition lender, and (ii)

the prepetition lenders are not grossly over-secured.

The Final DIP Order Preserved the Rights of Reclamation Claimholders

The Final DIP Order does not, and should not, impair the rights of reclamation claimants.

Notwithstanding the plain language of ¶ 30 of the Final DIP Order, the Debtors claim that the

carve-out of claims of suppliers should *not* be read to subordinate the DIP loans to reclamation

claims. To the extent that there is some ambiguity in ¶ 30 of the Final DIP Order, it should be

interpreted against the drafter, i.e., the Debtors, not the reclamation claim holders. *See generally*

*Guardian Music Corp. v. James W. Guercio Enterprises, Inc.,* 459 F. Supp. 2d 216, 222

(S.D.N.Y. 2006) ("Ambiguous language, however, should be construed against the interest of the

drafting party.") (internal quotes omitted). In any case, the Reply Brief does not seek to value

the reclamation claims at zero based on the existence of the DIP liens, but rather on the basis of

the deemed disposition of the Prepetition Lenders' Collateral to the DIP lender. Accordingly, the

DIP liens do not provide a basis to grant the Debtors the relief they seek.

If Successful, the Prior Lien Defense Would Lead to Absurd or Undesirable Results

If successful, the Prior Lien Defense would lead to absurd or undesirable results in this

and other cases. Under the Debtors' theory, chapter 11 debtors can strip all value from hundred

of millions of dollars of reclamation claims by incurring a relatively small prepetition secured

loan. (*See* Section III.C.3 of Opp. Br.) The Debtors admit such a result. (*See* Reply Br. at 4

("Hence if the value of any given reclaiming supplier's goods does not exceed the amount of

- 4 -

A00867

A0867

debt secured by the prior lien, that reclamation claim is valueless.").) This outcome would be inequitable and should be rejected by this Court.

<u>The Reclamation Claimants Do Not Seek Enhanced Rights</u>

The Debtors misleadingly and repeatedly assert that reclamation claimants seek enhanced rights. (*See id.* at 2, 4 (e.g., "reclamation rights do not sprout value").) This statement is true only if one wrongly assumes the validity of the Debtors' arguments, i.e., the reclamation claims have no value. Reclamation rights do not "gain value" through recognition. (*Id.* at 4.) The reclamation claimants merely seek recognition of their priority rights under the Bankruptcy Code. The Debtors do not dispute that under section 546(c)(1) of the Bankruptcy Code, reclamation claims are only subject to the prior rights of a holder of a "security interest." 11 U.S.C. § 546(c)(1). "Security interest" is defined as a lien created by an agreement. 11 U.S.C. § 101(51). Accordingly, reclamation claims are senior to certain liens, including, but not limited to judicial liens and statutory liens. Further, reclamation rights are entitled to adequate protection. 11 U.S.C. § 363(e). Accordingly, reclamation rights are property rights entitled to protection. The reclamation claimants here merely seek recognition of their priority interest in the reclaimed goods.

<u>The Debtors Misled the Court and Reclamation Claimants</u>

The Debtors misled the Court and the reclamation claimants in the Reclamation Procedures Motion. Contrary to the Debtors' assertions in the Reply Brief, the Reclamation Procedures Motion *did not* put reclamation claim holders on notice of their intention to object to reclamation claims on the basis of prior liens, as was done in *Pittsburgh-Canfield*. (Reply Br. at 21 (citing *Pittsburgh-Canfield*).) In *Pittsburgh-Canfield*, "[t]he Reclamation Procedures Order

- 5 -

A00868
A0868

specifically noted that the Debtor *would assert* the bank lenders liens' [sic] as defenses to the reclamation demands." *In re Pittsburgh-Canfield Corp.*, 309 B.R. 277, 291 (emphasis added).

In these cases, instead of putting the reclamation claimants on notice of the assertion of the Prior Lien Defense, the Debtors' actions gave hope to the reclamation claimants that their claims would have value. First, the Reclamation Procedures Motion conspicuously failed even to cite their purportedly dispositive lead case, *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D.N.Y. 2003). Instead, the Debtors cited to an uncontested proposition of law that a reclamation right is subject to a good faith purchaser of a security interest in after-acquired property. (See Reclamation Procedures Motion at ¶ 12 (citing *In re Arlco, Inc.*, 239 B.R. 261, 270-71; *In re Pester Ref. Co.*, 964 F.2d 842, 844-45.).)

Next, the Debtors cited language from *In re Arlco* and *In re Pester* that, instead of putting reclamation claimants on notice of defenses, led them to believe that the liens of the Prepetition Lenders would be paid and the reclamation claims would have value:

> [A]fter the secured creditors' superior rights *have been satisfied or released*, the reclaiming seller retains a property interest in any remaining goods, and *in any surplus proceeds* from the secured creditors' foreclosure sale . . .") (emphasis added).

(*Id.*) Further, the DIP motion specifically stated that "[u]pon entry of the Final [DIP] Order, proceeds of the Term Loan shall be utilized . . . to refinance the remaining Pre-Petition Secured Indebtedness[.]" (*See Motion of Debtors and Debtors in Possession for (I) An Interim Order Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001 and 9014 and (II) Interim and Final Orders Authorizing Them to (A) Obtain Postpetition Financing Pursuant to Sections 105, 362, 363, 364(c)(1), 364(c)(3), 364(d)(1), 364(e) and 507 of the Bankruptcy Code; (B) Utilize Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; and (C) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the*

- 6 -

A00869

A0869

*Bankruptcy Code* at ¶12(c) [Docket No. 30] (the "DIP Financing Motion".) Accordingly, based on the quoted language from the Reclamation Procedures Motion and the DIP Financing Motion, the reclamation claimants had good reason for optimism.

Based on a fair reading of the Reclamation Procedures Motion, Timken and Toyotetsu understood the Debtors were adopting the "wait and see" approach. Under that approach, if the Prepetition Lenders foreclosed on any goods subject to reclamation claims, those reclamation claims would lose their value if the Prepetition Lenders were repaid from the proceeds; however, the remaining reclamation claims would retain value. The Debtors never suggested a wholesale effort to strip all reclamation claims of value. If they had, reclamation claimants would have been far more aggressive in protecting their rights early on in these cases.

<u>Congress' Intent Was to Strengthen Reclamation Rights</u>

Finally, the changes enacted to section 546 of the Bankruptcy Code are more consistent with upholding reclamation rights. The Debtors' speculations regarding Congress' intent are illogical. By strengthening reclamation rights (i.e., creating a federal reclamation right and a 20-day administrative claim), Congress certainly did not intend to grant a debtor the right to stand in the shoes of its secured creditors and deem all reclamation rights valueless. Timken and Toyotetsu submit that it is far more reasonable to think that Congress was making a clear statement that reclamation rights are valuable rights that should be protected.

Further, the Debtors have no basis for the suggestion that the good faith language under old section 546 was eliminated because of a "unanimity of authority that holders of security interests are good faith purchasers." (Reply Br. at 17 n. 12.) There is no unanimity of case law suggesting that holders of security interests are good faith purchasers beyond reproach. In fact, the opposite is true. *See, e.g., Allegiance Healthcare Corp. v. Primary Health Sys., Inc. (In re*

- 7 -

A00870

A0870

*Primary Health Sys., Inc.)*, 258 B.R. 111, 114 (Bankr. D. Del. 2003) (holding that it is "well-established that, *absent a showing of bad faith,* a creditor with a prior perfected security interest in inventory which contains an after-acquired property clause is a good faith purchaser under the UCC") (emphasis added); *In re Phar-Mor, Inc., 301 B.R. 482, 497* (holding that a DIP lender did not qualify as good faith purchaser because it took liens on inventory with notice of reclamation demands); *Isaly Klondike Co. v. Sunstate Diary & Food Products Co. (In re Sunstate Dairy & Food Products Co.)*, 145 B.R. 341, 344 (Bankr. M.D. Fla. 1992) (holding reclamation claim was limited by rights of secured creditor that qualified as good faith purchaser); *Graniteville Co. v. Bleckley Lumber Co.*, 687 F. Supp. 589, 593 (M.D. Ga. 1988) (holding that "good faith of a secured party is obviously a material fact") (internal quotes omitted) (citing *Shell Oil Co. v. Mills Oil Co., Inc.*, 717 F.2d 208, 213 (5th Cir. 1983)).  Accordingly, the Prepetition Lenders' good faith may be relevant if the Court sustains the Debtors' request to apply their alleged Prior Lien Defense.

