## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C. §1746 that on February 27, 2007 I caused to be served upon the parties listed on the annexed service list a true and correct copy of the accompanying Response of the Timken Company, Timken U.S. Corp., Toyotetsu America, Inc., Toyotetsu Mid America, LLC to Reply Brief of Debtors and Debtors in Possession in Support of Prior Lien Defense to Reclamation by electronic mail and by first class mail. The Office of the United States Trustee was served only by first class mail.

Dated: New York, New York
      February 27, 2007

_____
Bonnie S. Schwab

NYK 952354-1.073072.0011

A00873
A0873

25

1          Lastly, the balancing of harms to the

2    debtors and their estate clearly outweigh the harms alleged

3    by Millennium.  Accordingly, the motion to modify the stay

4    and suspend payment under the note is denied.

5              MR. APPLEBAUM:  Thank you, your Honor.

6              MR. ELLMAN:  Thank you, your Honor.

7              THE COURT:  It is so ordered if you want

8    the record to suffice, or you can submit an order.

9              MR. APPLEBAUM:  Thank you, your Honor.

10             MR. ELLMAN:  Whatever the court prefers,

11   your Honor.

12             MR. APPLEBAUM:  The court's record is fine.

13             THE COURT:  The decision is so ordered.

14             MR. ELLMAN:  Thank you, your Honor.

15             Mr. Feinstein will present the last motion.

16             MR. FEINSTEIN:  Good morning, your Honor.

17   Robert Feinstein of Pachulski Stang Zeihl Young Jones and

18   Weintraub.  We are conflicts counsel for the debtors.  With

19   me is my colleague, Beth Levine.

20             MS. LEVINE:  Good morning, your Honor.

21             MR. FEINSTEIN:  Your Honor, we're here

22   today pursuant to your Honor's October 13th, 2006 which

23   bifurcated the reclamation issue and established the

24   briefing schedule on the so-called valueless defense to

25   reclamation claims arising under Dairy Mart.  And your

A00874

A0874

26

1    Honor has now received extensive briefs analyzing Dairy

2    Mart and the impact of the BAPCPA amendments as they relate

3    to reclamation, being the amendment to 546(c) which now

4    creates a 45 day reclamation right under the Bankruptcy

5    Code, as well as 503(b)(9) which established administrative

6    priority claims for suppliers.

7              Your Honor, I'll offer up that I have the

8    long version and the short version.  Your Honor has

9    received papers that rival the Manhattan telephone

10   directory.  I can march through our analyses of the

11   statute, the applicable cases, to demonstrate that because

12   the reclaimed goods were essentially used to finance the

13   DIP loan that was used to repay the prior lien, that all

14   the reclamation claims in this case are appropriate valued

15   as zero, as was noted in the debtors' notice of reclamation

16   claims filed with the court.

17             And we've received 24 responses, your

18   Honor.  We they raise a core number of arguments that we've

19   addressed in our papers and I'm happy to address for the

20   court today.

21             One thing I wanted to note at the outset,

22   your Honor, some of the papers argue that Dana tried to

23   pull a fast one, or that there was a case for equitable

24   estoppel because somehow reclamation claimants were taken

25   by surprise that Dana raise the valueless defense.  And in

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                    516-608-2400

A00875

A0875

27

1   that respect I want to point the court and those parties to

2   the motion that was filed on the first day of this case on

3   March 3rd establishing reclamation procedures where Dana

4   said loud in clear in paragraph 12 that 546(c) of the

5   Amended Bankruptcy Code provides the reclamation rights are

6   "subject to the prior rights of a holder of a security

7   interest of such goods or the proceeds thereof." And Dana

8   cited to a number of the cases raising and discussing the

9   valueless defense.

10           So parties were put on notice, they are

11  generally on notice that Dairy Mart is a precedent in this

12  jurisdiction, there are notice of the amended statute, and

13  they were put specifically notice by Dana that this issue

14  would be raised, and it was in fact raised as we've

15  indicated in the pleadings leading up to the October 13th

16  order.

17           As a matter of process we thought it

18  appropriate to raise and litigate this defense first before

19  getting into individualized issues relative to the wide

20  variety of reclamation claims. And there are quite a

21  number of those claims your, Honor, Dana being a large

22  automotive supplier regularly does business with thousands

23  of suppliers.

24           After the bankruptcy case was filed over

25  450 reclamation demands or letters were sent to Dana

A00876

A0876

28

1  invoking either 546(c) of the Bankruptcy Code, or Section

2  2702 of the UCC, and the total face amount of those claims

3  was nearly 300 million dollars.

4              Each of the claims, the reclamation

5  demands, asserted a right to reclaim either equipment or

6  inventory which were the subject of a blanket lien granted

7  to the debtors prepetition lenders.

8              And as the court is aware and its papers

9  discuss in ample detail, after the case was filed Dana had

10 obtained a DIP loan, pledged the same collateral to the DIP

11 lender, the proceeds of that loan used to satisfy the

12 prepetition lien.  Based on Dairy Mart, it is really on all

13 fours, those reclamation claims were rendered valueless

14 under those circumstances.

15             And the reclamation claimants have now

16 tried using cases outside this jurisdiction like Phar-Mor

17 and the provisions of BAPCPA to argue that Dairy Mart is

18 not good law or shouldn't be followed by this court and

19 that their reclamation claim survives, not withstanding

20 that their reclaimed goods were used as collateral to

21 obtain a loan that was used to satisfy a prior lien, which

22 clearly trumped their reclamation under well established

23 law.

24             The arguments range from Dairy Mart is

25 wrong to the amendment of BAPCPA erased years of juris

A00877

A0877

29

1    prudence relevant to reclamation to the equitable estoppel

2    motion that I raised before.  Parties have invoked the

3    notion that they are entitled to martialling, even though

4    it's fairly well settled that if you are an unsecured

5    creditor, not a lienor, you have no right to invoke

6    marshalling.  And we've attempted through our reply brief

7    that was filed about two weeks ago to address these

8    arguments one by one.

9            So your Honor has before you the opening

10    brief that we filed, 24 responses that were filed by

11    reclamation claimants, our reply brief, and then in the

12    last couple of days, and including yesterday a couple of

13    sur replies were filed, although they were not contemplated

14    by your Honor's briefing order.  We can certainly -- we've

15    read those and we've addressed those, I don't think they

16    raise anything new or different.

17            So, if I could, your Honor, I'll take the

18    arguments in sort of their larger categories.  The plain

19    language of 546(c) now, as amended, contemplates that

20    reclamation claims are subject to the prior rights of the

21    holders of the security interest, and in that respect

22    546(c) did not indicate a see change in the law, arguably

23    it codified Dairy Mart and the other cases around the

24    country that have held that reclamation claims are

25    valueless where those goods are subject to a blanket lien,

A00878
A0878

30

1    which is what we have here.

