UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Bankruptcy Case |
| DANA CORPORATION, ET. AL., | Case No. 06-10354 (BRL) |
| Debtors. | (Jointly Administered) |
| THE TIMKEN COMPANY AND TIMKEN U.S. CORP., | |
| Appellants, | Appeal No. 07-CV-5659 (PAC) |
| v. | |
| DANA CORPORATION, ET AL., | |
| Appellees. | |

### REPLY BRIEF OF APPELLANTS
### THE TIMKEN COMPANY AND TIMKEN U.S. CORP.

James M. Sullivan (JS-2189)
Gary O. Ravert (GR-3091)
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173-1922
Telephone: 212.547.5400
Facsimile: 212.547.5444

*Counsel for The Timken Company and Timken U.S. Corp.*

-i-

# TABLE OF CONTENTS

                                                                                                                              **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    A.    Like the Bankruptcy Court Below, the Debtors Have Failed to Address Timken's Argument Regarding the Prepetition Lenders' Good Faith .................. 2

    B.    The Phar-Mor Decision, Like the Enron Decision, Correctly Holds That The Structure of a Transaction May Dictate the Parties' Respective Rights in Such Transaction And Should be Followed by This Court ............................. 5

CONCLUSION ............................................................................................................................ 9

## PRELIMINARY STATEMENT

There are two striking things about the Debtors'[1] appellate brief (the "Debtors' Opening Brief"). First, the Debtors barely address the critical issue of the Prepetition Lenders' good faith. Although this issue was fully briefed in Timken's opening brief (the "Timken Opening Brief"), the Debtors did not even identify the issue as an issue on appeal. Instead, the Debtors chose to focus their response solely on the good faith of the Postpetition Lenders. If the Debtors want the Court to apply the Prior Lien Defense to invalidate all Reclamation Claims following the "effective" assignment of the Prepetition Lenders' liens to the Postpetition Lenders (even though such liens were in fact released), then the validity of the defense would depend on the good faith of the Prepetition Lenders because the principles of assignment law dictate that an assignee of a claim can have no greater rights than the assignor would have if it still held the claim. The Bankruptcy Court overlooked the issue, effectively denying the Reclamation Claimants the ability to obtain discovery on the issue despite a court-approved agreement among the parties to reserve discovery and litigation relating to the Prepetition Lenders' good faith until after resolution of the purely legal issues bearing on the Prior Lien Defense.

Second, the Debtors ignore the recent decision of this Court in *Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.)*, 2007 U.S. Dist. LEXIS 63129 (S.D.N.Y. Aug. 27, 2007) (the "Enron Decision"), which, like the court in *In re Phar-Mor, Inc.*, 301 B.R. 482 (Bankr. N.D. Ohio 2003) ("*Phar-Mor*"), recognized the importance of looking at the form of a transaction to determine the rights of the parties. In *Phar-Mor*, the court held that a debtor's prior lien defense does not survive the postpetition refinancing of prepetition secured debt unless the prior lien is assigned to the postpetition lender. Similarly, the Enron Decision held that a debtor's section

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to such terms in the Timken Opening Brief, as defined below.

-2-

510(c) equitable subordination and section 502(d) disallowance defenses to a claim do not survive the transfer of the claim unless the claim is assigned, rather than sold, to the transferee. Because the Postpetition Lenders obtained their liens through the creation of new liens and not through the assignment of already existing liens, this Court should follow the holding of the *Phar-Mor* court and the reasoning of the Enron Decision and deny the Debtors' Prior Lien Defense Motion.

## ARGUMENT

### A. Like the Bankruptcy Court Below, the Debtors Have Failed to Address Timken's Argument Regarding the Prepetition Lenders' Good Faith

As explained in the Timken Opening Brief, the Appellants and the Debtors agreed to delay discovery on the issue of the good faith of the Prepetition and Postpetition Lenders until after the Decision and Order were rendered. (A0830.) However, the Bankruptcy Court entered a final determination on the Prior Lien Defense without giving the Reclamation Claimants an opportunity to have discovery and a hearing on the issue of the Prepetition Lenders' good faith. In fact, the Bankruptcy Court did not even address the Prepetition Lenders' good faith in the Decision or the Order even though Timken fully briefed the issue below. (A0095 - A0097.) Instead, the Bankruptcy Court only addressed the Postpetition Lenders' good faith. (*Id.*) Accordingly, it appears that the Bankruptcy Court completely missed the issue.