## CONCLUSION

Timken and Toyotetsu submit that it would be wholly inequitable to sustain the Prior Lien Defense where the Prepetition Lenders were over-secured by close to $2 billion, particularly where the Debtors seek to effectively foreclose solely on the reclaimed goods for the express purpose of rendering such reclamation rights valueless.  Such a ruling would set the stage for much more contentious debtor-supplier relationships in future cases, because such suppliers would be compelled to protect their rights aggressively by lodging objections to every motion in the case that purports to impair their interests in reclaimed goods.  For all of the foregoing reasons, this Court should deny the Debtors' motion to value reclamation claims at $0 based upon the purported Prior Lien Defense.

- 8 -

A00871

A0871

Dated: New York, New York.          Respectfully submitted,
      February 27, 2007

                                  MCDERMOTT WILL & EMERY LLP


                                  By: /s/ James M. Sullivan
                                      James M. Sullivan (JS-2189)
                                      Gary O. Ravert (GR-3091)
                                      340 Madison Avenue
                                      New York, New York  10173-1922
                                      212.547.5400

                                      Counsel for Creditors
                                      The Timken Company, Timken U.S. Corp.,
                                      Toyotetsu America, Inc., and Toyotetsu Mid
                                      America, LLC


                                TAFT, STETTINIUS & HOLLISTER LLP


                                By: // W. Timothy Miller
                                      W. Timothy Miller *(pro hac vice)*
                                      Paige Leigh Ellerman *(pro hac vice)*
                                      Taft, Stettinius & Hollister LLP
                                      425 Walnut Street, Suite 1800
                                      Cincinnati, Ohio  45202
                                      Telephone: 513.357.9359
                                      Facsimile: 513.381.0205

                                      Co-Counsel for Toyotetsu America, Inc.,
                                      and Toyotetsu Mid America, LLC

- 9 -

A00872

A0872

Hearing Date and Time: February 28, 2007 at 10:00 a.m.
Reply Deadline: February 16, 2007 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                          :    Chapter 11
                                               :
Dana Corporation, *et al.*,                    :    Case No. 06-10354 (BRL)
                                               :
                          Debtors.             :    (Jointly Administered)
                                               :
------------------------------------------------------------x

## REPLY BRIEF OF DEBTORS AND DEBTORS IN POSSESSION IN SUPPORT OF PRIOR LIEN DEFENSE TO RECLAMATION CLAIMS

Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Pachulski Stang Ziehl Young
    Jones & Weintraub LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

CONFLICTS COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

17290-001\DOCS_NY:11963.2

A00832
A0832

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   *DAIRY MART* IS GOOD LAW.............................................................6

III.  BAPCPA DOES NOT PREEMPT THE PRIOR LIEN DEFENSE OR REVERSE *DAIRY MART*................................................................14

IV.   THE DIP LIEN IS NOT SUBORDINATE TO RECLAMATION CLAIMS..................19

V.    EQUITABLE ESTOPPEL DOES NOT APPLY ..............................................20

VI.   OTHER ARGUMENTS ..........................................................................23

      A.    There Is No Right To Equitable Marshaling........................................23

      B.    The DIP Orders Did Not Violate Due Process Rights.............................24

      C.    Requests For The Allowance Of Administrative Priority Claims Are Without Merit And Are Outside The Scope Of This Proceeding..........................25

VII.  CONCLUSION...................................................................................26

A00833

A0833

# TABLE OF AUTHORITIES

**Page**

## Cases

Action Indus., Inc. (Dollarama) v. Dixie Enters., Inc. (In re Dixie Enters., Inc.),
 22 B.R. 855 (Bankr. S.D. Ohio 1982)................................................................7

Desiano v. Warner-Lambert & Co.,
 467 F.3d 85 (2d Cir. 2006) ...........................................................................17

Dewsnup v. Timm,
 502 U.S. 410, 112 S.Ct. 773 (1992)..............................................................17

Edmonds v. Compagnie Generale Transatlantique,
 443 U.S. 256 (1979).....................................................................................16

Emil v. Hanley,
 318 U.S. 515, 87 L. Ed. 954, 63 S. Ct. 687 (1943)........................................16

Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.),
 239 B.R. 261 (Bankr. S.D.N.Y. 1999)......................................................passim

In re Dairy Mart Convenience Stores, Inc.,
 302 B.R. 128 (Bankr. S.D.N.Y. 2003)......................................................passim

In re Georgetown Steel Co., LLC,
 318 B.R. 340 (Bankr. D.S.C. 2004)........................................................9, 22, 24

In re Pester Refining Co.,
 964 F.2d 842 (8th Cir. 1992) ...........................................................................9

In re Phar-Mor, Inc.,
 301 B.R. 482 (Bankr. N.D. Ohio 2003) ....................................................passim

In re Primary Health Systems, Inc.,
 258 B.R. 111 (Bankr. D. Del. 2001) ...............................................................19

In re Steinberg's, Inc.,
 226 B.R. 8 (Bankr. S.D. Ohio 1998)................................................................13

In re Wathen's Elevators, Inc.,
 32 B.R. 912 (Bankr.W.D.Ky.1983) .................................................................13

Midlantic Nat'l. Bank v. New Jersey Dept. of Envtl. Protection,
 474 U.S. 494, 88 L. Ed. 2d 859, 106 S. Ct. 755 (1986)..............................16, 17

Pennsylvania Dept. of Public Welfare v. Davenport,
 495 U.S. 552, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990)..............................16

Readco, Inc. v. Marine Midland Bank,
 81 F.3d 295 (2d Cir. 1996) ...........................................................................21

Reclamation Rights v. DIP Financiers,
 23-2 ABIJ 20 (March 2004)...........................................................................13

A00834

A0834

*Simon & Schuster, Inc. v. Advanced Marketing Servs., Inc.*
  *(In re Advanced Marketing Servs., Inc.),*
  ___ B.R. ___, 2007 WL 162685 (Bankr. D. Del. January 22, 2007) ..................................passim

*United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,*
  484 U.S. 365, 98 L. Ed. 2d 740, 108 S. Ct. 626 (1988)................................................................16

*United States v. Ron Pair Enterprises, Inc.,*
  489 U.S. 235, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989)..........................................................16

*Victory Markets Inc.,*
  212 B.R. 738 (Bankr. N.D.N.Y. 1997) ...........................................................................................14

*Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp.*
  *(In re Pittsburgh-Canfield Corp.,* 309 B.R. 277 (B.A.P. 6th Cir. 2004) ............................passim

## Statutes

11 U.S.C. § 101(37) .................................................................................................................18
11 U.S.C. § 364 ..............................................................................................................3, 11, 12, 13
11 U.S.C. § 364(c) ....................................................................................................................9, 11
11 U.S.C. § 364(d) ....................................................................................................................9, 11
11 U.S.C. § 503 ...............................................................................................................................19
11 U.S.C. § 503(b)(9) ...........................................................................................................3, 6, 15, 19
11 U.S.C. § 544(a) ........................................................................................................................15
11 U.S.C. § 545 ..............................................................................................................................15
11 U.S.C. § 546(c) .....................................................................................................................passim
11 U.S.C. § 546(c)(1)................................................................................................................16, 18
11 U.S.C. § 547 ..............................................................................................................................15
11 U.S.C. § 549 ..............................................................................................................................15
U.C.C. §§ 1-201 (2003) .................................................................................................................12
U.C.C. §§ 2-103 (2003) .................................................................................................................12
U.C.C. §§ 2-403 (2003) .................................................................................................................17
U.C.C. §§ 2-702 (2003) ............................................................................................................14, 15
U.C.C. §§ 2-702(3) (2003)...........................................................................................................17
U.C.C. §§ 2-702(C) (2003)........................................................................................................9, 12