2                And efforts to argue that somehow 546(c)

3    changed law are really unpersuasive.  And there don't

4    appear to be any arguments in any of the opposition that

5    can undue the clear words of the statute, which is that the

6    reclamation claimants are subordinate to the holder of a

7    security interest, which is what we have here.

8                A lot of the claimants argue incorrectly,

9    or mischaracterize Dana's argument, that the existence of a

10   prior lien extinguished the reclamation right.  We are not

11   arguing that.  What we argued is that it subordinates the

12   reclamation right and it makes it valueless the those

13   goods, the reclaimed goods, are used to satisfy the prior

14   lien.  And the cases in are legion around the country where

15   reclaimed goods are in effect liquidated and sort of

16   disposed of to satisfy the prior lien by a variety of

17   means.  It could be done by way of a bulk sale of the goods

18   that would be used to satisfy the prior lien, or as we had

19   in this case and Dairy Mart, a pledge of those goods to the

20   DIP lender where the proceed of the DIP loan are used to

21   satisfy the prior lien which had trumped the reclamation

22   claims to begin with.

23                Since the enactment of BAPCPA, there is

24   only one case that we found that addressed this issue head

25   on, and that was the decision of Judge Sontchi in Delaware

A00879
A0879

31

1   in the Advanced Marketing case.  And while he was hearing

2   the matter on a TRO, he did make some salient observations,

3   which is that if the goods that are the subject of the

4   reclamation demand are the subject of a prepetition lien or

5   a DIP lien, that trumps the reclamation demand, it renders

6   them valueless.  And he indicated in his decision that his

7   decision would have been the same under the pre-amendment

8   code which incorporated state law by reference, or

9   following the amendments under BAPCPA.

10                  He didn't delve into the intellectual

11  issue, your Honor, which is that now that there appears to

12  be a Federal reclamation right separate and apart from the

13  UCC, that I think it's up to the court now to develop

14  Federal common law, to interpret that provision and to

15  apply it.

16                  Under the pre-amendment statute, 546 said

17  that the rights under state law were preserved.  So courts

18  interpreting 546(c) pre-amendment naturally looked to the

19  UCC and applied the traditional concepts, including the

20  valueless defense.  But now we are in a new regime, where

21  now we have arguably a Federal reclamation right.

22                  The claimants would argue that the

23  establishment of a Federal reclamation right wipes the

24  slight clean, that your Honor should disregard years of

25  juris prudence around the country about the interaction

VERITEXT/NEW YORK REPORTING COMPANY
212-267-6868                                    516-608-2400

A00880

A0880

32

1    between reclamation claimants and secured claimants, but we

2    don't think that that's appropriate, nor do we thing that

3    there's anything on the statute or the legislative history

4    that would warrant such a departure.  As we've cited in our

5    brief, a number of Supreme Court cases, including Ducna

6    versus Tim, hold that when Congress amends a code like the

7    Bankruptcy Code, that absent some indication by Congress of

8    an intention to do away with preexisting precedent under

9    the prior tradition, that there's no reason to engage in

10   some vast departure from years of juris prudence.  And here

11   not only do you have no legislative history to that effect,

12   you have language in the statute, the reference to subject

13   to the prior rights of a holder of security interest that

14   has every indication Congress intended to codify Dairy

15   Mart.

16            So the arguments that we should now make

17   law out of whole cloth and interpret this in a way that

18   favors them simply finds no basis in the statute, it finds

19   no basis in the legislative history.

20            We come back to the Dairy Mart facts.  This

21   is a case essentially on all fours with Dairy Mart.  The

22   only case the claimants can point to that reaches a

23   different result is the Phar-Mor case by Judge Boah.

24            As we've indicated in our papers, Judge

25   Boah in Phar-Mor took a very formalistic approach to an

A00881
A0881

33

1   economic transaction, which is a DIP loan that refinances a

2   prepetition loan.  What Judge Boah found in that case was

3   that by virtue of the fact that the prepetition lender had

4   released its security interest and the debtor granted a new

5   security interest in the very same goods to the DIP lender,

6   that somehow the reclamation claimant stepped up because in

7   a nano second those goods are were released from the

8   prepetition lien.

9           As we've argued in our papers, that

10  elevates form over substance.  As Judge Gonzalez found in

11  Dairy Mart, this is an integrated transaction; the

12  satisfaction of the prepetition lien through the use of new

13  DIP loan proceeds, secured by the very same collateral, is

14  in effect a transfer of the security interest, and it's a

15  unified transaction where those goods were never free and

16  clear, they were never not the subject of a security

17  interest.

18          So under pre BAPCPA law, as well as under

19  546(c), the reclamation claimants were behind the holder of

20  a security interests.  And as I said, it elevates form over

21  substance, whether the old lien is transferred, whether the

22  goods are sold to a third party and the proceeds are used

23  to satisfy the prepetition lien, economically it's all the

24  same issue, and there's no reclamation claimants to hurdle

25  over that secured lien through some novel interpretation of

A00882

A0882

34

1    the new statutory language.  The basis is just not there in

2    the language of the statute or in the legislative history.

3    So efforts to craft new law really run against years of

4    juris prudence and run against the language of the statute.

5                    The other responses that claimants have put

6    forward, aside from you know pointing to Phar-Mor and

7    pointing to the new statute, include this notion that there

8    should be equitable martialling.  And again this is

9    manufactured out of whole cloth.  The claimants can't

10   escape the fact that where you have individual reclamation

11   claims for dollar amounts that are less than the

12   prepetition secured debt, even though the secured creditor

13   may be over collateralized, they cannot force a secured

14   creditors to satisfy that claim out of collateral and goods

15   other than their reclaimed goods.  In effect what they are

16   trying to do is shift the burden over to other reclamation

17   claimants, that their goods be used to satisfy the secured

18   lender, and that the excess collateral be treated as their

19   goods so they can reclaim.  It's simply trying to prejudice

20   other reclamation claimants at the expense of themselves,

21   but there's no basis in law for a reclamation claimants

22   which is not a lien holder, to force a secured creditor to

23   resort to one particular piece of collateral as opposed to

24   others.

25                    A related theme in the papers is that

A00883

A0883

35

1    somehow this is an unfairness being cast upon the

2    reclamation claimants that benefits Dana, that this is a

3    debtor reclamation dispute.  That's just not the case.

4    This is about equality of distribution among creditors.

5              When reclamation claimants try to step up

6    and get themselves an administrative expense or some other

7    form of beneficial treatment, they do so at the expense of

8    other unsecured creditors.

9              THE COURT:  Well, 503(b)(9) gives them that

10    administrative expense.

11              MR. FEINSTEIN:  That's exactly right, your

12    Honor.

13              THE COURT:  Notwithstanding the issue

14    before me today.