Like the Bankruptcy Court, the Debtors have failed to address the issue of the Prepetition Lenders' good faith even though Timken fully briefed the issue in its filings before the Bankruptcy Court (A0095 - A0097) and the Timken Opening Brief (Timken Opening Brief, § VII.F). Rather, the Debtors' Opening Brief only discusses the good faith of the Postpetition Lenders (Debtors' Opening Brief, Argument, § D).

The issue of the good faith of the Prepetition Lenders is crucial to this case. The Bankruptcy Court held that New 546(c) carries forward the Prior Lien Defense as applied under Old 546(c). (A0015.) Assuming this holding is correct, then the Prepetition Lenders' good faith is an issue that cannot be ignored or pushed aside as the Debtors would have the Court believe because the Prior Lien Defense applies *only* if the Prepetition Lenders obtained their Liens in good faith. *See, e.g., Allegiance Healthcare Corp. v. Primary Health Sys., Inc.*, 258 B.R. 111 (Bankr. D. Del. 2001). In fact, all pre-BAPCPA courts to address the issue have held that all the facts must be examined to determine whether a secured creditor is a good faith purchaser. *See, e.g., Graniteville Co. v. Bleckley Lumber Co.*, 687 F. Supp. 589, 593 (M.D. Ga. 1988) ("good faith of a secured party is obviously a material fact") (internal quotes and citations omitted); *Allegiance Healthcare Corp. v. Primary Health Sys., Inc.*, 258 B.R. 111, 114 (Bankr. D. Del. 2001) (holding that it is "well-established that, absent a showing of bad faith, a creditor with a prior perfected security interest in inventory which contains an after-acquired property clause is a good faith purchaser under the UCC"); *Isaly Klondike Co. v. Sunstate Dairy & Food Prod., Co. (In re Sunstate Dairy & Food Prods Co.)*, 145 B.R. 341, 344 (Bankr. M.D. Fla. 1992) (holding that the reclamation claim was limited by rights of secured creditor that qualified as good faith purchaser); *In re Phar-Mor, Inc.*, 301 B.R. at 497 (DIP lender not a good faith purchaser because it took liens on inventory with notice of reclamation demands). Similarly, we have found no cases holding that a prepetition secured creditor is by definition a "good faith purchaser." The Debtors have not cited to any cases suggesting the contrary. Although a secured creditor may be, by definition, a "purchaser," a secured creditor is not, by definition, a "good faith purchaser."[2]

---

[2] It is simply incorrect for the Debtors to say that section 546(c), as amended, does not contain a good faith requirement because of the allegedly "uniform acceptance" that holders of security interest presumably acted in good faith. (Debtors' Opening Brief, Argument, § D, p. 28). The issue of whether a secured creditor is a valid holder of a security interest is an issue that is independent and separate from the

As all the courts to address the issue have held, all the facts and circumstances must be examined to determine whether a secured creditor is in fact a "good faith purchaser."

Further, it is interesting to see the Debtors seek to sidestep the issue of the Prepetition Lenders' good faith by focusing on the Postpetition Lenders' purported good faith. The Debtors are basing the existence of their Prior Lien Defense on the liens of the Prepetition Lenders. The Debtors argue that the Prepetition Liens were effectively assigned to the Postpetition Lenders, even if they were not, because roughly the same collateral was pledged to both the Prepetition Lenders and the Postpetition Lenders and the proceeds of the Postpetition Loan were used to repay the Prepetition Loan. (Debtors' Opening Brief, Argument, § C, p. 24-27). As set forth in the Timken Opening Brief and below, an effective assignment is not enough to support the assertion of the Prior Lien Defense. However, to the extent the Debtors seek the Court to apply the Prior Lien Defense to invalidate all Reclamation Claims following the "effective" assignment of the Prepetition Lenders' liens to the Postpetition Lenders (even though they were released), then the validity of the defense would depend on the good faith of the Prepetition Lenders because the principles of assignment law dictate that an assignee of a claim can have no greater rights than the assignor would have if it still held the claim. *See In re Enron Corp.*, 2007 U.S. Dist. LEXIS 63129, at *28 (citing *Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*, 2002 WL 31174470 at * 32 n. 39 (S.D.N.Y. Sept. 26, 2002)). Accordingly, any effort by the Debtors to sidestep the issue of the Prepetition Lenders' good faith is fruitless.