## Other Authorities

3 *Norton Bankruptcy Law and Practice 2d,*
  § 56:5 (William L. Norton Jr., ed. 2007) .......................................................................................19

A00835

A0835

5 *Collier on Bankruptcy* ¶ 546.04[1]
  (Lawrence P. King, et al. eds., 15th ed. rev. 2005)................................................................15, 16

Bankruptcy Abuse Protection and Consumer Protection Act of 2005 ("BAPCPA").............passim

A00836
A0836

PACHULSKI STANG ZIEHL YOUNG
    JONES & WEINTRAUB LLP
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Conflicts Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
|  |  |
|---|---|
| In re | :   Chapter 11 |
|  | : |
| Dana Corporation, *et al.*, | :   Case No. 06-10354 (BRL) |
|  | : |
|                     Debtors. | :   (Jointly Administered) |
|  | : |

-----------------------------------------------------------x

**REPLY BRIEF OF DEBTORS AND DEBTORS IN POSSESSION**
**IN SUPPORT OF PRIOR LIEN DEFENSE TO RECLAMATION CLAIMS**

In accordance with the Court's *Order Pursuant to Section 105(a) of the Bankruptcy Code*

*and Bankruptcy Rules 7042 and 9014: (I) Bifurcating Consideration of Issues Relating to*

*Reclamation Claims; (II) Establishing a Briefing Schedule for Consideration of Certain*

*Common Issues; and (III) Granting Certain Related Relief* (Docket No. 3865) (the "Reclamation

Scheduling Order"), the above-captioned debtors and debtors in possession (collectively,

the "Debtors") hereby submit this Reply Brief in support of the Debtors' Prior Lien Defense to

the Remaining Reclamation Claims (as such terms are defined in the Debtor's Initial Brief).

**I.    INTRODUCTION**

The twenty-four responses from creditors asserting reclamation rights (the "Reclamation

Claimants") contain variations on a handful of common arguments. Their cornerstone is the

17290-001\DOCS_NY:11963.2

Debtors' stipulation that the prepetition secured debt was not paid with the proceeds of the Reclaimed Goods, but instead with proceeds of the DIP Loan.[1]  While their articulations vary, the logic is consistent: (1) reclamation rights are subject only to a prior lien; (2) the prepetition debt was satisfied from a source other than the Reclaimed Goods; and thus (3) the Reclaimed Goods have been liberated from the prior lien and reclamation claims must now be valued in full. They contend that this result is compelled under the *Phar-Mor* interpretation of pre-BAPCPA law, or under the new BAPCPA-created federal common law of reclamation, as interpreted (or more accurately, promulgated) by the Reclamation Claimants.  They acknowledge, mostly, that Judge Gonzalez' decision in *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128 (Bankr. S.D.N.Y. 2003) ("*Dairy Mart*") would compel the opposite result:  on these facts, Reclamation Claims have no value.

Accordingly, the Reclamation Claimants argue in unison that Judge Gonzalez' decision in *Dairy Mart* is wrong and Judge Bodoh's decision in *In re Phar-Mor, Inc.*, 301 B.R. 482 (Bankr. N.D. Ohio 2003) ("*Phar-Mor*") is right.  These cases squarely address the effect on reclamation rights when prepetition debt secured by a floating lien on inventory is paid from borrowings on a DIP loan that is secured by a new floating lien on the same inventory.  Sensibly, *Dairy Mart* holds that reclamation rights do not sprout value when old senior debt is supplanted by new senior debt.  Nothing about the replacement of one lien by another on Reclaimed Goods provides an economic rationale or equitable justification for revaluing reclamation rights. Rather, the use of the goods to collateralize the loan that retires the prior lien is effectively a disposition of the goods, because the release of the old lien and the creation of the new lien are a single, integrated transaction.  Even *Phar-Mor* contemplates that reclamation rights may be

---

[1]    Capitalized terms have the meaning assigned to them in the Debtors' Initial Brief in Support of the Prior Lien Defense to Reclamation Claims ("Initial Brief").

A00838
A0838

rendered valueless by a DIP lien, so long as the prepetition secured creditor assigns its lien rights to the DIP lender. In other words, under *Phar-Mor*, it is apparently the mechanics of the lien replacement – whether the DIP lender takes a new lien rather than an assignment of the prior lien – that determine whether reclamation rights have value or not. To the extent *Phar-Mor* is apposite, its formalistic and oversimplified approach is not law that should be adopted in this District.

Not a shred of legislative history supports the Reclamation Claimants' contention that the Prior Lien Defense was swept away by the Bankruptcy Abuse Protection and Consumer Protection Act of 2005 ("BAPCPA"). The Prior Lien Defense and the *Dairy Mart* decision predate BAPCPA. If Congress intended to eliminate them, amending section 546(c) to provide expressly that reclamation rights are subject to the rights of prior lienholders was a curious way to go about it. The opposite inference – that the amendment recognizes and incorporates the Prior Lien Defense – is far more reasonable. Regardless, the defense applies in this case post-BAPCPA. Under the express terms of the reworded statute, reclamation rights are still subject to a prior lien, and thus cannot be enforced if the reclaimed goods subject to the prior lien are disposed to satisfy that lien. Under *Dairy Mart*, that is the effect when the reclaimed goods are pledged in order to satisfy the prior lien. To argue otherwise disregards the substance of the transaction and the priority that the DIP Lien holds under section 364 of the Bankruptcy Code. There is no time at which the Reclaimed Goods have not been subject to senior liens.

What Congress did for suppliers of goods such as the Reclamation Claimants was far more significant: it enhanced their rights dramatically by enacting section 503(b)(9), which grants suppliers administrative claims for goods provided to the Debtor within twenty days of the petition date, *whether or not there are prior liens on the goods*, and whether or not they satisfied

A00839
A0839

the other requirements for reclamation. This right is not only sturdier than reclamation rights, but its twenty day window is double the reclamation period under pre-BAPCPA law. The Reclamation Claimants barely acknowledge this substantial change in the law for their benefit. Congress' intent can only be divined from the plain language and effect of these amendments. These suggest a legislative purpose to achieve a balance of substantive rights, not to reverse *Dairy Mart* or otherwise curtail the Prior Lien Defense.

A common refrain in the responses is that reclamation claims must be allowed because (a) reclamation rights are not extinguished by the existence of a prior lien, but only rendered subordinate to the prior lien, and (b) the Prepetition Lenders were oversecured, and thus the Reclamation Claimants should recover from any excess value. Under *Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.*, 309 B.R. 277 (B.A.P. 6th Cir. 2004) ("*Pittsburgh-Canfield*") and the other authorities cited in the Initial Brief, however, whether a prior lien is oversecured is irrelevant. Reclamation is an *in rem* remedy, and reclaiming sellers have no right to compel a lienholder to satisfy its claim from other collateral (such as *other* creditors' reclaimed goods). Cases from this District have made clear repeatedly that marshaling is inappropriate in the reclamation context. Hence if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless. Furthermore, under *Dairy Mart*, oversecurity is also irrelevant because the reclaimed goods were effectively disposed in order to pay off the prepetition debt and release the prior lien.

Certain Reclamation Claimants argue that the lien securing the DIP Loan, by its terms, is subordinate to reclamation rights. The argument is inaccurate, and in several briefs rests on the selective omission of substantive language in the DIP financing orders. Some also argue that the

A00840

A0840

DIP Lien cannot take priority over reclamation rights because the lender was aware of the existence of the reclamation claims, and thus could not be a good faith purchaser to whose interests the reclamation rights are subject. Whether or not a lender is aware of reclamation demands, however, is not the *sine qua non* of good faith under the Uniform Commercial Code or the Bankruptcy Code. Furthermore, the Court made a good faith finding in connection with the DIP Loan and approved a priming lien that is superior to reclamation rights. The priority of that lien can hardly be challenged later by applying different criteria to facts that were known at the time.