15              MR. FEINSTEIN:  That's right.  And if

16    there's any perceived unfairness in the valueless defense

17    or the treatment of reclamation creditors generally

18    relevant to secured lenders, Congress ameliorated that by

19    granting under an different amendment in the Code, this

20    right to receive an administrative expense for the goods

21    delivered within 20 days of a bankruptcy, whether or not

22    the creditors satisfied the reclamation requirements,

23    whether or not they made a demand, it's simply, if you ship

24    goods within 20 days you do not get paid.

25              As we've argued in our papers, that benefit

A00884
A0884

36

1   to the suppliers is something that Congress wanted to

2   grant, but it certainly was not any evidence of legislative

3   intent to change the valueless defense to overrule Dairy

4   Mart, because 546(c) does contain the reference to the

5   prior liens.

6          So Congress -- there's not much legislative

7   history of BAPCPA so we can only infer that Congress saw a

8   problem and addressed it by adjusting the equities and

9   relevant rights, not by changing the reclamation statute

10  but by giving the suppliers this 20 day administrative

11  claim.

12         THE COURT:  In all these claims has there

13  been an analyses as to the bottom line difference between

14  the absolute prior lien defense, and not withstanding that,

15  the 503(b)(9) 20 day award?

16         MR. FEINSTEIN:  I don't think so, your

17  Honor.  Basically what you are saying is have we broken

18  down the reclamation demands between the 20 days prior to

19  the bankruptcy and the day 21 through 45, I don't believe

20  so.

21         MR. SULLIVAN:  Your Honor, I believe I've

22  cited in footnote 5 of the brief of Timken Toyotetsu.  I've

23  had previous communications with debtor's counsel, and I

24  spelled out what was represented, to me anyway, as being

25  the difference.  It was told to me, at least as of that

A00885
A0885

37

1    point in time, that approximately 60 million dollars of the

2    reclamation claims were entitled to administrative priority

3    under Section 503(b)(9).

4                    THE COURT:  503(b)(9).

5                    MR. SULLIVAN:  That's right.  And as of

6    that point in time there was only 110 dollars worth of

7    reclamation claims remaining.  So we are really only

8    talking about a difference of I guess about 50 million

9    dollars.

10                   THE COURT:  Okay.

11                   MR. FEINSTEIN:  Your Honor, while it's not

12   on file with the court, I'm advised that Dana has done some

13   investigation of this, but I don't have a breakdown for the

14   court, your Honor.

15                   THE COURT:  Well, it's an ad hominem

16   factoid that says that the difference is some 50 million

17   dollars at a certain point in time; is that correct?

18                   MR. SULLIVAN:  That's what was represented

19   to me.  Whether or not that's true, I don't know.

20                   THE COURT:  That wouldn't give effect to

21   whatever settlements have occurred in the interim.

22                   MR. SULLIVAN:  Exactly right, your Honor.

23                   THE COURT:  Okay.

24                   MR. FEINSTEIN:  Let me move on, your Honor.

25                   Another argument that some of the

A00886
A0886

38

1    reclamation claimants make goes to the issue of good faith.

2              Under the predecessor provision of 546(c),

3    reference is made to 2702 of the UCC which provided that a

4    buyer of the goods who acted in good faith would take

5    precedence over reclamation claimant.  And as the laws have

6    developed, and under the UCC as well, indicated that a

7    subsequent lender like our DIP lender in this case and like

8    the prior lien holder, would qualify as a good faith

9    purchaser.

10             Interestingly, under the new provision

11   under 546(c), the so called Federal reclamation right,

12   there's no longer a reference to good faith.  And as we've

13   indicated in our brief, it's most likely, although we are

14   speculating, and we ask this of legislative history, but

15   it's most likely because routinely lenders are treated as

16   good faith purchasers.

17             But it's something of a red herring now

18   for, particularly in light of the new statutory language,

19   for reclamation claimants to argue that the DIP lender

20   didn't act in good faith, that there needs to be discovery

21   on this issue or that it's even a legal issue at all.  It's

22   really not relevant now under the new statutory provision.

23             Another argument that is made incredibly in

24   some of the opposition papers is that somehow that your

25   Honor's DIP loan approval order affected their reclamation

A00887

A0887

39

1    rights or -- some of them argued that it actually

2    established the primacy of reclamation claimant's rights

3    over the DIP lender's rights, which is simply absurd.

4                 And the claimants point to paragraph 30 of

5    the DIP order, the final DIP order is entitled setoff

6    rights of third parties.  But those claimants who made this

7    argument only selectively quoted it, they left out some

8    fairly important words.  Nowhere in this paragraph is there

9    any reference to reclamation.  The paragraph that they are

10   pointing to indicates that nothing in the DIP loan order

11   will effect if the validity, enforceability or priority of

12   any setoff recoupment or other claim right or defense of

13   any customer or supplier of any debtor in respect of any

14   account receivable, payment intangible or other payment

15   obligation of that customer.

16                 Now the reclamation claimants who have

17   pointed to this paragraph have left out the language "or

18   any other payment obligation" and have tried to engraft

19   their own interpretation onto this paragraph to say that

20   this paragraph was not intended to effect their reclamation

21   right, that their reclamation rights survived the DIP

22   order, take primacy over the super priority lien of the DIP

23   lender, and they get there, as I said, by managing the

24   provision and really misquoting it.

25                 But this paragraph 30 of the DIP order does

A00888

A0888

40

1    not address reclamation rights, and certainly does not, as

2    they continued, give their reclamation demand priority over

3    a DIP lender who was granted a super priority lien and

4    super priority administrative expense by your Honor by

5    Section 363 of the Bankruptcy Code.  So that argument as

6    well is unavailing.

7              Your Honor, I think I have catalogued and

8    addressed the principal arguments by the claimant's.  I

9    refer your Honor again to our lengthy briefs on the issues,

10   and will certainly answer any questions that your Honor has

11   about the issues.

12             Thank you.

13             MR. SULLIVAN:  Your Honor, James Sullivan

14   of McDermott Will and Emery on behalf of the Timken and

15   Toyotetsu reclamation creditors.

16             Your Honor, as the debtors' have would have

17   it, and I'll just kind of outline what I perceive to be at

18   the trust of the debtors' arguments.  First, they want you

19   to ignore what actually happened in favor of what they wish

20   happened.

21             Second, they want you to recognize a deemed

22   or effective disposition of the reclaimed goods as opposed

23   to an actual one; they want you to -- they basically want

24   you to permit them, as opposed to the prepetition lender,

25   to decide after the fact how their assets should have been

A00889

A0889

41

1    martialled as part of the deemed disposition to satisfy the

2    prepetition debt in a way that wipes out all reclamation

3    claims.