The issue of the Prepetition Lenders' good faith is also relevant to the Appellants' equitable allocation and marshaling analysis. Because equitable allocation and marshaling are

---

issue of whether such secured creditor acted in good faith. The Debtors also assert that "the prepetition lenders perfected their liens long before the reclamation claims came into existence." (Debtors' Opening Brief, Argument, § D, p. 28). Once again, the Debtors are raising irrelevant issues - the perfection of the Prepetition Lenders' liens - instead of focusing on whether or not the Prepetition Lenders acted in good faith.

NYK 1131168-3.064980.0013

equitable remedies, the good faith of the Prepetition Lenders, or lack thereof, is a relevant consideration in determining (i) how to equitably allocate any Prepetition Collateral allegedly used to effectively satisfy the Prepetition Indebtedness or (ii) whether to impose marshaling. The Bankruptcy Court, again, did not address the imposition of such a remedy and whether the Prepetition Lenders' good faith would be relevant to such a determination. The Debtors also failed to adequately address this issue and chose instead to focus their arguments only on the good faith of the Postpetition Lenders. The Debtors' arguments are a transparent attempt to muddle the relevant issues in this case and disguise their failure to address the pertinent question under consideration.

As set forth above, even if the Debtors had a viable Prior Lien Defense (notwithstanding the release of the Prepetition Liens), then a final adjudication of the defense cannot be accomplished without first providing the Reclamation Claimants an opportunity to take discovery on, and to litigate the issue of, the Prepetition Lenders' good faith. The Bankruptcy Court, however, effectively denied the Appellants' request for discovery on the issue of the Prepetition Lenders' good faith and a hearing on the matter without any discussion or explanation in the Decision or Order. The Bankruptcy Court's decision to do so was contrary to law and must be reversed.

**B.     The *Phar-Mor* Decision, Like the Enron Decision, Correctly Holds That The Structure of a Transaction May Dictate the Parties' Respective Rights in Such Transaction And Should be Followed by This Court**

In the Debtors' Opening Brief, the Debtors assert that *Phar-Mor* wrongly applies "a mechanical approach to determining the legal consequences of retiring prepetition secured debt through a DIP loan." (Debtors' Opening Brief, Argument, § C, p. 23). As set forth in the Timken Opening Brief, *Phar-Mor* stands for the proposition that a debtor may give a subsequent lender a

security interest superior to the rights of the reclamation claimants only if such transaction is structured as an assignment of a prior lien. *In re Phar-Mor, Inc.*, 301 B.R. at 497. In the event that the subsequent lender receives a new lien, as opposed to such subsequent lender being assigned a prior lien, the subsequent lender will not receive a security interest superior to the rights of the reclamation claimants. (*Id.*) Thus, the Court in *Phar-Mor* emphasized that the form of the transaction – whether the lien was obtained by the subsequent lender through an assignment of a prior lien or through the creation of a new lien – is of crucial importance to determining the rights of the subsequent lender vis-à-vis the reclamation claimants. (*Id.*)

This analysis, which rightly looks to the form of a transaction to determine the respective rights of the parties involved in such transaction, is echoed in the very recent Enron Decision rendered by Judge Shira A. Scheindlin. The facts of the Enron Decision were as follows. Prior to the petition date, Enron Corp. and certain of its debtor affiliates (collectively "Enron") entered into two loans with Citibank. *In re Enron Corp.*, 2007 U.S. Dist. LEXIS 63129, at *6. After the petition date, Citibank filed certain proofs of claim against Enron. One claim was later transferred to Springfield Associates, LLC ("Springfield"). *Id.* at *6. After the claim was transferred, Enron commenced an adversary proceeding against Citibank, alleging that Citibank engaged in inequitable conduct in connection with one loan that injured Enron's creditors. *Id.* at *8. Enron also commenced an adversary proceeding against Springfield seeking to subordinate the assigned claim under section 510(c) of the Bankruptcy Code and disallow such claim under section 502(d) of the Bankruptcy Code. *Id.* at *8-9. In response, Springfield argued that equitable subordination applied personally to the entity that acted inequitably, not to the claim itself. *Id.* at *9-10. Enron, however, replied that any claim that was subject to subordination as of the petition date should remain subject to subordination thereafter because holding otherwise

NYK 1131168-3.064980.0013

would improperly encourage a wrongdoer, at the expense of other innocent creditors, to cleanse its claims by transferring them. *Id.* at *33-34. The bankruptcy court concluded that the Springfield claim was subject to equitable subordination regardless of whether the claim had been assigned or sold. *Id.* at *13-14. Springfield subsequently appealed the bankruptcy court's decision.