Equitable estoppel is also inapplicable. The Reclamation Claimants' estoppel argument is based on the fact that the Reclamation Procedures were represented to be the sole and exclusive method for handling reclamation claims. The argument fails: not only is the assertion of the Debtors' legal defenses entirely within the "method" contemplated by the motion and order, but the procedures *expressly* reserved the Debtors' right to raise the "whether the demand is subordinate to the prior rights of a holder of a security interest in the applicable Goods or the proceeds thereof." On these facts, none of the requirements for estoppel are met.

Underlying the responses is the common theme that devaluing the Reclamation Claims based on the priority of the DIP Lien is inequitable, and represents an unexpected and undeserved windfall to the Debtors at the Reclamation Claimants' expense. This appeal to equity is unfounded. It has always been the case that reclamation is unavailable when the goods to be reclaimed are encumbered. Where that is so, suppliers have no greater rights than other unsecured creditors. In bankruptcy, the balance of equities is not between reclaiming sellers and the debtor, but between reclaiming sellers and other unsecured creditors, whose claims are leapfrogged if the Reclamation Claims are sustained. There is no economic rationale or

A00841

A0841

equitable reason why refinancing secured debt should have the effect of placing suppliers' claims

ahead of other unsecured creditors when the Reclaimed Goods are just as encumbered after the

refinance as before. Further, the Reclamation Claimants are now entitled to administrative

priority for a substantial portion of their claims under section 503(b)(9). Congress already

balanced the equities by enacting that provision, and there is no indication that it intended to

eliminate the Prior Lien Defense. The motion should be granted and the Reclamation Claims

valued at zero.

**II.     *DAIRY MART* IS GOOD LAW**

The Reclamation Claimants are unanimous in their criticism of *Dairy Mart*. As most

acknowledge, if the Court agrees with *Dairy Mart*, their reclamation rights have no value. That

is because the Prepetition Indebtedness, which was secured in part by a first priority lien on the

Reclaimed Goods, was paid from proceeds of the DIP Loan, which was also secured in part by a

first priority lien on the Reclaimed Goods. On such facts, Judge Gonzalez held that reclamation

rights continued to be valueless after the release of the prior lien, because the release of the prior

lien and the creation of the new lien were part of an integrated transaction, and the pledge of the

reclaimed goods as collateral for the new loans that paid the old debt constituted the disposition

of such goods for reclamation purposes.

Instead, the Reclamation Claimants urge the Court to adopt the reasoning of *Phar-Mor*.

In *Phar-Mor*, the prepetition secured debt was paid upon approval of the DIP financing and the

prepetition lien was released. Approximately ten months later, the DIP loan of $135,000,000 was

repaid from going-out-of-business sale proceeds, and approximately six months later, the debtors

proposed a plan that provided for the payment of reclamation claims as administrative expenses

and reserved $10,000,000 for that purpose. Shortly thereafter, the debtors moved to reclassify

reclamation claims as general unsecured claims on the basis that the reclaimed goods had been

A00842

A0842

sold in the going-out-of-business sale and applied to repayment of the DIP loan. Judge Bodoh

sided with the reclamation claimants, on the basis that the prepetition lenders had released their

lien on the reclaimed goods. *Id.* at 497. The release of the prior lien distinguished that case from

a prior decision of the same court, in which reclamation rights were deemed subject to the rights

of a DIP lender that had taken an assignment of the prepetition lien. *Id.* at 497 n.7 (referencing

*Pittsburgh-Canfield*, 309 B.R. 277).

Given the great weight assigned by the Reclamation Claimants to *Phar-Mor*, and the

variety of interpretations of reclamation law asserted in response to the Prior Lien Defense, it is

worth noting the extent to which the *Phar-Mor* and *Dairy Mart* opinions have a common legal

foundation. Each articulates the same well-established principles governing the treatment of

reclamation claims in bankruptcy:

- A seller's right to reclaim is subject to the rights of a buyer in the ordinary course or a good faith purchaser. *Phar-Mor*, 301 B.R at 494; *Dairy Mart*, 302 B.R. at 133.

- A secured creditor qualifies as a good faith purchaser. *Id.*

- A reclaiming seller is not automatically entitled to an administrative expense priority or a replacement lien equal to the full value of the claim if reclamation is denied. *Phar-Mor*, 301 B.R. at 496; *Dairy Mart*, 302 B.R. at 134.

- When a secured claim is paid out of the goods to be reclaimed, the seller's reclamation right is rendered valueless. *Phar-Mor*, 301 B.R. at 496; *Dairy Mart*, 302 B.R. at 135.

- A reclaiming seller is not entitled to receive more than what it would have received outside bankruptcy. *Phar-Mor*, 301 B.R. at 496; *Dairy Mart*, 302 B.R. at 134.

- The secured creditor's decisions concerning what collateral to liquidate determine the value of the seller's right to reclaim. *Phar-Mor*, 301 B.R. at 497; *Dairy Mart*, 302 B.R. at 134.

The facts of *Phar-Mor* did not involve, and thus the decision did not address, certain

other fundamental principles applicable to this case:

- "A right to reclamation is . . . an *in rem* right." *Action Indus., Inc. (Dollarama) v. Dixie Enters., Inc. (In re Dixie Enters., Inc.)*, 22 B.R. 855, 859 (Bankr. S.D. Ohio 1982). Thus

A00843
A0843

a seller's reclamation rights are limited to the goods it sold or their proceeds. *Pittsburgh-Canfield*, 309 B.R. at 287-88.

- A reclaiming seller has no right to marshaling. *Simon & Schuster, Inc. v. Advanced Marketing Servs., Inc. (In re Advanced Marketing Servs., Inc.)*, ___ B.R. ___, 2007 WL 162685, at \*4 (Bankr. D. Del. January 22, 2007); *Pittsburgh-Canfield*, 309 B.R. at 291-292; *Dairy Mart*, 302 B.R. at 135-136; *Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.)*, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999).

- Because a reclaiming seller's rights are limited to the goods it sold, and it has no right to compel a lienholder to resort to someone else's goods, a reclamation claim has value only if the specific goods to be reclaimed have value in excess of the amount of secured debt, whether or not the secured creditor is oversecured. *Pittsburgh-Canfield*, 309 B.R. at 287 (reclamation claim was entitled to recovery "only to the extent that the value of the specific inventory in which the reclaiming seller asserts an interest exceeds the amount of the floating lien in the debtor's inventory" and finding no abuse of discretion in holding that seller's reclamation claims were valueless where the secured creditor was substantially oversecured); *Dairy Mart*, 302 B.R. at 133-134 ("it is only when the reclaiming seller's goods or traceable proceeds from those goods are in excess of the value of the superior claimant's claim that the reclaiming seller will be allowed either to reclaim the goods or receive an administrative claim or lien in an amount equal to the goods that remain after the superior claim has been paid.") (citations omitted).

A common theme in the responses is that reclamation claims are not automatically extinguished by the existence of a prior lien, but are subject to the decision of the secured creditors when it comes to liquidating their collateral. This proposition is usually the complement of the argument that, since the Prepetition Lenders were oversecured, value must be assigned to the Reclamation Claims. The Debtors do not argue — and have never argued — that the Reclamation Claims were extinguished by virtue of the existence of the prior lien. *Dairy Mart* and *Phar-Mor*, among others, hold that they are not extinguished but rendered valueless because they were disposed of in satisfaction of the Prepetition Indebtedness.

Where *Phar-Mor* diverges from *Dairy Mart* is in its mechanical approach to determining the legal consequence of retiring prepetition secured debt through a DIP loan. The *Phar-Mor* rationale could not be simpler: the prepetition debt was paid and the prior lien was released, not preserved for the benefit of the DIP lender, and thus reclamation claims are no longer subject to

A00844
A0084

the prior lien. *Phar-Mor*, 301 B.R. at 497 ("Since Pre-Petition Lenders' liens were released,

Vendors' right to reclaim is not affected by the interests of Pre-Petition Lenders.").[2]

Judge Bodoh justified this conclusion in *Phar-Mor* by invoking the maxim that "[n]o

action on the part of a debtor should be permitted to defeat a seller's right to reclamation," citing

cases holding that a debtor's sale of reclaimed goods after the assertion of a valid reclamation

demand does not defeat the claim. *Id.* That is followed, without further citation, by the

statements that a "debtor's decision to grant a security interest in inventory to a subsequent

secured lender cannot defeat a seller's reclamation rights if the seller asserted its rights before the

security interest is granted. Moreover, the Interim and Final DIP Orders explicitly prohibit

Debtors from returning the goods constituting collateral under § 546(c) of the Bankruptcy Code.