4                So contrary to what the debtors are saying,

5    we are not the ones seeking to marshal the assets.  The

6    disposition has already occurred --

7                THE COURT:  They are not wiping out all

8    reclamation claims, they remain liable under 503(b)(9) for

9    the 20 day reclamation claims not withstanding any argument

10   here.

11               MR. SULLIVAN:  Well that's a separate

12   issue, your Honor.  When I'm talking about the reclamation

13   claims I'm not talking about the 503(b)(9) which no one

14   disputes survives.  What I'm talking about is the I guess

15   really we are talking about the reclamation demand with

16   respect to goods that were shipped between 20 and 45 days

17   prior to the bankruptcy filing.

18               But what the debtors are arguing is that

19   somehow the reclamation creditors are trying to seek some

20   kind of martialling.  That's not what's happening here.

21   What's happening here is the debtors are seeking to stand

22   in the shoes of the secured creditor and make an argument

23   after the fact as to what they wish had happened.

24               What happened is that the prepetition

25   lenders were not repaid from proceeds of the refund goods,

A00890

A0890

42

1    but from the proceeds of the DIP loan.  What they want you

2    to say is look even though we didn't pay off the

3    prepetition debt with the inventory that is the subject of

4    the reclamation claims; we wish it had and we want you to

5    find that it effectively did, even though it didn't

6    actually.  So that's what's really happening.  It's not

7    like the reclamation creditors are coming into court and

8    asking you to marshal.

9             Normally when you are talking about

10   martialling you are talking about a dispute between two

11   creditors.  There's no other creditor at the other side of

12   the table, your Honor; I'm not arguing with another

13   creditor.  I'm arguing with the debtor.  And you shouldn't

14   give the debtor standing to, in essence, step into the

15   shoes of the prepetition secured creditor, who is not here

16   asking you to do anything, your Honor.

17            All we are doing is we're coming in here

18   and saying look the debtors' argument that somehow you

19   should ignore the facts, ignore what actually happened, and

20   allow them to avoid having to make good on the reclamation

21   goods, it's just an absurd position, and there's no basis

22   for it.  They have no standing to even assert this

23   martialling argument, and it would just be inequitable.

24            Just to point out a few reasons why their

25   argument is absurd.

A00891

A0891

43

1          THE COURT:  Getting back again to my prior

2    inquiry.  Essentially the goods at issue are those that

3    were shipped more than 20 days, between 20 and 45 days out.

4          MR. SULLIVAN:  That's correct, your Honor.

5          THE COURT:  It's issue does not relate at

6    all to the goods shipped in the 20 day period prior to

7    insolvency.

8          MR. SULLIVAN:  I don't see it, because all

9    the reclamation creditors are going to get their 503(b)(9)

10   claim.  Maybe there's a few out there.

11          THE COURT:  I'm just making a practical

12   inquiry to see exactly what's at stake here.

13          MR. SULLIVAN:  Yes.  Certainly my clients

14   are not requesting reclamation of its goods, they are happy

15   with the 503(b)(9) claim.  So to the extent that there's a

16   dispute as to that, it certainly doesn't lie with us, and I

17   doubt it would lie with any of the other reclamation

18   creditors.

19          THE COURT:  You mean you get your claim

20   complete because you have no goods that were received more

21   than 20 days prior to the filing?

22          MR. SULLIVAN:  Your Honor, I'm only arguing

23   about the goods that were shipped more than 20 days; that's

24   all I'm arguing about today.

25          THE COURT:  Does your client fit that

A00892

A0892

44

1   category?

2                    MR. SULLIVAN:  Yes, your Honor.

3                    THE COURT:  Okay, that's what I'm asking.

4                    MR. SULLIVAN:  So --

5                    THE COURT:  I'm asking that only because

6   you are raising standing issues, and I wonder if everybody

7   here, or a good portion, are covered by the 20 day

8   503(b)(9), I doubt you have standing.

9                    MR. SULLIVAN:  I would agree with that,

10  your Honor.  And I'm sure if they were covered by it, I

11  doubt that they would bother to object.  So maybe that's

12  why some of the reclamation claims have dropped by the

13  wayside; I don't know.

14                   But just to kind of point out some of these

15  reasons.  First of all, it's undisputed, and the debtors

16  acknowledge this, that the reclaimed goods, the goods

17  falling between 20 and 45 days, neither those goods or nor

18  the proceeds of those goods were actually used to repay the

19  prepetition debt.  Undisputed, your Honor.  I think that in

20  and of itself that admission should do away with this whole

21  hearing.

22                   Secondly, the prepetition liens were not

23  assigned to the DIP lender as part of the deemed

24  disposition, therefore, if you look at the -- and there's a

25  dichotomy in the Phar-Mor case versus the

A00893

A0893

45

1    Pittsburgh-Canfield case where that really made the

2    difference, because the Pittsburgh-Canfield was decided one

3    way, the Phar-Mor case was decided the exact opposite way,

4    predominantly, if not solely, as a result of the fact that

5    the -- there was no stepping into the shoes of the

6    prepetition lien holders lien.  So the DIP lender didn't

7    take over the liens of the prepetition lien holder, and the

8    Phar-Mor court found that fact to be dispositive.

9              And it also cuts against the debtors'

10   argument here, because not only was there no assignment of

11   the prepetition lien, which was in essence released as part

12   of the transaction, but there really was no integrated

13   transaction as it occurred in the Dairy Mart case.

14             This case is distinguished from Dairy Mart.

15   Unlike what the debtors are trying to tell you, it doesn't

16   lie on all four with the Phar-Mor case, and there's a few

17   notable distinctions.

18             THE COURT:  You mean with the Dairy Mart

19   case.

20             MR. SULLIVAN:  I'm sorry, the Dairy Mart

21   case; that's correct, your Honor.

22             First of all the collateral package was not

23   identical.  The Dairy Mart case made a lot of the fact that

24   the collateral package between by both the prepetition

25   lender and the postpetition lender was identical.  And in

A00894

A0894

46

1  both situations both lenders had liens on basically, if not

2  all, substantially all of the debtors' assets, but it was

3  in essence an exact match in terms of what the collateral

4  package is.  That's not the case here, your Honor.  There's

5  a number of differences between the collateral package

6  between the prepetition lender and the postpetition lender.

7          In addition, in the Dairy Mart case the DIP

8  lien was made subject to the liens of the prepetition lien

9  holder, and therefore it wouldn't make sense for the DIP

10  lender to agree to lend on that basis unless the

11  prepetition lender was definitely going to get repaid as

12  part of the DIP loan.

13          In this case, your Honor, the prepetition

14  liens were made subject to the DIP liens.  So as far as the

15  DIP lender is concerned they could care less whether or not

16  the prepetition liens get repaid and so therefore they are

17  not going to condition a repayment of their prepetition

18  lien as a condition of making the loan, because their liens

19  prime the prepetition lenders.  So, again, this isn't the

20  type of integrated transaction that you had in Dairy Mart.