The District Court overruled the bankruptcy court's decision. The District Court focused its analysis on the law of assignments and sales, and observed that under an assignment, the assignee stands in the shoes of the assignor and takes subject to all equities against the assignor and subject to all limitations the claim had in the hands of the assignor. *Id.* at *27-28. Those assignment provisions, however, do not apply to sales. *Id.* at *28. The District Court further observed that a purchaser does not stand in the shoes of the seller and, therefore, can obtain more than the transferor when such purchaser takes for value. *Id.* at *28. Accordingly, the District Court held that equitable subordination and disallowance were personal disabilities of the claimant and travel with the claim only when the claim is assigned, not when it is sold. *Id.* at *29. The District Court, thus, made an important and formal distinction between a claim that is sold and a claim that is assigned and used that distinction to determine the legal rights of the subsequent claim holder.

The Enron Decision provides a striking example of how the form of a transaction impacts the legal rights of the parties to such transaction. Far from providing a "formalistic approach" (Debtors' Opening Brief, Argument, § C, p. 27), *Phar-Mor*, which is based on the same type of analysis found in the Enron Decision, correctly held that if the lien of a subsequent lender is obtained through the assignment of a prior lien, the subsequent lender will receive a security interest superior to the interest of the reclamation claimants. *In re Phar-Mor, Inc.*, 301 B.R. at

497. Conversely, if the lien of a subsequent lender is obtained through the creation of a new lien, the subsequent lender will not receive a security interest superior to the interest of the reclamation claimants. *Id.*

The decisions in *Enron* and *Phar-Mor* are not surprising given the numerous situations outside the bankruptcy context where the form of a transaction has important ramifications bearing on the legal rights of the parties. For example, as most property owners in New York have learned, a mortgage borrower seeking to refinance its mortgage can avoid payment of a New York mortgage tax only if the existing lender assigns its mortgage to the new lender. N.Y. Tax. Law § 253-a. Absent such an assignment, the property owner will be required to pay a substantial mortgage tax. *Id.* Another example involves the payment of state and federal capital gains tax upon the sale of real property. If the property owner structures the transaction as part of a like-kind exchange under section 1031 of the Internal Revenue Code, the property owner can defer the payment of taxes. 26 U.S.C. § 1031. If the property owner does not, taxes are required to be paid. There are countless of additional examples of situations where the legal rights of parties to a transaction are affected depending upon the structure of the transaction. What the Debtors are trying to accomplish in this case is to wrongfully obtain the rights that would have been available to them had the Prepetition Liens been assigned, namely, the Prior Lien Defense, without having to proceed in that fashion. The Debtors' failure to cause such an assignment should preclude them from deriving the benefits of an assignment.

The Bankruptcy Court, like the bankruptcy courts in *Enron* and *Dairy Mart*,[3] ignored the structure of the underlying transaction to reach the desired conclusion. The Bankruptcy Court's recognition of the Debtors' Prior Lien Defense should not be sanctioned where the Bankruptcy Court ignored the fact that the Prepetition Liens were not assigned to the Postpetition Lenders.

---

[3] Interestingly, the same bankruptcy judge was involved in both the *Enron* and *Dairy Mart* decisions.

NYK 1131168-3.064980.0013

Instead, the Debtors should be required to live with the structure they chose and the legal rights and obligations attendant to that structure.

## CONCLUSION

As set forth above, the Debtors failed to address the issue of the Prepetition Lenders' good faith, which issue was completely overlooked by the Bankruptcy Court. In addition, *Phar-Mor*, like the recent Enron Decision, persuasively shows that the Bankruptcy Court's decision to follow *Dairy Mart* and ignore the structure of the transaction should not be sanctioned. Accordingly, Timken respectfully requests that the Decision and Order be reversed and an order entered denying the Debtors' Prior Lien Defense Motion.

Dated: New York, New York.
November 19, 2007

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

By: /s/ James M. Sullivan
James M. Sullivan (JS-2189)
Gary O. Ravert (GR-3091)
340 Madison Avenue
New York, New York 10173-1922
Telephone: 212.547.5400
Facsimile: 212.547.5444

Counsel for Creditors The Timken Company and Timken U.S. Corp.

NYK 1131168-3.064980.0013