Therefore, having notice of the Reclamation Demands, DIP Lenders cannot qualify as good faith

purchasers under § 2-702(C)." *Id.*

Dissecting this superficial logic confirms the sound reasoning of *Dairy Mart*. The cash to

retire the prior lien could have been raised by selling the Reclaimed Goods, thereby

extinguishing any reclamation rights. Instead, the prior lien was retired with borrowed cash

raised by pledging the Reclaimed Goods as collateral for *another* first priority lien, conferred

under subsections (c) and (d) of section 364 of the Bankruptcy Code. Nothing about the

replacement of one lien by another on Reclaimed Goods provides an economic rationale or

equitable justification for revaluing reclamation rights. As the *Dairy Mart* court found, the use

---

[2] Setting aside its holding concerning the effect of the DIP lien, *Phar-Mor* simply falls into line with those cases that stand for the uncontroversial proposition that reclamation claims are not extinguished by a prepetition lien, and thus are no longer subject to such a lien after the lien is released. *In re Pester Refining Co.*, 964 F.2d 842, 848 (8th Cir. 1992) ("Because the secured creditors released their superior liens and satisfied their claims from unrelated assets and income sources, the bankruptcy court properly valued Ethyl's right to reclaim at the full invoice price"); *In re Georgetown Steel Co., LLC*, 318 B.R. 340, 348 (Bankr. D.S.C. 2004) (allowing a seller's administrative claim where the prior secured creditor had been paid in full and implicitly released its lien on the seller's goods).

A00845

A0845

of the goods to collateralize the loan that pays off the prepetition secured debt is effectively the

disposition of the goods, because the release of the old lien and the creation of the new lien are

an integrated transaction.

> The only way the [Dairy Mart] Debtors could get a post-petition loan was if they afforded the debtor-in-possession lender a lien on all the pre-petition lender's collateral. *In effect, that was the disposition of the collateral* — the lien was given to the new lender in exchange for payment to Citizens or in effect 'sold' to the new lender. The transaction of releasing Citizens' lien and simultaneously granting the lien to the post-petition lender, Foothill, must be viewed as an integrated transaction . . . . There was a direct nexus between the release of the liens on the pre-petition collateral and the payment on the pre-petition secured loan . . . . *Thus, at the time that Citizens' secured claim was paid . . . , all of the goods or proceeds of those goods were disposed of to 'pay' Citizens' secured claim.* In this context, the reclamation goods or the proceeds from those goods have been used to satisfy the secured creditor's claim. As such the goods or their proceeds have effectively been 'paid' to the secured creditor, and the Reclamation Claims in those goods is valued at zero.

*Dairy Mart*, 302 B.R. at 135-36 (emphasis added).[3]

To argue that reclamation rights gained value simply because the prior lien was released,

without taking into account the new loan, disregards the economic substance of the transaction.

It was a stated purpose of the DIP Loan to refinance the Prepetition Indebtedness, such relief was

expressly authorized, and the payoff was accomplished the day after the Final DIP Order was

entered.[4] The argument also disregards the primacy of the DIP Lien that was authorized under

---

[3]    Some Reclamation Claimants seek to distinguish *Dairy Mart* factually on the basis that the prior lienholder was paid from its own collateral during the time period between approval of the DIP loan and the payoff of the prepetition secured debt, either directly by cash sweeps or via sweeps by the postpetition lender while the prepetition lien was still in effect. *Id.* at 135. They conclude that the *Dairy Mart* holding – that reclaimed goods were effectively disposed by being pledged to obtain the funds to pay off the prepetition lien – is therefore "only" an alternative holding. That is inaccurate. Unless the *Dairy Mart* prepetition lender was paid entirely from sales of its collateral and not by the DIP lender, the holding was necessary to the decision. The decision implies that was not the case. Indeed, if no reclaimed goods remained on hand, the court's "integrated transaction" analysis would have been superfluous.

[4]    The Final DIP Order was entered on March 29, 2006 (Docket No. 721), approving the DIP Facility on a final basis and authorizing the Debtors to refinance the Prepetition Indebtedness with the proceeds of the DIP Facility.

A00846
A0846

sections 364(c) and (d). That lien unequivocally had priority not just over reclamation rights, but over the prior lien that had priority over the reclamation rights! Section 546(c) cannot be read to preclude the authority under section 364 to approve first priority liens. The Reclaimed Goods were equally encumbered before and after the transaction.[5] The use of the Reclaimed Goods to collateralize a loan that paid off the Prepetition Indebtedness did not alter the capital structure of the Debtors in any manner that freed the Reclaimed Goods from liens with priority over reclamation rights.

In the first post-BAPCPA bankruptcy court decision involving the Prior Lien Defense, a Delaware bankruptcy court has held that reclamation rights were subject to both pre- *and* post-petition liens. *In re Advanced Marketing Servs. Inc.*, 2007 WL 162685, *3 (Bankr. D.Del. Jan. 22, 2007). Although cross-collateralization had been authorized there, the operative principle is the same: because there was never a time at which the Reclaimed Goods were not encumbered by a lien with priority over reclamation rights, there was never a time at which the reclamation rights had value. *Phar-Mor* holds that this outcome is purely dependent upon whether the DIP lender took a new lien or was assigned the prior lien. Such elevation of form over substance is not sound and should be rejected by this Court.

The cursory justification in *Phar-Mor* that a "debtor's decision to grant a security interest in inventory to a *subsequent* secured lender cannot defeat a seller's reclamation rights if the seller asserted its rights before the security interest is granted" is legally inaccurate. The

---

(continued...)

On March 30, 2006 (the "Payoff Date"), pursuant to the terms and conditions of the DIP Facility and the Final DIP Order, the Debtors repaid the Prepetition Indebtedness in full using funds borrowed under the DIP Facility.

[5] Another attempt to distinguish *Dairy Mart* is that the DIP lenders required a lien on all collateral before they would lend, whereas the Dana DIP Lenders did not require a lien on all collateral. That is false. As set forth in the Initial Brief, the Court made findings that the DIP Lenders would not lend without the security they were given, including the lien on inventory. Regardless, the collateral packages did not differ with respect to inventory, which is all that is relevant here.

A00847

A0847

ostensible support for the statement is Judge Bodoh's preceding observation that debtors cannot defeat reclamation by their actions. But that maxim and its supporting citations relate to the legal effect of a debtor's unilateral acts in selling reclaimed goods. That is different than the legal effect of a court-approved priming lien. There is no logic or authority that supports the application of that maxim to credit agreements that are subject to notice and approval by the Court under section 364 of the Bankruptcy Code. In that context, it is not a debtor's actions that defeat reclamation rights, but the substantive provisions of the Bankruptcy Code.

Moreover, the stated rationale of *Phar-Mor* is flatly inconsistent with this purported justification. Under the *Phar-Mor* holding, a subsequent lender certainly *can* be given a security interest superior to reclamation rights – so long as the transaction is structured as an assignment of the prior lien. No principled distinction exists to justify giving such a lien a different legal effect than that of a DIP lien that is created as part of an integrated transaction that refinances the prepetition debt. In each case the reclaimed goods are used as collateral to obtain the funds to release the prior lien. They are functionally identical.

The other stated justification in *Phar-Mor* is equally flawed. Judge Bodoh states that, "having notice of the Reclamation Demands, DIP Lenders cannot qualify as good faith purchasers under § 2-702(C)." *Phar-Mor*, 301 B.R. at 497. But that is not the prevailing law. Under the Uniform Commercial Code, "good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing.[6] Refusing even to permit discovery on the issue, the court in *Pittsburgh-Canfield* stated:

> Although several of the Objecting Vendors argued that they should be allowed to take discovery as to the "good faith" of the Prepetition Lenders and the lenders under the DIP Facility, they did not identify any question as to such "good faith" that would

---

[6]  The definition is codified in § 2-103 or § 1-201 of the Uniform Commercial Code, depending on jurisdiction.