21  So on those two grounds you have a very, very different

22  fact pattern.

23          Also, I think even if for some reason the

24  court were to find the Dairy Mart case as having some kind

25  of validity, and I would mention to the court that

A00895
A0895

47

1    notwithstanding what the debtors are telling you, it's not

2    like there's a long history of cases that agree with the

3    Dairy Mart decision in which Congress somehow, you know, by

4    not specifically mentioning some kind of overruling of

5    Dairy Mart impliedly are telling you that you should follow

6    Dairy Mart.  In fact the opposite is true, your Honor.

7              I would represent that Dairy Mart is

8    basically a case that's kind of alone in the woods

9    somewhat.  All the other cases that are cited in the

10   various briefs, even by the debtors, really don't reach a

11   conclusion anywhere near what the Dairy Mart case.  And all

12   of those cases basically acknowledge the truth, which the

13   debtors cited in the reclamation procedures motion when

14   they filed it.

15             What they said was, look, it's a wait and

16   see kind of approach that you have to take when you are

17   dealing with reclamation claims.  If the reclaimed goods

18   are sold to satisfy the prepetition debt, sorry reclaim

19   creditors, your claim has no value.  But if the reclaimed

20   good is not sold to pay down the prepetition debt, all of a

21   sudden it has value.

22             And they cited in their reclamation brief

23   the following quotations from Arlco and Pester, in which

24   they said, after the secured creditors superior rights have

25   been satisfied or released, which is exactly what happened

VERITEXT/NEW YORK REPORTING COMPANY

A00896

A0896

48

1    here, your Honor, the reclaiming seller retains a property

2    interest in any remaining goods and in any surplus proceeds

3    from the secured creditor's foreclosure sale.

4              So contrary to what the debtors are telling

5    you, they didn't put anyone on notice that this is what

6    they were intending to do.  For example, and part of the

7    what the argument is that this is just like what happened

8    in Pittsburgh-Canfield.  The language in the reclamation

9    procedures motion here is nothing like the language in the

10   Pittsburgh-Canfield case.

11             In the Pittsburgh-Canfield case they

12   specifically said that the debtor would be asserting that

13   the bank lenders' liens trumps the reclamation creditors.

14   That's not what happened here, your Honor.  Basically when

15   you take a look at the language in the reclamation order

16   which basically suggested to creditors, look, if it happens

17   that we don't repay the prepetition debt with the proceeds

18   of the reclaimed goods, you are going to have value here.

19   And that's what the cases that they quote in their

20   reclamation procedures motion say.

21             When you couple that with a DIP motion

22   which says that we are going to do is we are going to pay

23   down the prepetition debt with the proceeds of the DIP

24   loan, you have a bunch of reclamation creditors out in the

25   audience saying whoopee, our reclamation claims are going

A00897

A0897

49

1    to have to some value here.  We're not going to object to

2    any of this stuff because at the end of the day the

3    reclamation claims are going to have value.

4                    So for the debtors to sit here and to

5    suggest that their papers put reclamation creditors on

6    notice that they were going to seek to wipe out all of

7    their reclamation claims on the basis of this prior lien

8    defense and the Dairy Mart case is absurd.  They didn't

9    even cite the Dairy Mart case in their papers.  They never

10   indicated that they were going to bring such a motion, and

11   the statements in their motions gave the reclamation

12   creditors the exact opposite impression, that they were

13   going to pay down the prepetition debt with the proceeds of

14   the DIP loan, not use the proceeds of any reclaimed goods,

15   and that if that happened that the reclaimed goods would

16   have value.

17                    So I find, or at least in my argument is

18   that the debtors should be equitable estopped from raising

19   the prior lien defense at this time because their actions

20   caused the reclamation creditors to sit by and, you know,

21   to sit on their rights when absent such conduct on their

22   part the results may have been very different.

23                    And, your Honor, I'm not sure if I quoted

24   in my papers, but the facts of this case in that regard are

25   somewhat similar to what happened in the Flemming case,

A00898

A0898

50

1    where the Flemming debtors pulled the same kind of stuff,

2    and Judge Wohlrath basically laid into the debtor's counsel

3    for doing that same kind of stuff.  She issued an opinion

4    that basically chastised the debtor's counsel for doing

5    this exact same thing and ended up making deductions in

6    terms of their attorneys fees as a result of it.

7              So, you know, for them to suggest that they

8    put reclamation creditors on notice, your Honor, I just

9    don't think that that's the case.

10             Your Honor, aside and apart from the

11   reasons that I set out, I think that if the court were to

12   acknowledge the prior lien defense as set forth by the

13   debtors, it would really create a grossly inequitable

14   result and would provide perverse incentives for both

15   debtors and creditors in future cases.

16             In terms of future incentives, what it

17   would do is it would incentivise debtors from liening up

18   some of their inventory prior to a bankruptcy filing,

19   shortly before a bankruptcy filing; not to suggest that

20   debtors would necessarily do it, but it certainly

21   highlights the problem here.

22             And I pointed it out in a hypothetical on

23   page 17 of my initial brief that hypothetically speaking a

24   debtor could, let's say a hundred days prior to the

25   bankruptcy filing, kind of like what happened here, a

A00899
A0899

51

1    hundred days prior to the bankruptcy filing the debtors

2    liened up their assets.  And, you know, just pick a number

3    out of a hat, they could get a lien of a million bucks, not

4    a lot considering maybe you have hundreds of millions of

5    dollars of inventory, maybe billions of dollars worth of

6    assets as the debtors have here, and let's say there's

7    reclamation claims, potential reclamation claims of a few

8    hundred million bucks.  By refinancing that as part of a

9    DIP loan --

10                   THE COURT:  In your scenario there would

11    never even be a bankruptcy.  This is a good solid debtor.

12                   MR. SULLIVAN:  Well, the facts aren't all

13    that different here, your Honor.  And in fact we do have a

14    bankruptcy.  You have a debtor a hundred days prior to the

15    bankruptcy filing, they have no secured debt.  They lien it

16    up with about 400 million dollars worth of debt.

17                   THE COURT:  You don't profile Dana with

18    your example.

19                   MR. SULLIVAN:  Excuse me, your Honor?

20                   THE COURT:  You don't profile Dana with

21    your example.

22                   MR. SULLIVAN:  Not exactly.  But I was just

23    trying to show the absurdity of their petition by taking it

24    a little bit to an extreme.  But I can use this as the

25    example of the Dana case, and I think it's almost equally

A00900
A0900

52

1    as absurd, where you have over 2 billion dollars worth of

2    collateral in connection with a 400 million dollar loan and

3    you have, by choosing to use solely the reclaimed

4    inventory, or just about, to pay down that debt through a

5    refinancing, it's grossly inequitable when you have

6    approximately 1.8 billion dollars worth of other goods that

7    are available to repay the debt.