A00848

A0848

> warrant such discovery. *See e.g. In re Steinberg's, Inc.*, 226 B.R. 8,
> 11-12 (secured creditor who enforces security agreement "in a
> manner consistent with the clear terms thereof" acts in good faith;
> discovery not proper unless reclaiming seller shows "some basis
> on which to question" the secured creditor's good faith); *In re
> Wathen's Elevators, Inc.*, 32 B.R. 912, 920-21
> (Bankr.W.D.Ky.1983) ("good faith" only requires honesty and
> reasonable commercial standards; secured creditor's alleged
> "knowledge" of reclamation demands is irrelevant to good faith);
> *In re Arlco, Inc.*, 239 B.R. 261, 271-72 (Bankr. S.D.N.Y. 1999).

*Pittsburgh-Canfield*, 309 B.R. at 289-290. Moreover, section 546(c), as amended, does not

contain a good faith requirement, which is likely due to the uniform acceptance of this authority

with respect to holders of security interests. Finally, the Interim DIP Order and Final DIP Order

contain explicit findings that the transaction was negotiated and entered at arms-length and in

good faith. Lienholders and other interested parties received actual notice and had

approximately three weeks to object. The DIP Orders were not appealed, and are final and

conclusive. It is inconceivable that the DIP Lender could find itself behind millions of dollars of

reclamation claims on the basis of a challenge to its good faith made months or years after the

fact and under different criteria than those that it relied upon in extending credit.[7]

    The Debtors submit that *Dairy Mart* is the better reasoned of these two decisions. The

Reclaimed Goods were encumbered at all times, and the DIP Lien not only replaced the prior

lien in an integrated transaction, but had priority over the prior lien under section 364. In

holding that reclaimed goods are subject to a prior lien, but not to a subsequent lien on the same

collateral that secures a loan that pays off the prior lien (except where the new lender takes an

assignment of the prior lien), *Phar-Mor* utilizes a mechanical, formalistic approach that

---

[7] The citation by Parker Hannifin Corporation to Hesse, *Reclamation Rights v. DIP Financiers*, 23-2 ABIJ 20 (March 2004) for further support of the notion that DIP Lenders are not good-faith purchasers is redundant. The article is simply summarizing the *Phar-Mor* opinion where cited.

A00849

A0849

disregards both the economic substance and practical equities of refinancing, and that should not find acceptance in this District.

III.    **BAPCPA DOES NOT PREEMPT THE PRIOR LIEN DEFENSE OR REVERSE**
        ***DAIRY MART***

According to the Reclamation Claimants, the 2005 Bankruptcy Code amendments enacted in BAPCPA represent a sea change in the law of reclamation. They urge in essence that weaker state law reclamation rights and adverse judicial interpretations such as *Dairy Mart*, *Arlco*, *Victory Markets Inc.*, 212 B.R. 738 (Bankr. N.D.N.Y. 1997), and *Pittsburgh-Canfield* that have weakened them further, all gave way to a new and stronger and exclusively federal common law of reclamation. Critically, the Reclamation Claimants assert that the "New 546(c)" eliminated the Prior Lien Defense. They argue that the revised statute provides only that reclamation rights are subject to a prior lien – a defense that was eliminated in this case when the Prepetition Indebtedness was refinanced. Apparently, although it purportedly swept away most other cases interpreting UCC § 2-702 and the Prior Lien Defense, the Reclamation Claimants believe (conveniently) that Congress' intent was to codify *Phar-Mor*. These arguments are specious. BAPCPA does not preempt the Prior Lien Defense or the considerable body of existing law interpreting it and would not change the outcome of this case in any event.

The chief problem with the argument that BAPCPA preempts existing law on the Prior Lien Defense is that it has no support in the statute or its legislative history, and has already been rejected in *Advanced Marketing*. As with so many of the BAPCPA business-related amendments, the record is devoid of legislative history that would corroborate that Congress intended to override existing law on the effect of prior liens on reclamation rights, or that would provide my guidance to the courts as to the development of a new federal common law to replace it. Any such intent must be divined from the text of the revisions. Not only do those revisions

17290-001\DOCS_NY:11963.2                    -14-

A00850

A0850

fail to evince any preemptive intent, their plain language supports a strong inference that the

Prior Lien Defense was incorporated into the Bankruptcy Code, and that by enacting section

503(b)(9), Congress intended to take a different approach to balancing creditors' substantive

rights.

Prior to BAPCPA's effective date, section 546(c) of the Bankruptcy Code provided that

"the rights and powers of a trustee under … this title are subject to *any statutory or common law*

right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's

business, to reclaim such goods …." (emphasis added).  As the Reclamation Claimants note, the

express reference to "any statutory or common law" reclamation right was dropped, a 45 day

reclamation period was specified, and the preexisting deadline for submitting demands was

increased.  One key phrase – "subject to the prior rights of a holder of a security interest in such

goods or the proceeds thereof" -- was added.[8]

The Reclamation Claimants contend that the consequence of this amendment is the

creation of a stand-alone federal reclamation right that preempts state law, and which renders

irrelevant all existing authority interpreting reclamation rights under the Uniform Commercial

Code, including the Prior Lien Defense under UCC § 2-702.  *Collier* makes the short comment

that the amendment "suggests" that reclamation rights are now derived exclusively from the

---

[8]    Section 546(c) of the Bankruptcy Code provides that:

(c) (1) … *subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof,*
the rights and powers of the trustee under sections 544(a), 545, 547 and 549 are subject to the right of a seller of
goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if
the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a
case under this title but such a seller may not reclaim any such goods unless such seller demands in writing
reclamation of such goods —

(A) not later than 45 days after the date of receipt of such goods by the debtor; or (B) not later than 20 days after
the date of commencement of the case, if the 45-day period expires after the commencement of the case.

(2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert
the rights contained in section 503(b)(9).

11 U.S.C. § 546(c) (emphasis added).

A00851

A0851

Bankruptcy Code. *5 Collier on Bankruptcy* ¶ 546.04[1] (Lawrence P. King, et al. eds., 15th ed. rev. 2005). What the Reclamation Claimants fail to note is that when it comes to the Prior Lien Defense, however, *Collier* suggests exactly the opposite: "Using prior versions of section 546(c)(1) as a guide, this provision appears intended to state that the seller's reclamation rights remain 'subject to' the secured creditor's rights." *Id.* at ¶ 546.04[2][a][vii].

If Congress had intended its amendment of section 546(c) to preempt the existing body of law on reclamation generally and the Prior Lien Defense specifically, it would have expressed its purpose (but did not). "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266-267 (1979). The Court has followed this rule with particular care in construing the scope of bankruptcy codifications." *Midlantic Nat'l. Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 501, 88 L. Ed. 2d 859, 106 S. Ct. 755 (1986) (emphasis added).

> When Congress amends the bankruptcy laws, it does not write "on a clean slate." *See Emil v. Hanley*, 318 U.S. 515, 521, 87 L. Ed. 954, 63 S. Ct. 687 (1943). Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history. *See United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 380, 98 L. Ed. 2d 740, 108 S. Ct. 626 (1988). *See also Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 244-245, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989).

A00852

A0852

*Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773 (1992).[9] No legislative history exists

evincing an intent to eliminate the Prior Lien Defense or reverse its interpretation in *Dairy Mart*

or any other decision.[10]

The text of the statute confirms that no sweeping override of existing authority was

intended. The "subject to prior rights" proviso in section 546(c), as amended, is remarkably

similar in concept, wording and level of detail to the UCC language that has necessarily given

rise to the considerable judicial authority on the subject.[11] Whatever impact the new language

may have on *other* good faith purchasers, it changes nothing in respect to holders of security

interests. To the contrary, it codifies the Prior Lien Defense.[12]

Further, the amended statute cannot possibly be applied without reference to existing law.