8                    Why choose or why allocate it or marshal

9    it, like the debtors are asking you to do, in a way that

10   defeats the rights of reclamation creditors as opposed to,

11   you know, some other way, you know, either choosing to do

12   it from the non --

13                    THE COURT:  Because lenders are greedy.

14   They want to get liens on everything in sight.

15                    MR. SULLIVAN:  And we have no problem with

16   the lenders.  They are not on the other side of the table,

17   your Honor.

18                    THE COURT:  You have no problem with greedy

19   lenders?

20                    MR. SULLIVAN:  Well, we do, but in this

21   case we have no dispute with them because they are not on

22   the other side of the table, your Honor.  It's the debtor

23   that's trying to stand in the shoes of the secured

24   creditors.

25                    The secured creditor here is indifference,

A00901

A0901

53

1    they've already been repaid.  They are happy to get repaid

2    from the proceeds of a DIP loan or from goods that aren't

3    reclaimed goods or other assets as opposed to reclaimed

4    goods.  They don't care.

5                But for some reason, the debtors took it

6    upon themselves to try to ask you to go back in time and to

7    kind of change things around in a way that they wish it

8    happened.  They wish they had gotten assignment of their

9    liens.  They wish they had paid off maybe the reclaimed

10   goods with the proceeds of -- I'm sorry, repay the

11   prepetition debt with the proceeds of reclaimed goods, but

12   they didn't, and they acknowledge all of this.  So for them

13   to try to rewrite history, your Honor, and use that

14   rewritten history to wipe out all the reclamation claims is

15   just absurd, your Honor.

16               I'm going to respond to a couple of points

17   that were raised by the debtor that I didn't get to so far.

18   The debtors posit that what the Phar-Mor case does is posit

19   form over substance.  Your Honor, what I suggest is that

20   what the debtors are doing is they are positing fantasies

21   over reality.  They are asking you to pretend that the

22   facts of this case are other than what they are.

23               The facts of this case are the proceeds of

24   the reclaimed goods were not used to pay down the

25   prepetition debt.  They want you to pretend that it was.

A00902

A0902

54

1    It just doesn't make any sense to do that.

2              As far as the good faith issue, your Honor,

3    and, you know, to some extent you don't need to address

4    this if you end of up ruling in your favor.  But in terms

5    of good faith, they suggested that the case law is

6    universal or uniform in the holding that all secured

7    creditors are good faith lenders.  There's just no case law

8    that says that, your Honor.  In fact, the abundance of case

9    law which we cited in our brief suggests the opposite.

10   Maybe in some cases, such as the Dairy Mart case, good

11   faith was not in dispute.  But there's no basis for the

12   debtors to suggest that all good faith -- I'm sorry, all

13   lenders are good faith lenders.  And I don't think your

14   Honor would agree with that either.

15             In terms of paragraph 30 of the DIP order,

16   your Honor.  I can at least represent -- I don't know what

17   other creditors did, but I can at least represent to you

18   that we did refer to the entire language of paragraph 30.

19   And I don't believe that paragraph 30 does what the debtors

20   say it does.  If it does then, it was certainly poorly

21   drafted.  And to the extent there's any ambiguity in the

22   paragraph 30, it should not be held against the reclamation

23   creditors, but the debtors and/or the DIP lenders.

24             But in any case I don't think you really

25   need to reach the issue about what paragraph 30 says or

A00903

A0903

55

1    what it doesn't say, because I don't believe it's

2    dispositive in terms of deciding this motion.

3              The debtors never asked you to value the

4    reclamation claims as zero based upon the existence of the

5    did DIP loans, so you really don't need to address it in

6    that sense.  You know, if they had made that argument,

7    reclamation creditors or if paragraph 30 truly did trump

8    the reclamation claims, the reclamation claim holders would

9    have probably sought adequate protection.  And to the

10   extent the court finds paragraph 30 makes the DIP liens

11   come ahead of the reclamation claims, then we would

12   respectfully request adequate protection of our reclamation

13   rights.

14             And the final policy argument, your Honor,

15   in terms of perverse incentives is that basically if the

16   court decides to rule in favor of the debtors on this

17   issue, what it's going to do is it's going to create

18   perverse incentives for reclamation claim holders in the

19   beginning of the case to seek formation of a committee to

20   object to a good number of the significant first day

21   motions in the case such as DIP motions, cash collateral

22   motions, reclamation procedures motions, as well as any

23   potential sale motions involving, you know, I guess whether

24   it be sales involving reclaimed goods or not; any kind of

25   motion that's going to --

56

1    THE COURT:  That's a policy issue that

2   deals with proliferation of committees.  Both the U.S.

3   Trustee and the court are gate keepers in that regard, so

4   that kind of horrible is not necessarily one that this

5   court recognizes as really legitimate.

6    MR. SULLIVAN:  Well, whether it be official

7   or committees or unofficial --

8    THE COURT:  In fact, you are even making

9   the suggestion that those kinds of committees probably are

10   illegitimate and shouldn't be formulated and given a voice

11   in the Tower of Babble.

12    I think the courts are pretty well able to

13   distinguish the makeup of a Tower of Babble.  And

14   notwithstanding the entry with the academy awards of a

15   picture of that name, too many of the cases before this

16   court are Towers of Babble, and I don't see that that's a

17   real danger that we have to worry about.

18    MR. SULLIVAN:  Well, all I'm suggesting,

19   your Honor, is there's --

20    THE COURT:  There is always a motive for

21   people to get together to have a voice, and motivation in

22   that regard comes from a whole host of areas.

23    MR. SULLIVAN:  But what I'm suggesting,

24   even more so than the committee part of it, that it's going

25   to proliferate a bunch of litigation in the beginning of

A00905

A0905

57

1   the case when really what you want is creditors to try to

2   work in tandem with the debtors and try to move towards a

3   consensual case.  And what this is going to cause is a

4   bunch of litigation in the beginning of a case to deal with

5   a lot of these kinds of issue.  And I just think it's

6   probably not in the best interest of the debtors in an

7   overwhelming majority of cases to require creditors to do

8   that.

9              THE COURT:  I think, on the other hand, the

10   debtor probably wants to make the same argument to get a

11   legal principal in place that will end the uncertainty and

12   you won't have a lot of litigation whether either side

13   prevails.  I think that's a fair statement.

14              MR. SULLIVAN:  Let me take it to a little

15   bit of a -- to give you an example to kind of highlight my

16   point.

17              In cases such as this, what you have is a

18   debtor.  They are thinking, how do I create value in a

19   case?

20              THE COURT:  If the lien theory holds, and

21   it is a total block, then there's no need for litigation.