It does *not* say "junior to liens created by an agreement prior to the bankruptcy filing," as one

response hopefully suggests. Brief of the Timken Company, et al., at 9. It says "subject to the

prior rights of the holder of a security interest in such goods or the proceeds thereof." What prior

rights? What if the lienholder is oversecured? Is marshaling required? The Reclamation

Claimants contend elsewhere that reclamation claims must be deemed to have value if the prior

lien is oversecured. Is that purported right eliminated under their strict construction of post-

BAPCPA section 546(c)? Are reclamation rights junior to the prior lien if it is assigned, as in

---

[9]   *See also Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 95 (2d Cir. 2006) ("[W]ere we to conclude that
Appellants' claims were preempted, we would be holding that Congress, without any explicit expression of
intent, should nonetheless be taken to have modified (and, in effect, gutted) traditional state law duties between
pharmaceutical companies and their consumers. We see no reason, nor can we identify any precedent, to justify
such a result.").

[10]   It bears noting that "[t]he reference to Collier is not part of the Code's '"legislative history' in any meaningful
sense of the term." *Midlantic Nat'l. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. at 512
(Rehnquist, J., dissenting) (internal citation omitted).

[11]   UCC § 2-702(3) provides: "The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in
ordinary course of business or other good faith purchaser for value under Section 2-403."

[12]   The reworded statute also eliminates the good faith requirement, presumably due to the unanimity of authority
that holders of security interests are good faith purchasers.

A00853
A0853

*Phar-Mor*?  What if the goods have been disposed?  Does pledging the goods to release the prior

lien constitute a disposition, as in *Dairy Mart*?  If Congress intended to replace existing law with

a new, more restrictive, federal "Prior Lien Defense Lite," it did so obliquely and incompletely.

As it relates to the legal effect of prior liens, the statute requires judicial interpretation and

substance, and there is simply no indication that Congress intended it to come from anywhere

other than existing interpretations and substantive law on the subject.  Restated, there is no

Congressional intent to wipe the slate clean and none should be inferred.

In *Advanced Marketing*, the only post-BAPCPA decision involving the Prior Lien

Defense, the Delaware bankruptcy court rejected any construction of the amended section 546(c)

that would limit its application to "junior to liens created by an agreement prior to the bankruptcy

filing."  *In re Advanced Marketing, supra*.  After quoting the "prior rights" clause, Judge Sontchi

ruled:  "Accordingly, under the express language of §546(c)(1) of the Bankruptcy Code, as

amended, the Senior Lenders' pre-petition **and post-petition liens** on the Debtors' inventory are

superior to S&S's reclamation claim."  2007 WL 162685, at *3 (emphasis added).  Such a result

would be untenable under the Reclamation Claimants' strict construction of section 546(c) as

amended.  Under their narrow interpretation, a postpetition lien cannot trump reclamation rights

for purposes of the Prior Lien Defense if it was not created "prior" to the assertion of such rights,

no matter how closely it is tied to a prepetition lien.[13]  While the postpetition lien in *Advanced*

*Marketing* was cross-collateralized with the prepetition loan, it was nonetheless created after the

assertion of such rights.  Underscoring that BAPCPA was not revolutionary is the Delaware

court's further notation that the "Court would reach the same result under section 546(c) as it

---

[13] Certain of the Reclamation Claimants suggest that BAPCPA confers lien status on reclamation claims.  This cannot possibly be squared with their position that the amended section 546(c) is so restrictive.  Moreover, there is absolutely no indication that new section 546(c) creates "lien" rights in reclamation claimants.  "Lien" is a defined term in the Code.  11 U.S.C. § 101(37).  If Congress had wanted reclamation claimants to be granted liens on account of their reclamation claims, it could have said so.

A00854
A0854

existed prior to BAPCPA." *Id.* at n. 7 (citing *Pittsburgh-Canfield, In re Arlco, Inc.* and *In re Primary Health Systems, Inc.*, 258 B.R. 111,117-18 (Bankr. D. Del. 2001)).

The conclusion that Congress did not intend to reverse *Dairy Mart* or other existing law on the effect of prior liens on reclamation rights is bolstered by the enactment of section 503(b)(9), which *does* represent an extraordinary expansion of suppliers' rights. Suppliers now have an independent right to an administrative claim in respect of all goods provided to a debtor in the ordinary course within twenty days of the petition date, without making any demand, and even where an existing lien renders their reclamation rights valueless. The new right covers goods supplied within twenty days of the petition date, double the pre-existing window for reclamation claims. The creation of this new and valuable right, and the explicit reference in section 546(c) to its preservation, suggests that it was intended as a counterweight to the express preservation of the Prior Lien Defense. As one commentator notes: "Reclamation claims are fragile rights. The debtor may simply consume the goods on hand. The debtor may have already sold the goods or may simply ignore the notice. These circumstances can be the source of considerable frustration to the reclaiming creditor. Congress attempted to ease this frustration by further amendments to Code § 503 that provide administrative expense treatment to a creditor with reclamation rights even if the seller fails to make a demand." 3 *Norton Bankruptcy Law and Practice 2d*, § 56:5 (William L. Norton Jr., ed. 2007). In short, Congress has already balanced the equities.

IV.    **THE DIP LIEN IS NOT SUBORDINATE TO RECLAMATION CLAIMS**

Certain of the Reclamation Claimants argue that the DIP Lien is subordinate to reclamation claims. This unlikely argument purports to be based on ¶ 30 of the Final DIP Order, on the strength of the following language (as most claimants reproduced it):

A00855
A0855

> "For the avoidance of doubt, (i) nothing contained in this Final Order or any DIP Loan Document impairs, modifies or otherwise affects the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense . . . of any customer or supplier of any Debtor. . . ."

The problem with this argument is that ¶ 30 of the Final DIP, as reproduced above, is missing substantive language, elided by the ellipses in the foregoing quotation. Paragraph 30 of the DIP Order (captioned *Setoff Rights of Third Parties*) actually reads as follows:

> "For the avoidance of doubt, (i) nothing contained in this Final Order or any DIP Loan Document impairs, modifies or otherwise affects the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense (each, a 'Deduction') of any customer or supplier of any Debtor in respect of any account, account receivable, payment intangible, or any other *payment* obligation of that customer or supplier ...." (emphasis added).

The missing language makes clear that the ¶ 30 relates to a third party's right to setoff or assert defenses against a payment obligation to the Debtors. The right of reclamation is not a setoff or defense to a supplier's payment obligation. It is an *in rem* remedy for the recovery of goods sold to the Debtors (relating to payment obligations of the Debtors, not the suppliers). The language of the order, fully reproduced, offers no support for the argument that the Final DIP Order subordinates the DIP Lien to the Reclamation Claims.

## V.    EQUITABLE ESTOPPEL DOES NOT APPLY

Some reclaiming sellers argue that equitable estoppel bars the Debtors from asserting the Prior Lien Defense, because they identified their Reclamation Procedures Motion as the "sole and exclusive method for the handling of Reclamation Claims asserted against the Debtors" and never indicated their intention to assert the Prior Lien Defense.

The short answer to this argument is that the Reclamation Procedures Motion and Order expressly contemplate the assertion of the Prior Lien Defense. The Debtors specifically

A00856

A0856

referenced that reclamation claims are subject to prior liens at ¶ 12 and ¶ 14(c) of the

Reclamation Procedures Motion.  The Reclamation Procedures Order states with respect to the

Reclamation Report that "[a]fter receipt of all timely reclamation demands and an opportunity to

review such demands — *including, without limitation, whether the demand is subordinate to the*

*prior rights of a holder of a security interest in the applicable Goods or the proceeds thereof*,"

the Debtors would file their Reclamation Report.  Reclamation Procedures Order, at ¶ 2(c)

(emphasis added).

      "Equitable estoppel is imposed by law in the interest of fairness to prevent the

enforcement of rights which would work fraud or injustice upon the person against whom

enforcement is sought and who, in justifiable reliance upon the opposing party's words or

conduct, has been misled into acting upon the belief that such enforcement would not be sought."

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996).  There is no fraud here.