22   It won't happen.  That if this is either a Phar-Mor or a

23   Dairy Mart jurisdiction, everybody will know.  Isn't that

24   what's at stake here right now?

25              MR. SULLIVAN:  I suppose if you were to

A00906
A0906

58

1    decide that, well, it's certainly not -- until the Second

2    Circuit of the Supreme Court rules on this issue, my guess

3    is it's not going to end the litigation.  But what you end

4    up having is you are creating an incentive for the debtors

5    to refinance debt to wipe out all reclamation claims as

6    opposed to just liquidating the collateral in which case

7    maybe some reclamation lose value, but maybe some survive.

8              But it creates a perverse incentive that

9    somehow you can, by refinancing to 2 billion dollars worth

10   of collateral, you wipe out all reclamation claims.  It

11   just doesn't make any sense.  It's grossly inequitable.

12             THE COURT:  Over the years I've heard this

13   form of argument many times, especially in retail chain

14   cases, where right after Christmas there is a filing after

15   they're bulked up with consumer sales and they are now

16   loaded and they have tremendous obligations they file.  Is

17   that fair?  There's a whole part of the community that

18   thinks it's not fair.

19             MR. SULLIVAN:  It's probably what lead to a

20   revision of the Bankruptcy Code recently, your Honor.

21             THE COURT:  I'm not sure that that's what

22   lead to a revision.

23             MR. SULLIVAN:  Maybe not solely, but --

24             THE COURT:  What really lead to a revision

25   was a consumer oriented issue, which is really not a

A00907
A0907

59

1    Chapter 11 or reorganization issue at all.

2                    MR. SULLIVAN:  But the reclamation issue

3    really has nothing to do with consumer cases.  I mean the

4    reclamation -- I would posit that it's hard to tell exactly

5    what Congress did because they didn't really tell us,

6    but --

7                    THE COURT:  I agree.  I think we all agree.

8                    MR. SULLIVAN:  So... all right, I think

9    that covers most of the major points that I wanted to

10   cover, your Honor.

11                   THE COURT:  Thank you.

12                   MS. COPLEY:  Good morning, your Honor.

13   Dawn Copley for Akebono Corporation and FANUC Robotics

14   Systems.

15                   Your Honor, I'm going to be rely brief, I

16   just want to make a few points.  Debtor's counsel kept

17   reiterating that Dairy Mart is on all fours with this case.

18   Well, Phar-Mor is as much on all fours of this case as

19   Dairy Mart if not more so, particularly because there are a

20   couple of issues, and I think counsel also raised, my

21   fellow reclamation claimant, that it in this case it's

22   exactly as it was in Phar-Mor where the prepetition lender

23   has released its liens, and then the postpetition lender,

24   the DIP lender, was granted new liens.  It's exactly the

25   way that it was in Phar-Mor, and the court in Phar-Mor

A00908
A0908

60

1     actually acknowledged that.

2                    Dairy Mart does not speak to whether or not

3     the prepetition secured lender was over secured but

4     Phar-Mor does, and it says that the prepetition secured

5     lender was over secured as this prepetition secured lender

6     was over secured in this case.  So there are some

7     similarities between Phar-Mor and this case that don't

8     exist between this case and Dairy Mart.

9                    And when Congress also, we just

10    acknowledged we don't know what Congress was thinking

11    because there is no legislative history for the revisions

12    to the reclamation statute.

13                   THE COURT:  That posits a theory that we

14    don't know what we are thinking when we elect people into

15    Congress.

16                   MS. COPLEY:  But there's no more indication

17    that Congress was codifying Dairy Mart any more than it was

18    codifying Phar-Mor, all the statute says is that the

19    reclamation claims are subject to the prior lien of its

20    prepetition secured creditor.  I don't think any of the --

21    at least from my reading of the briefing, that any of the

22    reclamation claimants have said that it's not subject to.

23    We've not said that, so we don't know what Congress was

24    thinking as far as whether it was codifying anything.

25    Perhaps it was codifying all of the case law that at least

A00909

A0909

61

1    acknowledge that prior lien, but not going to the extent of

2    saying but they are all valued at zero, as the debtor would

3    suggest that is what Congress intended.  I think if

4    Congress intended loan would be valued at zero, it would

5    have said that in the statute.  It would have said they are

6    all valued at zero.

7                THE COURT:  Yes, but it might have had

8    another thought in mind whether it gave an award under

9    503(b)(9).

10               MS. COPLEY:  Well, that could very well be

11   as well, your Honor, and I guess that's for the court to

12   decide, which reasoning is more bound to this court.  But

13   there are cases that aren't just the Phar-Mor and the Dairy

14   Mart case.  While those are the ones that I think the

15   parties here have probably raised most often, there is also

16   Pester Refinancing where the court held, and in that case

17   the prepetition lender was also the postpetition lender,

18   and it was paid through the plan of reorganization not

19   using the collateral that represented the reclaimed goods,

20   and the court in that case said when a prepetition lender

21   is paid from any other source, any other source than the

22   proceeds of the reclaimed goods, then the reclaimed goods

23   have value.  The reclaimant's claims have value.

24               So I think that we can't ignore that case

25   as well because there is, in this case, payment from

A00910

A0910

62

1   another source.

2                    As I said, your Honor, I represent two

3   claimants, Akebono and FANUC, and I just want to raise one

4   issue for FANUC.  FANUC did not provide inventory to

5   debtor, FANUC produced robotic systems, it's equipment the

6   debtor uses, and the debtor is using that equipment now.

7   That is equipment has not been disposed of to pay the

8   prepetition lenders, not even withstanding that the debtors

9   have already acknowledged that none of the reclaimant's

10  goods were used to pay the prepetition lenders.  Certainly

11  this equipment is not being used to pay either prepetion

12  lenders or the postpetition lenders, it's being used by the

13  debtor to manufacture its goods.

14                   So I think FANUC in particular, their claim

15  should survive any claim of the prepetition lender.

16                   Thank you, your Honor.

17                   MR. GELDERT:  Your Honor, Brian Geldert of

18  Akin Gump Strauss Hauer and Feld on behalf of Hain Capital

19  Group.

20                   I think there's been a lot of focus on

21  503(b)(9) here, and what we lose are the claims that are

22  asserted arising from the 21st day to the 45th day.  And

23  what I think all the parties agree on is that Congress did

24  enhance the right of reclamation claimants when they

25  amended the Bankruptcy Code.  They provided them

63

1    administrative claims for the goods delivered within the

2    first 20 days, but they also extended the reclamation

3    period for reclamation claimants.

4                    What we have here is reclamation claims

5    that are subject to the rights of the prepetition secured

6    lien holder.  This lien holder is over secured and it was

7    paid off from the proceeds of the DIP.  So taking Dairy

8    Mart and applying it to a case like this, in our view,

9    effectively in every case where there's a debtor in

10   possession financing, would wipe it reclamation claims

11   asserted based on the 21st day to the 45th day, and that

12   cannot be what Congress intended to be the result by

13   enlarging the reclamation creditor's rights.  And I think

14   that was, I just wanted to add that.