The Debtors disclosed in the motion and the Court's order stated that reclamation rights are

subject to prior liens and that the Debtors would be reviewing whether the demands were

subordinate to such prior rights before filing the reclamation report.  Given such disclosure, it

cannot be said that the Reclamation Claimants were misled into acting upon the belief that it

would not be raised, and any reliance would not be justifiable.

      On similar facts, the estoppel argument was rejected by the bankruptcy appellate panel in

*Pittsburgh-Canfield*.  The court noted that in addition to the disclosure in the procedures motion

and order, the lenders had better rights in the reclaimed goods in any event, and thus nothing

about the procedures order reduced the sellers' rights.

> Nothing in the Reclamation Procedures Order substantively
> determined that any reclamation claimant had an allowed claim or
> was entitled to a remedy pursuant to § 546(c).  The Reclamation
> Procedures Order specifically noted that the Debtor would assert

A00857

A0857

the bank lenders liens' as defenses to the reclamation demands.
Moreover, nothing in the order implies that this defense would
only be used if the bank lenders were undersecured. Even upon
making a valid reclamation claim outside of bankruptcy a vendor is
not entitled to the return of his goods if there is a superceding
priority floating inventory lien. In such a case, the secured creditor
is entitled to be paid from those goods. If a vendor is allowed to
repossess the goods it is subject to the priority secured creditors'
lien. In this case, the bank lenders had better rights in the goods
even at the time the reclamation demand was made. Accordingly
the Reclamation Procedures Order did not reduce Appellants'
rights.

309 B.R. at 291.

Many of the responses reference *Georgetown Steel*, 318 B.R. 340 (Bankr. D.S.C. 2004),

in which the court found that the debtors should be equitably estopped from revaluing their

reclamation claims. The case is factually distinguishable. There, the debtor's reclamation

motion and order did not disclose the Prior Lien Defense. To the contrary, they (i) provided that

all reclamation claims allowed in the debtor's reclamation report would be deemed

administrative expense claims ("the Reclamation Creditors had been assured that they were

entitled to administrative claims") and (ii) made no reference to a subsequent reclassification or

valuation of such administrative claims. Although a paragraph in the debtors' reclamation *report*

purported to reserve the right to raise priority issues and referenced that reclamation rights were

subject to prior liens, the court found that creditors had relied on the motion and order, not the

report. *Georgetown Steel*, 318 B.R. at 350. "Debtor filed its motion to establish reclamation

procedures early in the case and proposed a specific treatment of the Reclamation Claims.

Debtor intended for such actions to be relied upon. Third, the Reclamation Creditors assert they

were not aware that the granting of an administrative expense claim was conditioned upon

valuation. The Reclamation Creditors relied upon the language in the Reclamation Order, and

the Reclamation Report is inconsistent with the relief set forth in the Order." *Id.*

A00858

A0858

No such basis for estoppel exists here. The Debtors adequately disclosed the existence of the Prior Lien Defense and their intention to raise it in the Reclamation Report. If not already known to the Reclamation Claimants, the law on the issue is extensive and public. The factual information that the Debtors asked the Reclamation Claimants to submit was required for the preparation of the Reclamation Report, but it was also disclosed that the Debtors would review whether there were defenses to Reclamation Claims based on the prior liens.

Moreover, the sellers' rights were not diminished by the Reclamation Procedures Motion and Order. Some sellers assert that, but for the reclamation procedures, the Debtors would have been required to cease operating and identify, segregate and return the Reclaimed Goods.[14] But that is incorrect: reclamation rights would still have been subject to the Prior Lien Defense. It would simply have come up earlier. Finally, it is worth noting that the assertion of the Prior Lien Defense and other defenses to Reclamation Claims does not represent an effort by the Debtors to "pull a fast one" on the Reclamation Claimants for their own benefit. The prosecution of objections to Reclamation Claims bears on the relative rights of Reclamation Claimants vis-à-vis general unsecured creditors. On the facts presented, the application of the Prior Lien Defense is not inequitable.

## VI.    OTHER ARGUMENTS

### A.    There Is No Right To Equitable Marshaling

The Reclamation Claimants contend that secured creditors have the good-faith obligation to liquidate assets other than the Reclaimed Goods first, and thus that "equitable marshaling" is appropriate in this circumstance. For the reasons set forth in the Initial Brief and above, reclamation claims are not secured claims. Cases from this District and elsewhere make clear

---

[14] *See, e.g.*, Bronson Precision Products, Inc.'s Response at 2 ("Obviously, if the Debtors were required to cease all operations and proceed with immediate identification, segregation and return of reclaimed goods, Debtors' operations would have come to a grinding halt.").

A00859
A0859

that marshaling is inappropriate in the reclamation context. A reclaiming seller is not a lienholder and has no right to marshaling. *Dairy Mart*, 302 B.R. at 135-136; *Advanced Marketing*, 2007 WL 162685, at \*4; *Pittsburg-Canfield*, 309 B.R. at 291-292; *In re Arlco, Inc.*, 239 B.R. at 274. Moreover, marshaling (*i.e.*, dictating to a senior secured creditor the collateral from which it is obliged to satisfy its debt) is inconsistent with the idea that the value of reclamation rights is determined by a secured creditor's choices, which is the central concept in the *Phar-Mor* decision and a constant refrain in the responses.

Citing *Georgetown Steel*, some Reclamation Claimants suggest that reclamation rights may be deemed to have value on the basis of marshaling where oversecured creditors do not object to reclamation. Such reasoning is inapplicable. Characterizing the Prepetition Lenders' indifference to the Reclamation Claims as an affirmative choice not to satisfy their claims from reclaimed goods, thereby opening the door to "marshaling," is unwarranted. There was no reason for the Prepetition Lenders to incur the expense of objecting to individual Reclamation Claims because the Interim Reclamation Order had stayed all attempts to actually reclaim goods, the collateral was in no danger of diminution prior to the Court's decision on the DIP Financing, and if the DIP Financing was approved, the Prepetition Lenders would be repaid and thus indifferent to the fate of the Reclamation Claimants. Had the DIP Financing not been approved, it is likely the Prepetition Lenders would have taken a keener interest in what happened to their collateral.

### B.    The DIP Orders Did Not Violate Due Process Rights

Certain of the Reclamation Claimants argue that, because reclamation rights are allegedly tantamount to liens, they were entitled to adequate protection and/or notice before the Court could enter the DIP order. All actual lienholders and interested parties received notice of the DIP hearing. As discussed in the Initial Brief and herein, suppliers asserting reclamation rights

A00860
A0860

are not secured creditors. The suppliers were unsecured trade creditors, the interests of which were represented.

    **C.**    **Requests For The Allowance Of Administrative Priority Claims Are Without Merit And Are Outside The Scope Of This Proceeding**

Several of the Reclamation Claimants request that their reclamation claims be allowed as an administrative expense. If reclamation is denied because the rights have no value, the prevailing law, as described in both *Phar-Mor* and *Dairy Mart*, is that no such right exists. A reclaiming seller is not automatically entitled to an administrative expense priority or a replacement lien equal to the full value of the claim if reclamation is denied. *Phar-Mor*, 301 B.R. at 496; *Dairy Mart*, 302 B.R. at 134. In addition, under BAPCPA, section 546(c) was amended to remove any requirement that an administrative claim be allowed or a lien granted if reclamation is denied. Regardless, the issue is beyond the scope of this proceeding, which is limited to the applicability of the Prior Lien Defense.

A00861

A0861

## VII.    CONCLUSION

For the reasons described above, it is respectfully requested that the Court enter

an order (A) confirming the validity of the Prior Lien Defense, (B) approving the Debtors'

reconciliation of the Remaining Reclamation Claims contained in the Reclamation Notice in the

amount of $0.00, and (C) granting such other and further relief as the Court deems just and

proper.

Dated:  February 16, 2007
        New York, New York

Respectfully submitted,


  /s/ Robert J. Feinstein
Dean A. Ziehl (DZ-6154)
Robert J. Feinstein (RF-2836)
Debra I. Grassgreen (CA Bar No. 169978)
Pachulski Stang Ziehl Young
    Jones & Weintraub LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Conflicts Counsel for
Debtors and Debtors in Possession

A00862

A0862