15                    MR. RENDA:  Your Honor, Thomas Renda on

16   behalf of Emhart Technologies and Hydro Aluminum.  We had

17   filed a pro hac motion last week.  Your Honor, Emhart and

18   Hydro both supplied credit on the basis of 60 day terms

19   right until the very eve of the bankruptcy, and so I think

20   that my clients in fact do have standing to raise the issue

21   concerning the gap between those 20 day provisions of

22   Section 503(b) and the enhanced reclamation rights that go

23   to 45 days.

24                    I'm not going to repeat points that have

25   been previously made, your Honor, I'm just going to point

A00912

A0912

64

1    our a couple of things that haven't been mentioned so far,

2    at least expressly.

3                There's been a statement that the Phar-Mor

4    case is a mechanistic approach.  I think frankly Phar-Mor

5    and Dairy Mart are somewhat mechanistic at how they arrived

6    at their result, but before the 2005 amendments have said

7    that there was no real reason to suggest that one was more

8    valid than the other or less persuasive than the other.

9                I do think that the language in Section

10    546(c) now, which refers to prior rights of secured

11    lenders, is a little bit more restrictive than what the

12    debtor would have you find here, because they are really

13    not holding up prior rights of secured lenders in this

14    case, they are really holding up new rights of the

15    postpetition lenders as a way of defeating rights to

16    reclamation claims.

17                THE COURT:  Doesn't Dairy Mart say this is

18    one integrated transaction?

19                MR. RENDA:  Dairy Mart does say that, your

20    Honor.  And again, were it not for the fact that the

21    statute changed, and were it not for the fact that the

22    Congress has directed us to look for to prior rights of

23    secured lenders, I would say the court would be probably

24    advised to follow Dairy Mart, but I think you could read

25    Section 546(c) to restrict that, and say that, as we

A00913

A0913

65

1    understand, a prepetition lender has rights that are

2    superior to but do not eliminate or trump, I think was the

3    word that the debtors' counsel used, do not eliminate or

4    trump the reclamation claims, they simply come first.

5              And now it's being argued, after Congress

6    enacted Section 546(c) and it said pay attention to the

7    prior lender's rights, but now a new lender can essentially

8    have greater rights.  And I think that's a result that

9    would be a little surprising to Congress when they enacted

10   this legislation.

11             Your Honor, with respect to the issue of

12   the DIP order in section paragraph 30 of the DIP order, the

13   debtor has pointed out that the language in that section of

14   the order makes a reference to payment claims.  I note,

15   your Honor, that they had to highlight that, in explaining

16   what the section meant had to highlight it.  And it seems

17   to me that it is ambiguous, that that language, especially

18   coupled with a reclamation motion which referred to

19   reclamation rights, as we commonly understand it, which is

20   that the secured lender's are superior, but that the

21   reclamation rights come behind the secured lender, that

22   those two, in concert, do give the court grounds to hold

23   that there should be some sort of estoppel from now

24   asserting that the DIP order somehow had even great rights

25   than the prepetition lenders.

A00914

A0914

66

1          Certainly that wasn't noticed out to

2   creditors and reclamation claimants, they weren't served

3   with notice; they weren't serve with a notice that their

4   reclamation claims would be eliminated by the entry of a

5   DIP order.  We don't know whether the DIP lender would have

6   agreed to allow the reclamation claims to be paid because

7   we haven't been given the chance to seek that discovery.

8   My suspension is that the DIP lender may not have been

9   sanguine about the prospect of lending against inventory

10  that was subject to reclamation claims, especially in light

11  of the changes that took place in the statute in 2005.  We

12  would like to find that out.

13          And lastly, your Honor, the question of

14  martialling, it seems to be a little bit of a red herring.

15  Even when your Honor has two liens, two consensually

16  granted Article 9 liens, the bankruptcy courts don't

17  generally marshal, it's really a question of adequate

18  protection.  The junior lender rights are adequately

19  protected if the senior lender sells collateral that the

20  junior lender has a lien in, and typically there would be

21  an adequate protection stipulation that is entered into.

22          In this case what you are being asked to do

23  is to presume that when a fairly large amount of collateral

24  that is more than sufficient to pay the reclamation claims

25  is pledged to a new lender, that the presumption ought to

67

1    be that all of the collateral necessary to pay the

2    reclamation claims is being used up to the exclusion of

3    other collateral.  I just don't think, especially after the

4    enactment to the changes to the Code in 2005, if that's a

5    presumption that the court out to indulge.

6                    That's all I have, your Honor.

7                    THE COURT:  Thank you.

8                    MR. LEONARD:  Robert Leonard of Torre,

9    Lentz, Gamell, Gary and Rittmaster on behalf of Berlin

10   Metals LLC.  I have to give you a card.

11                   We submitted a brief, your Honor, and I'm

12   going to address that.  I wanted to address first the pages

13   23 to 25 of the reply brief of the debtors.  They make it

14   clear that a cornerstone of their position is the assertion

15   that, and I quote, "reclamation claims are not secured

16   claims."  And I quote again "suppliers asserting

17   reclamation rights are not secured creditors."  I'm not

18   sure why they say that.  They don't really cite much

19   authority for that.  They certainly don't cite any

20   authority based on the statute to that effect.  And my

21   initial reaction is why are not they not secured creditors?

22                   THE COURT:  Did Congress say or use the

23   word lien in the statute?

24                   MR. LEONARD:  No, they did not.

25                   THE COURT:  So you want to elevate them,

A00916

A0916

68

1    the debtor wants to demote them.  But if you want to

2    elevate, I think you need something black and white to do

3    that.

4                    MR. LEONARD:  Well, they merely refer to a

5    right.  They certainly refer to --

6                    THE COURT:  But that doesn't make them a

7    secured creditor.

8                    MR. LEONARD:  It may not.  It may and it

9    may not, I would certainly agree with that.  But it does

10   give them a --

11                   THE COURT:  Well, ought Congress tell us if

12   it wants to make them a secured creditor?

13                   MR. LEONARD:  I think it would have been

14   nice if they had done so, yes.

15                   THE COURT:  Well, it would have been nice

16   if Congress had done a lot of things and given a little

17   more forethought.  It may well be that two different

18   partisans got into separate closets and did some drafting

19   and handed both drafts to a drafts person and said, here,

20   put this together and this is our statute.

21                   MR. LEONARD:  But each the debtors' briefs,

22   and both of them admit, that the reclamation right is an in

23   rem right, it is an in rem right in the property which was

24   sold to the debtors.  That some kind of an interest, some

25   kind of a property interest.  A property interest is

A00917

A0917